1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KELLER ROHRBACK L.L.P.**
Gary A. Gotto, Bar No. 007401
3101 N. Central Avenue, Suite 1400
Phoenix, Arizona 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
ggotto@kellerrohrback.com

***Counsel for Plaintiff***

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Sam Alich, Individually and on Behalf of All Others Similarly Situated, | No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| Opendoor Technologies Inc., Eric Wu, Carrie Wheeler, Chamath Palihapitiya, Steven Trieu, Ian Osborne, Adam Bain, David Spillane, and Cipora Herman, | <u>CLASS ACTION</u>  (DEMAND FOR JURY TRIAL) |
| Defendants. | |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

Plaintiff Sam Alich ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Opendoor Technologies Inc. ("Opendoor" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Opendoor securities between December 21, 2020 and September 16, 2022, both dates inclusive (the "Class Period"); and/or (b) Opendoor common stock pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the business combination between the Company and Opendoor Labs Inc. ("Legacy Opendoor") completed on or about December 18, 2020 (the "Merger").  Plaintiff pursues

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

1
2

claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

3
4
5
6
7
8
9

2.      Opendoor was formerly known as Social Capital Hedosophia Holdings Corp. II ("SCH") and operated as a special purpose acquisition company ("SPAC"), also called a blank-check company, which is a development stage company that has no specific business plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person.

10
11
12
13
14

3.      On September 15, 2020, the Company, then still operating as SCH, and Legacy Opendoor, a private company operating as a digital platform for residential real estate, announced their entry into a definitive agreement for the Merger (the "Merger Agreement"), which valued Legacy Opendoor at an enterprise value of $4.8 billion.

15
16
17
18
19
20
21
22

4.      On October 5, 2020, the Company filed a registration statement on Form S-4 with the SEC in connection with the Merger, which, after several amendments, was declared effective by the SEC on November 27, 2020 (the "Registration Statement").  On November 30, 2020, the Company filed a proxy statement/prospectus on Form 424B3 with the SEC in connection with the Merger, which formed part of the Registration Statement (the "Proxy" and, together with the Registration Statement, the "Offering Documents").

23
24
25
26
27
28

5.      On December 18, 2020, pursuant to the Merger Agreement, the Company, among other things, deregistered as a Cayman Islands company, registered as a Delaware company, changed its name to "Opendoor Technologies Inc.", and consummated the Merger, whereby, among other things, Legacy Opendoor became a wholly owned subsidiary of the Company.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

6.      Following the Merger, the Company has operated a digital platform for buying and selling residential real estate in the U.S.  The Company's platform features a technology known as "iBuying," which is an algorithm-based process that purportedly enables Opendoor to make accurate market-based offers to sellers for their homes, and then flip those homes to buyers for a profit.

7.      On December 21, 2020, the Company's post-Merger common stock and warrants began publicly trading on the Nasdaq Stock Market ("NASDAQ") under the ticker symbols "OPEN" and "OPENW", respectively.

8.      The Offering Documents for the Merger were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) the algorithm ("Algorithm") used by the Company to make offers for homes could not accurately adjust to changing house prices across different market conditions and economic cycles; (ii) as a result, the Company was at an increased risk of sustaining significant and repeated losses due to residential real estate pricing fluctuations; (iii) accordingly, Defendants overstated the purported benefits and competitive advantages of the Algorithm; and (iv) as a result, the Offering Documents and Defendants' public

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

9.     On September 19, 2022, citing a review of industry data, *Bloomberg* reported that the Company appeared to have lost money on 42% of its transactions in August 2022 (as measured by the prices at which it bought and sold properties). *Bloomberg* further reported that the data was even worse in key markets such as Los Angeles, California, where Opendoor lost money on 55% of sales, and Phoenix, Arizona, where it lost money on 76% of sales.  Worse, a global real estate tech strategist interviewed by *Bloomberg*, Mike DelPrete, predicted that, based on his analyses, September would likely be even worse for Opendoor than August.  *Bloomberg's* findings evidenced the failure of Opendoor's Algorithm to adjust accurately to changing market conditions.

