**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sam Alich, | No. CV-22-01717-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Opendoor Technologies Incorporated, et al., | |
| Defendants. | |

The matter comes before the Court on multiple movants motions for consolidation, appointment as lead plaintiff, and approval of selection of counsel for two securities putative class actions filed in this district. (Docs. 9, 10, 11, 12, 13 in 2:22-CV-01717-PHX-MTL); (Docs. 9, 10, 11, 12, 13 in 2:22-CV-01987-PHX-GMS.)[1] For the following reasons, the Court consolidates the Related Actions, appoints Indiana Public Retirement System, Oakland County Employees' Retirement System, and Oakland County Voluntary Employees' Beneficiary Association as Lead Plaintiff, and approves their selection of Labaton Sucharow LLP as Lead Counsel for the putative class.

**I.   BACKGROUND**

The Related Actions are securities putative class actions brought under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78u-4, *et seq*. (the "Exchange Act"), and the Securities Act of 1933, 15 U.S.C. §§ 77z-1, *et seq*. (the "Securities Act") against Opendoor Technologies Inc. ("Opendoor" or the "Company"), certain of the Company's

---

[1] 2:22-CV-01987-PHX-GMS is hereinafter referred to as the "Related Action" and, together with 2:22-CV-01717-PHX-MTL, the "Related Actions."

officers and directors, and underwriters who worked with the Company to offer its securities, and a major shareholder who allegedly sold a large amount of stock in the Company (collectively, "Defendants").

Opendoor was formerly known as Social Capital Hedosophia Holdings Corp. II ("SCH"). (Doc. 1 ¶ 2.) SCH operated as a special purpose acquisition company, a type of blank-check company.[2] SCH and Opendoor Labs Inc., a private company operating a digital platform for the buying and selling residential real estate, entered into a merger agreement, creating Opendoor Technologies Inc. (*Id.* ¶ 3-5.) In its present iteration, Opendoor, a Delaware Corporation with its principal offices in Tempe, Arizona, operates a digital marketplace for the buying and selling of residential real estate in the United States. (*Id.* ¶ 18.) The Company's shares trade on the NASDAQ under the ticker symbol "OPEN." (*Id.*)

Opendoor's digital platform features a technology known as "iBuying," an algorithm-based process that enables Opendoor to make accurate market-based offers to sellers for their homes, and then later flip those homes to subsequent buyers. (*Id.* ¶ 38.) The Related Actions allege that Defendants made materially false and/or misleading statements and/or failed to disclose material facts adverse to the Company's business activities and operations. Namely, the Related Actions allege that Defendants misrepresented and/or failed to disclose that: (1) the algorithm used by the Company to make offers for homes could not accurately adjust to changing house prices across different market conditions and economic cycles; (2) as a result, the Company was at an increased risk of sustaining significant and repeated losses due to residential real estate pricing fluctuations; (3) accordingly, Defendants overstated the purported benefits and competitive advantages of the algorithm; and (4) as a result Defendants' public statements were materially false and/or misleading at all relevant times. (*Id.* ¶ 8.)

The Related Actions assert that investors learned truth in a series of disclosures

---

[2] A blank-check company is a development stage company "that has no specific plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person." (Doc. 1 ¶ 2.)

culminating in a *Bloomberg* article reporting that the Company appeared to have lost money on 42 percent of its transactions in August of 2022. (*Id.* ¶ 9.) Plaintiffs seek to recover losses that were allegedly suffered as a result of Defendants' false and/or misleading statements.

## II.   CONSOLIDATION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the PSLRA] has been filed," the district court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 77z-1(a)(3)(B)(ii). Thus, the Court first analyzes the consolidation requests.

The Court received five Motions to Consolidate this case with the Related Action. (Docs. 9, 10, 11, 12, 13.) "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also* LRCiv 42.1 (permitting consolidation for "reasons of judicial economy and the availability of judicial resources"). "Differences in class periods, parties, or damages among the suits do not necessarily defeat consolidation, so long as the essential claims and facts alleged in each case are similar." *Sayce v. Forescout Techs. Inc.*, No. CV-20-00076-SI, 2020 WL 4207444, at *3 (N.D. Cal July 22, 2020); *see also Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *1 (D. Ariz. Apr. 4, 2008) (reasoning that where "[t]he complaints in [related securities law actions] are nearly identical . . . the minor differences in proposed class periods and named individual defendants are not obstacles to consolidation") (citation omitted).

