# Exhibit 31

S-1/A 1 tm2038271-4_s1a.htm AMENDMENT NO. 1 TO FORM S-1
TABLE OF CONTENTS

**As filed with the Securities and Exchange Commission on December 30, 2020**

**Registration No. 333-251529**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

**Washington, D.C. 20549**

**AMENDMENT NO. 1**

**TO**

# FORM S-1

**REGISTRATION STATEMENT**
*UNDER*
*THE SECURITIES ACT OF 1933*

# Opendoor Technologies Inc.

**(Exact Name of Registrant as Specified in Its Charter)**

| **Delaware** | **7372** | **98-1515020** |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification Number) |

**1 Post Street, Floor 11**
**San Francisco, California 94104**
**(415) 896-6737**

(Address, including zip code, and telephone number, including area code, of Registrant's principal executive offices)

**Carrie Wheeler**
**Chief Financial Officer**
**Opendoor Technologies Inc.**
**1 Post Street, Floor 11**
**San Francisco, California 94104**
**(415) 896-6737**

(Name, address, including zip code, and telephone number, including area code, of agent for service)

*Copies to:*

| | |
|---|---|
| **Rachel W. Sheridan, Esq.** | **Elizabeth Stevens** |
| **Shagufa R. Hossain, Esq.** | **Head of Legal** |
| **Latham & Watkins LLP** | **Opendoor Technologies Inc.** |
| **885 Third Avenue** | **1 Post Street, Floor 11** |
| **New York, NY 10022** | **San Francisco, California 94104** |
| **(212) 906-1200** | **(415) 896-6737** |

**Approximate date of commencement of proposed sale of the securities to the public**: From time to time after this Registration Statement becomes effective.

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933 (the "Securities Act") check the following box: ☒

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

TABLE OF CONTENTS

and mortgage licensing and consumer protection laws and regulations, and we may be subject to litigation, government investigations and enforcement actions, fines or other penalties in the event of any non-compliance. As a result of findings from examinations, we also may be required to take a number of corrective actions, including modifying business practices and making refunds of fees or money earned. In addition, adverse findings in one state may be relied on by another state to conduct investigations and impose remedies. If we apply for new licenses, we will become subject to additional licensing requirements, which we may not be in compliance with at all times. If in the future a state agency were to determine that we are required to obtain additional licenses in that state in order to operate our business, or if we lose or do not renew an existing license or are otherwise found to be in violation of a law or regulation, we may be subject to fines or legal penalties, lawsuits, enforcement actions, void contracts, or our business operations in that state may be suspended or prohibited. Our business reputation with consumers and third parties also could be damaged. Compliance with, and monitoring of, these laws and regulations is complicated and costly and may inhibit our ability to innovate or grow.

If we are unable to comply with these laws or regulations in a cost-effective manner, it may require us to modify certain products and services, which could require a substantial investment and result in a loss of revenue, or cease providing the impacted product or service altogether. Furthermore, laws and regulations and their interpretation and application may also change from time to time and those changes could have a material adverse effect on our products and business.

***We are from time to time involved in, or may in the future be subject to, claims, suits, government investigations, and other proceedings that may result in adverse outcomes.***

We are from time to time involved in, or may in the future be subject to, claims, suits, government investigations, and proceedings arising from our business, including actions with respect to intellectual property, privacy, consumer protection, information security, mortgage lending, real estate, environmental, data protection or law enforcement matters, tax matters, labor and employment, and commercial claims, as well as actions involving content generated by our customers, shareholder derivative actions, purported class action lawsuits, and other matters. Such claims, suits, government investigations, and proceedings are inherently uncertain, and their results cannot be predicted with certainty. Regardless of the outcome, any such legal proceedings can have an adverse impact on us because of legal costs, diversion of management and other personnel, negative publicity and other factors. In addition, it is possible that a resolution of one or more such proceedings could result in reputational harm, liability, penalties, or sanctions, as well as judgments, consent decrees, or orders preventing us from offering certain features, functionalities, products, or services, or requiring a change in our business practices, products or technologies, which could in the future materially and adversely affect our business, operating results and financial condition.

