**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
John C. Gray (Bar No. 028454)
201 East Washington Street, Suite 1200
Phoenix, AZ  85004
Telephone:    (602) 262-5311
Facsimile:    (602) 262-5747
Email:          jgray@lewisroca.com

**SHEARMAN & STERLING LLP**
Adam S. Hakki (*pro hac vice*)
599 Lexington Ave
New York, NY 10022
Telephone:    (212) 848-4000
Email:          ahakki@shearman.com

Lyle Roberts (*pro hac vice*)
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone:    (202) 508-8000
Email:          lyle.roberts@shearman.com

*Counsel for Defendants Opendoor*
*Technologies Inc., Eric Wu, Carrie Wheeler,*
*Chamath Palihapitiya, Steven Trieu, Ian*
*Osborne, Adam Bain, David Spillane,*
*Cipora Herman, Pueo Keffer, Glenn*
*Solomon, Jason Kilar, and Jonathan Jaffe*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re Opendoor Technologies Inc. Securities Litigation | Case No. 2:22-cv-01717-MTL |
| | **OPENDOOR DEFENDANTS' MOTION FOR AN ORDER DIRECTING THE SUBMISSION OF COUNSEL AND CONFIDENTIAL WITNESS AFFIDAVITS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | **(Oral Argument Requested)** |

**TABLE OF CONTENTS**

Preliminary Statement ................................................................................................................. 1

I.     Background .......................................................................................................... 2

  A.  Procedural History ...................................................................................... 2

  B.  The Opendoor Defendants' Communications with the CWs ............................................ 5

     1.  CW No. 2 ................................................................................................. 6

     2.  CW No. 5 ................................................................................................. 7

     3.  CW No. 8 ................................................................................................. 8

     4.  CW No. 6 ................................................................................................. 10

II.    Courts That Have Addressed CW Issues Similar to the Ones Present Here Have Taken Immediate Action to Fully Address the Matters Raised ................................................................. 11

III.   The Court Should Order Plaintiffs to Submit Counsel and CW Affidavits ...................... 15

CONCLUSION ............................................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    851 F. Supp. 2d 1299 (S.D. Fla. 2011................................................................12, 13

*Bolling v. Gold*,
    2015 WL 6870617 (W.D. Wash. Nov. 9, 2015)........................................................11

*Campo v. Sears Holdings Corp.*,
    371 F. App'x 212 (2d Cir. 2010) ...................................................10, 14, 15, 16

*City of Livonia Emps. Ret. Sys. v. Boeing*,
    711 F.3d 754 (7th Cir. 2013) .............................................................10, 15

*Lifschitz v. NextWave Wireless Inc.*,
    2011 WL 940918 (S.D. Cal. Mar. 16, 2011) ..........................................................11

*In re Lumber Liquidators Holdings, Inc. Sec. Litig.*,
    4:13-cv-00157, ECF No. 91 (E.D. Va. Jul. 14, 2015) .......................................11, 15

*In re Millennial Media*,
    1:14-cv-07923-PAE, ECF No. 68 (S.D.N.Y. Apr. 21, 2015).....................................14

*In re Millennial Media, Inc. Sec. Litig.*,
    No. 14-cv-7923, 2015 WL 3443918 (S.D.N.Y. May 29, 2015) ..................................... *passim*

*In re Sony Corp. SXRD Rear Projection Television Mktg., Sales*
    *Practices & Prods. Liab. Litig.*,
    268 F.R.D. 509 (S.D.N.Y. 2010) ........................................................................15

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ..............................................................................10

**Statutes**

Private Securities Litigation Reform Act of 1995
    15 U.S.C. § 78u-4 ..........................................................................................1, 12

Securities Act of 1933
    Section 11................................................................................................................2
    Section 15................................................................................................................2

Securities Exchange Act of 1934
    Section 10(b) ...........................................................................................................2
    Section 20(a) ...........................................................................................................2

**Rules**

Federal Rule of Civil Procedure 9(b)........................................................................................1

