BEYERS FARRELL PLLC
Michael J. Farrell, AZ 015056
mfarrell@bfazlaw.com
Maureen Beyers, AZ 017134
mbeyers@bfazlaw.com
99 East Virginia Avenue, Suite 220
Phoenix AZ 85004
Telephone: 602-738-3022

*Attorneys for Defendants Citigroup Global Markets Inc.; Goldman Sachs & Co. LLC; Barclays Capital Inc.; Deutsche Bank Securities Inc.; Oppenheimer & Co. Inc.; BTIG, LLC; KeyBanc Capital Markets Inc.; Wedbush Securities Inc.; TD Securities (USA) LLC; Zelman Partners LLC; Academy Securities, Inc.; Loop Capital Markets LLC; Samuel A. Ramirez & Company, Inc.; and Siebert Williams Shank & Co., LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

|  |  |
|---|---|
| IN RE OPENDOOR TECHNOLOGIES INC. SECURITIES LITIGATION | Case No. 2:22-CV-01717-MTL |
|  | **CLASS ACTION** |
|  | **THE UNDERWRITER DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT** |
|  | **ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT .................................................................................. 1

II.    ARGUMENT ......................................................................................................... 2

A.    Rule 9(b)'s Stringent Pleading Standards Apply to the Claims Against the Underwriters Because They Sound in Fraud............................................................. 2

B.    The Complaint Fails to Plead a False Statement. ......................................................... 4

    1.    Plaintiffs Fail to Acknowledge that Opendoor Disclosed Human Involvement in Pricing Decisions. ............................................................. 4

    2.    Plaintiffs Have Failed to Show that Any of Their CWs Possess Knowledge Contradicting the SPO Materials. ............................................... 5

    3.    The SPO Documents' Statement that Opendoor's Algorithm Could "Dynamically Adjust" to Changing Market Conditions Was  Puffery and Misleading Only in Hindsight. ................................................... 8

    4.    Plaintiffs Fail to Explain How the SPO Documents' Statement that Opendoor's Algorithm Was "Key" to Its Business Is Actionable. ................ 9

    5.    Plaintiffs Fail to Explain How the SPO Documents' Disclosures Concerning the Sources of Opendoor's Revenues Were Misleading. ......... 10

C.    The Section 11 Claim Should Be Dismissed Because the CAC and Documents It Incorporates Establish Negative Causation. ..................................... 11

III.    CONCLUSION ...................................................................................................... 11

**TABLE OF AUTHORITIES**

**Page(s)**

<u>**CASES**</u>

*In re Bridgepoint Education, Inc. Securities Litigation*,
2013 WL 5206216 (S.D. Cal. Sept. 13, 2013) ................................................................ 10

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
957 F. Supp. 2d 277 (S.D.N.Y. 2013) ........................................................................... 8

*In re Coty Inc. Secs. Litig.*,
2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ................................................................ 7

*In re Countrywide Fin. Corp. Secs. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ......................................................................... 3

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ....................................................................................... 6

*In re Edward D. Jones & Co., L.P. Sec. Litig.*,
2022 WL 1460205 (E.D. Cal. May 9, 2022) ................................................................. 11

*Flynn v. Sientra, Inc.*,
2016 WL 3360676 (C.D. Cal. June 9, 2016) ................................................................. 3

*In re Francesca's Holdings Corp. Secs. Litig.*,
2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) ............................................................... 7

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ..................................................................................... 3, 6

*In re IAC/Interactive Corp. Sec. Litig.*,
695 F. Supp. 2d 109 (S.D.N.Y. 2010) ........................................................................... 7

*Jaeger v. Zillow Group, Inc.*,
644 F. Supp. 3d 857 (W.D. Wash. 2022) ....................................................................... 5

*Johnson v. Costco Wholesale Corp.*,
2019 WL 6327580 (W.D. Wash. Nov. 26, 2019) ........................................................... 7

*Kalin v. Semper Midas Fund, Ltd.*,
2021 WL 5906053 (N.D. Cal. Dec. 14, 2021) ............................................................... 8

