**CLARK HILL PLC**
Daniel P. Thiel, SBN #035831
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: 480-684-1100
Fax: 480-684-1199
dthiel@clarkhill.com

*Local Counsel for Plaintiffs*

**LABATON SUCHAROW LLP**
Michael P. Canty (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
Guillaume Buell (admitted *pro hac vice*)
Nicholas Manningham (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
jchristie@labaton.com
gbuell@labaton.com
nmanningham@labaton.com

*Counsel for Plaintiffs*

[Additional Counsel on signature page]

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE OPENDOOR TECHNOLOGIES INC. SECURITIES LITIGATION | Case No. 2:22-CV-01717-MTL<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO OPENDOOR DEFENDANTS' MOTION FOR AN ORDER DIRECTING THE SUBMISSION OF COUNSEL AND CONFIDENTIAL WITNESS AFFIDAVITS**<br><br>CLASS ACTION |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................................ii

I.      INTRODUCTION ..........................................................................................1

II.     FACTUAL BACKGROUND ........................................................................3

      A.      Lead Counsel's Contact with CW 2.....................................................3

      B.      Lead Counsel's Contact with CW 5.....................................................4

      C.      Lead Counsel's Contact with CW 6.....................................................5

      D.      Lead Counsel's Contact with CW 8.....................................................5

III.    ARGUMENT .................................................................................................6

      A.      Defendants' Motion is Procedurally Improper ....................................6

             1.      Defendants' Motion Violates Rule 12(b) of the Federal Rules of Civil Procedure..........................................................................6

             2.      Defendants' Motion Violates the PSLRA Discovery Stay ..............10

      B.      Defendants' Legal Authorities Are Inapposite ..........................12

      C.      The "Anhang Declaration" and Defendants' Motion are Highly Misleading ................................................................................15

IV.     CONCLUSION ...........................................................................................17

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*In re AOL Time Warner, Inc. Sec. Litig.*,
2006 WL 1997704 (S.D.N.Y. July 13, 2006) .............................................................. 10

6
*In re Applied Micro Circuits Corp. Sec. Litig.*,
7
2002 WL 34716875 (S.D. Cal. Oct. 4, 2002) ......................................................... 9, 10

8
*Bolling v. Gold*,
2015 WL 6870617 (W.D. Wash. Nov. 9, 2015) ........................................................ 12
9

10
*Campo v. Sears Holdings Corp.*,
371 F. App'x 212 (2d Cir. 2010) ............................................................................... 12

11
*City of Livonia Emps.' Ret. Sys. v. Boeing Co.*,
12
711 F.3d 754 (7th Cir. 2013) ..................................................................................... 14

13
*Dep't of Treasury of N.J. v. Cliffs Nat. Res. Inc.*,
14
2015 WL 6870110 (N.D. Ohio Nov. 6, 2015) ........................................................... 13

15
*In re Cell Therapeutics, Inc. Class Action Litig.*,
2010 WL 4791808 (W.D. Wash. Nov. 18, 2010) ................................................. 11, 12
16

17
*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
2018 WL 3772675 (D.N.J. Aug. 8, 2018) .................................................................. 14

18
*Hatamian v. Advanced Micro Devices, Inc.*,
19
2015 WL 511175 (N.D. Cal. Feb. 6, 2015) ............................................................. 2, 8

20
*Iron Workers Loc. 580 Joint Funds v. NVIDIA Corp.*,
21
522 F. Supp. 3d 660 (N.D. Cal. 2021), *aff'd in part, rev'd in part and
remanded sub nom. on other grounds E. Ohman J:or Fonder AB v.
NVIDIA Corp.*, 81 F.4th 918 (9th Cir. 2023) ........................................................... 12
22

23
*Khoja v. Orexigen Therapeutics, Inc.*,
24
899 F.3d 988 (9th Cir. 2018) ....................................................................................... 7

25
*Kiken v. Lumber Liquidators Holdings, Inc.*
155 F. Supp. 3d 593 (E.D. Va. 2015) ........................................................................ 15
26

27
*Lifschitz v. NextWave Wireless Inc.*,
2011 WL 940918 (S.D. Cal. Mar. 16, 2011) ............................................................. 12

28

*In re Millennial Media, Inc. Sec. Litig.*,
   2015 WL 3443918 (S.D.N.Y. May 29, 2015) ....................................................... 13, 14

*In re Par Pharm. Sec. Litig.*,
   2009 WL 3234273 (D.N.J. Sept. 30, 2009) .................................................................. 11

*In re Rayonair Sec. Litig.*,
   2016 WL 3022149 (M.D. Fla. May 20, 2016)........................................................... 10, 12

*SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. of Cal.*,
   189 F.3d 909 (9th Cir. 1999) ................................................................................... 10

*In re Symbol Techs., Inc. Sec. Litig.*,
   2017 WL 1233842 (E.D.N.Y. Mar. 31, 2017)............................................................. 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)............................................................................................... 7, 8

*Union Asset Mgmt. Holding AG v. Sandisk LLC*,
   227 F. Supp. 3d 1098 (N.D. Cal. 2017) ......................................................... 1, 2, 8, 9

**Docketed Cases**

*In re Lumber Liquidators Holdings, Inc. Sec. Litig.*,
   4:13-cv-00157 (E.D.N.Y. July 14, 2015), ECF No. 91 ............................................. 14

**Statutes**

Private Securities Litigation Reform Act ("PSLRA") .............................................. *passim*
   15 U.S.C. §78u-4(b)(3)(B)....................................................................................... 10

