**LABATON SUCHAROW LLP**
Michael P. Canty (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
Guillaume Buell (admitted *pro hac vice*)
Nicholas Manningham (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
jchristie@labaton.com
gbuell@labaton.com
nmanningham@labaton.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE OPENDOOR TECHNOLOGIES INC. SECURITIES LITIGATION | Case No. 2:22-CV-01717-MTL<br><br>**DECLARATION OF JAMES T. CHRISTIE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO OPENDOOR DEFENDANTS' MOTION FOR AN ORDER DIRECTING THE SUBMISSION OF COUNSEL AND CONFIDENTIAL WITNESS AFFIDAVITS**<br><br>DEMAND FOR JURY TRIAL<br><br><u>CLASS ACTION</u> |

Pursuant to 28 U.S.C. § 1746, I, James T. Christie, declare as follows:

1. My name is James T. Christie, and I am a Partner with the law firm of Labaton Sucharow LLP ("Labaton Sucharow"), which represents Lead Plaintiffs Indiana Public Retirement System, Oakland County Employees' Retirement System, and Oakland County Voluntary Employees' Beneficiary Association ("Lead Plaintiffs") and Additional Plaintiff Stuart Graham Hereford ("Additional Plaintiff" and together with Lead Plaintiffs, "Plaintiffs") in the above-captioned action.

2. I submit this declaration in support of Plaintiffs' Opposition to Opendoor Defendants' motion for an order directing the submission of counsel and confidential witness ("CW") affidavits.

**Labaton Sucharow's Policies and Procedures**

3. Labaton Sucharow and its team of in-house investigators ("Labaton Investigators") follow established policies and procedures relating to their contact with former employees and their conduct as investigators.

4. Labaton Investigators are required to clearly identify themselves at the outset of all interviews as working for plaintiffs' counsel in a class action securities lawsuit and set forth the purpose of the conversation. Before asking any questions, investigators are required to first ascertain that the individual they are speaking with is in fact not currently employed by the defendant corporation. Once an individual is confirmed as a former employee, the investigator asks a series of questions relating to the allegations in the case.

5. During the call, the investigator is required to take contemporaneous notes of the responses provided. While the information is still fresh, the investigator prepares a detailed Interview Report of the call, documenting the information provided. This Interview Report is then provided to the attorneys drafting the complaint.

6. Prior to the filing of the complaint which includes information from CWs, the investigator will attempt to contact each witness to confirm the accuracy of the information attributed to the CW.  The investigator will read each statement attributed to the CW line-by-line and confirm that each statement is accurate. If the CW has any edits, the investigator will

note the change in a memorandum of the confirmatory call ("Confirm Memo") and the attorney drafting the complaint will make all necessary edits to the complaint.

7. If the investigator is not able to confirm the accuracy of the information attributed to the CW via phone, prior to the filing of the complaint, the investigator will communicate with the CW in writing explaining each statement that is being attributed to the witness in the to-be-filed pleading.

8. Labaton Sucharow also requires a "CW Cross Check" before a complaint is filed to ensure what is pled in the complaint conforms exactly to what is contained in the Interview Report and Confirm Memo. The "CW Cross Check" requires that an attorney other than the primary drafter of the complaint review the statements made by CWs in the complaint and compare them to the statements made in the respective Interview Report, Confirm Memo, and/or writings sent to witnesses.

9. If information provided by a former employee is used in the publicly-filed complaint, the investigator sends a copy of the filed complaint to the CW as soon as possible after the filing.

10. From time-to-time Labaton Sucharow hires outside investigators to assist in its investigation. Each time outside investigators are involved, Labaton Sucharow sends a copy of Labaton Sucharow's policies and procedures concerning investigations to the outside investigators.

**Lead Counsel's Contact with CW 2**

11. Lead Counsel hired an outside investigator to assist in its investigation. As part of that engagement, Lead Counsel sent the outside investigator a copy of Labaton Sucharow's Policies and Procedures Concerning Investigations. The outside investigator contacted CW 2 on March 14, 2023.

