**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
John C. Gray (Bar No. 028454)
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 262-5311
Facsimile: (602) 262-5747
Email: jgray@lewisroca.com

**SHEARMAN & STERLING LLP**
Adam S. Hakki (*pro hac vice*)
599 Lexington Ave.
New York, NY 10022
Telephone: (212) 848-4000
Email: ahakki@shearman.com

Lyle Roberts (*pro hac vice*)
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
Email: lyle.roberts@shearman.com

*Counsel for Defendants Opendoor Technologies Inc.,
Eric Wu, Carrie Wheeler, Chamath Palihapitiya,
Steven Trieu, Ian Osborne, Adam Bain, David Spillane,
Cipora Herman, Pueo Keffer, Glenn Solomon, Jason Kilar,
and Jonathan Jaffe*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re Opendoor Technologies, Inc. Securities Litigation | Case No. 2:22-CV-01717-MTL<br><br>**OPENDOOR DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR AN ORDER DIRECTING THE SUBMISSION OF COUNSEL AND CONFIDENTIAL WITNESS AFFIDAVITS**<br><br>**(FIRST REQUEST)**<br><br>**(Oral Argument Requested)** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

    I.    The Court's Narrow Use of the Affidavits Would Be Proper ....................... 4

    II.   The Court's Use of the Affidavits Would Not Be Barred by the PSLRA .... 8

    III.  Plaintiffs' Suggestion that the Opendoor Defendants' Counsel Pressured the CWs Is Baseless ....................................................................... 11

CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Applestein v. Medivation, Inc.*,
   861 F. Supp. 2d 1030 (N.D. Cal. 2012) ...................................................................... 4

*In re Applied Micro Circuits Corp. Sec. Litig.*,
   2002 WL 34716875 (S.D. Cal. Oct. 4, 2002)............................................................... 8

*Bajjuri v. Raytheon Techs. Corp.*,
   2023 WL 3650554 (D. Ariz. May 25, 2023)................................................................ 4

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   851 F.Supp.2d 1299 (S.D. Fl. 2011) ............................................................................ 9

*Campo v. Sears Holdings Corp.*,
   371 F. App'x. 212 (2d Cir. 2010)........................................................................ Passim

*In re Cell Therapeutics Class Action Litig.*
   2010 WL 4791808 (W.D. Wash. Nov. 18, 2010) .................................................. 9, 10

*City of Livonia Emps.' Ret. Sys. v. Boeing Co.*,
   711 F.3d 754 (7th Cir. 2013)....................................................................................... 10

*Hatamian v. Advanced Micro Devices, Inc.*,
   2015 WL 511175 (N.D. Cal. Feb. 6, 2015).................................................................. 7

*Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*,
   522 F. Supp. 3d 660 (N.D. Cal. 2021) ......................................................................... 7

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)........................................................................................ 7

*King v. DePuy Orthopaedics Inc.*,
   2023 WL 5624710 (D. Ariz. Aug. 31, 2023)............................................................... 5

*Milbeck v. TrueCar, Inc.*,
   2019 WL 2353006 (C.D. Cal. May 23, 2019).............................................................. 6

*In re Millennial Media Inc. Sec. Litig.*,
   2015 WL 3443918 (S.D.N.Y. May 29, 2015)...................................................... Passim

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. Jun. 10, 2020) .................................................................................. 10

*In re Par Pharm. Sec. Litig.*,
   2009 WL 3234273 (D.N.J. Sep. 30, 2009) .......................................................................... 9

*In re Proquest Sec. Litig.*,
   527 F.Supp.2d 728 (E.D. Mich. 2007) ................................................................................. 9

*In re Sibanye Gold Ltd. Sec. Litig.*,
   2020 WL 6582326 (E.D.N.Y. Nov. 10, 2020) .................................................................... 6

*In re Snap Inc. Sec. Litig.*,
   2018 WL 7501294 (C.D. Cal. Nov. 29, 2018) .................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................................... 4, 5, 8

*Union Asset Mgmt. Holding AG v. Sandisk LLC*,
   227 F. Supp. 3d 1098 (N.D. Cal. 2017) ............................................................................... 7

