**CLARK HILL PLC**
Daniel P. Thiel, SBN #035831
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: 480-684-1100
Fax: 480-684-1199
dthiel@clarkhill.com

*Local Counsel for Plaintiffs*

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
Guillaume Buell (admitted *pro hac vice*)
Nicholas Manningham (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
jchristie@labaton.com
gbuell@labaton.com
nmanningham@labaton.com

*Counsel for Plaintiffs*

[Additional Counsel on signature page]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

|  |  |
|---|---|
| IN RE OPENDOOR TECHNOLOGIES INC. SECURITIES LITIGATION | Case No. 2:22-CV-01717-MTL |
|  | **PLAINTIFFS' MOTION FOR RECONSIDERATION AND REQUEST TO STAY THE DEADLINE TO FILE A SECOND AMENDED COMPLAINT** |
|  | CLASS ACTION |

Lead Plaintiffs Indiana Public Retirement System, Oakland County Employees' Retirement System, and Oakland County Voluntary Employees' Beneficiary Association ("Lead Plaintiffs") and Additional Plaintiff Stuart Graham Hereford ("Additional Plaintiff" and together with Lead Plaintiffs, "Plaintiffs") respectfully move this Court to reconsider certain limited portions of the Court's February 28, 2024 Order Dismissing Plaintiffs' Amended Complaint (ECF No. 86) (the "Order").

Additionally, because the Court's ruling on the instant motion will, in all likelihood, not be decided until after the date by which Plaintiffs must file any Second Amended Complaint, Plaintiffs respectfully request that the Court stay the current deadline for filing a Second Amended Complaint until after ruling on Plaintiffs' Motion for Reconsideration.

## PRELIMINARY STATEMENT

The Court committed manifest error dismissing Plaintiffs' claim brought under Section 11 of the Securities Act of 1933 ("Securities Act"). Specifically, in its Order, the Court overlooked binding Ninth Circuit precedent when it held that Defendants met their burden of proving negative causation. *See* Order at 30-31.

The Ninth Circuit has instructed that under Section 11, courts must first presume damages where, like here, the plaintiff adequately alleges that a statement in a company's registration statement was false and misleading. If adequately alleged, defendants are strictly liable for the misrepresentation and courts must presume that any loss in the value of a company's stock is attributable to the misrepresentation. Then, a defendant can avoid liability only if it can prove that other factors were entirely responsible for the loss. The Ninth Circuit has called this a "heavy burden," especially at the motion to dismiss stage, because the defendant must ***prove*** the loss was caused entirely by other factors. The Ninth Circuit has also held that a plaintiff can overcome the negative causation defense by merely alleging that the misrepresentation "touches upon" the reason for the company's declining stock price—a separate and lower standard than establishing loss causation under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act").

Here, the Court committed manifest error by overlooking the plain text of Section 11 and binding Ninth Circuit precedent. Specifically, although the Court found that Plaintiffs established a *prima facie* case by adequately alleging a false and misleading statement in Opendoor's Offering Documents, it did not presume that the decline in Opendoor's stock price was caused by the misrepresentation in the Offering Documents. *See* Order at 29. Instead, the Court conflated the standard for ***pleading*** loss causation under Section 10(b) of the Exchange Act with Defendants' burden of ***proving*** a negative causation defense under Section 11 of the Securities Act. The Court found that "[a]s analyzed above" in the Section 10(b) loss causation analysis, "none of the purported corrective disclosures . . . withstand scrutiny," and thus, "Defendants have established negative causation because they have demonstrated that Plaintiffs do not allege a corrective disclosure." Order at 31. In other words, the Court placed the burden on Plaintiffs to allege a corrective disclosure instead of correctly placing the burden on Defendants to prove negative causation. Indeed, the Court found that Defendants proved negative causation despite the fact that Defendants did not offer any alternative explanation for the declining stock price, let alone prove that the loss was caused exclusively by other factors, as required under Ninth Circuit case law.  This was manifest error.

Moreover, in its Order, the Court failed to apply binding Ninth Circuit precedent that a plaintiff can overcome a negative causation defense merely by alleging that "the misrepresentation ***touches upon*** the ***reasons*** for an investment's decline in value." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 861 (9th Cir. 2013) (emphasis in original); *see also Garbini v. Protection One, Inc.*, 49 F. App'x 169, 170 (9th Cir. 2002); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1422 (9th Cir. 1994). Here, Plaintiffs have alleged the misrepresentation "touches upon" the reasons for the decline in Opendoor's stock price. Specifically, the statement the Court upheld as false and misleading was Defendants' claim that Opendoor's algorithm "***can dynamically adjust to leading market indicators and***

*react to real-time macro- and micro-economic conditions*." ¶¶402, 410.[1] The statement went on to explain that "[t]his responsiveness is critical to pricing accurately and **maintaining margins, especially in periods of volatility**." *Id.* (emphasis added). The language of the statement "touches" upon the reasons for Opendoor's declining stock price. As alleged in the Complaint, Opendoor's stock price declined as the Company disclosed declining margins throughout a period of high volatility in 2022, when the condition of the housing market changed, i.e., the economic condition changed. Therefore, the misrepresentation that Opendoor's algorithm could dynamically adjust to changing markets and maintain margins in periods of high volatility at least "touches upon" the disclosures of declining margins in a period of high volatility.