10.     Following the *Bloomberg* report, Opendoor's stock price fell $0.50 per share, or 12.32%, over the following two trading sessions, to close at $3.56 per share on September 20, 2022—an ***88.61%*** decline from the Company's first post-Merger closing stock price of $31.25 per share on December 21, 2020 (the "Initial Closing Price").

11.     As of the time this Complaint was filed, Opendoor's common stock was trading significantly below the Initial Closing Price and continues to trade below its initial value from the Merger, damaging investors.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

**JURISDICTION AND VENUE**

13.    The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Opendoor is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

16.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

17.    Plaintiff purchased or otherwise acquired Opendoor securities during the Class Period, and/or Opendoor common stock pursuant and/or traceable to the Offering Documents issued in connection with the Merger, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

18.     Defendant Opendoor is a Delaware corporation with principal executive offices located at 410 N. Scottsdale Road, Suite 1600, Tempe, Arizona 85281.  The Company's common stock and warrants trade in an efficient market on the NASDAQ under the ticker symbols "OPEN" and "OPENW", respectively.

19.     Defendant Eric Wu ("Wu") has served as Opendoor's Chief Executive Officer ("CEO") at all relevant times following the consummation of the Merger.

20.     Defendant Carrie Wheeler ("Wheeler") has served as Opendoor's Chief Financial Officer ("CFO") at all relevant times following the consummation of the Merger.

21.     Defendants Wu and Wheeler are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

22.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of Opendoor's SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided with copies of Opendoor's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Opendoor, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

23.     Opendoor and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

24.     Defendant Chamath Palihapitiya ("Palihapitiya") served as Opendoor's CEO and Chairman of the Board of Directors at all relevant times prior to consummation of the Merger.  Palihapitiya signed or authorized the signing of the Registration Statement filed with the SEC.

25.     Defendant Steven Trieu ("Trieu") served as Opendoor's CFO at all relevant times prior to consummation of the Merger.  Trieu signed or authorized the signing of the Registration Statement filed with the SEC.

26.     Defendant Ian Osborne ("Osborne") served as Opendoor's President and a Director of the Company at all relevant times prior to consummation of the Merger. Osborne signed or authorized the signing of the Registration Statement filed with the SEC.

27.     Defendant Adam Bain ("Bain") served as a Director of Opendoor at all relevant times prior to consummation of the Merger.  Bain signed or authorized the signing of the Registration Statement filed with the SEC.

28.     Defendant David Spillane ("Spillane") served as a Director of Opendoor at all relevant times prior to consummation of the Merger.  Spillane signed or authorized the signing of the Registration Statement filed with the SEC.

29.     Defendant Cipora Herman ("Herman") served as a Director of Opendoor at all relevant times prior to consummation of the Merger.  Herman signed or authorized the signing of the Registration Statement filed with the SEC.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

30.     Defendants Palihapitiya, Trieu, Osborne, Bain, Spillane, and Herman are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

31.     As directors, executive officers, and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation of Opendoor common stock in the Merger for their own benefit and the benefit of the Company.  The Securities Act Individual Defendants were key members of the Merger working group and executives of the Company who pitched investors to approve the Merger and the shares acquired in the Merger.

32.     Opendoor and the Securities Act Individual Defendants are sometimes referred to herein collectively as the "Securities Act Defendants."

33.     The Exchange Act Defendants and the Securities Act Defendants are sometimes collectively, in whole or in part, referred to herein as "Defendants."

<u>**SUBSTANTIVE ALLEGATIONS**</u>

<u>**Background**</u>

34.     Opendoor was formerly known as SCH and operated as a SPAC, also called a blank-check company, which is a development stage company that has no specific business plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person.

35.      On September 15, 2020, the Company, then still operating as SCH, and Legacy Opendoor, a private company operating as a digital platform for residential real estate, announced their entry into the Merger Agreement, which valued Legacy Opendoor at an enterprise value of $4.8 billion.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

36.     On October 5, 2020, the Company filed the Registration Statement on Form S-4 with the SEC in connection with the Merger, which, after several amendments, was declared effective by the SEC on November 27, 2020.   On November 30, 2020, the Company filed the Proxy on Form 424B3 with the SEC in connection with the Merger, which formed part of the Registration Statement.