The Court finds that consolidation is appropriate as the Related Actions involve common questions of law and fact. Both actions arise under the Securities Act and the Exchange Act, with claims brought against the same company and largely the same individual defendants. While the complaint in the Related Action includes an additional Securities Act claim, this does not preclude consolidation. *See Griffey v. Magellan Health*

*Inc.*, No. CV-20-01282-PHX-MTL, 2020 WL 5981904, at *2 (D. Ariz. Oct. 8, 2020). The Related Actions allege identical class periods and substantially the same wrongdoing. In addition, both cases are at the initial stages of litigation, and no prejudice will result from consolidation. Thus, the Court consolidates the Related Actions for all purposes, including trial.

### III. LEAD PLAINTIFF

The Court received five Motions for Appointment as Lead Plaintiff from five movant groups and individuals. (Docs. 9, 10, 11, 12, 13.) As of the date of this Order, however, three of the movants have filed notices of non-opposition (Docs. 15, 16, 17) and one movant has withdrawn its motion (Doc. 19). In light of this, the Court finds that the only outstanding request for appointment as lead plaintiff comes from movant group Indiana Public Retirement System ("Indiana"), Oakland County Employees' Retirement System, and Oakland County Voluntary Employees' Beneficiary Association (together with Oakland County Employees' Retirement System, "Oakland County"). (Doc. 12.) Indiana and Oakland County also filed a Supplemental Memorandum of Points and Authorities in Further Support of their Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel. (Doc. 18.)

The PSLRA governs the procedure for selecting a lead plaintiff in a putative class action lawsuit arising under federal securities law. 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i). A court is to appoint the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The Ninth Circuit has established a three-step process for the appointment of a lead plaintiff under the PSLRA. *In re Cavanaugh*, 306 F.3d 726, 729-31 (9th Cir. 2002). First, a court must determine whether the plaintiff in the first-filed action issued a notice publicizing the pendency of the action. *In re Cavanaugh*, 306 F.3d at 729. Second, a court must compare the financial stakes of the various plaintiffs, determine which has the most to gain from the lawsuit, and determine whether that plaintiff satisfies Federal Rule of Civil Procedure 23, particularly its typicality and adequacy requirements. *Id.* at 730. "If the plaintiff with the largest financial stake in the controversy provides information that

satisfies these requirements, he becomes the presumptively most adequate plaintiff." *Id.* Finally, a court must consider competing plaintiffs' attempts to rebut the presumptively most adequate plaintiff's showing that it satisfies Rule 23's requirements. *Id.* Competing plaintiffs may rebut the presumption by using proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class, or (2) is subject to unique defenses that render the plaintiff incapable of adequately representing the class. *See Borteanu v. Nikola Corp.*, 562 F. Supp. 3d 174, 181 (D. Ariz. 2021).

As noted above, all competing movants have either withdrawn their motion or filed a notice of non-opposition to Indiana and Oakland County's Motion for Appointment as Lead Plaintiff. Therefore, the Court will focus on whether Indiana and Oakland meet the "most adequate plaintiff" requirements under the PSLRA.

**A.     Group Status**

The text of the PSLRA clearly provides that a group can serve as lead plaintiff, so long as it satisfies the same statutory requirements as any other movant. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (allowing a "group of persons" to move for appointment); *see also Borteanu*, 562 F. Supp. 3d at 186 (appointing a group of three investors as lead plaintiff); *Smilovits v. First Solar, Inc.*, No. 12-CV-0555-PHX-DGC, 2012 WL 3002513, at *6 (D. Ariz. July 23, 2012) (appointing lead plaintiff group); *In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019). Indiana and Oakland County's Joint Declaration provides that they are a cohesive collaboration of sophisticated institutional investors with experience managing counsel and acting as fiduciaries. (Doc. 12-4 at 3-4.) Indiana and Oakland County further affirm that they have conferred and discussed their prosecution procedures and communications mechanisms. (*Id.* at 6.) As a result, the Court finds that Indiana and Oakland County will be able to "function cohesively to monitor counsel and make critical litigation decisions as a group." *In re Cloudera*, 2019 WL 6842021, at *6. Thus, Indiana and Oakland County's group status does not prevent them from serving as lead plaintiff in this case.