***The Company is currently seeking to resolve an FTC investigation through consent order negotiations with the FTC staff, and the terms of a consent order (if any) could have a materially adverse effect on the Company's business.***

In August 2019, the Federal Trade Commission ("FTC") sent a civil investigative demand ("CID") to Opendoor seeking documents and information relating primarily to statements in Opendoor's advertising and website comparing selling homes to Opendoor with selling homes in a traditional manner using an agent and relating to statements that Opendoor's offers reflect or are based on market prices. Thereafter, Opendoor responded cooperatively to the CID and related follow-up requests from the FTC investigative staff. On December 23, 2020, the FTC staff notified the Company that they intend to recommend to the FTC Bureau of Consumer Protection Management and the FTC Commissioners that the agency pursue an enforcement action against the Company and certain of its officers, if FTC staff are unable to reach a negotiated settlement acceptable to all parties. The FTC staff have indicated that they believe certain of Opendoor's advertising claims relating to the amount of its offers, the repair costs charged to home sellers, and the amount of net proceeds a seller may receive from selling to Opendoor versus selling in the traditional manner were inaccurate and/or inadequately substantiated. The Company intends to proceed with settlement negotiations with the FTC staff. There can be no assurances that the Company will be successful in negotiating a favorable settlement. Any settlement could result in material monetary remedies and/or compliance requirements that impose significant and material cost and resource burdens on the Company and/or limit or eliminate the Company's ability to make certain claims in its advertising materials or on its website. Any of

24

TABLE OF CONTENTS

for services, and record keeping requirements; these laws include, at the federal level, the RESPA, the Fair Credit Reporting Act (as amended by the Fair and Accurate Credit Transactions Act), the Truth in Lending Act (including the Home Ownership and Equity Protection Act of 1994), the Equal Credit Opportunity Act, the Fair Housing Act, the Gramm-Leach-Bliley Act, the Electronic Fund Transfer Act, the Servicemembers Civil Relief Act, the Military Lending Act, the Homeowners Protection Act, the Home Mortgage Disclosure Act, the Secure and Fair Enforcement for Mortgage Licensing Act of 2008, the Federal Trade Commission Act, the Dodd Frank Wall Street Reform and Consumer Protection Act of 2010, the Bank Secrecy Act (including the Office of Foreign Assets Control and the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act), the TCPA, the Mortgage Acts and Practices Advertising Rule (Regulation N), the CARES Act, all implementing regulations, and various other federal, state and local laws. The CFPB also has broad authority to enforce prohibitions on practices that it deems to be unfair, deceptive or abusive. Additionally, state and local laws may restrict the amount and nature of interest and fees that may be charged by a lender or mortgage broker, impose more stringent privacy requirements and protections for servicemembers, and/or otherwise regulate the manner in which lenders or mortgage brokers operate or advertise.

For certain licenses, we are required to designate individual licensed brokers of record, qualified individuals and control persons.

### Legal Proceedings

In August 2019, the FTC sent a civil investigative demand to Opendoor seeking documents and information relating primarily to statements in Opendoor's advertising and website comparing selling homes to Opendoor with selling homes in a traditional manner using an agent and relating to statements that Opendoor's offers reflect or are based on market prices. Thereafter, Opendoor responded cooperatively to the CID and related follow-up requests from the FTC investigative staff. On December 23, 2020, the FTC staff notified the Company that they intend to recommend to the FTC Bureau of Consumer Protection Management and the FTC Commissioners that the agency pursue an enforcement action against the Company and certain of its officers, if FTC staff are unable to reach a negotiated settlement acceptable to all parties. The FTC staff have indicated that they believe certain of Opendoor's advertising claims relating to the amount of its offers, the repair costs charged to home sellers, and the amount of net proceeds a seller may receive from selling to Opendoor versus selling in the traditional manner were inaccurate and/or inadequately substantiated. The Company intends to proceed with settlement negotiations with the FTC staff. There can be no assurances that the Company will be successful in negotiating a favorable settlement.

In addition to the foregoing, we have in the past and may in the future be subject to legal proceedings and regulatory actions in the ordinary course of business. We do not anticipate that the ultimate liability, if any, arising out of any such matter will have a material effect on our financial condition, results of operations or cash flows.

54

TABLE OF CONTENTS

We record a valuation allowance to reduce our deferred tax assets and liabilities to the net amount that we believe is more likely than not to be realized. We consider all available evidence, both positive and negative, including historical levels of income, expectations and risks associated with estimates of future taxable income and ongoing tax planning strategies in assessing the need for a valuation allowance.