**Rules**

Defendants Opendoor Technologies Inc. ("Opendoor" or the "Company"), Eric Wu, Carrie Wheeler, Adam Bain, Cipora Herman, Chamath Palihapitiya, Steven Trieu, Ian Osborne, David Spillane, Pueo Keffer, Glenn Solomon, Jason Kilar, and Jonathan Jaffe (collectively, the "Individual Defendants," and together with Opendoor, the "Opendoor Defendants") respectfully submit this motion for an order directing the submission of counsel and confidential witness ("CW") affidavits.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Lead Plaintiffs' Consolidated Amended Complaint ("CAC") relies heavily on statements attributed to eight CWs to plead both falsity and scienter. Lead Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss ("Opposition Brief") similarly relies on the CWs' purported statements. However, upon identifying and speaking with four CWs, the Opendoor Defendants learned that the CAC and/or Opposition Brief mischaracterize or do not accurately reflect a significant number of the alleged statements that those CWs made to the individuals who had contacted them on behalf of someone involved in the filing of this case (hereinafter, "plaintiff's representative").

Lead Plaintiffs' claims are subject to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA") and Federal Rule of Civil Procedure 9(b), which impose strict pleading standards on plaintiffs. It would be patently unjust, and contrary to the intent of the PSLRA and Rule 9(b), for a plaintiff to attempt to satisfy its pleading burdens through allegations attributed to "confidential witnesses" who in turn maintain that those allegations were either mischaracterized or never made.

To be clear, Plaintiffs fail in any event to satisfy their pleading burden, for all the reasons set forth in the Opendoor Defendants' motion to dismiss being filed concurrently herewith, and the alleged statements attributed to the CWs in the CAC do not cure any of Plaintiffs' pleading deficiencies. The Opendoor Defendants nevertheless respectfully submit that, in light of the troubling issues raised here, the Court should take the following steps, consistent with what other courts have done in similar circumstances: direct Plaintiffs to submit to the Court affidavits concerning Plaintiffs' counsel's interactions with the CWs, and affidavits from the CWs (to be obtained by Plaintiffs' counsel) regarding those interactions and references to them in the CAC (and Opposition Brief).

The discussion of these matters set forth below is organized as follows. Part I summarizes relevant procedural facts and other background information to allow the Court to consider the CW issues in their proper context, including the information learned from the CWs with whom the Opendoor Defendants' counsel spoke. Part II summarizes relevant case law. Part III explains the relief the Opendoor Defendants respectfully ask this Court to provide.

## I.    Background

### A.    Procedural History

This is a putative securities class action alleging violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934, and Section 11 and 15 of the Securities Act of 1933. (*See generally* CAC.) Plaintiff Sam Alich filed the original complaint against Opendoor and certain of the Individual Defendants on October 7, 2022. (Dkt. 1.) The action is brought on behalf of a putative class of all purchasers of Opendoor's publicly

traded common stock between December 21, 2020, and November 3, 2022. (*See generally* CAC.)

On February 2, 2023, this Court consolidated Mr. Alich's action with a related action against Opendoor, all of the Individual Defendants, and the underwriters of certain Opendoor securities offerings filed by the Oakland County Voluntary Employees' Beneficiary Association and the Oakland County Employees' Retirement System. (Dkt. 20.) At the same time, the Court appointed Indiana Public Retirement System, Oakland County Employees' Retirement System, and Oakland County Voluntary Employees' Beneficiary Association as Lead Plaintiffs. (*Id.*) The Court also approved Labaton Sucharow LLP as Lead Counsel for the putative class. (*Id.*)

On March 24, 2023, Lead Plaintiffs filed an Unopposed Motion for the Extension of Time to File the CAC. (Dkt. 37.) The Court granted that motion the same day (Dkt. 38), and Lead Plaintiffs filed the CAC on April 17, 2023, per the Court's order (Dkt. 39.)

Whereas the original complaint consisted of 29 pages and 103 paragraphs, the CAC consists of 141 pages and 501 paragraphs. (*See generally* CAC.) Also, and for the first time, Lead Plaintiffs in the CAC identified eight individuals as CWs. (*Id.*) The CWs are alleged to be former employees of Opendoor or Opendoor Home Loans. (*Id.*) The CAC generally alleges that the Defendants misled investors into believing that Opendoor's real estate pricing algorithm was entirely accurate and required no human involvement when, in fact, the algorithm allegedly was inaccurate, and humans made the vast majority of pricing decisions.