*Knollenberg v. Harmonic, Inc.*,
152 Fed. Appx. 674 (9th Cir. 2005) .............................................................................. 3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Merrill Lynch Auction Rate Secs. Litig.*,
  704 F. Supp. 2d 378 (S.D.N.Y. 2010) ................................................................. 8

*Moore v. Apple Inc.*,
  73 F. Supp. 3d 1191 (N.D. Cal. 2014) ............................................................... 8

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
  834 F.3d 481 (3d Cir. 2016) .............................................................................. 8

*Panther Partners, Inc. v. Ikanos Communications*
  538 F. Supp. 2d 662 (S.D.N.Y. 2008) ............................................................... 9

*In re Quality Sys., Inc. Secs. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) .......................................................................... 6

*Qureshi v. Countrywide Home Loans, Inc.*,
  2010 WL 841669 (N.D. Cal. Mar. 10, 2010) ..................................................... 8

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-
  Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017) ........................................................................ 11

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*
  697 F.3d 869 (9th Cir. 2012) ................................................................... 2, 3, 4

*Robb v. Fitbit, Inc.*,
  216 F. Supp. 3d 1017 (N.D. Cal. 2016) ............................................................ 6

*Rubke v. Capitol Bancorp Ltd.*
  551 F.3d 1156 (9th Cir. 2009) ...................................................................... 2, 3

*Schneider v. Cal. Dep't of Corr.*,
  151 F.3d 1194 (9th Cir. 1998) ........................................................................ 11

*In re Silicon Storage Tech., Inc., Sec. Litig.*,
  2007 WL 760535 (N.D. Cal. Mar. 9, 2007) .................................................... 6, 7

*Tsirekidze v. Syntax-Brillian Corp.*,
  2009 WL 275405 (D. Ariz. Feb. 4, 2009) ......................................................... 3

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*
  2017 WL 2378369 (C.D. Cal. May 31, 2017) ............................................... 9, 10

iii

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ............................................................................ 5

*Warshaw v. Xoma Corp.*,
    74 F.3d 955 (9th Cir. 1996) ...................................................................................... 10

*Wozniak v. Align Tech., Inc.*,
    850 F. Supp. 2d 1029 (N.D. Cal. 2012) ........................................................................ 9

## I.    PRELIMINARY STATEMENT[1]

Plaintiffs' opposition briefs fail to refute the arguments that mandate dismissal of the CAC's Securities Act claims, the only claims against the Underwriters.

*First*, Plaintiffs fail to explain how a Securities Act claim that alleges as the basis for liability the exact same statements alleged to be fraudulent in the Exchange Act claims can sound in anything other than fraud.  But the CAC fails to state a claim under either Rule 9(b)'s or Rule 8's pleading standards.

*Second*, Plaintiffs ignore the SPO materials' disclosure of human involvement in every step of Opendoor's real-estate pricing process, which puts the lie to any claim that the SPO materials concealed Opendoor's reliance on humans to help price properties.

*Third*, Plaintiffs instead reiterate the CW allegations of human involvement.  Setting aside the substantial doubt over (and separate defense motion regarding) whether the CAC accurately summarizes the CWs' statements, Plaintiffs do not dispute that none of those CWs worked in the relevant Opendoor department when the SPO occurred

*Fourth*, Plaintiffs fail to refute the Underwriters' showing that the SPO materials' statements that Opendoor's algorithm could "dynamically adjust" to market conditions, and was "key" to Opendoor's success, are inactionable puffery.  Plaintiffs concede that "dynamically adjust" was too vague to be actionable by failing to address that argument.  And Plaintiffs ignore cases dismissing as puffery statements characterizing features as "key," citing instead cases involving distinguishable statements that were objectively