Securities Exchange Act of 1934 ................................................................................ 7
   Section 10(b)............................................................................................................ 7

**Other Authorities**

CONFIDENTIAL WITNESSES INTERVIEWS IN SECURITIES
   LITIGATION, 96 N.C. L. Rev. 789, 806 (2018) ......................................................... 9

Fed R. Civ. P. 12
   (b)......................................................................................................................... 1, 6
   (d).......................................................................................................................... 7

Lead Plaintiffs Indiana Public Retirement System, Oakland County Employees' Retirement System, and Oakland County Voluntary Employees' Beneficiary Association ("Lead Plaintiffs") and Additional Plaintiff Stuart Graham Hereford ("Additional Plaintiff" and together with Lead Plaintiffs, "Plaintiffs"), respectfully submit this Memorandum of Law in Opposition to Opendoor Defendants' Motion for an order directing the submission of counsel and confidential witness ("CW") affidavits.[1]  Defendants' Motion is without merit and the relief sought should be denied.

## I.    INTRODUCTION

Faced with the particularized allegations in the Complaint, Opendoor and its counsel contacted the CWs referenced in the Complaint and induced four of them to sit for unofficial, non-transcribed interviews.  Yet, none of the CWs have submitted a declaration recanting or even questioning any of the allegations attributed to them in the Complaint. To this day, none of the CWs have contacted Lead Counsel or its investigators to question any facts attributed to them. Only after being contacted by Defendants' counsel and asked a series of self-serving and leading questions did any CW purportedly take issue with their attributed accounts. According to Defendants' counsel's interpretation of their own interviews, they now claim—for the first time—not that the alleged statements were false or inaccurate, but that a handful of CW allegations in the Complaint were incomplete or "taken out of context."  Based on this, Defendants now urge the Court to order Lead Counsel and the challenged CWs to submit sworn affidavits, i.e., engage in pre-motion to dismiss discovery. *See* Motion at 15-16. The Court should swiftly reject this request, as similar tactics have been repeatedly rejected by courts in this Circuit and elsewhere.

As an initial matter, Defendants' Motion violates Rule 12(b) of the Federal Rules of Civil Procedure, as these types of disputes are clearly factual disputes that are not appropriate to resolve at the motion to dismiss stage. *See Union Asset Mgmt. Holding AG*

---

[1] Capitalized terms herein have the same meaning as set forth in the Consolidated Amended Complaint for Violations of the Federal Securities Laws (ECF No. 39) (the "Complaint").  Citations to "¶___" refer to paragraphs of the Complaint.  References to "Motion at ___" are to Opendoor Defendants' Motion for an order directing the submission of counsel and confidential witness affidavits (ECF No. 57).

1   *v. Sandisk LLC*, 227 F. Supp. 3d 1098, 1100 (N.D. Cal. 2017) ("*Sandisk*"). Indeed, "while
2   a district judge is considering a motion to dismiss, there is a strong argument that
3   defendants should never be submitting recanting declarations, and that courts should be
4   striking any such declarations sight unseen." *Id.* at 1101. At most, Defendants' Motion
5   boils down to credibility issues which must be assessed by the trier of fact ***after*** there has
6   been an opportunity for full and fair discovery on these issues, as it would be "clearly []
7   inappropriate for the Court to simply treat [Defendants'] declaration as true" at the pleading
8   stage. *Id.* at 1099.

9        Defendants' Motion also violates the Private Securities Litigation Reform Act
10  ("PSLRA"). In all actions arising under the PSLRA, "all discovery and other proceedings
11  shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. §78u-4(b)(3)(B).
12  Defendants' Motion is nothing more than a unilateral attempt to obtain pre-motion to
13  dismiss discovery, which is improper. Courts in this Circuit and elsewhere routinely reject
14  such attempts because they involve contested issues of witness credibility and factual
15  disputes that cannot be considered at the motion to dismiss stage, and these courts
16  recognize that any perceived differences in witness interviews should be viewed
17  skeptically, as they are regularly disproven during discovery and shown to be the product
18  of actual, perceived, or anticipated retaliation or other repercussions from that witness's
19  former employer. *See e.g.*, *Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 511175,
20  at *2 (N.D. Cal. Feb. 6, 2015) ("*AMD*"); *see also* Section III(A)(1) (collecting cases).

21       There are strong reasons to follow these in-circuit precedents here. Unlike the facts
22  in the out-of-circuit cases Defendants rely on, this is not a case where the CWs claim that
23  they never spoke to Lead Counsel, nor is this a case where the CWs spoke only to hired
24  investigators and not directly to the attorneys and employees of Lead Counsel. Indeed, this
25  is not even a case where the CWs are recanting or disavowing their previous statements.
26  To the contrary, Defendants do not even dispute that the CWs here knowingly and
27  voluntarily spoke to Lead Counsel. Lead Counsel and its investigators told each witness
28  that they were investigating potential securities law violations against the CW's former

1  employer, Opendoor, and each CW voluntarily spoke to Lead Counsel's investigators and

2  attorneys after learning that information. As discussed in Section II, Lead Counsel gave

3  each challenged CW the opportunity to confirm the accuracy of the statements that would

4  be attributed to them well before the Complaint was filed. And following the filing of the

5  Complaint, Lead Counsel sent each CW, via Federal Express, a copy of the Complaint.

6  Yet, not a single CW has ever contacted Lead Counsel or its investigators to clarify or

7  dispute any statements attributed to them. Even now, none of the CWs have submitted a

8  declaration recanting or questioning any statement attributed to them.