12. On April 3, 2023, Labaton Investigators and two Labaton Sucharow attorneys, including myself, contacted CW 2 by phone. Before any substantive questions were asked, a Labaton Investigator identified herself and two Labaton Sucharow attorneys, confirmed that CW 2 no longer worked at Opendoor, and explained that they were investigating securities

2

law violations against CW 2's former employer, Opendoor. Labaton Investigators took detailed and contemporaneous notes during the call. Labaton Investigators memorialized the details of the conversation in an Interview Report that was provided to the attorneys drafting the Complaint.

13.    On April 14, 2023, Labaton Investigators conducted a confirmatory call with CW 2 to read each and every statement that would be attributed to CW 2 in the Complaint and confirm that the statements were accurate. Three Labaton Sucharow attorneys, including myself, were also on the call. During the call, a Labaton Investigator explained the purpose of the confirmatory call, and then read every statement that would be attributed to CW 2 in the Complaint. CW 2 confirmed the accuracy of every statement, with a few minor clarifications. Lead Counsel then made all necessary edits to the Complaint. During this call, a Labaton Investigator informed CW 2 that her statements would be used in the Complaint and that she would be identified as a CW in the Complaint. CW 2 did not object to being a CW or having her statements used in the Complaint. A Labaton Investigator then prepared a memorandum of the confirm call ("Confirm Memo").

14.    All statements attributed to CW 2 in the Complaint are consistent with CW 2's Interview Report and Confirm Memo.

15.    On April 19, 2023, Labaton Investigators mailed a copy of the filed Complaint via FedEx to CW 2.

16.    To date, CW 2 has not contacted Lead Counsel or Labaton Investigators following receipt of the Complaint, nor has CW 2 otherwise asserted at any time that any statements attributed to her in the Complaint were not accurate or were misleading or taken out of context.

**Lead Counsel's Contact with CW 5**

17.    On October 18, 2022, a Labaton Investigator contacted CW 5 by phone. Before any substantive questions were asked, the Labaton Investigator identified himself, confirmed that CW 5 no longer worked at Opendoor, and explained that Labaton Sucharow was investigating securities law violations against CW 5's former employer, Opendoor. The

Labaton Investigator took detailed and contemporaneous notes during the call, and memorialized the details of the conversation in an Interview Report that was provided to the attorneys drafting the Complaint.

18.    On April 4, 2023, a Labaton Investigator followed up and conducted a confirmatory call with CW 5 to read every statement that would be attributed to CW 5 in the Complaint and confirm that the statements were accurate. Labaton Sucharow attorneys, including myself, were also on the call. During the call, a Labaton Investigator explained the purpose of the confirmatory call and then read every statement that would be attributed to CW 5. CW 5 confirmed the accuracy of every statement, with a few minor clarifications. Lead Counsel made all necessary edits to the Complaint. During this call, a Labaton Investigator informed CW 5 that her statements would be used in the Complaint and that she would be identified as a CW in the Complaint. CW 5 did not object to being a CW or having her statements used in the Complaint. Labaton Investigators then prepared a Confirm Memo.

19.    All statements attributed to CW 5 in the Complaint are consistent with CW 5's Interview Report and Confirm Memo.

20.    On April 19, 2023, Labaton Investigators mailed a copy of the filed Complaint via FedEx to CW 5.

21.    To date, CW 5 has not contacted Lead Counsel or Labaton Investigators following receipt of the Complaint, nor did CW 5 otherwise assert at any time that any statements attributed to her in the Complaint were not accurate or were misleading or taken out of context.

**<u>Lead Counsel's Contact with CW 6</u>**

22.    On November 17, 2022, a Labaton Investigator contacted CW 6 by phone. Before any substantive questions were asked, the Labaton Investigator identified himself, confirmed that CW 6 no longer worked at Opendoor, and explained that Labaton Sucharow was investigating a securities case against CW 6's former employer, Opendoor.[1] The Labaton Investigator took detailed and contemporaneous notes during the call, and memorialized the

---

[1] Lead Counsel's outside investigator also contacted CW 6 on March 9, 2023.