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ....................................................................................... *Passim*

**Statutes**

Private Securities Litigation Reform Act ............................................................... 1, 8, 9, 10

15 U.S.C. § 78u-4(b)(3)(B) ................................................................................................ 8, 9

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................................ 9

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 4

Fed. R. Civ. P. 12(d) ............................................................................................................. 4

Fed. R. Civ. P. 26 .................................................................................................................. 1

Fed. R. Evid. 201 .................................................................................................................. 5

**Other Authorities**

*Confidential Witness Interviews in Securities Litigation*,
   96 N.C. L. Rev. 789 (2018) .................................................................................................. 2

Karen Patton Seymour, *Securities and Financial Regulation in the Second Circuit*,
   85 Fordham L. Rev. 225 (2016) .................................................................................... 6

S. Rep. No. 104-98 ......................................................................................................... 10

**INTRODUCTION**

The Opposition confirms that the limited affidavits sought by the Opendoor Defendants' Motion are necessary. Nothing in the Opposition changes the key fact on which the Motion is based: four confidential witnesses ("CWs") made clear to the Opendoor Defendants' counsel that they did not make certain statements that Plaintiffs attribute to them. The Opposition does not dispute that fact, nor could it.

Likewise, the Opposition does not show that it would be incorrect, as a matter of procedural or substantive law, for the Court to obtain and consider the affidavits. Contrary to Plaintiffs' arguments, the Court's use of the affidavits would not involve any determinations of disputed facts or credibility. The affidavits would be used only to assess whether the purported CW statements in Plaintiffs' operative complaint ("CAC") are *reliable*. The Ninth Circuit's decision in *Zucco* affirmatively requires the Court to make this "reliability" determination in assessing the sufficiency of a securities class action complaint, and the Supreme Court held in *Tellabs* that a court can make this assessment by means of (among other things) judicial notice—*e.g.*, notice of the contents of affidavits.

Plaintiffs' argument that the discovery stay in the Private Securities Litigation Reform Act ("PSLRA") precludes the Court from considering the requested affidavits is meritless. First, Plaintiffs fail to show that an order by this Court for the submission of the affidavits would amount to party "discovery" under FRCP 26 subject to the PSLRA stay. Second, even if the affidavits did constitute "discovery" (which they do not), the PSLRA contains an exception to the stay requirement that applies to the affidavits.

To be clear, as set forth in the Opendoor Defendants' Motion to Dismiss, the CAC fails to state a claim and should be dismissed, even if the Court were to consider and credit the CW allegations. Nevertheless, the facts and circumstances surrounding these CW allegations are unusual and concerning, and the Opendoor Defendants felt compelled to draw them to the Court's attention. Doing so serves the Court's interest in policing the integrity of proceedings before it. These issues are of such importance that in *Millennial Media*, which one of Plaintiffs' own authorities refers to as "one of the most prominent

cases" on CW issues,[1] the court took pains to address issues of potential CW misuse even though the plaintiffs there had *already voluntarily withdrawn their complaint*. Plaintiffs' efforts to sweep these important issues aside should be rejected.

## ARGUMENT

Plaintiffs strenuously object to the Court obtaining and considering the affidavits sought by the Motion ("Affidavits"). In so doing, Plaintiffs, who were eager to cite the CWs in their CAC, are now trying to silence them.[2] Plaintiffs describe at length their CW interview process (*see* CW Opp. Br. at 3-6), but that process provides cold comfort when four of the five CWs that the Opendoor Defendants' counsel spoke with cast substantial doubt on the accuracy of certain assertions in the CAC attributed to them (*see* Mot. at 4-10.)

But even the described CW interview process raises serious issues. First, Plaintiffs' counsel concedes that they did not speak to CW 8 about his supposed statements at all. (*See* Declaration of James T. Christie ("Christie Decl.") ¶¶ 27-31.) That was a red flag, not a reasonable basis for assuming consent—yet Plaintiffs proceeded to file the CAC anyway without deleting the unverified allegations about what CW 8 supposedly said. (*See* CAC ¶¶ 50, 124, 277-79, 400, 455.)