For these reasons, Plaintiffs respectfully request that the Court reconsider and vacate its prior Order dismissing Plaintiffs' Section 11 claim.

**ARGUMENT**

### A.    Legal Standards for Motion for Reconsideration

Local Rule of Civil Procedure 7.2(g) allows for reconsideration of an order upon "a showing of manifest error."  Under this rule, a party can ask a court to reexamine "matters that the movant believes were overlooked or misapprehended by the Court." L.R.Civ. 7.2(g); *see also Large v. Hilton*, 2013 WL 694662, at \*1-3 (D. Ariz. Feb. 26, 2013) (granting motion for reconsideration of an order granting summary judgment because the court found "manifest error in its previous Order" due to the fact that the court had overlooked controlling law); *see also In Re WRT Energy Sec. Litig.*, 2005 WL 2088406, at \*2 (S.D.N.Y. Aug. 30, 2005) (granting motion for reconsideration pursuant to a similar local rule and vacating prior order finding Defendants had established negative causation defense because "at the Rule 12(b)(6) stage [courts] must infer that the decline in value was the result of the misstatements, unless the defendant offers evidence to the contrary," which the defendant did not do).

---

[1] All references to "¶__" and "¶¶__" refer to the Consolidated Amended Complaint for Violations of the Federal Securities Law (ECF No. 39) (the "Complaint").

3

## B.    The Court Misapplied and Overlooked Controlling Law

### 1.    Background on Section 11's Strict Liability

The Securities Act is purposefully intended to minimize plaintiffs' burden of pleading under Section 11 because Congress decided it was important that companies accurately describe their businesses and financial condition when offering shares to the public. For that reason, Section 11 is more strict than other securities regulations—including Section 10(b) of the Exchange Act and SEC Rule 10b-5—to the extent that Section 11 does not require proof of scienter or causation, and "[l]liability against the issuer of a security is virtually absolute, even for innocent misstatements." *Hildes*, 734 F.3d at 859 (citation omitted). And unlike Section 10(b), Section 11 imposes strict liability and a presumption of damages when a misstatement is alleged. *See Hemmer Grp. v. SouthWest Water Co.*, 527 F. App'x 623, 625-26 (9th Cir. 2013) ("Section 11 is a strict liability statute and does not require fraudulent intent.").

Indeed, Section 11 provides a formula for calculating damages, which measures the difference between the purchase price and the value of the securities when the lawsuit was filed, thereby reflecting the extent to which the purchase price was inflated by misstatements or omissions. The statute states that plaintiffs shall:

> [R]ecover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought

15 U.S.C.A. §77k(e).

### 2.    Background on Negative Causation Defense

Although causation and damages are presumed, Section 11 also provides that a defendant may limit its liability to the extent it can prove that the decline in value of the security was attributable to factors other than the misstatements or omissions. *See* Thomas

4

Lee Hazen, *The Negative Causation Defense*, 2 Law Sec. Reg. § 7:43 (Nov. 2023 Update). Specifically, Section 11 states:

> [I]f the defendant **proves** that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable.

15 U.S.C.A. §77k(e) (emphasis added). This part of the statute is known as the negative causation defense.

The Ninth Circuit and other circuits have uniformly agreed that Defendants' burden of **proving** negative causation is a heavy one because Defendants must conclusively establish that the decline in the value of the stock price from the day of the offering to the day of the lawsuit was caused entirely by other causes. *See, e.g., Hildes*, 734 F.3d at 861 (9th Cir.); *Garbini*, 49 F. App'x at 170 (9th Cir.); *Worlds of Wonder*, 35 F.3d at 1422 (9th Cir.); *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 153 (2d Cir. 2017); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 234 (5th Cir. 2009). As the Ninth Circuit and others have repeatedly noted, proving the affirmative defense at any stage is a "heavy" burden because it arises out of "Congress' desire to allocate to the defendants the risk of uncertainty in [Section 11] cases." *Worlds of Wonder*, 35 F.3d at 1423 (citation omitted); *see also Nomura Holding Am.*, 873 F.3d at 153 (same); *Flowserve Corp.*, 572 F.3d at 234 (same).