37.     On December 18, 2020, pursuant to the Merger Agreement, the Company, among other things, deregistered as a Cayman Islands company, registered as a Delaware company, changed its name to "Opendoor Technologies Inc.", and consummated the Merger, whereby, among other things, Legacy Opendoor became a wholly owned subsidiary of the Company.

38.     Following the Merger, the Company has operated a digital platform for buying and selling residential real estate in the U.S.   The Company's platform features a technology known as "iBuying," which is an algorithm-based process that purportedly enables Opendoor to make accurate market-based offers to sellers for their homes, and then flip those homes to buyers for a profit.

39.     On December 21, 2020, the Company's post-Merger common stock and warrants began publicly trading on the NASDAQ under the ticker symbols "OPEN" and "OPENW", respectively.

**Materially False and Misleading Statements Issued in the Offering Documents**

40.     The Offering Documents stated the following regarding Legacy Opendoor's—and, following the Merger, the Company's—proprietary Algorithm:

9

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

While the real estate industry lends itself to the use of a plethora of publicly sourceable data, much of this data lacks the quality and specificity essential to accurately price homes. Since Opendoor's founding, we have built world-class data science capabilities and systematized tooling to gather, aggregate and synthesize an expanding catalogue of proprietary, hyperlocal data in order to improve and automate pricing decisions.

41.    With respect to the proprietary offline data used by the Algorithm, the Offering Documents stated, in relevant part:

We have conducted over 150,000 home assessments during which we collect over 100 data points on each home and its surroundings. We have invested in building custom inspection and operator tooling to systematically source and translate home features into a robust data library. Once we have purchased a home, we can collect additional proprietary home-level data through visitor feedback, visitor traffic and duration of visits. These proprietary data points have led us to make over one billion annotations and corrections to Multiple Listing Services ("MLS") and tax assessor data, as well as build out new, non-traditional geospatial data assets, such as power line proximity and road noise level. The additional home level data we collect from local vendors provides structured feedback on each home and further strengthens our data moat.

42.    With respect to the "pricing accuracy" of the Algorithm and its purported real-time reaction time to macro- and micro-economic conditions, the Offering Documents stated, in relevant part:

Our unique data works in concert with our pricing algorithms. These algorithms use machine learning to drive pricing decisions through demand forecasting, outlier detection, risk pricing, and inventory management. Over time, we have improved the pricing accuracy of our models as we add new data inputs and refine model logic, improvements that compound with experience and scale. As we have continued to demonstrate improving accuracy, we have also been able to increase our number of fully automated home valuations.

Advancements in model sophistication have accelerated our feedback loops, such that our systems can dynamically adjust to leading market indicators and react to real-time macro- and micro-economic conditions. Our pricing algorithms are designed to dynamically adjust to leading indicators and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

market conditions so that the business can react to real-time economic conditions. This responsiveness is critical to pricing accurately and maintaining margins, especially in periods of volatility.

43.     The statements referenced in ¶¶ 40-42 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) the Algorithm used by the Company to make offers for homes could not accurately adjust to changing house prices across different market conditions and economic cycles; (ii) as a result, the Company was at an increased risk of sustaining significant and repeated losses due to residential real estate pricing fluctuations; (iii) accordingly, Defendants overstated the purported benefits and competitive advantages of the Algorithm; and (iv) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

**Materially False and Misleading Statements Issued During the Class Period**

44.     The Class Period begins on December 21, 2020, when Opendoor's post-Merger common stock began publicly trading on the NASDAQ pursuant to the materially false and misleading statements and omissions contained in the Offering Documents.

45.     On March 4, 2021, Opendoor filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2020 (the "2020 10-K").  The 2020 10-K contained substantively the

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

same statements as referenced in ¶¶ 40-42, *supra*, regarding Opendoor's proprietary Algorithm, the data powering the Algorithm, the Algorithm's purported pricing accuracy, and the Algorithm's purported real-time reaction to macro- and micro-economic conditions.