### B. Notice and Timeliness

The PSLRA provides that the plaintiff in the first-filed action must publish notice alerting members of the putative class of the pendency of the action, the claims asserted, and the purported class period within twenty days of the filing of the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). Thereafter, any member of the putative class may file a motion to serve as lead plaintiff within sixty days of the notice's publication. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). In connection with the first-filed complaint, on October 7, 2022, notice was published in *GlobeNewswire* alerting potential class members of the pendency of this action and informing them of the December 6, 2022 deadline to move for appointment as lead plaintiff. (Doc. 12-5 at 2.) Similarly, in connection with the second-filed complaint in the Related Action, Oakland County also published notice reiterating the December 6, 2022 deadline. (Doc. 12-6 at 2.) Indiana and Oakland County's Motion was filed on December 6, 2022. (Doc. 12 at 17.) Therefore, the Court finds that it is timely under the PSLRA.

### C. Financial Interest

Although the PSLRA does not specify how to calculate the "largest financial interest," courts determine which movant has the most to gain from the lawsuit through "accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4. Indiana and Oakland County allege that they have suffered approximately $1,278,976 in losses—on a last in first out accounting basis—as a result of their class period purchases of Opendoor securities. (Doc. 12 at 11; Doc. 18 at 6.) This amount is substantially higher than the amounts alleged in any of the other motions received by the Court. (*See* Doc. 9 at 14 alleging a loss of $969,397.10; Doc. 10 at 9 alleging a loss of $184,683.71; Doc. 11 at 18 alleging a loss of $602,853; Doc. 13 at 15 alleging a loss of $169,145.89.) The other movants have also acknowledged that they do not possess the largest financial interest. (Doc. 15 at 3; Doc. 16 at 3; Doc. 17 at 3; Doc. 19 at 2.) Therefore, the Court finds that Indiana and Oakland County possess the largest financial interest in the relief sought by the class.

### D. Typicality and Adequacy

Once a court determines which movant has the greatest financial stake, "the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *In re Cavanaugh*, 306 F.3d at 732. The typicality inquiry asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Borteanu*, 562 F. Supp. 3d at 181 (quoting *In re Cloudera*, 2019 WL 6842021, at *5). "The test for adequacy asks whether the class representative and counsel have any conflicts of interests with other class members and whether the class representative and his counsel will prosecute the action vigorously on behalf of the class." *Id.*; *see also In re Mersho*, 6 F.4th 891, 899-900 (9th Cir. 2021).

Indiana and Oakland County are typical putative class representatives. Like the rest of the proposed class, Indiana and Oakland County purchased Opendoor securities during the class period at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions. (Doc. 18 at 9.) The putative class action is not based on conduct unique to Indiana and Oakland County or any named plaintiff and other members of the putative class allege the same injury caused by the same conduct. Like the rest of putative class, Indiana and Oakland County seek to recover losses on their investment in Opendoor common stock that they claim resulted from the company's violations of federal securities law. Thus, Indiana and Oakland County satisfy the typicality requirement.

Similarly, the Court does not find any conflicts of interest between Indiana and Oakland County and any other potential class members. Indiana and Oakland County's interest in "aggressively pursuing claims against Defendants" is in line with the interest of putative class members who allege similar harm. (Doc. 12 at 12.) In their Joint Declaration, Indiana and Oakland County explain that they held a conference call to discuss their claims and losses as well as the procedures and protocols to jointly prosecute the case. (Doc. 12-4 at 6.) Their Joint Declaration further provides that Indiana and Oakland County are

1  sophisticated institutional investors with experience prosecuting securities law cases,
2  including previously serving as lead plaintiff. (*Id.*) For these reasons, the Court finds that
3  Indiana and Oakland County meet the adequacy requirements to serve as lead plaintiff. *See*
4  *Ferreira v. Funko, Inc.*, No. 2:20-CV-02319-VAP, 2020 WL 3246328, at *7 (C.D. Cal.
5  June 11, 2020) (finding plaintiff group capable of performing lead plaintiff function on the
6  basis of a joint declaration describing members' experience, asserting that they understood
7  the role and responsibilities of lead plaintiff, and providing processes for decision-making);
8  *see also Borteanu*, 562 F. Supp. 3d at 187 (relying on movant-group's joint declaration to
9  satisfy the adequacy requirements).

### E.   Lead Plaintiff Presumption

Having established that their motion is timely, that they have the largest financial interest in the outcome of this litigation, and that they meet the typicality and adequacy requirements of Rule 23, Indiana and Oakland County are presumptively the most adequate plaintiff. *See In re Mersho*, 6 F.4th at 899. At this stage, the Court must now consider whether any other movant has rebutted this presumption. The lead plaintiff presumption is rebutted "only upon proof" by another movant that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render them incapable of adequately representing the class. *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb)).