**Results of Operations**

*Nine Months Ended September 30, 2020 Compared to Nine Months Ended September 30, 2019*

The following table sets forth our results of operations for the nine months ended September 30, 2020 and 2019:

| (in thousands, except percentages) | Nine Months Ended September 30, 2020 | Nine Months Ended September 30, 2019 | Change in $ | Change in % |
|---|---|---|---|---|
| Revenue | $2,334,235 | $3,484,929 | $(1,150,694) | (33)% |
| Cost of revenue | 2,152,803 | 3,257,640 | (1,104,837) | (34)% |
| Gross profit | 181,432 | 227,289 | (45,857) | (20)% |
| Operating expenses: | | | | |
| Sales, marketing and operations | 156,290 | 291,375 | (135,085) | (46)% |
| General and administrative | 99,074 | 80,781 | 18,293 | 23% |
| Technology and development | 45,809 | 37,215 | 8,594 | 23% |
| Total operating expenses | 301,173 | 409,371 | (108,198) | (26)% |
| Net operating loss | (119,741) | (182,082) | 62,341 | (34)% |
| Derivative and warrant fair value adjustment | (25,219) | 6,644 | (31,863) | (480)% |
| Interest expense | (57,393) | (81,114) | 23,721 | (29)% |
| Other income-net | 3,619 | 9,444 | (5,825) | (62)% |
| Loss before income taxes | (198,734) | (247,108) | 48,374 | (20)% |
| Income tax expense | (234) | (340) | 106 | (31)% |
| Net loss | (198,968) | (247,448) | 48,480 | (20)% |
| Less net income attributable to noncontrolling interest | — | 1,847 | (1,847) | (100)% |
| Net loss attributable to Opendoor Labs Inc. | $ (198,968) | $ (249,295) | $ 50,327 | (20)% |

*Revenue*

Revenue decreased by $1,150.7 million, or 33%, for the nine months ended September 30, 2020 compared to the nine months ended September 30, 2019. The decrease in revenue was primarily attributable to lower sales volumes, reflecting the decline in our inventory levels in response to the COVID-19 pandemic. See "— *Business Impact of COVID-19*". We sold 9,064 homes during the nine months ended September 30, 2020, compared to 13,786 homes during the nine months ended September 30, 2019, representing a decrease of 34%, while the average resale home price increased 1.2% between periods. We operated in 21 markets as of September 30, 2020, compared to 20 markets as of September 30, 2019.

*Cost of Revenue and Gross Profit*

Cost of revenue decreased by $1,104.8 million, or 34%, for the nine months ended September 30, 2020 compared to the nine months ended September 30, 2019. This decrease in cost of revenue was primarily attributable to lower sales volumes.

Gross profit margins improved to 7.8% from 6.5% for the nine months ended September 30, 2020 and September 30, 2019, respectively. For the same periods, Adjusted Gross Margins improved to 7.4% from 6.5%. Gross margin improvement was primarily due to higher service charges and pricing improvements across markets.

69

TABLE OF CONTENTS

**SIGNATURES**

Pursuant to the requirements of the Securities Act, the registrant has duly caused this registration statement to be signed on its behalf by the undersigned, thereunto duly authorized, in the City of San Francisco, State of California, on December 30, 2020.

**OPENDOOR TECHNOLOGIES INC.**

By:  /s/ Carrie Wheeler
_____

Name:   Carrie Wheeler
Title:    *Chief Financial Officer*

Pursuant to the requirements of the Securities Act, this registration statement has been signed by the following persons in the capacities and on December 30, 2020.

| Signature | Title |
|---|---|
| *<br>_____<br>Eric Wu | Director and Chief Executive Officer<br>(Principal Executive Officer) |
| /s/ Carrie Wheeler<br>_____<br>Carrie Wheeler | Chief Financial Officer<br>(Principal Financial Officer and Principal Accounting Officer) |
| *<br>_____<br>Adam Bain | Director |
| *<br>_____<br>Cipora Herman | Director |
| *<br>_____<br>Pueo Keffer | Director |
| *<br>_____<br>Glenn Solomon | Director |
| *<br>_____<br>Jason Kilar | Director |
| *<br>_____<br>Jonathan Jaffe | Director |

By  /s/ Carrie Wheeler
_____

Carrie Wheeler
Attorney-in-fact

II-7