All Defendants moved to dismiss the CAC on June 30, 2023 (Dkt. 48), and Lead Plaintiffs filed the Opposition Brief on August 29, 2023 (Dkt. 55.)  The Opposition Brief expressly refers to CW 2 (Opp. 4, 9, 15), CW 4 (Opp. 20), and CW 5 (Opp. 4, 9, 15.)  Indeed, the Opposition Brief heavily relies on supposed statements by CWs 2 and 5, repeating the statements in three places and using them as Lead Plaintiffs' primary support for the assertion that "Opendoor's algorithm could not accurately price homes, and as a result, Opendoor's pricing analysts had to manually adjust both initial and final offers." (See Opp. 4; see also Opp. 4, 9, 15.)

In their opposition brief filed in response to the Underwriter Defendants' Motion to Dismiss, Lead Plaintiffs go even further and flatly assert that "the allegations attributed to CW 2, CW 5, and CW 6 are sufficient to state a claim." (UW Opp. 12 (Dkt. 56).)  However, as detailed below, the CAC and/or Opposition Brief mischaracterize or do not accurately reflect a significant number of the alleged statements that those CWs made to a plaintiff's representative.  Moreover, and in any event, the Opendoor Defendants disagree that these statements, even if correctly attributed to the CWs or properly characterized by Lead Plaintiffs, could "state a claim."

In addition to the explicit references to these four CWs, the Opposition Brief incorporates by reference statements of all of the CWs through citations to the CAC as follows:

- CW 1 (Opp. 2, 4, 5, 9, 10, 17, 23 (citing CAC ¶ 73[1]), Opp. 6, 15, 16 (citing CAC ¶¶ 120-21, 128));

- CW 2 (Opp. 2, 4, 5, 9, 10, 15, 17, 23 (citing CAC ¶¶ 63-70));

- CW 3 (Opp. 2, 10, 17, 23 (citing ¶¶ 76-80, 82-84), Opp. 5, 9, 17 (citing ¶¶ 76-80), Opp. 15 (citing CAC ¶ 125), Opp. 9 (citing CAC ¶ 82));

- CW 4 (Opp. 2, 10, 17, 23 (citing CAC ¶ 75), Opp. 6, 15, 16, 20 (citing CAC ¶ 119));

- CW 5 (Opp. 2, 4, 5, 9, 10, 15, 17, 23 (citing CAC ¶ 71));

- CW 6 (Opp. 2, 4, 5, 9, 10, 17, 23 (citing CAC ¶ 72));

- CW 7 (Opp. 6, 10, 15, 16 (citing CAC ¶¶ 123, 126-27, 129)); and

- CW 8 (Opp. 6, 10, 15, 16 (citing CAC ¶ 124)).

**B.      The Opendoor Defendants' Communications with the CWs**

The Opendoor Defendants identified the CWs based on the CAC's allegations about their titles, responsibilities, and dates of employment, and the Opendoor Defendants' counsel spoke with four of the CWs (those referenced in the CAC as "CW 2," "CW 5," "CW 6," and "CW 8").[2] Mr. Anhang, a Counsel with Shearman & Sterling, and Gabrielle

---

[1] In many instances, the Opposition Brief cites to a range of paragraphs from the CAC that include statements attributed to various CWs. The paragraph citations in this Motion refer the Court to the specific paragraphs in the CAC where the relevant CW statement can be found within the paragraph ranges cited in the Opposition Brief.

[2] The Opendoor Defendants' counsel also spoke to an individual, ▮▮▮▮▮▮▮, who matched the description in the CAC of CW 1. ▮▮▮▮▮▮ informed the Opendoor Defendants' counsel that ▮ was represented by counsel. As a result, the Opendoor Defendants' counsel terminated the phone call with ▮.

5

Leeman, an Associate with Shearman & Sterling, participated in these telephone calls on behalf of the Opendoor Defendants. The Opendoor Defendants are providing the Court with declarations of Mr. Anhang and Ms. Leeman regarding the telephone calls. *See* Declaration of George Anhang ("Anhang Decl.") and Declaration of Gabrielle Leeman ("Leeman Decl.").

It was clear from those conversations that each of these CWs had been contacted by a plaintiff's representative in the case, and that those contacts had apparently led to them being referenced in the CAC. The Opendoor Defendants' counsel's conversations with the four CWs indicated that the CAC and/or Opposition Brief ***mischaracterize or do not accurately reflect*** certain things that these CWs told a plaintiff's representative.

**1.    CW No. 2**

The Opendoor Defendants' counsel spoke with ▮▮▮▮▮▮▮▮ (CW 2), whom Lead Plaintiffs cite repeatedly in the CAC and Opposition Brief for the proposition that Opendoor's "automated system was never accurate," a statement that the CAC specifically attributed to ▮▮▮▮. (CAC ¶¶ 63, 420; Opp. 4, 9.) But when the Opendoor Defendants' counsel spoke with ▮▮▮▮ about that alleged statement, ▮ made clear that ▮ would not have made that statement to a plaintiff's representative about Opendoor's automated pricing system. The Opendoor Defendants' counsel squarely asked ▮▮▮▮: "you wouldn't have said it was 'never' accurate?" and ▮▮▮▮ replied, "that's correct." (Anhang Decl. ¶ 14.a.i.)

Lead Plaintiffs also attribute a statement to ▮▮▮▮ in which ▮ supposedly said that managers told ▮▮ not to "look at what the system is coming in at" because merely

6

looking at the automatically generated number would cause bias in the pricing analysts' opinions as to price.  (CAC ¶ 64, 421; Opp. 15.)  Here again, what ███████ said to the Opendoor Defendants' counsel indicated that the CAC mischaracterized what ██ told the plaintiff's representative.  Contrary to the CAC's allegations, ████████ told the Opendoor Defendants' counsel that ██ manager's instruction was to "***look at it*** [the pricing system] but don't anchor to it."  (Anhang Decl. ¶ 14.b.i.)

Lead Plaintiffs also allege that ████████ stated that what ██ and other pricing analysts were doing was "***no different***" than what real estate agents did to price homes.  (CAC ¶ 70; *see also* Opp. 2, 4, 5, 9, 10, 15, 17, 23 (citing, *inter alia*, CAC ¶ 70 which references CW 2 (████████  ████████ again made clear that this did not accurately capture what ██ said to a plaintiff's representative.  (Anhang Decl. ¶ 14.c.) ████████ said: "I believe I told them the same thing I'm telling you . . . ***it's similar to what realtors do but not 100% the same***."  (Anhang Decl. ¶ 14.c.i.2.)

**2.    CW No. 5**

The Opendoor Defendants' counsel also spoke with ████████████ (CW 5).[3]  In both the CAC and Opposition Brief, Lead Plaintiffs rely on what they present as a sweeping statement by ████████ about the Company as a whole that approximately 50% of its initial offers had to be reviewed by humans.  (CAC ¶¶ 71, 403, 417; Opp. 4, 9, 15.)  For instance, in making arguments about the Opendoor's overall pricing decisions

---

[3] Lead Plaintiffs concede in their CAC that ████████ was not even employed at Opendoor during the class period.  (*Cf.* CAC at 2 (defining the "Class Period" as between December 21, 2020, through November 3, 2022, inclusive); CAC ¶ 47 (identifying CW 5 as "an Acquisition Associate at Opendoor from approximately November 2018 through March 2020")).)

7

and the alleged "broad[] human-driven process" that the Company supposedly consistently used "during the class period and . . . for years" that resulted in the Company's "success," (Opp. 4), Lead Plaintiffs present as direct support (among other things) ▮▮▮▮▮▮▮ alleged broad assertion as follows: "according to CW 5, approximately 50% of the initial offers had to be sent to human beings for review." (Opp. at 4; *see also id.* at 9, 15.) Lead Plaintiffs do much the same in the Complaint. (CAC ¶¶ 71, 403, 417.)

But in ▮▮▮▮▮▮ telephone call with the Opendoor Defendants' counsel, ▮ explained that what ▮ would have stated to a plaintiff's representative about the 50% number ***would have been specific to just the Nashville market (where*** ▮ ***worked)***, and not Opendoor as a whole, because "[i]n every market, the automated offers would be different depending on a number of things . . . ." (Anhang Decl. ¶ 20.b.i.) When the Opendoor Defendants' counsel asked ▮▮ ▮▮▮▮ whether ▮ specified to the plaintiff's representative that the 50% figure applied only to the Nashville market—as opposed to specifying that it applied to the whole country—▮▮▮▮▮ responded, "I don't believe I told them either way." (Anhang Decl. ¶ 20.b.ii.) That indicated that ▮ had ***not*** specified to the plaintiff's representative that the 50% figure applied to Company-wide "pricing decisions" and the Company's entire pricing "process," and yet Lead Plaintiffs' broad use of ▮▮▮▮▮ alleged statement plainly suggests that ▮ necessarily did. (Opp. at 4, 9, 15; CAC ¶¶ 71, 403, 417; Anhang Decl. ¶ 20.b.ii.)

### 3.    CW No. 8

The Opendoor Defendants' counsel spoke with ▮▮▮▮▮▮ (CW 8), on whom Lead Plaintiffs also rely in the CAC. The CAC states that ▮▮▮▮ allegedly said that

8

Defendants Wheeler and Low Ah Kee "accessed the Company's internal dashboard every day," and that CW 8 (███████) "*knew* that Defendant Wheeler and Low Ah Kee accessed this information."  (CAC ¶¶ 277-78 (emphasis added).)  But when the Opendoor Defendants' counsel asked ███████ whether ██ stated to the plaintiff's representative that Defendant Wheeler and Low Ah Kee "actually access the dashboard every day," ███████ responded, "I don't recall actually saying that.  There would be no way for me to verify that was true."  (Anhang Decl. ¶ 31.a.iii-iv.)  ███████ further indicated to the Opendoor Defendants' counsel that ██ did not work day-to-day with Defendant Wheeler and Low Ah Kee and did not know whether or to what extent they may have been reviewing the dashboard.  (Anhang Decl. ¶ 31.a.ii.)  ███████ said to the Opendoor Defendants' counsel, "I know what was shared with them in meetings, but I cannot say with certainty what they knew or didn't know with regard to the dashboard."  (Anhang Decl. ¶ 31.a.ii.)

███████ also pointed out that the plaintiff's representative "did not verify these comments [regarding Defendant Wheeler and Low Ah Kee] before filing."  (Anhang Decl. ¶ 30.c.)  To clarify this last assertion, the Opendoor Defendants' counsel asked ███████ if it was true that ██ "would have corrected" or "modified" the alleged statement attributed to ██ *if* ██ had been able to review it for accuracy before the complaint was filed.  ███████ replied: "Right."  (Anhang Decl. ¶ 31.a.v-vi.)

███████ indicated that there were similar inaccuracies with respect to related statements attributed to ██ in the CAC.  (*See* Anhang Decl. ¶ 31.b.i-ii).

### 4.  CW No. 6

Lastly, the Opendoor Defendants' counsel also spoke with ▮▮▮▮▮ (CW 6). The Complaint attributes only a few statements to ▮▮, mainly in Paragraph 72 (and repeated elsewhere). (CAC ¶¶ 72, 418.) Although ▮▮▮▮ did not tell the Opendoor Defendants' counsel that those statements in the CAC were wrongly attributed to ▮▮, Lead Plaintiffs' *Opposition Brief* suggests that ▮ made statements that, in fact, ▮ did not make. Specifically, Lead Plaintiffs assert in the Opposition Brief that, "[a]ccording to several former employees, Opendoor's algorithm could not accurately price homes, and *as a result*, Opendoor's pricing analysts *had* to manually adjust both initial *and final* offers. [CAC] ¶¶ 62-73." (Opp. 4 (emphasis added).) Lead Plaintiffs' reference to "several former employees" plainly refers to ▮▮▮▮ (among others) because the cited paragraphs from the CAC (¶¶ 62-73) include paragraph 72, which references ▮▮. (Opp. 4.) But contrary to the Opposition Brief, ▮▮▮▮ did *not* tell the plaintiff's representative that analysts "had" to adjust both "initial *and final*" offers as a result of the algorithm's alleged inability to "accurately price homes." (Opp. 4.) As was made clear in the call that the Opendoor Defendants' counsel had with ▮▮▮▮, ▮ had told a plaintiff's representative that analysts "could" adjust the "initial" prices and ▮ did not tie that to failures in the algorithm. (Anhang Decl. ¶ 26.a.; *see also* CAC ¶ 72.) ▮▮▮▮ also told the Opendoor Defendants' counsel that ▮ did not "mention to them [the plaintiff's representative]" how often that was done, and that, in fact, "the majority of [initial] offers would be automated." (Anhang Decl. ¶ 26.b.)

10

**II.    Courts That Have Addressed CW Issues Similar to the Ones Present Here Have Taken Immediate Action to Fully Address the Matters Raised**

Numerous courts have expressed concern over the use, and occasional abuse, of alleged statements by anonymous sources.  *See, e.g.*, *City of Livonia Emps. Ret. Sys. v. Boeing*, 711 F.3d 754 (7th Cir. 2013); *Campo v. Sears Holdings Corp.*, 371 F. App'x 212 (2d Cir. 2010); *In re Millennial Media, Inc. Sec. Litig.*, No. 14-cv-7923, 2015 WL 3443918 (S.D.N.Y. May 29, 2015); *In re Lumber Liquidators Holdings, Inc. Sec. Litig.*, 4:13-cv-00157, ECF No. 91 (E.D. Va. Jul. 14, 2015) (Anhang Decl., Ex. 1).  Indeed, one court in this circuit has acknowledged "a 'growing body of cases chronicling the repudiation by [CWs] of statements attributed to them' in complaints alleging securities fraud."  *Bolling v. Gold*, 2015 WL 6870617, at * 7 (W.D. Wash. Nov. 9, 2015).  Another has noted that courts have "grown to regard [CW allegations] with a good amount of skepticism."  *Lifschitz v. NextWave Wireless Inc.*, 2011 WL 940918, at *2 (S.D. Cal. Mar. 16, 2011).

In general, to meet the PSLRA's stringent pleading requirements,[4] CW statements must be sufficiently particularized to establish (1) reliability and (2) personal knowledge.

---

[4] The Opendoor Defendants do not mean to suggest through this Motion that the PSLRA discovery stay, 15 U.S.C. § 78u-4(b)(3)(B), should be lifted.  Although CW depositions would amount to discovery, the Opendoor Defendants' primary request is for the Court to order that limited affidavits be submitted for the Court's consideration.  That would not constitute traditional "discovery" that would be subject to the PSLRA stay.  Further, Lead Plaintiffs had unfettered access to the eight CWs on whom they purport to rely in the CAC. The Opendoor Defendants are now asking, in the face of legitimate concerns, that those same CWs submit affidavits asserting, one way or the other, whether the statements in the CAC and/or Opposition Brief accurately reflect what the CWs said to a plaintiff's representative, and whether those statements are properly characterized.  Lead Plaintiffs will thus not be unduly prejudiced by any limited discovery the Court orders to address these concerning issues.

11

*See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).  In *Zucco Partners*, the Ninth Circuit affirmed the district court's grant of a motion to dismiss with prejudice based, in part, on the insufficiency of allegations from CWs who were described in the complaint "with a large degree of specificity," but were nonetheless "simply not positioned to know the information alleged, [reported] only unreliable hearsay, [or alleged] conclusory assertions of scienter." *Id.* at 996.  The Ninth Circuit held that the CWs thus were unreliable and lacking in personal knowledge such that their statements failed to establish a "strong inference of scienter." *Id.*

Statements improperly attributed to CWs have even been the basis for the imposition of sanctions.  In *BankAtlantic*, the complaint mischaracterized what a CW actually told the plaintiff's investigator about her position at the defendant company.[5] *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F. Supp. 2d 1299, 1314-15 (S.D. Fla. 2011), *aff'd sub nom*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 503 F. App'x 677 (11th Cir. 2012).  Judge Ungaro held this amounted to a violation of Rule 11, and—under that Rule and the sanctions provision of the PSLRA, 15 U.S.C. § 78u-4(c)—imposed a monetary sanction of approximately $46,000.  *See id.* at 1320-22.  The court concluded that sanctions were warranted even though (i) the transcripts of the CW interviews by the plaintiff's

---

[5] In *BankAtlantic*, the defendant did not uncover the fact that the complaint mischaracterized the position and knowledge of the CW until after the motion to dismiss stage of the case.  Here, by contrast, there are already strong grounds—based on the Opendoor Defendants' counsel's conversations with four of the CWs—to believe that a significant number of the statements attributed to those CWs in the CAC and/or Opposition Brief are inaccurate or mischaracterized.  Here, then, unlike in *BankAtlantic*, the Court is in a position at the early stages of the case to create a fully developed record (consisting of affidavits or deposition testimony) in time to be considered in connection with the pending motion to dismiss.

investigator "largely substantiate[d] the assertions attributed to [the CW] in the [complaint]," *id.* at 1313; (ii) the CW in question had "some knowledge of the conduct alleged in the [complaint]," *id.*; and (iii) the CW's assertions "constituted only a small fraction of the factual allegations contained in the complaint[],"[6] *id.* at 1321.

To address CW concerns like those at issue here, courts have ordered plaintiffs to produce sworn affidavits from plaintiffs' counsel and CWs. For instance, in *In re Lumber Liquidators Holdings, Inc. Securities Litigation*, defendants had contacted just one of six CWs cited in the complaint and asserted—based on supporting attorney declarations by the lawyers for defendants who spoke to that CW—that the witness disputed ever making statements attributed to him in the complaint. *In re Lumber Liquidators*, No. 4:13-cv-00157, at *1-2 (Anhang Decl., Ex. 1). In response to defendants' showing as to that single CW, the Honorable Arenda L. Wright Allen "agreed that [this showing] raise[d] significant reliability and accuracy concerns relating to the individuals identified in the [complaint] as confidential witnesses." *Id.* at 3. Judge Wright Allen ordered that the plaintiffs submit to her sworn affidavits from (1) an attorney for the plaintiffs explaining the circumstances surrounding how the CWs came to be included in the complaint and (2) all CWs "recounting, with specificity, his or her version of the[] events." *Id.* at 3-4. Judge Wright Allen also ordered a modified briefing schedule. *Id.*

Similarly, in *Millennial Media*, the defendants undertook a similar inquiry into CW allegations in the complaint and discovered that the statements attributed to a few of those

---

[6] By contrast, here, the Opendoor Defendants have identified concerning issues involving four CWs, each of whom has cast doubt on allegations relating to them in the CAC and/or the Opposition.

witnesses were likely inaccurately attributed to them.  In response to submissions by the parties alerting the court to these inaccuracies, the Honorable Paul A. Engelmayer extended the deadlines for the pending motion to dismiss filing and ordered plaintiffs' counsel to provide for each CW:

> (1) a sworn affidavit from a personally knowledgeable attorney explaining (a) the circumstances under which references to that confidential witness came to be in the FAC (now the SAC); (b) how the witness came to be identified as a "confidential witness" (*i.e.*, as opposed to being referred to by name); (c) whether the witness was informed in advance that he or she would be quoted in the complaint, and that a reference in the complaint to a "confidential witness" created a risk that the witness's identity would be ordered disclosed . . . and whether the witness consented to being so quoted in the complaint; and (d) whether the witness, having reviewed the FAC (or SAC), confirms that the statements attributed to him or her are accurately attributed; and (2) a sworn affidavit from each confidential witness setting out, with specificity, his or her version of these events.

*In re Millennial Media*, No. 14-cv-7923, 2015 WL 3443918, at 3.  Judge Engelmayer had permitted the plaintiffs to file an amended complaint after concerns had been initially raised with respect to a single CW.  *See In re Millennial Media*, 1:14-cv-07923-PAE, ECF No. 68, at 4-5 (S.D.N.Y. Apr. 21, 2015) (Anhang Decl., Ex. 2).

Finally, in two Court of Appeals decisions that have addressed the issue, the Second and Seventh Circuits considered CWs' deposition testimony asserting whether the statements at issue were accurately attributed to them in deciding motions to dismiss.[7]

---

[7] In taking steps to verify whether the statements at issue were properly characterized and accurately attributed to the CWs in the CAC and/or Opposition Brief, the Court will not be put in a position to make credibility determinations at this early stage.  As the Second Circuit took pains to note in *Campo*, "[t]he court made no credibility determinations, nor did it weigh competing testimony.  To the contrary, it relied upon the deposition testimony for the limited purpose of determining whether the CWs acknowledged the statements attributed to them in the complaint.  Under these circumstances, we identify no error." 371 F. App'x at 216 n. 4.

*Campo* 371 F. App'x at 216 n.4 (2d Cir. 2010) (concluding that deposition of CWs was proper, as an aid to the court in deciding a motion to dismiss, where testimony was used for limited purpose of determining whether CWs acknowledged statements attributed to them in the complaint); *see also Boeing*, 711 F.3d at 759 (affirming dismissal of complaint after defendants deposed plaintiffs' key CWs, and it emerged that facts concerning the witnesses' position and personal knowledge had been misrepresented in the complaint).[8]

All such decisions provide ample support for this Court to order that affidavit (or deposition) testimony of the CWs be procured (*see infra*), and to consider that testimony in deciding Defendants' motion to dismiss.

**III.    The Court Should Order Plaintiffs to Submit Counsel and CW Affidavits**

As stated above, Plaintiffs fail to satisfy their pleading burden, for all the reasons set forth in the Opendoor Defendants' motion to dismiss being filed concurrently herewith. Even if credited, the alleged statements attributed to the CWs by Lead Plaintiffs in the CAC (and Opposition Brief) do not cure any of Plaintiffs' pleading deficiencies.  Nevertheless, for all of the reasons discussed above, the Opendoor Defendants respectfully request that the Court enter an Order directing Plaintiffs, within seven days, to submit affidavits and related material consistent with the submissions that the *Millennial Media* and *Lumber Liquidators* courts ordered, namely:

> (1) a sworn affidavit from a personally knowledgeable attorney among Plaintiffs' counsel

---

[8] *See also*, *e.g.*, *In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Practices & Prods. Liab. Litig.*, 268 F.R.D. 509, 511 (S.D.N.Y. 2010) ("[T]he Court, before determining potentially dispositive motions to dismiss, ordered . . . that the depositions of the confidential sources be taken by counsel.").

> (a) explaining the circumstances under which references to each CW came to be in the CAC;
>
> (b) how the CWs came to be identified as a "confidential witness" (*i.e.*, as opposed to being referred to by name);
>
> (c) whether the CWs were informed in advance that they would be quoted in the CAC, and that a reference in the CAC to a "confidential witness" created a risk that their identities would be ordered disclosed and whether they consented to being so quoted in the CAC; and
>
> (d) whether the CWs, having reviewed the CAC, confirm that the statements attributed to them are accurately attributed and properly characterized; and
>
> (2) sworn affidavits from the CWs recounting, with specificity, their version of these events, and asserting whether each of the alleged statements attributed to them are accurately attributed and properly characterized. [9]

*See, e.g.*, *In re Millennial Media, Inc. Sec. Litig.*, 2015 WL 3443918, at *3; *In re Lumber Liquidators Holdings, Inc. Sec. Litig.*, No. 13-CV-157, ECF No. 91, at 3 (Anhang Decl., Ex. 1).

All of the information set forth in the affidavits is important, but none more so than each witness' verification as to whether the CAC (and Opposition Brief) accurately reflect and properly characterize statements they allegedly made to Lead Plaintiffs. Indeed, the court in *Millennial Media* underscored the importance of plaintiffs' counsel, ***in advance of filing a complaint***, "confirm[ing] with [a witness] the facts and quotations that counsel propose[s] to attribute to them." 2015 WL 3443918, at *11. As the court stated, if such

---

[9] If the Court deems it appropriate, it also could order that the deposition of CW 2, CW 5, CW 8, and CW 6 be taken for the limited purpose of determining whether they acknowledge the statements attributed to them by Lead Plaintiffs as properly characterized and accurately attributed. *See, e.g.*, *Campo*, 371 F. App'x at 216 n.4.

16

confirmation is done, "[t]he necessary refinements could [be] made to ensure that quotes were used accurately; that information was presented in proper context; and that opinions, assumptions, hearsay, and speculation were not commingled and confused with representations of facts acquired firsthand by a percipient witness." *Id.*

The Opendoor Defendants respectfully submit that the above-described counsel and CW affidavits are necessary to provide the Court with sufficient information to fully understand and address the serious concerns raised regarding the CWs, and to determine what additional steps may be warranted with regard to CWs and the statements attributed to them by Lead Plaintiffs.

## CONCLUSION

The results of the Opendoor Defendants' investigation of the CW allegations in the CAC call into question whether the alleged statements attributed to them are accurately attributed and properly characterized. On the basis of issues involving fewer questionable CWs or CW statements, courts have taken immediate action to afford relief to defendants and fully address the matters raised. Defendants respectfully request that the Court grant such immediate relief here.

17

Dated: October 13, 2023

**LEWIS ROCA ROTHGERBER CHRISTIE LLP**

John C. Gray (Arizona Bar. No. 028454)
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 262-5311
Facsimile: (602) 262-5747
Email: jgray@lewisroca.com

**SHEARMAN & STERLING LLP**
Adam S. Hakki (*pro hac vice*)
599 Lexington Ave.
New York, NY 10022
Telephone: (212) 848-4000
Email: ahakki@shearman.com

Lyle Roberts (*pro hac vice*)
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
Email: lyle.roberts@shearman.com

*Counsel for Defendants Opendoor Technologies Inc., Eric Wu, Carrie Wheeler, Chamath Palihapitiya, Steven Trieu, Ian Osborne, Adam Bain, David Spillane, Cipora Herman, Pueo Keffer, Glenn Solomon, Jason Kilar, and Jonathan Jaffe*

18