---

[1] Unless otherwise specified, all capitalized terms herein shall have the meanings ascribed to them in the Underwriters' Memorandum of Points and Authorities in Support of Their Motion to Dismiss the Consolidated Amended Complaint (cited herein as "UW Mem. at __"), filed in this action at ECF No. 51, all quotations and citations are omitted, and all emphasis is added.  As used herein, (1) "OD Mem." refers to the Opendoor Defendants' Memorandum in Support of Their Motion to Dismiss the Consolidated Amended Complaint, filed in this action at ECF No. 48; (2) "OD Reply" refers to the Opendoor Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss the Consolidated Amended Complaint, filed in this action at ECF No. 60; and (3) "Opp." refers to Plaintiffs' Memorandum of Law in Opposition to the Underwriter Defendants' Motion to Dismiss the Consolidated Amended Complaint, filed in this action at ECF No. 56.

verifiable and contradicted by information in the defendants' possession when made. Plaintiffs attack the Underwriters' separate showing—that the falsity allegations concerning the dynamic-adjustment statement rest entirely on hindsight—but fail even to address the many cases holding that such hindsight allegations cannot state a claim.

*Fifth*, after Defendants dismantled the CAC's omission theory based on Opendoor's allegedly generating revenues from the spread in purchase and sale prices, Plaintiffs changed their tune to argue that the SPO materials misleadingly suggested that Opendoor was going to "disrupt" the real estate business. This theory fails, too, because it is unpleaded and the challenged statement says nothing about "disrupting" the real estate business.

*Sixth*, Plaintiffs fail to explain how the CAC's allegations do not establish a negative-causation defense because no alleged corrective disclosure was "new news."

## II.   ARGUMENT

### A.   Rule 9(b)'s Stringent Pleading Standards Apply to the Claims Against the Underwriters Because They Sound in Fraud.

The Securities Act claims sound in fraud because they challenge the exact same statements alleged in the Exchange Act claims to be fraudulent. (*See* UW Mem. at 3–4; OD Mem. at 10–11.) Plaintiffs do not deny that the same statements underlie both sets of claims, but maintain that a Securities Act claim cannot sound in fraud unless it "allege[s] *the exact same* claims against *the exact same defendants*." (Opp. at 8.) The Ninth Circuit has rejected that precise argument.

In *Rubke v. Capitol Bancorp Ltd.* (cited in OD Mem. at 11), the Ninth Circuit adopted a two-step test to determine whether a complaint sounds in fraud. The first step is to determine whether a complaint "employs the exact same *factual allegations*" to support both a fraud and non-fraud claim; if it does, the court "can assume that it sounds in fraud," and need not go to the second step.[2] And in *In re Rigel Pharmaceuticals, Inc. Securities Litigation* (cited in OD Mem. at 11), the Ninth Circuit explicitly rejected the requirement that the complaint lodge "the exact same claims against the exact same defendants." (Opp.

---

[2] 551 F.3d 1156, 1161 (9th Cir. 2009).

2

at 8.)  Rather, a Securities Act claim sounds in fraud even if "does not adopt all of the allegations in the rest of the complaint," so long as it relies on "the same alleged misrepresentations" that are "central" to the fraud claim.[3]  That is the case here.  (*See* UW Mem. at 3–4; OD Mem. at 10–11.)  Under controlling Ninth Circuit authority, there is no need to go further.

Only had the CAC not challenged the exact same statements under both fraud and non-fraud theories would the Court move to the second step—a "close examination of the language and structure of the complaint" to determine whether it relies on a "unified course of conduct" to support both fraud and non-fraud claims.[4]  Even under that test (which the Court should not reach here), the CAC still would sound in fraud—it alleges that Opendoor made fraudulent statements about its algorithm, human involvement in pricing decisions, and revenue sources, all to conceal problems with Opendoor's core business and allow insider stock sales at inflated prices.  (*See* Compl. ¶¶ 239–53.)  Even the cases Plaintiffs cite acknowledge that merely including a fraud disclaimer cannot exempt from Rule 9(b) a complaint like the CAC whose "gravamen is plainly fraud."[5] And Plaintiffs' authorities are likewise inapplicable because they either pre-date *Rubke* and *Rigel*,[6] involved "unique, particularized facts" alleged solely against the non-fraud non-defendants,[7] or did not involve Securities Act claims at all.[8]

The Ninth Circuit also rejected Plaintiffs' argument that requiring them to satisfy Rule 9(b) would make it "impossible . . . to plead two causes of action" (Opp. at 9):

---

[3] 697 F.3d 869, 886 (9th Cir. 2012).

[4] *Rubke*, 551 F.3d at 1161.

[5] *Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674, 684 (9th Cir. 2005).

[6] *See Tsirekidze v. Syntax-Brillian Corp.*, 2009 WL 275405 (D. Ariz. Feb. 4, 2009) *In re Countrywide Fin. Corp. Secs. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008); *Knollenberg*, 152 Fed. Appx. 674.

[7] *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *17 (C.D. Cal. June 9, 2016).

[8] *See Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023) (analyzing PSLRA's requirements for pleading falsity in Exchange Act claims).

This does not mean, as Plaintiff contends, that it may not plead alternative theories of liability; it merely means that, with both the section 10(b) and the section 11 claims, Plaintiff must meet the pleading requirements of Rule 9(b).[9]

Finally, Plaintiffs suggest in a footnote that their claims do not sound in fraud as to the Underwriters because there are no fraud allegations against them. (Opp. at 10 n.5.) Plaintiffs cite no authority for this proposition, and it should be rejected for this reason alone. But it is also baseless, as many of the CAC's scienter allegations (e.g., that real estate purchasing was "core" to Opendoor's business such that defendants should have known about the allegedly misrepresented facts, the existence of the FTC investigation, and Zillow's failure, *see* CAC ¶¶ 248–53, 264–75) would apply equally to the Underwriters and suggest that they, too, were part of a fraudulent scheme.

**B.    The Complaint Fails to Plead a False Statement.**

**1.    *Plaintiffs Fail to Acknowledge that Opendoor Disclosed Human Involvement in Pricing Decisions.***

The SPO Documents' statement that Opendoor's pricing algorithm "use[d] machine learning to drive pricing decisions" was not misleading because (i) the CAC nowhere pleads that Opendoor's algorithm did not use machine learning; and (ii) the SPO Documents disclosed human involvement in the pricing process. (*See* UW Mem. at 4–8; OD Mem. at 5, 12–14.) Plaintiffs' response is simply to cite CW reports that Opendoor's algorithm was inaccurate, necessitating human involvement in the pricing process, which Plaintiffs says is contrary to the business model described in the SPO Documents. (Opp. at 10–11.) But Plaintiffs simply ignore the SPO Documents' disclosures that (i) Opendoor's "resale models" worked "in conjunction with [its] pricing team" to price properties (*see* Gray Decl., Ex. 25 (S-1) at 67); and (ii) described "increasing levels of automation" in the pricing process, thus implicitly acknowledging human involvement (*see* CAC ¶ 410 (quoting SPO Documents as stating, "As we have continued to demonstrate improving accuracy, we have

---

[9] *Rigel*, 697 F.3d at 886.

4

also been able to ***increase*** *our number of fully automated home valuations*"), ¶ 412 (noting that Opendoor was able to price, acquire, and resell homes "with increasing levels of automation").)  It comes as no surprise, then, that Plaintiffs have no answer for the cases the Underwriters cited dismissing claims where the complaint's allegations did not contradict the challenged statement.  (*See* UW Mem. at 5.)  This alone should end the matter.

The disclosure of human involvement also further distinguishes this case from *Jaeger v. Zillow Group, Inc.*, which is inapposite not only for the reasons explained in the Opendoor Defendants' reply (*See* OD Reply at 6), but also because the disclosures on which the *Zillow* defendants relied consisted of abstruse statements that Zillow had been "testing price elasticity in this hot housing market" and "improved [its] offer strength."[10]

Moreover, as the Opendoor Defendants show (*see* OD Reply at 5–6), Plaintiffs' CW allegations do not contradict the SPO materials' statement that the algorithm used "machine learning, . . . demand forecasting, outlier detection, risk pricing, and inventory management."  (CAC ¶¶ 402, 410.)  No CW allegation (*see* Opp. at 10–11) even suggests that Opendoor's algorithm did not use machine learning.  (*See* UW Mem. at 5 n.11).[11]

### 2.    *Plaintiffs Have Failed to Show that Any of Their CWs Possess Knowledge Contradicting the SPO Materials.*

Plaintiffs' attempt to resuscitate their CW allegations (Opp. at 12–14) is unavailing. The Court should not credit those allegations at all, because the Opendoor Defendants have shown that the CAC misstates the CWs' accounts.  (*See* ECF No. 57.)  But even if the CAC had accurately reported what the CWs said, those allegations would still fail to salvage the Securities Act claims.

While Plaintiffs maintain that they have adequately pleaded each CW's basis for personal knowledge (*see* Opp. at 12–13), Plaintiffs ignore that CW2 did not join Opendoor

---

[10] 644 F. Supp. 3d 857, 872 (W.D. Wash. 2022).

[11] *See also Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 807 (N.D. Cal. 2019) (dismissing claim where "reasons Plaintiffs offer as to why many of the statements are false or misleading bear no connection to the substance of the statements").

5

until nearly a year after the IPO, CW5 left Opendoor nearly a year before the IPO, and the CAC fails to plead when CW6 would have knowledge of the pricing algorithm's function, because it merely alleges that CW6 held positions at unspecified times in the company's Business Operations team, Consumer team, and Pricing team.  In other words, the CAC fails to plead facts showing that any of the three CWs at issue was in a position to know how Opendoor's pricing algorithm functioned when the SPO occurred.[12]

In the cases Plaintiffs cite, in contrast, the complaints alleged unequivocally that the CWs were in a position to know the facts they alleged.[13]  *Forescout* does not help Plaintiffs because it did not, as Plaintiffs contend, endorse isolated CW allegations like those here— concerning discrete portions of a company's business—as sufficient to plead falsity. Rather, the Ninth Circuit deemed the CW allegations sufficient because the complaint cited twenty different confidential witnesses whose collective statements "combine[d] to tell a plausible story" about concrete company-wide trends.[14]  The CAC, in contrast, relies on three isolated CWs who are not even alleged to have worked in the relevant Opendoor department at the relevant time.

Plaintiffs bury in a footnote their alternative argument that Rule 9(b) is too stringent a standard for pleading CWs' knowledge.  (Opp. at 12 n.6.)  But applying Rule 9(b)'s particularity standard is appropriate here because the Securities Act claims sound in fraud.

---

[12] *See* UW Mem. at 5–8; *see also In re Silicon Storage Tech., Inc., Sec. Litig.*, 2007 WL 760535, at *18 (N.D. Cal. Mar. 9, 2007) (dismissing falsity allegations based on CW allegations where no CW "worked at [defendant company] during the proposed class period, and plaintiffs do not allege facts sufficient to support the probability that a person in the position occupied by the confidential source would possess the information alleged").

[13] *See In re Quality Sys., Inc. Secs. Litig.*, 865 F.3d 1130, 1138–39, 1145 (9th Cir. 2017) (CWs included corporate directors and officers, and complaint pleaded their "personal knowledge of . . . declining sales during the class period" and various reports that were delivered to them); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1016 (9th Cir. 2005) (noting complaint pleaded job responsibilities and explained how CWs responsibilities gave them personal knowledge of allegations attributed to them); *Robb v. Fitbit, Inc.*, 216 F. Supp. 3d 1017, 1032 (N.D. Cal. 2016) (finding complaint adequately pleaded CW's personal knowledge of monthly report contents CW allegedly provided to defendant).

[14] *Forescout*, 63 F.4th at 768-69, 771.

6

(*See* pp. 2–4, *supra*.)  And even under Rule 8, a complaint must still include plausible allegations that the CW had personal knowledge of the alleged facts—including being employed by the defendant company at the relevant time—something the CAC fails to do.[15]

Plaintiffs also fail to explain how the CW reports contradict the SPO's statement that Opendoor's algorithm used machine learning.  As the Underwriters have shown, CW2's alleged statement that her job at Opendoor involved what any real estate agent would do is too vague to plead falsity—under either Rule 8[16] or Rule 9(b).[17]  Similarly, CW5's alleged statement that more than half of the algorithm-generated initial offers went to humans for review (*see* CAC ¶ 417) is consistent with the SPO materials' disclosure.  (*See* UW Mem. at 6–7; Gray Decl., Ex. 25 (S-1) at 66–67.)  Plaintiffs' assertion to the contrary is the kind of semantic nit-picking that courts find inadequate to support a securities claim.[18]

Also unavailing is Plaintiffs' argument that the FTC complaint allegedly

---

[15] *See In re Francesca's Holdings Corp. Secs. Litig.*, 2015 WL 1600464, at *14 (S.D.N.Y. Mar. 31, 2015) (rejecting CW allegations because CW left firm "near the very beginning of the Class Period" and could not "speak to" events occurring two years later), *23; see also In re Coty Inc. Secs. Litig.*, 2016 WL 1271065, at *2 n.4 (S.D.N.Y. Mar. 29, 2016) (noting in Securities Act case governed by Rule 8 that CW allegations must "support the probability that a person in the position occupied by the source would possess the information alleged").

[16] *See Francesca's*, 2015 WL 1600464, at *13 ("vague and conclusory" CW allegations "are certainly not enough to allege that the Company's statements were false when made"), *23 (rejecting Securities Act claims for same reasons as Exchange Act claims for failure to plead falsity); *Coty Inc.*, 2016 WL 1271065, at *6 (rejecting falsity allegations premised on "a series of conclusory, nonspecific statements from confidential informants"); *In re IAC/Interactive Corp. Sec. Litig.*, 695 F. Supp. 2d 109, 119 (S.D.N.Y. 2010) (finding insufficient CW allegations "stated in the most general of terms and without any facts").

[17] *See Johnson v. Costco Wholesale Corp.*, 2019 WL 6327580, at *8 (W.D. Wash. Nov. 26, 2019) (dismissing securities claim based on vague CW statements); *Silicon Storage*, 2007 WL 760535, at *26 (dismissing "vague and conclusory" CW statements).

[18] *See, e.g., City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 298 (S.D.N.Y. 2013) (dismissing claim that defendant should have described ore deposits as "very hard" rather than "relatively hard" as "subtle disagreement[] over adjectives and semantics"); *In re Merrill Lynch Auction Rate Secs. Litig.*, 704 F. Supp. 2d 378, 392 (S.D.N.Y. 2010) (dismissing claim based on "semantic distinction" between "routinely" and "systematically"); *see also OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 504 (3d Cir. 2016) (dismissing claim that statement failed to describe transaction as "imperiled" because securities laws do not mandate use of particular adjectives).

7

"corroborates" the CWs' statements, because that complaint does not contradict the offering materials' statements either.  (*See* UW Mem. at 8; OD Mem. at 15 n.13, 20.)

### 3. *The SPO Documents' Statement that Opendoor's Algorithm Could "Dynamically Adjust" to Changing Market Conditions Was Puffery and Misleading Only in Hindsight.*

The SPO Materials' statement that Opendoor's pricing algorithm could "dynamically adjust" is (i) an inactionably vague optimistic statement and (ii) challenged only through inadequate hindsight pleading.  (UW Mem. at 8–9; OD Mem. at 14–16.)  Plaintiffs do not address Defendants' showing of puffery, and thus have conceded the point.[19]  And with good reason:  at least one court in the Ninth Circuit has concluded in a case Plaintiffs fail to address that the qualifier "dynamic" is "puffery."[20]  For this reason alone, any claim based on this statement fails.

As for the hindsight nature of the CAC's allegations, Plaintiffs do not deny that the events they allege showing that Opendoor's algorithm could not adjust to changing market conditions became apparent only in the summer of 2022 market downturn—more than a year *after* the SPO.  Instead, Plaintiffs argue that Defendants should somehow have been aware of and disclosed in February 2021 that Opendoor's algorithm could not adjust.  (Opp. at 12.)  This is precisely the kind of hindsight pleading that courts routinely dismiss.  For example, in *Panther Partners, Inc. v. Ikanos Communications*, the court rejected an allegation that a company's quality control program was ineffective when the company went public because the allegation rested on quality control issues that only manifested themselves only months after the challenged offering.[21]  Under *Panther Partners* and the other cases the Underwriters have cited (*see* UW Mem. at 9 n.22)—not one of which Plaintiffs even try to distinguish—the CAC's falsity allegation based solely on developments post-dating the February 2021 SPO by more than a year fail to state a claim.

---

[19] *See Moore v. Apple Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014); *Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, at \*6 n. 2 (N.D. Cal. Mar. 10, 2010) (construing plaintiff's failure to address arguments as abandonment of claim).

[20] *Kalin v. Semper Midas Fund, Ltd.*, 2021 WL 5906053, at \*5 (N.D. Cal. Dec. 14, 2021).

[21] 538 F. Supp. 2d 662, 671–72 (S.D.N.Y. 2008), *aff'd,* 347 F. App'x 617 (2d Cir. 2009).

8

### 4.    *Plaintiffs Fail to Explain How the SPO Documents' Statement that Opendoor's Algorithm Was "Key" to Its Business Is Actionable.*

The CAC also fails to plead that the SPO materials' statement that Opendoor's algorithm was "key" to its "ability to acquire and resell thousands of homes per month accurately, profitably, and with increased levels of automation" was actionably false. (UW Mem. at 9–11.)  This is because (i) the statement is classic puffery; and (ii) none of the CAC's falsity allegations pleads that in February 2021 (when the SPO occurred), the pricing algorithm was not "key" to Opendoor's business.  (*Id.*)

Plaintiffs do not contest that this challenged statement uses words that courts have routinely deemed inactionably vague.  Instead, Plaintiffs argue that those words are somehow actionable here because "the Company's pricing algorithm was the most critical aspect of the Company's business."  (Opp. at 14–15.)  But courts routinely dismiss as puffery statements that concern critical business features.  (*See* OD Reply at 9–10.)  And as the Underwriters showed, at least one court in this Circuit has deemed a substantially identical statement—that a product was "a key element" of the company's strategy—inactionable puffery.[22]  Plaintiffs do not even address that case, tacitly conceding the point.

The cases Plaintiffs do cite are not to the contrary.  *Vancouver Alumni Asset Holdings Inc. v. Daimler AG* involved statements concerning regulatory compliance that were actionable because they were "objective[ly] material[]," i.e., they were "subject to objective verification and were capable for measurement against an objective standard."[23]  Similarly, in *In re Bridgepoint Education, Inc. Securities Litigation*, the court dismissed multiple claims based on vague optimistic statements and allowed plaintiffs to proceed solely on allegedly false statements that were "objective and quantifiable" because they concerned the existence of a program that allegedly did not exist at all.[24]  And in *Warshaw v. Xoma Corp.*, the court concluded that statements assuring a drug's FDA approval was "imminent"

---

[22] *Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1036–37 (N.D. Cal. 2012).

[23] 2017 WL 2378369, at *12–13 (C.D. Cal. May 31, 2017).

[24] 2013 WL 5206216, at *19 (S.D. Cal. Sept. 13, 2013).

9

could be actionable only because objective contemporaneous evidence in the defendants' possession indicated that the drug "would never be approved by the FDA."[25]  Here, in contrast, there was no objective standard for whether Opendoor's algorithm was "key" to its business in February 2021, and no pleaded facts to the contrary.

Given that the statement about the algorithm's importance is too vague to be actionable, there is no need to assess the supposedly contradictory facts the CAC alleges. But those allegations in any event fail to plead falsity.  Plaintiffs tacitly concede what the Underwriters showed in their opening brief, namely, that the CW allegations fail to show that Opendoor had adopted a business model that hinged on deceptive consumer practices. (*See* UW Mem. at 10–11.)  Instead, Plaintiffs try to hang their hat on the FTC complaint, which concerned a period long pre-dating the SPO and practices the company had abandoned. (*See* p. 8, *supra*; UW Mem. at 8; OD Mem. at pp. 15 n.13, 20).

### 5.   *Plaintiffs Fail to Explain How the SPO Documents' Disclosures Concerning the Sources of Opendoor's Revenues Were Misleading.*

The SPO materials' statement that Opendoor's business model was "designed" to generate revenues from service charges and ancillary product sales could not mislead investors into believing that Opendoor did not also generate revenue through real estate sales margins, because the SPO materials also disclosed that Opendoor sought to "maximize resale margin," i.e., obtain the largest spread between acquisition and resale prices.  (*See* UW Mem. at 12; OD Mem. at 18.)  In response, Plaintiffs pivot to a new falsity theory found nowhere in the CAC—that this statement somehow "led investors to believe that Opendoor's business model was *disrupting the real estate market*" when Opendoor allegedly was "nothing more than a traditional real estate company."  (Opp. at 16.)  This argument fails for at least two reasons.

---

[25] 74 F.3d 955, 959 (9th Cir. 1996).

*First*, Plaintiffs cannot oppose a motion to dismiss by making allegations found nowhere in their pleading.[26]  If Plaintiffs wish to proceed on this new theory, then they must seek leave to replead (something they have not done).

*Second*, any such theory would fail in any event.  The statement that Opendoor's business model was "designed" to generate revenues from service charges and ancillary service sales is merely an aspirational statement that is not actually alleged to be false.[27]  Nothing in the challenged statement makes any reference to "disrupting the real estate market," and Plaintiffs do not even attempt to explain what it would mean to "disrupt[] the real estate market" or why such a description of the design of Opendoor's business model would have been objectively false or misleading.

**C.    The Section 11 Claim Should Be Dismissed Because the CAC and Documents It Incorporates Establish Negative Causation.**

The Underwriters incorporate the Opendoor Defendants' reply argument that negative causation mandates the Section 11 claim's dismissal.  (*See* OD Reply at 18–20.)

**III.    CONCLUSION**

The CAC fails to plead that any of the challenged statements was false, and should therefore be dismissed.

---

[26] *See In re Edward D. Jones & Co., L.P. Sec. Litig.*, 2022 WL 1460205, at *2 (E.D. Cal. May 9, 2022) ("Plaintiffs' failure to plead this theory ends the analysis as a complaint cannot be amended through an opposition to a motion to dismiss.") (citing *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)).

[27] *See Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276–77 (9th Cir. 2017) (finding aspirational statement inactionable puffery and not pleaded to be false, in any event).

Respectfully submitted: October 13, 2023

BEYERS FARRELL PLLC

By: /s/ *Michael J. Farrell*
    Michael J. Farrell

Michael J. Farrell, AZ 015056
mfarrell@bfazlaw.com
Maureen Beyers, AZ 017134
mbeyers@bfazlaw.com
99 East Virginia Avenue, Suite 220
Phoenix AZ 85004
Telephone: 602-738-3022

Jonathan Rosenberg (*pro hac vice*)
jrosenberg@omm.com
William J. Sushon (*pro hac vice*)
wsushon@omm.com
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Telephone: 212.326.2000
Facsimile: 212.326.2061

Amy S. Park (*pro hac vice*)
apark@omm.com
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, CA 94025-7019
Telephone: (650) 473-2600
Facsimile: (650) 473-2601

*Attorneys for the Underwriters*

12