9       Therefore, Defendants' Motion should be denied in its entirety.

10  **II.    FACTUAL BACKGROUND**

11       Lead Counsel Labaton Sucharow LLP ("Lead Counsel" or "Labaton Sucharow")

12  undertook an extensive pre-filing investigation concerning the circumstances and facts

13  surrounding this case. *See* Complaint at 2. Lead Counsel's investigation included, among

14  other things, interviewing former employees of Opendoor. *Id.* Lead Counsel and its team

15  of in-house investigators ("Labaton Investigators") conducted those interviews pursuant to

16  internal policies designed to ensure that each statement included in the Complaint

17  attributed to a CW accurately reflects information provided by that CW. *See* Declaration

18  of James T. Christie ("Christie Decl.") at ¶¶3-10.

19       **A.    Lead Counsel's Contact with CW 2[2]**

20       Labaton Investigators and two Labaton Sucharow attorneys contacted CW 2 by

21  phone on April 3, 2023. *Id.* at ¶12. Before any substantive questions were asked, a Labaton

22  Investigator identified herself and two Labaton Sucharow attorneys, confirmed that CW 2

23  did not work at Opendoor, and explained that Labaton Sucharow was investigating

24  securities law violations against CW 2's former employer, Opendoor. *Id.* Labaton

25  Investigators took detailed and contemporaneous notes during the call. *Id.*

26       On April 14, 2023, Labaton Investigators and Labaton Sucharow attorneys

27  conducted a confirmatory call with CW 2 to go over every statement that would be

28  ───────────────
   [2] Consistent with the Complaint, all CWs are described using feminine pronouns.

attributed to CW 2 in the Complaint. *Id.* at ¶13. A Labaton Investigator read every statement and CW 2 confirmed the accuracy of every statement. *Id.* Lead Counsel made any minor clarifications requested by CW 2. *Id.* During the confirmatory call, Labaton Investigators informed CW 2 that her statements would be used in the Complaint and that she would be identified as a CW. *Id.* CW 2 did not object to being a CW or having her statements used in the Complaint. *Id.*

On April 19, 2023, Labaton Investigators mailed a copy of the filed Complaint via FedEx to CW 2. *Id.* at ¶15. CW 2 did not contact Lead Counsel or Labaton Investigators following receipt of the Complaint, nor did CW 2 otherwise assert at any time that any statements attributed to her in the Complaint were not accurate or were misleading or taken out of context. *Id.* at ¶16.

## B. Lead Counsel's Contact with CW 5

A Labaton Investigator contacted CW 5 by phone on October 18, 2022. *Id.* at ¶17. Before any substantive questions were asked, the Labaton Investigator identified himself, confirmed that CW 5 did not work at Opendoor, and explained that Labaton Sucharow was investigating securities law violations against CW 5's former employer, Opendoor. *Id.* The Labaton Investigator took detailed and contemporaneous notes during the call. *Id.*

On April 4, 2023, Labaton Investigators and Labaton Sucharow attorneys conducted a confirmatory call with CW 5 to go over every statement that would be attributed to CW 5 in the Complaint. *Id.* at ¶18. A Labaton Investigator read every statement and CW 5 confirmed the accuracy of every statement. *Id.* Lead Counsel made any minor clarifications requested by CW 5. *Id.* During the confirmatory call, a Labaton Investigator informed CW 5 that her statements would be used in the Complaint and that she would be identified as a CW. *Id.* CW 5 did not object to being a CW or having her statements used in the Complaint. *Id.*

On April 19, 2023, Labaton Investigators mailed a copy of the filed Complaint via FedEx to CW 5. *Id.* at ¶20. CW 5 did not contact Lead Counsel or Labaton Investigators following receipt of the Complaint, nor did CW 5 otherwise assert at any time that any

statements attributed to her in the Complaint were not accurate or were misleading or taken out of context. *Id.* at ¶21.

### C.    Lead Counsel's Contact with CW 6

A Labaton Investigator contacted CW 6 by phone on November 17, 2022. *Id.* at ¶22. Before any substantive questions were asked, the Labaton Investigator identified himself, confirmed that CW 6 did not work at Opendoor, and explained that Labaton Sucharow was investigating securities law violations against CW 6's former employer, Opendoor. *Id.* The Labaton Investigator took detailed and contemporaneous notes during the call. *Id.*

On April 4, 2023, Labaton Investigators and Labaton Sucharow attorneys followed up and conducted a confirmatory call with CW 6 to go over every statement that would be attributed to CW 6 in the Complaint. *Id.* at ¶23. A Labaton Investigator read every statement and CW 6 confirmed the accuracy of every statement. *Id.* Lead Counsel made any minor clarifications requested by CW 6. *Id.* During the confirmatory call, a Labaton Investigator informed CW 6 that her statements would be used in the Complaint and that she would be identified as a CW. *Id.* CW 6 did not object to being a CW or having her statements used in the Complaint. *Id.*

On April 19, 2023, Labaton Investigators mailed a copy of the filed Complaint via FedEx to CW 6, however, the Complaint was sent back. *Id.* at ¶25. As a result, Labaton Investigators sent CW 6 an email in early May 2023 attaching a copy of the Complaint. *Id.* CW 6 did not contact Lead Counsel or Labaton Investigators following receipt of the Complaint, nor did CW 6 otherwise assert at any time that any statements attributed to her in the Complaint were not accurate or were misleading or taken out of context. *Id.* at ¶26.

### D.    Lead Counsel's Contact with CW 8

On April 4, 2023, a Labaton Investigator contacted CW 8 by phone. *Id.* at ¶27. Before any asking any questions, the Labaton Investigator identified himself, confirmed that CW 8 was not currently employed by Opendoor, and explained the purpose of the call. *Id.* At the end of the call, the Labaton Investigator explained to CW 8 that he would memorialize their conversation for Labaton Sucharow attorneys working on the case, and

1   told CW 8 that the attorneys may have follow up questions. *Id.* CW 8 stated that she was

2   fine with such a follow up call. *Id.* The Labaton Investigator took detailed and

3   contemporaneous notes during the call. *Id.*

4       The Labaton Investigator and Labaton Sucharow attorneys attempted to call CW 8

5   for a follow-up on April 10, 2023. *Id.* at ¶28. CW 8 did not answer, and thus, the Labaton

6   Investigator left a voicemail on April 10, 2023, advising CW 8 that she would be a CW in

7   the Complaint and that Lead Counsel would like to confirm the statements that would be

8   attributed to her in the Complaint. *Id.* CW 8 did not respond, and on April 11, 2023, a

9   Labaton Investigator sent CW 8 a letter stating that the enclosed statements were being

10  attributed to her in the Complaint against Opendoor. *Id.* at ¶¶28-29. CW 8 did not try to

11  reach out to Lead Counsel or Labaton Investigators. *Id.* at ¶30. After filing the Complaint,

12  Lead Counsel sent CW 8 a copy of the Complaint, which was delivered on April 21, 2023.

13  *Id.* CW 8 did not contact Lead Counsel or Labaton Investigators following receipt of the

14  Complaint, nor did CW 8 otherwise assert at any time that any statements attributed to her

15  in the Complaint were not accurate or were misleading or taken out of context. *Id.* at ¶31.[3]

16  ### III.    ARGUMENT

17       ####    A.    Defendants' Motion is Procedurally Improper

18       Defendants' challenges to the veracity of the accounts of four CWs detailed in the

19  Complaint raise contested factual questions that are not properly resolved at the pleading

20  stage under the Federal Rules of Civil Procedure and PSLRA.

21          ##### 1.    Defendants' Motion Violates Rule 12(b) of the Federal Rules of
                        Civil Procedure

22

23       The reason Defendants seek to side-step the PSLRA and engage in one-way

24  discovery at this time is clear: they seek to contradict or chip away at the Complaint's well-

25  ---

[3] Defendants comment that they spoke to CW 1 but terminated the phone call when
26  CW 1 told them that she is represented by counsel. *See* Motion at 5 n.2. However,
    Defendants fail to mention that after being told by CW1's counsel that the allegations
27  attributed to CW 1 were accurate and that she confirmed the accuracy of her statements to
    Lead Counsel prior to the filing of the Complaint, Defendants' nonetheless re-contacted
    CW 1's counsel, citing CW 1's employment agreement to pressure CW 1 into cooperating,
28  even sending a Zoom meeting invite to CW 1 through her counsel. Christie Decl. at ¶32.

6

pled factual allegations in connection with their pending motion to dismiss. This is improper. While the PSLRA requires Plaintiffs plead their claims with particularity, it does not alter certain basic standards at the pleading stage. The plain text of Federal Rule of Civil Procedure 12(d) is clear and unambiguous:

> If, on a ***motion under Rule 12(b)(6)*** or 12(c), ***matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56***. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d) (emphasis added).

Defendants have not requested that the Court treat their motion as one for summary judgment, and as such, Rule 12 stops Defendants' quixotic quest to have the Court consider extraneous material with their motion to dismiss.

Moreover, the Supreme Court has held that, when "faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In reversing dismissals of Exchange Act claims, the Ninth Circuit has likewise emphasized the "prohibition against resolving factual disputes at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). As the Ninth Circuit explained, "[i]f defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Id*. at 999.

Defendants' Motion improperly urges the Court to do exactly what *Khoja* proscribes: accept Defendants' characterization of extrinsic evidence (the Anhang Declaration) to resolve a factual dispute against Plaintiffs' well-pled allegations. However, that is not proper at this stage. Defendants will have the opportunity to test the CWs' credibility during discovery. Indeed, it "will fall ***within the jury's authority to assess the***

1    *credibility of witnesses [and] resolve genuine issues of fact* . . . .” *Tellabs, Inc.* 551 U.S.

2    at 311 (emphasis added).

3           Courts in this Circuit have consistently rejected similar attempts to engage in pre-

4    motion to dismiss discovery with respect to CW allegations. For example, in *AMD*,

5    defendants filed a motion to strike the accounts of two confidential witnesses contained in

6    a securities class action complaint. 2015 WL 511175 at *1. Defense counsel there obtained

7    declarations from the CWs who suddenly denied making the statements attributed to them

8    in the complaint. Citing the same out-of-circuit cases Defendants do here, defense counsel

9    in *AMD* filed a motion to strike the CW allegations. *Id.* However, the court squarely

10   rejected defendants’ tactic (as well as their accompanying motion to dismiss). *Id.* In

11   denying the motion to strike, the court held that the appropriate time to explore the

12   confidential witnesses’ denials was during discovery, which “will provide the parties an

13   opportunity to explore these questions further, specifically in depositions at which both

14   parties—and a court reporter—may be present.” *Id.* at *3.

15          In its order, the *AMD* court further recognized reasons that “undermine[d] the

16   probative value of the declarations offered by defendants” and, simultaneously, reasons to

17   trust the witnesses’ accounts described in the complaint. *Id.* at *2. Specifically, just like

18   here, the former employees cited in the *AMD* complaint read the pleading “before the

19   claims of inaccuracy or misattribution surfaced” and raised their purported concerns “only

20   *after* defendants had contacted [them].” *Id.* (emphasis added). The reasons for the

21   witnesses’ disavowals, the court reiterated, raised disputed factual “questions [that] are

22   more appropriately raised in the context of summary judgment after the benefit of full

23   discovery, or for consideration by a jury.” *Id.*

24          Similarly, in *Sandisk*, the defendants moved to dismiss the complaint with prejudice,

25   submitting a “‘recanting declaration’ in which [the CW] allege[d] he did not make some of

26   the statements attributed to him.” 227 F. Supp. 3d at 1099.  The court refused to consider

27   the recanting declaration, explaining “[i]t would clearly be inappropriate for the [c]ourt to

28   simply treat the declaration as true” at the pleading stage. *Id*. As the *Sandisk* court properly

1    recognized, "[the CW's] declaration testimony . . . might be false, because the witness feels

2    intimidated by the defendants." *Id*. For example, the CW might, "after being approached

3    by [the company], have become concerned that he overstated his knowledge to the

4    plaintiffs' investigator, and he might now be overcompensating by recanting more of the

5    allegations than he should." *Id*.[4] The *Sandisk* court also correctly noted the "impropriety"

6    of the defendants' tactic, calling it "a ruse for putting a recantation in front of the district

7    judge in the hope it will influence the decision on dismissal." *Id*. at 1100. The court further

8    concluded that "while a district judge is considering a motion to dismiss, there is a strong

9    argument that defendants should never be submitting recanting declarations, and that courts

10   should be striking any such declarations sight unseen." *Id*. at 1101.

11       Yet another court in this Circuit rejected similar tactics in *In re Applied Micro

12   Circuits Corp. Sec. Litig.*, 2002 WL 34716875, at *3 (S.D. Cal. Oct. 4, 2002). There,

13   defense counsel submitted declarations of former employees for the express purpose of

14   rebutting the complaints' allegations, just as Defendants do here with Defendants'

15   counsel's declaration. *Id*. at *2. The court refused to consider the submissions in support

16   of the defendants' motion to dismiss "[b]ecause the declarations are extrinsic materials."

17   *Id*. at *3. In rejecting defendants' tactic, the court noted that, like here, the "[p]laintiff

18   provides a plausible explanation as to why sources are now contradicting themselves;

19   [p]laintiff claims the change occurred after having been contacted by Defendants'

20   attorneys." *Id*. at *11. In denying the motion to dismiss, the court explained that the

21   accuracy of the complaint's allegations "boils down to an issue of credibility to be

22   determined by a trier of fact"—i.e., ***not*** for resolution on the pleadings. *Id*.

23

24   _____

25       [4] As a legal scholar recently noted, "[i]n a number of cases the declarations submitted
     by allegedly recanting CWs reflected only immaterial differences between the declarations
26   and the material attributed to them in plaintiffs' complaints." CONFIDENTIAL
     WITNESSES INTERVIEWS IN SECURITIES LITIGATION, 96 N.C. L. Rev. 789, 806
27   (2018) (citing cases). Important to this dispute, the author noted that "it seems likely that
     much of the recanting that does occur is the product of coercion by defendants and their
28   counsel, and/or the fear of retaliation experienced by confidential witnesses." *Id*. at 806-
     807.

At bottom, the issues raised by Defendants' Motion boil down to credibility issues—whether Defendants' counsel's interpretation of the CWs' clarifications or added context is accurate—which are factual disputes that cannot be properly determined on a motion to dismiss. Moreover, this Court should be skeptical of Defendants' Motion because, as noted above, it is not uncommon for CWs to change their story once confronted by their former employer who may be able to exert pressure—financial or otherwise—to encourage those CWs to alter their accounts.

Defendants' attempt to convert their motion to dismiss into a fact-based evidentiary battle is improper, and courts have repeatedly concluded that substituting a fact declaration's assertions for a complaint's factual allegations contradicts basic principles governing motions to dismiss. *See, e.g., id.* at *3 ("If the Court were to consider [the declarations], it would in fact convert this motion to dismiss into a motion for summary judgment, and the Court is not willing to do so."); *In re Rayonair Sec. Litig.*, 2016 WL 3022149, at *1 (M.D. Fla. May 20, 2016) (explaining that the court is prohibited from "considering [a recanting witness] declaration without converting the motion to dismiss into a motion for summary judgment, a course of action neither party requests").

### 2. Defendants' Motion Violates the PSLRA Discovery Stay

In all actions arising under the PSLRA, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. §78u-4(b)(3)(B). The stay continues until the "court has sustained the legal sufficiency of the complaint." *SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. of Cal.*, 189 F.3d 909, 913 (9th Cir. 1999). The stay applies to both plaintiffs and defendants—there is no exception that allows the *defendants* in a PSLRA case to take discovery prior to a ruling on a motion to dismiss. *See In re AOL Time Warner, Inc. Sec. Litig.*, 2006 WL 1997704, at *2 (S.D.N.Y. July 13, 2006).

Here, Defendants are asking the Court to side-step the PSLRA and obtain discovery before the motion to dismiss has been decided. Although Defendants argue that obtaining CW affidavits does "not constitute traditional 'discovery' that would be subject to the

1    PSLRA stay," Motion at 11 n. 4, they offer **no** support for this assertion. Nor could they,

2    rather, courts facing such requests have consistently rejected attempts to contradict CW

3    allegations at the motion to dismiss stage—finding that it is improper to engage in pre-

4    motion to dismiss discovery even in cases where, unlike here, defendants obtained **sworn**

5    statements from CWs recanting their statements prior to the discovery stay being lifted.[5]

6         For example, in *Cell Therapeutics*, defendants submitted declarations from three

7    confidential witnesses and argued, as Defendants do here, that "their statements to

8    [p]laintiffs' investigators have been taken out of context, misrepresented or (in some cases)

9    fabricated." *In re Cell Therapeutics, Inc. Class Action Litig.*, 2010 WL 4791808, at *1

10   (W.D. Wash. Nov. 18, 2010). Defendants in that case requested that the court consider the

11   confidential witness declarations in assessing the validity of the complaint, and also

12   requested leave to depose the remaining confidential witnesses to determine if the

13   statements in the complaint based on these witnesses had merit. *Id.* However, the court

14   denied the request for pre-motion to dismiss discovery, noting that "neither the Federal

15   Rules nor the [PSLRA] supports the practice" and ultimately considered the CW statements

16   in the complaint when denying the motion to dismiss. *Id.* at *2; *see also*, *e.g.*, *In re Par*

17   *Pharm. Sec. Litig.*, 2009 WL 3234273, at *11-12 (D.N.J. Sept. 30, 2009) (striking a

18   declaration from a supposedly recanting CW at the motion to dismiss stage while noting

19   the PSLRA's discovery stay).

20        Similarly, the Court here should deny Defendants' Motion. Defendants' Motion

21   contravenes the PSLRA and is nothing more than an attempt to obtain discovery and

22   improperly use it to undercut the Complaint's allegations at the motion to dismiss stage.

23   Defendants would have this Court allow them to take piecemeal, strategic discovery in

24   order to obtain dismissal of the Complaint; yet not afford Plaintiffs any opportunity to take

25   discovery from Defendants in an effort to buttress the Complaint's well-pled allegations.

26   This is patently prejudicial, contrary to the weight of authority, and should not be allowed.

27        [5] Here, on the other hand, Defendants have not produced declarations from any CW.
28   Instead, Defendants merely offer hearsay statements from an attorney based on what
     certain CWs supposedly told him.

### B.      Defendants' Legal Authorities Are Inapposite

Defendants do not—because they cannot—cite to a *single* case from within this Circuit that suggests there is any relevant exception allowing the Court to engage in pre-motion to dismiss discovery. Indeed, the in-Circuit cases Defendants cite in their Motion highlight the impropriety of their request. For example, the court's decision in *Bolling v. Gold*, 2015 WL 6870617 (W.D. Wash. Nov. 9, 2015) **was on a motion for summary judgment**, not a motion to dismiss, and thus does not apply to the facts here.[6]

Instead, Defendants' attempt to obtain counsel and CW affidavits relies on *dicta* from a footnote in the Second Circuit's unpublished opinion in *Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 216 n.4 (2d Cir. 2010). *See* Motion at 11, 14-16. Defendants' reliance on *Campo* is misplaced. The footnote Defendants' claim supports their position is *dicta*—the Second Circuit noted that the plaintiff waived the argument, and thus, it was not an issue representing a case or controversy before that court—and courts in this circuit and elsewhere have roundly rejected similar attempts to rely on *Campo* to engage in discovery at the pleading stage. *See, e.g.*, *Cell Therapeutics*, 2010 WL 4791808, at *2 (*Campo* "is dicta" and other courts "specifically reject" it); *Iron Workers Loc. 580 Joint Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 672 (N.D. Cal. 2021), *aff'd in part, rev'd in part and remanded sub nom. on other grounds E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918 (9th Cir. 2023) (rejecting defendants' argument, based on *Campo*, that the court should consider a CW's recanting declaration at the motion to dismiss because "it is improper to resolve factual disputes concerning [CW's] account at this stage"); *Rayonair*, 2016 WL 3022149, at *1 ("having carefully reviewed *Campo* and the related authority [d]efendants provided, the [c]ourt is unpersuaded that considering the [recanting] declaration or ordering

---

[6] *Lifschitz v. NextWave Wireless Inc.*, 2011 WL 940918 (S.D. Cal. Mar. 16, 2011) is similarly unpersuasive. There, the court did not address any CW affidavit attempting to recant previous statements. Instead, the court found that the complaint failed to plead particularized facts giving rise to a strong inference of scienter because it merely "attempts to send the court on a "search mission through the allegations of twelve confidential witnesses without any particular directions." *Id.* at *2. Thus, the court was skeptical of the CW allegations because they were added to "pages upon pages of allegations in the rear of the complaint" without any sort of particularity, as opposed to the accuracy of the CW statements.  Thus, *NextWave Wireless* does not apply here.

that [witness] be deposed is the proper course of action at this time" because controlling authority "seems to prohibit the [c]ourt from considering [witness's] declaration without converting the motion to dismiss into a motion for summary judgment").

Defendants also rely heavily on *In re Millennial Media, Inc. Sec. Litig.*, 2015 WL 3443918 (S.D.N.Y. May 29, 2015) in support of their Motion. But that case also did not address pre-motion to dismiss discovery or provide any support for the relief Defendants are seeking. Indeed, the holding in *Millennial Media* is not based on any controlling authority and goes well beyond the contours of the cases it relied on and all other existing precedent. The *Millennial Media* court itself acknowledged that it was "unaware of any case or ethics canon" supporting certain of its observations, and that its preference was "not one of law." *Id.* at *13-14. Courts around the country, including within the Second Circuit, have routinely rejected *Millennial Media*, stating that it is "dicta, not followed by at least one other court in that district, ha[s] no precedential effect on this [c]ourt, and relate[s] only to the facts of that case." *Dep't of Treasury of N.J.* v. *Cliffs Nat. Res. Inc.*, 2015 WL 6870110, at *4 n.5 (N.D. Ohio Nov. 6, 2015). Indeed, *Millennial Media* is "of questionable precedential value and, in any event, [is] entirely dependent on the facts of that case." *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *12 n.8 (E.D.N.Y. Mar. 31, 2017).

Notwithstanding, the facts of *Millennial Media* are readily distinguishable. There, the judge raised two concerns with the plaintiff's investigation: (i) the plaintiff made no effort to confirm the accuracy of the statements used in the complaint; and (ii) the former employees did not know that their statements could appear in a complaint alleging securities fraud. *Millenial Media*, 2015 WL 3443918, at *6-14. Here, no such concerns are present. Lead Counsel and its investigators identified themselves at the outset of each interview as working for plaintiffs' counsel in a class action securities litigation against Opendoor and set forth the purpose of the conversation. Christie Decl. at ¶¶12, 17, 22, 27. Lead Counsel and its investigators also told each CW that the information they provided would be used in a securities complaint against Opendoor. *Id.* at ¶¶13, 18, 23, 28-29. Then, Lead Counsel and its investigators confirmed the accuracy of the statements from three (3)

13

1    of the challenged CWs (CWs 2, 5, and 6) before filing the Complaint. *Id.* at ¶¶13, 18, 23.

2    Lead Counsel and its investigators made substantial efforts to confirm the accuracy of the

3    remaining CW, CW 8. However, CW 8 did not respond. Specifically, a Labaton

4    Investigator left CW 8 a voicemail stating that she would be a CW in the Complaint and

5    that Lead Counsel wanted to confirm her statements with her, however, CW 8 never

6    returned the call. *Id.* at ¶28. Thereafter, Lead Counsel sent CW 8 a copy of the statements

7    that would be attributed to her nearly a week before the Complaint was filed, and after

8    filing, sent CW 8 a copy of the Complaint *Id.* at ¶¶29-30. CW 8 ***never*** reached out to Lead

9    Counsel or its investigators to indicate any concerns whatsoever. *Id.* at ¶¶30-31.[7]

10         Moreover, and important to the dispute here, the court in *Millennial Media* "was

11    provided with affidavits by the confidential witnesses themselves, not the hearsay of

12    defendant's attorneys." *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675,

13    at *12 (D.N.J. Aug. 8, 2018). No such affidavits are present here. Like in *Cognizant Tech.*,

14    Defendants here submitted only an attorney declaration purporting to summarize

15    conversations the attorney had with a CW. The *Cognizant Tech.* court refused to strike the

16    CW allegations, noting in part that the attorney's hearsay declaration was insufficient on

17    its own to warrant striking allegations. *Id.* at *12-13.

18         Defendants' reliance on *City of Livonia Employees' Retirement System v. Boeing*

19    *Co.* is similarly misplaced. In *Boeing*, the PSLRA discovery stay had been lifted and merits

20    discovery had proceeded. 711 F.3d 754 (7th Cir. 2013). Moreover, as the Seventh Circuit

21    noted, and Defendants conveniently ignore, the procedural challenge to the court's use of

22    evidence outside the four corners of the complaint "founder[ed] on the plaintiffs'

23    abandonment" of the CW allegations. *Id.* at 761. Likewise, Defendants' reliance on the

24    July 14, 2015 order in *In re Lumber Liquidators Holdings, Inc. Securities Litigation*, 4:13-

25    cv-00157, (E.D.N.Y. July 14, 2015), ECF No. 91, is unpersuasive in that it is a clear outlier

26

27           [7] Indeed, the Anhang Declaration admits that CW 8 received her statements before the

28    Complaint was filed. Although CW 8 claims she did not have the opportunity to review the
statements because she was on vacation, *see* Anhang Decl. at ¶30(b), the simple fact is CW
8 never once tried to contact Lead Counsel or its investigators after her vacation.

that: (1) is contrary to well-established law that this Court should not consider matters extraneous to the pleadings on the motion to dismiss, such as affidavits; (2) it is outside this circuit; (3) it is contrary to the weight of precedent outside this circuit; and (4) it does not even **mention** the PSLRA discovery stay or whether a court may properly consider extraneous evidence on a motion to dismiss. *See* Anhang Decl. Ex. 1. Furthermore, shortly after its order, the court there *upheld the complaint*, basing its decision in part on the confidential witnesses pled by the plaintiffs. *Kiken* v. *Lumber Liquidators Holdings, Inc.* 155 F. Supp. 3d 593, 608 (E.D. Va. 2015).

### C. The "Anhang Declaration" and Defendants' Motion are Highly Misleading

Defendants' Motion is purportedly based on the belief that there are "serious concerns raised regarding the CWs." Motion at 17. Putting aside for the moment that Defendants' submissions are inappropriate and may not be considered at the motion to dismiss stage, they are also highly misleading and do not change the Complaint's well-pled allegations.

Most notably, Defendants argue that CW 6 did not state that Opendoor pricing analysts **had** to adjust both initial and **final** offers because CW 6 merely stated that pricing analysts **could** adjust **initial** offers. Motion at 10. However, the Complaint does not allege that CW 6 said anything about final offers. Quite the opposite. The Complaint clearly alleges that "CW 6 [stated] that the analysts and portfolio managers **could** use certain data to adjust the **initial** offer price." ¶72 (emphasis added). Defendants appear to take issue with Plaintiffs' Opposition Brief to Opendoor Defendants' Motion to Dismiss (ECF No. 55) ("Opp. Brief"), which cites to **several paragraphs** in the Complaint to argue that Opendoor's pricing analysts adjusted the algorithm's initial and final offers. Specifically, the Opposition Brief cites to ¶¶62-73 because those paragraphs contain CW allegations regarding human manipulation of initial offers (¶¶71-72) and final offers (¶¶62-70). *See* Opp. Brief at 2, 4. Nowhere does the Complaint or Opposition Brief suggest CW 6 made any statements about the Company's final offers.

1    Moreover, none of the CWs recanted their statements, as Defendants only point to

2    minor inconsistencies and clarifications that do not alter the Complaint's theory of

3    securities law violations. For example, the Complaint alleges that Opendoor's pricing

4    algorithm was inaccurate and, as a result, Opendoor relied on a human-driven process for

5    pricing offers. As support, the Complaint alleges that CW 2 stated that her manager told

6    her not to look at the algorithm because it was not accurate and would bias her judgment

7    when making offers. *See* ¶64. Defendants' Motion now argues that this is a

8    mischaracterization because CW 2 supposedly told Defendants' counsel that her manager

9    told her to look at the algorithm but do not anchor to it. *See* Anhang Decl. at ¶14(b).

10   However, this is a distinction without a difference. Whether CW 2's manager told her to

11   ignore the algorithm because it would bias her judgment, or whether her manger told her

12   to look at it but don't anchor to it because it was inaccurate and would bias her judgment,

13   is of no moment. The undisputed fact is that CW 2's allegations demonstrate that the

14   algorithm was not accurate—despite Defendants' public statements touting the accuracy

15   of the algorithm—which is a key aspect of the Complaint's theory.

16   Finally, the Anhang Declaration and Defendants' Motion should be given no weight

17   because Opendoor pressured its former employees into cooperating. For example, based

18   on Lead Counsel's communications with counsel for CW 1, it appears that Defendants

19   pressured the CWs into speaking by claiming that their employment contracts with

20   Opendoor required them to cooperate with Defendants' counsel in this securities case.

21   Christie Decl. at ¶32.  Once Defense counsel was able to get the CWs to cooperate, they

22   simply asked the CWs leading questions to suit their objectives, such as asking CW 2 "you

23   wouldn't have said it was 'never' accurate?" *See* Anhang Decl. at ¶14(a).

24   Thus, Defendants' Motion—which merely addresses purported minor discrepancies

25   or clarifications that do not change the Complaint's allegations—does not even create any

26   legitimate credibility issues. Defendants' quibbles over minor distinctions should be

27   rejected as premature and improper at the motion to dismiss stage. Defendants will have

28

16

1  the opportunity to challenge the CW statements through discovery after the Court sustains

2  the Complaint.

3  **IV.    CONCLUSION**

4          For the foregoing reasons, Plaintiffs respectfully request that this Court deny

5  Defendants' Motion and grant such other relief as the Court may deem proper.

6

7  Dated: October 26, 2023                                    **CLARK HILL PLC**

8                                                             By: */s/ Daniel P. Thiel*
                                                              Daniel P. Thiel, SBN #035831
9                                                             14850 North Scottsdale Road, Suite 500
                                                              Scottsdale, Arizona 85254
10                                                            Telephone: 480-684-1100
                                                              Fax: 480-684-1199
11                                                            dthiel@clarkhill.com

12                                                            *Local Counsel for Plaintiffs*

13                                                            **LABATON SUCHAROW LLP**
                                                              Michael P. Canty (admitted *pro hac vice*)
14                                                            James T. Christie (admitted *pro hac vice*)
                                                              Guillaume Buell (admitted *pro hac vice*)
15                                                            Nicholas Manningham (admitted *pro hac vice*)
                                                              140 Broadway
16                                                            New York, New York 10005
                                                              Telephone: (212) 907-0700
17                                                            Facsimile: (212) 818-0477
                                                              mcanty@labaton.com
18                                                            jchristie@labaton.com
                                                              gbuell@labaton.com
19                                                            nmanningham@labaton.com

20                                                            *Counsel for Plaintiffs*

21

22                                                            **VANOVERBEKE MICHAUD &
                                                              TIMMONY P.C.**

23                                                            Aaron L. Castle (admitted *pro hac vice*)
                                                              79 Alfred Street
24                                                            Detroit, Michigan 48201
                                                              Telephone: (313) 578-1200
25                                                            Facsimile: (313) 578-1201
                                                              acastle@vmtlaw.com

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GLANCY PRONGAY & MURRAY LLP**

Casey E. Sadler (*pro hac vice* motion forthcoming)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
clinehan@glancylaw.com

***Additional Counsel for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and transmittal of a Notice of Service of Electronic Filing to the individuals registered with CM/ECF.

*/s/Daniel P. Thiel*
Daniel P. Thiel, SBN #035831