4

details of the conversation in an Interview Report that was provided to the attorneys drafting the Complaint.

23. On April 4, 2023, Labaton Investigators followed up and conducted a confirmatory call with CW 6 to read every statement that would be attributed to CW 6 in the Complaint and confirm that the statements were accurate. Labaton Sucharow attorneys, including myself, were also present on the call. During the call, a Labaton Investigator explained the purpose of the confirmatory call, and then read every statement that would be attributed to CW 6 in the Complaint. CW 6 confirmed the accuracy of every statement, with a few minor edits. Lead Counsel made all necessary edits to the Complaint. During this call, a Labaton Investigator informed CW 6 that her statements would be used in the Complaint and that she would be identified as a CW in the Complaint. CW 6 did not object to being a CW or having her statements used in the Complaint. Labaton Investigators then prepared a Confirm Memo.

24. All statements attributed to CW 6 in the Complaint are consistent with CW 6's Interview Report and Confirm Memo.

25. On April 19, 2023, Labaton Investigators mailed a copy of the filed Complaint via FedEx to CW 6, however, the Complaint was sent back. As a result, Labaton Investigators sent CW 6 an email in early May 2023 with a copy of the Complaint.

26. To date, CW 6 has not contacted Lead Counsel or Labaton Investigators following receipt of the Complaint, nor did CW 6 otherwise assert at any time that any statements attributed to her in the Complaint were not accurate or were misleading or taken out of context.

**Lead Counsel's Contact with CW 8**

27. On April 4, 2023, a Labaton Investigator contacted CW 8 by phone. Before any asking any questions, the Labaton Investigator identified himself, confirmed that CW 8 no longer worked at Opendoor, and explained the purpose of the call. The Labaton Investigator took detailed and contemporaneous notes during the call. At the end of the call, the Labaton Investigator explained to CW 8 that he would memorialize their conversation for Labaton

Sucharow attorneys working on the case and told CW 8 that the attorneys may have follow up questions. CW 8 stated that she was fine with such a follow up call. The Labaton Investigator memorialized the details of the conversation in an Interview Report that was provided to the attorneys drafting the Complaint.

28.     A Labaton Investigator and Labaton Sucharow attorneys tried to call CW 8 for a follow-up call. CW 8 did not pick up, and the Labaton Investigator left a voicemail on April 10, 2023, advising CW 8 that she would be a CW in the Complaint and that Lead Counsel would like to confirm the statements that would be attributed to her in the Complaint. CW 8 did not respond or attempt to contact Lead Counsel or Labaton Investigators.

29.     On April 11, 2023, a Labaton Investigator sent CW 8 a copy of every statement that would be attributed to her in the Complaint, along with an enclosure letter stating that the enclosed statements were being attributed to her in the Amended Complaint.

30.     CW 8 did not try to reach out to Lead Counsel or Labaton Investigators. After filing the Complaint, Lead Counsel sent CW 8 a copy of the Complaint, which was delivered on April 21, 2023.

31.     To date, CW 8 has not contacted Lead Counsel or Labaton Investigators following receipt of the Complaint, nor did CW 8 otherwise assert at any time that any statements attributed to her in the Complaint were not accurate or were misleading or taken out of context.

**Lead Counsel's Contact with CW 1 Following the Filing of the Complaint**

32.     CW 1's counsel, Mr. Frank Schirripa, informed Lead Counsel that Defendants' counsel contacted CW 1. Mr. Schirripa informed Defendants' counsel that the allegations attributed to CW 1 in the Complaint were accurate and that she confirmed the accuracy of her statements to Lead Counsel prior to the filing of the Complaint. During this communication, Defendants' counsel told Mr. Schirripa that CW 1 was contractually obligated to cooperate with them in this case and sent Mr. Schirripa and CW 1 a request for a meeting by Zoom.

33.     I declare under penalty of perjury that the foregoing is true and correct.

Executed:    October 26, 2023
             New York, NY

_____
James T. Christie

7