Second, Plaintiffs claim to have sent copies of the CAC to the CWs (Christie Decl. ¶¶ 15, 20, 25, 30), but acknowledge that they did so *after* it was filed. (*Id.*) In other words, although Plaintiffs understood the importance of providing the CAC to the CWs so that its accuracy could be confirmed, Plaintiffs did not do so in time for the CWs to actually examine the statements attributed to them prior to the CAC's filing. Plaintiffs' counsel nevertheless trumpets the fact that they sent the CWs copies of the CAC and none of them thereafter disputed the CAC's contents. (*Id.* ¶¶ 16, 21, 26, 31.) But because Plaintiffs had already filed the CAC, why would the CWs have thought that going back to Plaintiffs'

---

[1] (*See* CW Opp. Br. at 9, n.4 (citing Gideon Mark, *Confidential Witness Interviews in Securities Litigation*, 96 N.C. L. Rev. 789, 810 (2018)).)

[2] *See* Plaintiffs' Memorandum of Law in Opposition to Opendoor Defendants' Motion ("Opposition" or "CW Opp. Br.") (Dkt. 63.)

1    counsel to dispute any of the CAC's contents would make any difference?  Did Plaintiffs'
2    counsel advise the CWs that if they disputed the CAC's contents, Plaintiffs were prepared
3    to amend the CAC?  Seemingly not, or else Plaintiffs' Opposition would have drawn
4    attention to that fact.  Of note in this regard, CW 8 told the Opendoor Defendants' counsel
5    that he would have corrected the CAC if given an opportunity to do so.  (*See* Mot. at 9;
6    Anhang Decl. ¶ 31.a.v-vi.)

7          Under these circumstances, it is hardly surprising that the four CWs at issue have
8    indicated that some of the CAC's description of what they said is inaccurate.  (*See* Mot. at
9    4-10.)  For example, the CAC attributes the following alleged statements to a CW even
10   though in each instance, the CW at issue made clear to the Opendoor Defendants' Counsel
11   that they would *not* have made the attributed statement:  (a) the Company's automated
12   pricing system was "never accurate" (*id.* at 6); (b) employees were told "not to look at"
13   information that the Company's automated pricing system provided (*id.* at 6-7) (in fact,
14   they were told the opposite—*i.e.*, *to look at it* (*id.*)); and (c) Defendant Carrie Wheeler and
15   Company President Andrew Low Ah Kee "accessed the Company's internal dashboard
16   *every day*" (*id.* at 8-9 (emphasis added)) (it is farfetched that any CW could know that these
17   individuals did something "every day," and sure enough, the CW to whom the statement
18   is attributed says that he could *not* have known that (*id.*)).

19         Plaintiffs do not dispute that the CWs indicated to the Opendoor Defendants'
20   counsel that (a) they did not say those things, and (b) there were other statements in the
21   CAC that were misattributed to the CWs or mischaracterized by Plaintiffs.  (*See generally*
22   CW Opp. Br.)  Unable to dispute what the CWs told the Opendoor Defendants' counsel,
23   Plaintiffs attempt to minimize what the CWs said as involving merely "*minor*
24   *inconsistencies and clarifications.*" (*Id.* at 16.)  But that is manifestly not so, as the above
25   examples show.  Plaintiffs also make two legal arguments against the Motion, but both are
26   devoid of merit.

27
28

**I.      The Court's Narrow Use of the Affidavits Would Be Proper**

Plaintiffs' argument that Rule 12(b)(6) and (d) preclude the Court from obtaining and using the Affidavits is flatly inconsistent with *Tellabs* and *Zucco,* both of which are binding law. (*See* CW Opp. Br. at 6-10.) Indeed, the Opposition ignores *Zucco* altogether, despite its obvious significance. Under *Zucco*, in assessing a complaint in a securities fraud case, a court must consider, among other things, the "reliability" of purported CW statements and their sources. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995-1000 (9th Cir. 2009). In light of *Zucco*, courts have refused to consider CW allegations in assessing the sufficiency of a complaint under Rule 12(b)(6) if the CWs or their allegations are unreliable. *See, e.g.*, *Bajjuri v. Raytheon Techs. Corp.*, 2023 WL 3650554, at *2-3, 9-11 (D. Ariz. May 25, 2023); (*see also* Mot. at 11-12.) And the Supreme Court held in *Tellabs* that a court should assess the sufficiency of a securities class action complaint by means of (among other things) judicial notice—*e.g.*, notice of the contents of affidavits. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007) (in assessing a complaint, a court "*must* consider [it] in its entirety, as well as . . . matters of which a court may take *judicial notice*." (emphasis added)).

Under *Zucco* and *Tellabs*, the Court can order the submission of the Affidavits and then take judicial notice of the following basic fact from each: whether the CW confirms the accuracy of the statements attributed to them in the CAC. The Court then can use that judicially noticed fact to assist the Court in conducting its *Zucco*-mandated assessment of the "reliability" of the CW allegations.[3] *See Zucco Partners,* 552 F.3d at 995-1000 (requiring assessment of the reliability of CW statements). Rather than resolving factual disputes or determining the truth of the alleged statements, the Court simply would be determining how likely it is that the statements at issue were made by the CW. If the CW's affidavit indicates that they did not make the statements attributed to them, that would be

---

[3] *See, e.g.*, *Applestein v. Medivation, Inc*., 861 F. Supp. 2d 1030, 1038–39 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598, 600 (9th Cir. 2014) (citing *Zucco* refusing to consider CW allegations in determining whether plaintiffs adequately pled falsity, in part, due to the inconsistency of CW allegations); *see also Bajjuri*, 2023 WL 3650554, at *2-3, 9-11.

relevant to the reliability of the CW's purported statements (and in turn, the weight given to them in assessing whether Plaintiffs have met their pleading burden). There is no need for the Court to decide any factual issues as to the *accuracy* of the CW's purported statements. It only needs to take judicial notice of the fact that *whether the purported statements were made* is in serious doubt,[4] and then calibrate accordingly the degree to which the Court deems the statements reliable. *See, e.g.*, *Campo v. Sears Holdings Corp.*, 371 F. App'x. 212, 216 n.4 (2d Cir. 2010). Moreover, the Court could properly undertake an assessment of the Affidavits not only to determine "reliability," but to uncover whether any CW abuses have occurred, and if so, take appropriate steps under its inherent power to address threats to the integrity of judicial proceedings. *See In re Millennial Media Inc. Sec. Litig.*, 2015 WL 3443918, at *2 (S.D.N.Y. May 29, 2015); *In re Lumber Liquidators Holdings Inc. Sec. Litig.*, at *2 (Anhang Decl. Ex. 1); *see also King v. DePuy Orthopaedics Inc.*, 2023 WL 5624710, at *9 (D. Ariz. Aug. 31, 2023) ("The court is tasked with preserving the integrity of the judicial process . . . ."). The Motion provides the Court with ample basis to do so here.

Plaintiffs do not attempt to meaningfully address *Zucco*, the relevant holding in *Tellabs* regarding judicial notice, FRE 201, or the Court's inherent powers; they simply try to knock down the *Campo* and *Millennial Media* decisions, but even those efforts fail. (*See* CW Opp. Br. at 12-14.) Contrary to Plaintiffs' contention, the relevant passages in *Campo* setting forth the Second Circuit's views on how to address CW allegations are not mere dicta (*see* CW Opp. Br. at 12), but rather are an *alternative holding*, which has precedential value. *See Campo*, 371 F. App'x at 216 n.4 ("Even assuming the [plaintiffs' CW-related] argument is not waived, we conclude that it lacks merit."). Moreover, the Second Circuit

---

[4] Under section 201(b)(2) of the Federal Rules of Evidence, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The fact that a CW submits an affidavit disavowing any allegations attributed to them in the CAC would not be subject to reasonable dispute because it will be accurately and readily determinable from this Court's own records.

5

in *Campo* set forth a fully reasoned position that considers Supreme Court precedent, accounts for potential counterarguments, and was plainly designed to give well-considered guidance to other courts.  *Id.*  Indeed, the fact *Campo* was decided by the Second Circuit arguably confers it with greater persuasive weight.  It has been observed that the Second Circuit is preeminent in the area of securities litigation and regulation, and some Supreme Court Justices have even referred to the Second Circuit as the "Mother Court" in this area. *See* Karen Patton Seymour, *Securities and Financial Regulation in the Second Circuit*, 85 Fordham L. Rev. 225, 225 (2016).

As for *Millennial Media*, Plaintiffs distort or mischaracterize it in an apparent attempt to minimize its importance here, even though one of Plaintiffs' own cited authorities recognizes that *Millennial Media* is "one of the most prominent cases" regarding CWs.  (*See supra* p. 2, n.1; *see also* CW Opp. Br. at 13-14.)  By way of example, Plaintiffs argue that *Millennial Media* does not "provide *any* support for the relief Defendants are seeking." (CW Opp. Br. at 13 (emphasis added).)  That is obviously false— *Millennial Media* is squarely on point.  The instant Motion seeks an Order directing the submission of the Affidavits.  (Mot. at 15-17.)  In *Millennial Media*, the Court ordered the *same relief* after the defendants there—*just like the Opendoor Defendants*—submitted "declarations of attorneys recounting conversations with [CWs] . . . [who] disputed the accuracy of statements attributed to them."[5]  2015 WL 3443918, at *2.  In a related vein, Plaintiffs make the false assertion that unlike here, "the court in *Millennial Media* 'was

---

[5] Plaintiffs also quote a 2017 E.D.N.Y. case that asserts that Millennial Media is "of questionable precedential value" (CW Opp. Br. at 13), yet that is belied by a subsequent decision from that very same District.  *See In re Sibanye Gold Ltd. Sec. Litig.*, 2020 WL 6582326, at *17 (E.D.N.Y. Nov. 10, 2020) (citing *Millennial Media* with approval in discounting certain CW allegations).  District courts in the Ninth Circuit have also approvingly cited *Millennial Media* (and the *Lumber Liquidators* court followed its approach too (*see* Anhang Decl. Ex. 1)).  *See, e.g.*, *Milbeck v. TrueCar, Inc.*, 2019 WL 2353006, n.1 (C.D. Cal. May 23, 2019) ("The court [in *Millennial Media*] noted the significant potential for inaccuracy when counsel fails to confirm with the witness [like Plaintiffs' counsel here failed to do here with regard to CW 8] the accuracy of the quotes attributed to that witness before filing the complaint"); *see also In re Snap Inc. Sec. Litig.*, 2018 WL 7501294, n.2 (C.D. Cal. Nov. 29, 2018) (same).

1   provided with affidavits by the confidential witnesses themselves, not the hearsay of
2   defendant's attorneys.'" (CW Opp. Br. at 14 (citations omitted).)  But the CW affidavits in
3   *Millennial Media* were provided to the court only because the court was *first* given (among
4   other things) declarations from the defendants' attorneys concerning the CWs, which
5   prompted the court to order the submission of CW affidavits—just as the Opendoor
6   Defendants respectfully submit the Court do here.  *See* 2015 WL 3443918, at *2.

7   Plaintiffs also cite a number of cases to support their position, but all are
8   distinguishable.  *Khoja* is inapposite because the issue there—unlike here, (*see supra* p. 4-
9   5)—was whether a court can "resolv[e] factual disputes."  *Khoja v. Orexigen Therapeutics,*
10  *Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018); (*see also* CW Opp. Br. at 7.)  *Hatamian* is likewise
11  not on point because the defendants there asked the court to strike CW allegations as
12  "sham" or "untrue and false."  *Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL
13  511175, at *1 (N.D. Cal. Feb. 6, 2015); (*see also* CW Opp. Br. at 8.)  Here, the Opendoor
14  Defendants are not asking that any allegations be struck, and the Court's assessment of the
15  Affidavits would not require the Court to determine whether the purported CW allegations
16  in the CAC are false, only whether their purported source is reliable.  *See Zucco*, 552 F.3d
17  at 995-1000.[6]

18  Similarly, in *Sandisk LLC*, the court refused to consider a recanting CW declaration
19  offered "as a basis for preventing the plaintiffs from amending their complaint."  *Union*
20  *Asset Mgmt. Holding AG v. Sandisk LLC*, 227 F. Supp. 3d 1098, 1099 (N.D. Cal. 2017)
21  (*see also* CW Opp. Br. at 8-9.)  But the Motion here does not seek such extreme relief, and
22  the *Sandisk* court did not consider the question of whether defendants may ask the court to
23  order the submission of an affidavit for the limited purpose of assessing whether allegations

---

[6] *NVIDIA Corp.* is similarly inapt because it also involved a motion to strike, and the Court simply followed *Hatamian*.  *Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 671-72 (N.D. Cal. 2021); (*see also* CW Opp. Br. at 12.)  Of note, the *NVIDIA* court considered (among other things) whether the affidavits at issue established that a factual assertion was "irrefutably false" and therefore "immaterial."  *NVIDIA Corp.*, 522 F. Supp. 3d at 671-72.  The Opendoor Defendants are not asking the Court to determine that any issue is "immaterial" or any fact is "irrefutably false."  *See supra* p. 4-5.

7

attributed to a CW are sufficiently reliable to warrant consideration under *Zucco Partners, LLC*. *See* 552 F.3d at 995-1000.[7]

## II. The Court's Use of the Affidavits Would Not Be Barred by the PSLRA

Plaintiffs also incorrectly argue that the PSLRA discovery stay (15 U.S.C. § 78u-4(b)(3)(B)) precludes this Court from obtaining and considering the Affidavits. (*See* CW Opp. Br. at 10-11.)

*First*, Plaintiffs offer no rationale or supporting case law for the proposition that by ordering and making the limited use of the Affidavits described above, the Court would be engaged in "discovery." Indeed, as mentioned, the Court's consideration of the Affidavits would involve the Court's exercise of its inherent powers to protect the integrity of these proceedings. (*See supra* p. 5.) It defies reason that the PSLRA could "stay" the Court's exercise of its inherent powers in these circumstances, nor do Plaintiffs argue that it could.

*Second*, and in any event, there is no merit to Plaintiffs' argument that there is "no exception" to the PSLRA discovery stay provision "that allows" the Court to obtain and use the Affidavits, even if that were "discovery." (*See* CW Opp. Br. at 10.) The PSLRA contains exactly what Plaintiffs claim it does not: an exception to its discovery stay that would permit the obtaining of the Affidavits. In particular, the PSLRA provides that discovery is stayed pending the disposition of a motion to dismiss, "unless the court finds upon motion of any party that particularized discovery is necessary . . . to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). That exception applies here. (*See*

---

[7] *In re Applied Micro Circuits Corp. Sec. Litig.*, also is not on point because the defendants there submitted declarations of their own witnesses for the express purpose of substantively rebutting the complaint's allegations, 2002 WL 34716875, at *2 (S.D. Cal. Oct. 4, 2002), and the court concluded that those declarations were "extrinsic materials" not properly considered on a 12(b)(6) motion. *Id.* at 3. That case too does not prevent this Court from taking limited judicial notice of facts evident from the face of the Affidavits for narrow purposes in line with *Zucco* and *Tellabs*, and consistent with other cases such as *Campo*, *Millennial Media*, and *Lumber Liquidators*. *See Zucco Partners*, 552 F.3d at 995-1000; *Tellabs, Inc.*, 551 U.S. at 322; *Campo*, 371 Fed. App'x at 216 n.4; *Millennial Media*, 2015 WL 3443918, at *2-3, 11-12; *In re Lumber Liquidators Holdings, Inc. Sec. Litig.*, at *2-3 (Anhang Decl. Ex. 1).

8

1  Mot. at 11 n.4 (requesting "limited affidavits [to] be submitted for the Court's
2  consideration," which would amount to nothing more than "limited discovery" under the
3  PSLRA).)  Plaintiffs are using CW allegations in an effort to overcome the high pleading
4  standards of the PSLRA and Rule 9(b), which were designed to prevent securities fraud
5  litigation abuses and ensure that "strike suits" did not proceed past the 12(b)(6) stage. *See*
6  *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F.Supp.2d 1299, 1307 (S.D. Fl. 2011).
7  Thus, any CW misuses that occurred in this case would prejudice the Opendoor Defendants
8  by depriving them of the full measure of the PSLRA's intended protections.[8]

9        The decision in *Lumber Liquidators* confirms that a court can properly consider CW
10  testimony without running afoul of the PLSRA discovery stay,[9] and the two cases that
11  Plaintiffs cite do not show otherwise.  In *In re Par Pharmaceutical*, the defendants did not
12  raise the issue of whether the proposed use of the declaration at issue amounted to
13  "discovery" potentially subject to the PSLRA discovery stay, and the court's decision sheds
14  no light on why it would be "discovery."  *See In re Par Pharm. Sec. Litig.*, 2009 WL
15  3234273, at *11-12 (D.N.J. Sep. 30, 2009).  In any event, the court in *In re Par*
16  *Pharmaceutical* approvingly cited a case (*Proquest*) that, far from rejecting a CW affidavit,
17  held that in light of such an affidavit, "'the most appropriate course under the circumstances
18  [wa]s to discount' the confidential witness allegations." *Id.* at *12 (citing *In re Proquest*
19  *Sec. Litig.*, 527 F.Supp.2d 728, 740 (E.D. Mich. 2007)).  Finally, in *In re Par*
20  *Pharmaceutical*, unlike here, the CW at issue did "not deny making any of the statements
21  attributed to her in the" complaint.  *Id.* at *11.

22        *In re Cell Therapeutics* did not involve a court seeking affidavits for its own use;
23  instead, the defendants there sought to take depositions, and they did not dispute that
24  involved a form of "discovery."  2010 WL 4791808, at *1-2 (W.D. Wash. Nov. 18, 2010).
25  Moreover, the defendants there did not invoke the "undue prejudice" exception to the

---

[8] *See, e.g.*, *Campo*, 371 Fed. App'x at 216 n.4.  To be clear, the Opendoor Defendants do not believe that the Court needs to reach the issue of the exceptions to the PSLRA's discovery stay to grant the limited relief requested in this Motion.

[9] *See In re Lumber Liquidators*, at *2-3 (Anhang Decl. Ex. 1).

9

PSLRA discovery stay. *Id.* at 2. Perhaps because of that, the court's discussion of the exception is cursory and unpersuasive. *Id.* The court simply stated that "[t]here is no issue of 'undue prejudice' if Defendants are required to wait until after their motion to dismiss to complete the discovery required . . . ." *Id.* In so stating, the court failed to consider that a fundamental purpose of the PSLRA would be thwarted, and a defendant would be severely prejudiced, if a case were allowed to proceed to discovery based in whole or in part on such suspect CW allegations. As the Ninth Circuit has observed, the PSLRA, in part, reflected "Congress's attempt to halt *early on* securities litigation that lacks merit or is even abusive." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. Jun. 10, 2020) (emphasis added). Allowing a plaintiff even to get to the discovery stage in a securities fraud case based on alleged CW statements that were never actually made would force defendants in those circumstances to be subjected to burdensome, disruptive, and costly discovery, a result that the PSLRA was designed precisely to prevent. *See, e.g.*, S. Rep. No. 104-98, at 14 (1995) (finding that discovery in securities fraud litigation "account[s] for roughly 80% of total litigation costs").

In short, as the Second and Seventh Circuits (and other courts) have recognized, where concerns about CW allegations have been raised, failing to test the reliability of those CW allegations is patently prejudicial to a defendant. *See Campo*, 371 Fed. App'x at 216 n.4; *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 760–62 (7th Cir. 2013). The "undue prejudice" exception to the PSLRA discovery stay therefore certainly would apply to the relief sought here, even assuming it were "discovery."

Finally, Plaintiffs make the meritless argument that, in supposed violation of the PSLRA, the Opendoor Defendants are seeking one-sided relief that "allow[s] them to take piecemeal, strategic discovery in order to obtain dismissal of the Complaint; yet not afford[ing] Plaintiffs any opportunity to take discovery." (*See* CW Opp. Br. at 11.) But before filing the CAC, the Plaintiffs had unfettered access to the eight individuals whom they elected to identify as CWs, and purport to rely on in the CAC. The Opendoor Defendants now are merely asking, in the face of legitimate concerns as to some of those

1    CWs, that the Court obtain affidavits from them in which the CWs assert, one way or the
2    other, whether the statements that Plaintiffs attribute to them accurately reflect what the
3    CW said to Plaintiffs' counsel or investigator. There is nothing one-sided about such relief;
4    it is simply leveling the playing field and helping ensure the integrity of these proceedings.

**III.  Plaintiffs' Suggestion that the Opendoor Defendants' Counsel Pressured the CWs Is Baseless**

In a throwaway line at the end of the Opposition, Plaintiffs contend that Opendoor "pressured its former employees into cooperating." (*See* CW Opp. Br. at 16.) Plaintiffs make no serious attempt to support this inflammatory accusation. They offer nothing more than a statement from the lawyer for CW 1 (and not CW 1 themself), and that CW is not even a subject of the Motion.[10] The Opendoor Defendants herewith submit a Reply Declaration making clear that no reference to a contractual obligation or similar words were used in any communication with the four CWs at issue, no other form of "pressure" was exerted on them, none of them was represented by counsel, and therefore there necessarily were no communications with any of them of the kind that is described as taking place with CW 1's counsel (where it would make eminent sense to discuss the employee's contractual obligations). (*See* Reply Declaration of George Anhang ¶¶ 6-9.) The four unrepresented CWs themselves would reveal as much, although conveniently for Plaintiffs, their opposition to the CW affidavits sought by the Motion would preclude the CWs from being heard on this issue. This is yet another CW issue on which Plaintiffs want the Court to hear only from them.

**CONCLUSION**

For all the reasons set forth above, the Opendoor Defendants respectfully request that the Court grant the Motion.

---

[10] The Motion is based on the Opendoor Defendants' counsel's communications with CWs 2, 5, 6 and 8. CW 1 is the only other CW they spoke to. (*See* Anhang Decl. ¶¶ 7-8.) Plaintiffs' counsel asserts that he was advised by CW 1's counsel that a lawyer for the Opendoor Defendants who sought to speak with CW 1 had, in communicating with *counsel*, invoked a contractual obligation.

11

| | |
|---|---|
| Dated: November 2, 2023 | **SHEARMAN & STERLING LLP** |
| | |
| | <u>*/s/ Lyle Roberts*</u> |
| | Lyle Roberts (*pro hac vice*) |
| | 401 9th Street, NW, Suite 800 |
| | Washington, DC 20004 |
| | Telephone: (202) 508-8000 |
| | Email: lyle.roberts@shearman.com |
| | |
| | Adam S. Hakki (*pro hac vice*) |
| | 599 Lexington Ave. |
| | New York, NY 10022 |
| | Telephone: (212) 848-4000 |
| | Email: ahakki@shearman.com |
| | |
| | **LEWIS ROCA ROTHGERBER CHRISTIE LLP** |
| | John C. Gray (Arizona Bar. No. 028454) |
| | 201 East Washington Street, Suite 1200 |
| | Phoenix, AZ 85004 |
| | Telephone: (602) 262-5311 |
| | Facsimile: (602) 262-5747 |
| | Email: jgray@lewisroca.com |
| | |
| | *Counsel for Defendants Opendoor Technologies Inc., Eric Wu, Carrie Wheeler, Chamath Palihapitiya, Steven Trieu, Ian Osborne, Adam Bain, David Spillane, Cipora Herman, Pueo Keffer, Glenn Solomon, Jason Kilar, and Jonathan Jaffe* |

12