At the motion to dismiss stage, Defendants must do more than show that the complaint does not allege loss causation. They must conclusively **prove** that the decline in the value of the company's stock resulted entirely from factors other than the alleged material misstatement in the registration statement. For this reason, courts have held that it is inappropriate to bring a negative causation defense at the motion to dismiss stage. *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004) (the negative causation

"affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6).").

The burden is heavy even on a motion for summary judgment. In *Nomura Holding Am.*, the Second Circuit explained that since the risk is allocated to Defendants, district courts must "beg[i]n with the presumption that any decline in value was caused by the [] misrepresentation[s]." 873 F.3d at 154 (citation omitted). In order to "break the link" between the "subject" of the misstatements and the reasons for the decline in value, Defendants must prove that the decline in value was **entirely** caused by other factors. *Id.* There, the Second Circuit found that Defendants did not meet their burden at summary judgment, even though Defendants provided testimony from two experts who opined that the entirety of the losses were attributable to other factors and not attributable to the alleged misrepresentations. *Id.* at 153-54.

The negative causation defense was recognized by the Ninth Circuit in *Worlds of Wonder*. *See Hildes*, 734 F.3d at 860. There, the Ninth Circuit explained that in order to establish the affirmative defense, defendants "need to ***prove*** 'that the depreciation in value [of the debentures] resulted from factors other than the [alleged] material misstatement in the [1987 financial] statement.'" *Worlds of Wonder*, 35 F.3d at 1422 (emphasis added) (citing *Akerman v. Oryx Commc'ns, Inc.*, 810 F.2d 336, 340 (2d Cir. 1987). The Ninth Circuit reversed the district court's holding that the defendant established a negative causation defense at the summary judgment stage because "[t]he district court's application of section 11(e) ignores the broad nature of the 'loss causation' determination." *Id.*

The Ninth Circuit reiterated this principle in *Garbini*, explaining that although "the 1933 Securities Act provides a defendant with an affirmative defense if it can ***prove*** that the depreciation in value of the securities resulted from factors other than its allegedly false or misleading statement," the Ninth Circuit has "emphasized . . . the 'broad nature' of 'loss causation' in the context of Section 11 claims." *Garbini*, 49 F. App'x at 170 (reversing district court's finding of negative causation because "had the district court properly drawn

all inferences in favor of plaintiffs, it could not have held" that defendants met their burden of proving negative causation).

Most recently, in reversing a district court for misapplying the negative causation defense, the Ninth Circuit noted that "[t]he Supreme Court has recognized that Section 11 'places a relatively minimal burden on a plaintiff.'" *Hildes*, 734 F.3d at 859 (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983)). Importantly, the Ninth Circuit further explained that "[o]vercoming a negative causation defense requires merely that 'the representation ***touches upon*** the ***reasons*** for an investment's decline in value.'" *Id.* at 861 (citing *Worlds of Wonder*, 35 F.3d at 1422).

### 3. The Court Misapplied and Overlooked Binding Ninth Circuit Precedent

In its Order, the Court found that Plaintiffs had pled an actionably false and misleading statement in Opendoor's Offering Documents. *See* Order at 29. Thus, Plaintiffs have established their *prima facie* case under Section 11 of the Securities Act. *See Hildes*, 734 F.3d at 859 (a plaintiff "need only show a material misstatement or omission to establish his *prima facie* case"). The Court then must presume that the decline in value of Opendoor stock was caused by the misrepresentation in the Offering Documents—since damages are presumed under Section 11—and then determine whether Defendants put forth proof that the loss was entirely caused by some other unrelated event or fact. The Court's failure to conduct the proper analysis as required by the Ninth Circuit is manifest error.

In its Order, the Court conflated Plaintiffs' standard for ***pleading*** loss causation under Section 10(b) with Defendants' standard for ***proving*** a negative causation defense under Section 11 and dismissed the Section 11 claim because Plaintiffs had not proven loss causation. The Court found that because Plaintiffs had not met the ***pleading*** standard for alleging loss causation under their separate Section 10(b) claim, Defendants had met their burden of ***proof*** in establishing a negative causation defense in the separate Section 11 claim, despite the fact that Defendants pointed to no other possible reasons for the

depreciation in value of Opendoor's stock. This was manifest error because the Ninth Circuit has unequivocally instructed courts that once a *prima facie* case is made, as is the case here, damages are presumed, and Defendants have a heavy burden of pointing to other factors to "***prove*** that the depreciation in value of the securities resulted from factors other than its allegedly false or misleading statement." *Garbini*, 49 F. App'x at 170. Defendants offer no other factors—or even hint at something else—that could have caused Opendoor's stock price to drop by more than 94%.

Moreover, the Court also overlooked the well-established Ninth Circuit principle that a plaintiff can overcome a negative causation defense merely by alleging that "the misrepresentation ***touches upon*** the ***reasons*** for an investment's decline in value." *Hildes*, 734 F.3d at 859 (citing *Worlds of Wonder*, 35 F.3d at 1422) (emphasis in original). As explained below, had the Court properly analyzed negative causation under this controlling standard, it would have found that the misrepresentation at least "touches upon" the reasons for Opendoor's declining stock price.

The Court found that the statement in Opendoor's Offering Documents that claimed Opendoor's algorithm "***can dynamically adjust to leading market indicators and react to real-time macro- and micro-economic conditions***" was false and misleading. *See* Order at 29. This very same statement goes on to claim that "[t]his responsiveness is critical to pricing accurately and **maintaining margins, especially in periods of volatility**." ¶¶402, 410. Thus, the statement explicitly claims that Opendoor's algorithm is what allowed the Company to maintain contribution margins in periods of high volatility. This misrepresentation clearly "touched upon" the reasons for Opendoor's declining stock price, which was the disclosure of declining contribution margins in 2022 during a period of high volatility.[2]

---

[2] For these reasons, the Court's reliance on *Brown v. Ambow Education Holding, Ltd.*, 2014 WL 523166 (C.D. Cal. Feb. 6, 2014) is misplaced. *See* Order at 31. There, the court found that "the face of the [complaint] demonstrates negative causation" because the corrective disclosures alleged by the plaintiff did not "reveal anything about the purported misrepresentations." *Brown*, 2014 WL 523166, at *15-16. Importantly, the plaintiffs there did not attempt to plead loss causation under the materialization of the risk approach. *Id.*

Footnote continued on next page

8

For this reason, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Reconsideration and vacate its prior order dismissing Plaintiff's Section 11 claim.[3]

**REQUEST TO STAY DEADLINE FOR SECOND AMENDED COMPLAINT**

In its Order dismissing the Complaint, the Court granted Plaintiffs leave to file a Second Amended Complaint no later than 30 days from the date of the Order. Order at 33. As such, Plaintiffs have until March 28, 2024 to file a Second Amended Complaint. Because the parties' briefing on the instant Motion for Reconsideration, if any, will in all likelihood not be concluded until after that date, Plaintiffs respectfully request that the Court stay this deadline until after ruling on Plaintiffs' Motion for Reconsideration.

**CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court: (1) reconsider its prior Order and find that Plaintiffs have adequately alleged a Section 11 claim against all Defendants; and (2) stay the deadline for Plaintiffs to file a Second Amended Complaint until a time after the Court decides Plaintiffs' Motion for Reconsideration.

Dated: March 13, 2024                    **CLARK HILL PLC**

By: */s/Daniel P. Thiel*
Daniel P. Thiel, SBN #035831
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254

at 15 ("Plaintiffs affirmatively allege that the putative class was damaged by the declining in stock prices caused by the following, *and only the following*, corrective disclosures") (emphasis added). Here, Plaintiffs allege a materialization of the risk theory of loss causation. ¶¶210-36. Namely, the Complaint alleges that Defendants' misstatement that its "***systems can dynamically adjust to leading market indicators and react to real-time macro- and micro-economic conditions***" was false and misleading because it "failed to disclose the known risk that the Company was just as susceptible to changing housing markets . . . and thus was at an increased risk of sustaining significant and repeated losses due to residential real estate pricing fluctuations." ¶¶169-71. This risk materialized as Defendants disclosed declining contribution margins and profitability, which "reflected the materialization of risks concealed by Defendants material misrepresentations or omissions." ¶213.

[3] Should the Court grant Plaintiffs' Motion for Reconsideration, it should also find that Plaintiffs have adequately alleged a claim under Section 15 of the Securities Act because the Court dismissed this claim solely because it found that Plaintiffs failed to plead a primary violation of Section 11.

Telephone: 480-684-1100
Fax: 480-684-1199
dthiel@clarkhill.com

*Local Counsel for Plaintiffs*

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
Guillaume Buell (admitted *pro hac vice*)
Nicholas Manningham (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
jchristie@labaton.com
gbuell@labaton.com
nmanningham@labaton.com

*Counsel for Plaintiffs*


**VANOVERBEKE MICHAUD & TIMMONY P.C.**

Aaron L. Castle (admitted *pro hac vice*)
79 Alfred Street
Detroit, Michigan 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com


**GLANCY PRONGAY & MURRAY LLP**

Casey E. Sadler (*pro hac vice* motion forthcoming)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
clinehan@glancylaw.com

*Additional Counsel for Plaintiffs*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and transmitted of a Notice of Service of Electronic Filing to the individuals registered with CM/ECF.

*/s/Daniel P. Thiel*
Daniel P. Thiel, SBN #035831