46.     Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Exchange Act Individual Defendants certified that "[t]he [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

47.     On February 24, 2022, Opendoor filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2021 (the "2021 10-K").   The 2021 10-K contained substantively the same statements as referenced in 42, *supra*, regarding the Algorithm's purported pricing accuracy and real-time reaction to macro- and micro-economic conditions.

48.     With respect to Opendoor's improvements to its proprietary offline data for the Algorithm, the 2021 10-K stated, in relevant part:

> We have conducted approximately 375,000 assessments during which we collect over 100 data points on each home and its surroundings. We have invested in building custom inspection and operator tooling to systematically source and translate home features into a robust data library. These proprietary data points have led us to make approximately 1.4 billion annotations and adjustments to MLS and tax assessor data, as well as build out unique geospatial data assets, such as power line proximity and road

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

noise level. Once we list a home for resale, we collect additional home-level demand data such as home visits and visitor feedback, which enable us to continuously calibrate our resale strategy and acquisition home pricing.

49.    With respect to how Opendoor utilized the Algorithm to generate "Industry-Leading Pricing Capabilities", the 2021 10-K stated, *inter alia*:

To create our home offers, we algorithmically produce both an estimated offer price and an assessment of our confidence level in that estimate, and we then further validate that estimate with in-depth underwriting and risk assessment, including additional review from our in-house pricing associates, to finalize the offer. We dynamically adjust our offers to account for the level of certainty in pricing each home. This degree of certainty can be impacted by factors such as macro conditions, the condition or attributes of a home, or depth of home comparables. We are constantly recalibrating our view of pricing and where market values are trending using high-frequency detailed metrics across all segments of our business, including numerous inputs related to the dynamics of market demand and supply across markets, home types and time periods.

50.    The 2021 10-K also represented that Opendoor had implemented a "Robust Risk Management Framework", stating, *inter alia*:

Since our inception, we have prioritized investment in our pricing capabilities across our home acquisition processes and our forecasting and resale systems, and expect to continue to do so. These investments pair with a strong risk management focus that is embedded in our pricing, finance and operations teams. We evaluate the quality of our pricing models and processes using high-frequency detailed metrics across all segments of our business, including home acquisition, resale strategy and inventory health. All of our pricing decisions are managed centrally, giving us a high degree of control over our overall growth and margin objectives.

51.    In addition, the 2021 10-K assured investors that "[w]hile residential real estate markets are subject to fluctuations, as with any market, we believe we are well-positioned to manage our risk exposure due to", among other things, Opendoor's "pricing

13

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

models and inventory management systems [that] are designed to recalibrate to market signals on a daily basis."

52.    In this same vein, the 2021 10-K further represented, in relevant part:

[C]hanging market conditions are reflected in our pricing for new acquisitions, largely leaving previously-acquired inventory at risk to potential market volatility. In addition, we employ sophisticated resale pricing management systems that allow us to optimize sell-through and margin using real-time, local market demand information, including down to an individual home level. We believe that the quality and scale of information we utilize in our inventory management decisions and our ability to manage these decisions across a scaled, diversified portfolio provides us with a structural advantage over individual sellers or agents in the traditional home selling process.

53.    Appended as exhibits to the 2021 10-K were substantively the same SOX certifications as referenced in ¶ 46, *supra*, signed by the Exchange Act Individual Defendants.

54.    On August 4, 2022, after the markets closed, Opendoor issued a press release ("August 4 Press Release") announcing the Company's second quarter 2022 results, including, among other things, third quarter 2022 adjusted earnings before interest, taxes, depreciation and amortization ("EBITDA") guidance of $(175) million to $(125) million.

55.    Notwithstanding the August 4 Press Release's disclosure that Opendoor could potentially lose as much as $175 million in adjusted EBITDA in the third quarter of 2022, Defendant Wu, as quoted in the August 4 Press Release, continued to reassure investors regarding the purported benefits of the Company's Algorithm, stating, in relevant part: "[C]urrent market volatility is requiring us to move swiftly and with discipline in managing risk and overall inventory health. We are leveraging our responsive

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

pricing and operations platform . . . to operate from a position of strength and solidify our leadership as the category winner."

56.     That same day, also after the markets closed, the Exchange Act Individual Defendants issued a letter ("August 4 Letter") to shareholders indicating that "the housing market has moved rapidly in response to the Fed's aggressive rate hikes in an effort to curb inflation" and that "[t]his resulted in a steep increase in mortgage rates, which in turn catalyzed a slowdown in the rate of home transactions and lower levels of home price appreciation from all-time highs early in the year."

57.     The August 4 Letter, however, reassured Opendoor shareholders that "[o]ur investments in our platform have enabled an agile and low cost operating system *that allows us to scale up and down gracefully across seasons and cycles*," and "[w]e are ready and well-positioned with our responsive pricing strategies, flexible operating model, low cost structure, and strong balance sheet *to navigate near-term volatility* and invest in the future of our platform."  (Emphasis added.)

58.     On a conference call after the markets closed on August 4, 2022, Defendant Wheeler reassured an analyst that even in the current volatile market "*our systems are doing exactly what they're designed to do, which is responding very, very quickly, adjusting prices to market* and we've been raising spreads and new acquisitions." (Emphasis added.)

59.     On August 5, 2022, as a result of the Exchange Act Defendants' positive representations, as referenced in ¶¶ 55 and 57-58, *supra*, regarding the Algorithm's ability

1
2
to navigate recently observed volatility in the housing market, Opendoor's stock price jumped 21.7% to close at $5.72 per share.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
60.     The statements referenced in ¶¶ 45-53, 55, and 57-58 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Algorithm used by the Company to make offers for homes could not accurately adjust to changing house prices across different market conditions and economic cycles; (ii) as a result, the Company was at an increased risk of sustaining significant and repeated losses due to residential real estate pricing fluctuations; (iii) accordingly, Defendants overstated the purported benefits and competitive advantages of the Algorithm; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

17
18
**The Truth Fully Emerges**

19
20
21
22
23
61.     On September 19, 2022, citing a review of industry data, *Bloomberg* reported that the Company appeared to have lost money on 42% of its transactions in August 2022 (as measured by the prices at which it bought and sold properties), stating, in relevant part:

24
25
26
27
> [Opendoor], which sells thousands of homes in a typical month, lost money on 42% of its transactions in August, according to research from YipitData. Opendoor's performance — as measured by the prices at which it bought and sold properties — was even worse in key markets such as Los Angeles, where the company lost money on 55% of sales, and Phoenix, where the share was 76%.

28

16

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The losses, which don't include fees charged to customers or expenses incurred in renovating and marketing homes, have been looming since the housing market turned suddenly in recent months.

\* \* \*

The company's rocky summer is reminiscent of the pricing problems that doomed Zillow Group Inc.'s iBuying business last year, according to a research note from Mike DelPrete, a scholar-in-residence at the University of Colorado Boulder. That doesn't mean Opendoor is going to shut down the business, but it demonstrates the depth of the losses — and September is likely to be even worse than August, DelPrete's analysis shows.

"Opendoor's metrics are in the danger zone," DelPrete said in an interview. "They are very close to where Zillow was in its worst moments."

The iBuying model relies on acquiring homes, making light repairs and reselling the properties — often within a few months of the initial purchase . . . . [D]windling affordability and mortgage rates soaring toward 6% this spring finally pushed would-be buyers to the sidelines.

By June, median home prices had begun to decline in some areas, especially the Sun Belt markets that had been frothiest in the pandemic boom days. The shift caught Opendoor by surprise, leaving it to offload thousands of properties it had agreed to purchase when prices were rising.

\* \* \*

The shares slid 4.7% to $3.87 at 3:28 p.m. New York time Monday. They were down 72% this year through the close on Sept. 16.

*Bloomberg's* findings evidenced the failure of Opendoor's Algorithm to adjust accurately to changing market conditions.

62.     Following the *Bloomberg* report, Opendoor's stock price fell $0.50 per share, or 12.32%, over the following two trading sessions, to close at $3.56 per share on September 20, 2022—an **88.61%** decline from the Initial Closing Price.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

63.     As of the time this Complaint was filed, Opendoor's common stock was trading significantly below the Initial Closing Price and continues to trade below its initial value from the Merger, damaging investors.

64.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

65.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Opendoor securities during the Class Period, and/or Opendoor common stock pursuant and/or traceable to the Offering Documents issued in connection with the Merger; and were damaged thereby (the "Class").   Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

66.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Opendoor securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Opendoor or its

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

67.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

68.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

69.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the Merger, or during the Class Period, misrepresented material facts about the business, operations and management of Opendoor;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the Merger and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Opendoor to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

19

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- whether the prices of Opendoor securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

70.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

71.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Opendoor securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Opendoor securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

20

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

72.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

73.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)**

74.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

75.     This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

76.     During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with

21

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Opendoor securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Opendoor securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

77.    Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Opendoor securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Opendoor's finances and business prospects.

78.    By virtue of their positions at Opendoor, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants. Said acts and omissions

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth.    In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

79.    Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.    As the senior managers and/or directors of Opendoor, the Exchange Act Individual Defendants had knowledge of the details of Opendoor's internal affairs.

80.    The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.    Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Opendoor.    As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Opendoor's businesses, operations, future financial condition, and future prospects.    As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Opendoor securities was artificially inflated throughout the Class Period.    In ignorance of the adverse facts concerning Opendoor's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Opendoor securities at artificially inflated prices and relied upon the price of the securities, the integrity of the

1
2

market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

81.    During the Class Period, Opendoor securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Opendoor securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Opendoor securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Opendoor securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

20
21
22
23

82.    By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

24
25
26
27

83.    As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2

Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

3
4

<u>COUNT II</u>

5

**(Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)**

6
7
8

84.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

9
10
11
12
13
14
15

85.     During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Opendoor, and conducted and participated, directly and indirectly, in the conduct of Opendoor's business affairs. Because of their senior positions, they knew the adverse non-public information about Opendoor's misstatement of income and expenses and false financial statements.

16
17
18
19
20
21

86.     As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Opendoor's financial condition and results of operations, and to correct promptly any public statements issued by Opendoor which had become materially false or misleading.

22
23
24
25
26
27
28

87.     Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Opendoor disseminated in the marketplace during the Class Period concerning Opendoor's results of operations. Throughout the Class Period, the Exchange Act Individual Defendants exercised their

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

power and authority to cause Opendoor to engage in the wrongful acts complained of herein.  The Exchange Act Individual Defendants, therefore, were "controlling persons" of Opendoor within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Opendoor securities.

88.    Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Opendoor.  By reason of their senior management positions and/or being directors of Opendoor, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Opendoor to engage in the unlawful acts and conduct complained of herein.  Each of the Exchange Act Individual Defendants exercised control over the general operations of Opendoor and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

89.    By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Opendoor.

## **COUNT III**

**(Violations of Section 11 of the Securities Act Against the Securities Act Defendants)**

90.    Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

91.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

92.     The Offering Documents for the Merger were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

93.     Opendoor is the registrant for the Merger.  Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

94.     As issuer of the shares, Opendoor is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

95.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

96.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

97.     Plaintiff acquired Opendoor shares pursuant and/or traceable to the Offering Documents for the Merger.

98.     Plaintiff and the Class have sustained damages.  The value of Opendoor common stock has declined substantially subsequent to and because of Defendants' violations.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT IV

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

99.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

100.     This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

101.     The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Opendoor within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause Opendoor to engage in the acts described herein.

102.     The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

103.     By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  October 7, 2022                              Respectfully submitted,

**KELLER ROHRBACK L.L.P.**

By: */s/ Gary A. Gotto*
Gary A. Gotto
3101 N. Central Avenue, Suite 1400
Phoenix, Arizona 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
ggotto@kellerrohrback.com

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

**WOHL & FRUCHTER LLP**
Joshua E. Fruchter
(*pro hac vice* application forthcoming)
25 Robert Pitt Drive, Suite 209G
Monsey, New York 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

***Attorneys for Plaintiff***

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

## CERTIFICATION PURSUANT
## <u>TO FEDERAL SECURITIES LAWS</u>

1.      I, Sam Alich, make this declaration pursuant to the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Opendoor Technologies Inc. ("Opendoor" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Opendoor securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Opendoor securities during the Class Period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Opendoor securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

**Executed** _____

9/23/2022

           **(Date)**



_____

        **(Signature)**

Sam Alich

        **(Type or Print Name)**

Opendoor Technologies, Inc. (OPEN)                                    Sam Alich

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 12/22/2020 | 123 | $30.6700 |
| Purchase | 12/22/2020 | 10 | $29.6800 |
| Purchase | 12/31/2020 | 128 | $23.3000 |
| Purchase | 4/14/2021 | 150 | $20.6000 |
| Purchase | 4/19/2021 | 177 | $17.4800 |
| Purchase | 5/12/2021 | 130 | $15.4000 |
| Purchase | 1/18/2022 | 360 | $11.1700 |
| Purchase | 1/20/2022 | 150 | $9.9900 |
| Purchase | 1/21/2022 | 200 | $9.5000 |
| Purchase | 1/24/2022 | 250 | $8.5200 |
| Purchase | 1/24/2022 | 200 | $8.3900 |
| Purchase | 1/24/2022 | 170 | $8.2200 |
| Purchase | 1/24/2022 | 150 | $8.8800 |
| Purchase | 2/25/2022 | 300 | $8.6100 |
| Purchase | 2/25/2022 | 200 | $7.9400 |
| Purchase | 2/25/2022 | 50 | $8.3800 |
| Purchase | 2/25/2022 | 20 | $8.1600 |
| Purchase | 3/4/2022 | 450 | $7.1300 |
| Purchase | 3/7/2022 | 600 | $6.5700 |
| Purchase | 4/6/2022 | 400 | $7.3700 |
| Purchase | 4/22/2022 | 120 | $7.1500 |
| Purchase | 5/6/2022 | 500 | $6.6800 |
| Purchase | 5/9/2022 | 90 | $6.0900 |
| Purchase | 5/10/2022 | 400 | $5.4600 |
| Purchase | 5/10/2022 | 350 | $5.3300 |
| Purchase | 5/18/2022 | 500 | $6.9800 |
| Purchase | 5/18/2022 | 350 | $6.9200 |
| Purchase | 5/18/2022 | 300 | $6.8900 |
| Purchase | 5/20/2022 | 550 | $6.5500 |
| Purchase | 5/24/2022 | 1,000 | $6.0900 |
| Purchase | 6/1/2022 | 250 | $7.0600 |
| Purchase | 6/6/2022 | 250 | $7.3900 |
| Purchase | 6/6/2022 | 100 | $7.1300 |
| Purchase | 6/6/2022 | 50 | $7.1300 |
| Purchase | 6/9/2022 | 250 | $6.7100 |
| Purchase | 6/9/2022 | 200 | $6.8400 |
| Purchase | 6/9/2022 | 100 | $6.9300 |
| Purchase | 6/10/2022 | 350 | $5.9800 |
| Purchase | 6/10/2022 | 250 | $5.9100 |
| Purchase | 6/10/2022 | 250 | $6.2600 |
| Purchase | 6/10/2022 | 250 | $6.3100 |
| Purchase | 6/13/2022 | 250 | $4.9800 |
| Purchase | 6/13/2022 | 250 | $5.2400 |
| Purchase | 6/13/2022 | 250 | $5.4300 |
| Purchase | 6/13/2022 | 200 | $5.0100 |
| Purchase | 6/13/2022 | 200 | $5.2000 |
| Purchase | 6/13/2022 | 50 | $5.0200 |
| Purchase | 6/14/2022 | 200 | $4.8500 |
| Purchase | 6/16/2022 | 500 | $4.3700 |
| Purchase | 6/16/2022 | 300 | $4.6900 |

Opendoor Technologies, Inc. (OPEN)                                                    Sam Alich

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 6/16/2022 | 250 | $4.3800 |
| Purchase | 6/16/2022 | 150 | $4.5400 |
| Purchase | 6/30/2022 | 200 | $4.5100 |
| Purchase | 7/12/2022 | 350 | $5.0100 |
| Purchase | 7/26/2022 | 500 | $4.6800 |
| Purchase | 7/27/2022 | 400 | $4.5500 |
| Purchase | 8/4/2022 | 100 | $4.8300 |
| Purchase | 8/9/2022 | 400 | $5.3300 |
| Purchase | 8/18/2022 | 500 | $4.9700 |
| Purchase | 8/19/2022 | 550 | $4.6800 |
| Purchase | 8/19/2022 | 500 | $4.8100 |
| Purchase | 8/22/2022 | 150 | $4.6400 |
| Purchase | 8/26/2022 | 500 | $4.6100 |
| Purchase | 9/15/2022 | 750 | $4.1700 |
| Purchase | 9/16/2022 | 50 | $4.0300 |
| Sale | 11/12/2021 | (18) | $23.2900 |
| Sale | 2/8/2022 | (250) | $9.6100 |
| Sale | 2/24/2022 | (200) | $8.8900 |
| Sale | 3/21/2022 | (350) | $8.0300 |
| Sale | 5/5/2022 | (500) | $7.6500 |
| Sale | 5/12/2022 | (250) | $6.1100 |
| Sale | 5/12/2022 | (400) | $5.9000 |
| Sale | 5/13/2022 | (300) | $7.0300 |
| Sale | 5/13/2022 | (400) | $7.4000 |
| Sale | 5/16/2022 | (250) | $7.4800 |
| Sale | 5/19/2022 | (300) | $7.1600 |
| Sale | 5/19/2022 | (500) | $6.6600 |
| Sale | 5/19/2022 | (500) | $6.8400 |
| Sale | 5/25/2022 | (500) | $6.3400 |
| Sale | 5/26/2022 | (200) | $6.5800 |
| Sale | 5/26/2022 | (250) | $6.6100 |
| Sale | 5/26/2022 | (300) | $6.5000 |
| Sale | 5/27/2022 | (30) | $7.2100 |
| Sale | 5/27/2022 | (200) | $7.2600 |
| Sale | 5/27/2022 | (370) | $7.2100 |
| Sale | 5/27/2022 | (400) | $6.9800 |
| Sale | 6/2/2022 | (200) | $7.7400 |
| Sale | 6/2/2022 | (200) | $7.9300 |
| Sale | 6/2/2022 | (250) | $7.6200 |
| Sale | 6/14/2022 | (250) | $5.0500 |
| Sale | 6/14/2022 | (250) | $5.1000 |
| Sale | 6/14/2022 | (250) | $5.1000 |
| Sale | 6/15/2022 | (100) | $5.1000 |
| Sale | 6/15/2022 | (300) | $5.1200 |
| Sale | 6/17/2022 | (500) | $4.6900 |
| Sale | 6/17/2022 | (500) | $4.8300 |
| Sale | 6/23/2022 | (300) | $5.4200 |
| Sale | 7/19/2022 | (199) | $5.6100 |
| Sale | 7/19/2022 | (200) | $5.6000 |
| Sale | 7/19/2022 | (201) | $5.6100 |

**Opendoor Technologies, Inc. (OPEN)**                                    **Sam Alich**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Sale | 7/20/2022 | (160) | $5.8200 |
| Sale | 8/5/2022 | (250) | $5.4400 |
| Sale | 8/5/2022 | (250) | $5.6800 |
| Sale | 8/5/2022 | (300) | $5.3400 |
| Sale | 8/10/2022 | (84) | $5.9800 |
| Sale | 8/10/2022 | (216) | $5.9800 |
| Sale | 8/16/2022 | (600) | $5.6900 |
| Sale | 8/22/2022 | (1,000) | $4.7200 |
| Sale | 8/23/2022 | (500) | $4.6100 |
| Sale | 8/24/2022 | (200) | $4.7600 |
| Sale | 8/25/2022 | (150) | $4.7400 |
| Sale | 8/25/2022 | (200) | $4.8200 |
| Sale | 8/26/2022 | (500) | $4.6500 |
| Sale | 9/9/2022 | (450) | $4.7900 |
| Sale | 9/13/2022 | (250) | $4.7600 |