As noted above, all other movants have either filed notices of non-opposition or withdrawn their competing motion. In their filings, all the other movants acknowledge that they do not posses the largest financial interest. Importantly, none of the other movants have provided evidence that Indiana and Oakland County would be subject to a unique defense that would render them inadequate. Similarly, there is no evidence that Indiana and Oakland County will not fairly and adequately protect the interests of the class. As a result, the Court finds that Indiana and Oakland County's presumptive lead plaintiff status has not been rebutted by any of the other movants. Therefore, they are entitled to lead plaintiff status. *See In re Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest

losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").

## IV. LEAD COUNSEL

The PSLRA leaves the choice of lead counsel largely in the hands of the lead plaintiff. *See* 15 U.S.C § 78u-4(a)(3)(B)(v); *In re Cavanaugh*, 306 F.3d at 734 ("While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff.") (citation omitted). So long as the lead plaintiff has made a "reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Ct. for N. Dist. Of California*, 586 F.3d 703, 712 (9th Cir. 2009); *see also In re Cavanaugh*, 306 F.3d at 734 n.14 (reasoning that the question relating to lead counsel "is not whether a court believes that the lead plaintiff could have made a better choice or gotten a better deal").

Indiana and Oakland County have selected Labaton Sucharow LLP as lead counsel. The Court finds that Labaton Sucharow LLP has significant experience in litigating securities class actions throughout the United States, and the Court is satisfied that Labaton Sucharow LLP will prosecute this action vigorously and competently. Therefore, the Court approves Indiana and Oakland County's choice of counsel.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED:**

1.  Granting Indiana and Oakland County's Motion for Consolidation, Appointment of Lead Plaintiff, and Approval of Selection of Counsel (Doc. 12).

2.  Denying Julio Maurice Bueno's Motion for Consolidation of the Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel (Doc. 9).

3.  Denying Chad Donnelly's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Counsel (Doc. 11).

4.  Denying the Investor Group's Motion for Consolidation, Appointment as

Lead Plaintiff, and Approval of its Selection of Lead Counsel and Liaison Counsel (Doc. 13).

5. Consolidating cases 2:22-CV-01717-MTL and 2:22-CV-01987-GMS for all purposes, including trial. All future pleadings in this consolidated action shall bear the following caption: *In re Opendoor Technologies Inc. Securities Litigation*, No. 2:22-CV-01717-MTL.

6. Appointing Indiana Public Retirement System, Oakland County Employees' Retirement System, and Oakland County Voluntary Employees' Beneficiary Association as Lead Plaintiff in this consolidated action pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

7. Approving of Lead Plaintiff Indiana Public Retirement System, Oakland County Employees' Retirement System, and Oakland County Voluntary Employees' Beneficiary Association's selection of Labaton Sucharow LLP as Lead Counsel for the class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). Lead Counsel shall have the authority to speak for all plaintiffs and class members in all matters regarding the litigation, including, but not limited to, pre-trial proceedings, motion practice, trial, and settlement. Additionally, Lead Counsel shall have the following responsibilities:

(a) to brief and argue motions;

(b) to initiate and conduct discovery, including, but not limited to, coordination of discovery with defendants' counsel, and the preparation of written interrogatories, requests for admissions, and requests for production of documents;

(c) to direct and coordinate the examination of witnesses in depositions;

(d) to act as spokesperson at pretrial conferences;

(e) to initiate and conduct any settlement negotiations with defendants' counsel;

(f) to be the contact among plaintiffs' counsel and to direct and coordinate the activities of plaintiffs' counsel;

(g) to consult with and employ experts; and

1           (h)    to perform such other duties as may be expressly authorized by further
2                    order of this Court.

3      8.    No motions, requests for discovery, or other pre-trial proceedings shall be initiated or filed by any plaintiff on behalf of the class or putative class without the approval of Lead Counsel.

     9.    Setting a Status Conference for Tuesday, February 28, 2023 at 1:00 p.m. (Arizona time) in Courtroom 504, 401 West Washington Street, Phoenix, Arizona 85003 before Judge Michael T. Liburdi. Out-of-state counsel may file a motion for leave to appear telephonically. Counsel shall be prepared to discuss the Joint Stipulation (Doc. 8).

Dated this 1st day of February, 2023.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge