**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
John C. Gray (Bar No. 028454)
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 262-5311
Facsimile: (602) 262-5747
Email: jgray@lewisroca.com

**SHEARMAN & STERLING LLP**
Adam S. Hakki (*pro hac vice*)
599 Lexington Ave.
New York, NY 10022
Telephone: (212) 848-4000
Email: ahakki@shearman.com

Lyle Roberts (*pro hac vice*)
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
Email: lyle.roberts@shearman.com

*Counsel for Defendants Opendoor Technologies Inc.,*
*Eric Wu, Carrie Wheeler, Chamath Palihapitiya,*
*Steven Trieu, Ian Osborne, Adam Bain, David Spillane,*
*Cipora Herman, Pueo Keffer, Glenn Solomon, Jason Kilar,*
*and Jonathan Jaffe*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re Opendoor Technologies, Inc. Securities Litigation | Case No. 2:22-CV-01717-MTL<br><br>**DEFENDANTS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION AND REQUEST TO STAY THE DEADLINE TO FILE A SECOND AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 3

    I.     Plaintiffs' motion for reconsideration is meritless. ...................................... 3

        A.    Plaintiffs fail to establish that this Court committed a "manifest error" in its negative causation analysis. ........................................... 3

        B.    The motion improperly attempts to relitigate negative causation. ...... 7

    II.    The Court should order Plaintiffs to file any amended complaint promptly. ................................................................................................ 12

CONCLUSION ........................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*In re Adams Golf, Inc. Sec. Litig.*,
   381 F.3d 267 (3d Cir. 2004) ........................................................................................ 9

*Akerman v. Oryx Commc'ns, Inc.*,
   810 F.2d 336 (2d Cir. 1987) ........................................................................................ 5

*In re Alamosa Holdings, Inc.*,
   382 F. Supp. 2d 832 (N.D. Tex. 2005) ........................................................................ 2

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ....................................................................................... 9

*Amorosa v. AOL Time Warner Inc.*,
   409 F. App'x 412 (2d Cir. 2011) ......................................................................... 1, 4, 5

*ASARCO, LLC v. Union Pac. R. Co.*,
   765 F.3d 999 (9th Cir. 2014) ....................................................................................... 3

*Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*,
   2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ............................................................... 1

*Boluka Garment Co., Ltd. v. Canaan Inc.*,
   547 F. Supp. 3d 439 (S.D.N.Y. 2021) ......................................................................... 1

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
   665 F. Supp. 2d 404 (S.D.N.Y. 2009) ......................................................................... 2

*Brown v. Ambow Educ. Holding Ltd.*,
   2014 WL 523166 (C.D. Cal. Feb. 6, 2014) .......................................................*passim*

*Christie's Cabaret of Glendale LLC v. United Nat'l Ins. Co.*,
   2022 WL 137625 (D. Ariz. Jan. 14, 2022) ......................................................... 2, 8, 9

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ....................................................................... 4

*Davidco Inv'rs, LLC v. Anchor Glass Container Corp.*,
   2006 WL 547989 (M.D. Fla. Mar. 6, 2006) ................................................................ 2

*Dean v. China Agritech, Inc.*,
   2011 WL 5148598 (C.D. Cal. Oct. 27, 2011)............................................................... 1

*Estrada v. Bashas' Inc.*,
   2014 WL 1319189 (D. Ariz. Apr. 1, 2014) .................................................................. 3

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
  873 F.3d 85 (2d Cir. 2017) ...................................................................................... 9

*Garbini v. Protection One, Inc.*,
  49 F. App'x 169 (9th Cir. 2002) ............................................................................. 9

*Hernandez v. Alameddine*,
  2023 WL 7211392 (9th Cir. Nov. 2, 2023) .............................................................. 3

*Hildes v. Arthur Andersen LLP*,
  734 F.3d 854 (9th Cir. 2013) ............................................................................. 9, 10

*Hoang v. ContextLogic, Inc.*,
  2023 WL 6536162 (N.D. Cal. Mar. 10, 2023) ........................................................ 5

*Hoang v. ContextLogic, Inc.*,
  2023 WL 8879263 (N.D. Cal. Dec. 22, 2023) ............................................ 1, 5, 6, 10

*Johnson v. Sunrise Senior Living Mgmt., Inc.*,
  2016 WL 8929249 (C.D. Cal. May 5, 2016) ....................................................... 2, 12

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ................................................................................ 11

*McCalden v. Cal. Libr. Ass'n*,
  955 F.2d 1214 (9th Cir. 1990) ................................................................................ 3

*McGonigle v. Combs*,
  968 F.2d 810 (9th Cir. 1992) ................................................................................ 10

*Metzler Inv. GMBH v. Corintian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) .............................................................................. 11

*Navajo Health Found.-Sage Mem'l Hosp. Inc. v. Razaghi Dev. Co. LLC*,
  2024 WL 22760 (D. Ariz. Jan. 2, 2024) ................................................................ 11

*Network Apps, LLC v. AT&T Mobility LLC*,
  2024 WL 706966 (S.D.N.Y. Feb. 20, 2024) ........................................................... 12

*Rindlisbacher v. Steinway & Sons Inc.*,
  2021 WL 2334407 (D. Ariz. June 8, 2021) ........................................................... 3, 9

*Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) .................................................................................. 3

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013) ............................................................................. 1, 3

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*,
   2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ................................................................ 1

*In re Shoretel Inc., Sec. Litig.*,
   2009 WL 248326 (N.D. Cal. Feb. 2, 2009) ........................................................... 1, 5, 6

*Struggs v. Evans*,
   2008 WL 5068522 (N.D.Cal. Nov. 24, 2008) .............................................................. 12

*Valentine v. First Advantage Saferent, Inc.*,
   2008 WL 4367353 (C.D. Cal. Sept. 23, 2008) ......................................................... 1, 12

*In re Velti PLC Sec. Litig.*,
   2015 WL 5736589 (N.D. Cal. Oct. 1, 2015) ................................................................. 1

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ................................................................................... 9, 10

**Statutes**

15 U.S.C. § 77k(e) ............................................................................................................ 7

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 3, 4

The Opendoor Defendants[1] and the Underwriter Defendants[2] respectfully submit this Joint Memorandum of Law in Opposition ("Opposition") to Plaintiffs' Motion for Reconsideration and Request to Stay the Deadline to File a Second Amended Complaint ("Motion" or "Mot.").

**INTRODUCTION**

Plaintiffs' Motion for Reconsideration is substantively wrong and procedurally improper. The Court should deny it.

*First*, the Court did not commit "manifest error" when it found that the affirmative defense of negative causation was established on the face of the Complaint and dismissed Plaintiffs' claims under Section 11 of the Securities Act of 1933 ("Securities Act"). The Ninth Circuit has repeatedly held that if the facts as alleged by plaintiffs, and documents of which the court may take judicial notice, establish an affirmative defense, then a motion to dismiss may be granted on that basis. *See, e.g., Sams v. Yahoo! Inc.,* 713 F.3d 1175, 1179 (9th Cir. 2013). As many other courts have done before, the Court here analyzed each of the alleged corrective disclosures and found that they established negative causation on their face.[3] Plaintiffs have no legitimate basis to ask for reconsideration of the Court's decision.

---

[1] The Opendoor Defendants are Defendants Opendoor Technologies Inc. ("Opendoor" or the "Company"), Eric Wu, Carrie Wheeler, Adam Bain, Cipora Herman, Chamath Palihapitiya, Steven Trieu, Ian Osborne, David Spillane, Pueo Keffer, Glenn Solomon, Jason Kilar, and Jonathan Jaffe.

[2] The Underwriter Defendants are Defendants Citigroup Global Markets Inc.; Goldman Sachs & Co. LLC; Barclays Capital Inc.; Deutsche Bank Securities Inc.; Oppenheimer & Co. Inc.; BTIG, LLC; KeyBanc Capital Markets Inc.; Wedbush Securities Inc.; TD Securities (USA) LLC; Zelman Partners LLC; Academy Securities, Inc.; Loop Capital Markets LLC; Samuel A. Ramirez & Company, Inc.; and Siebert Williams Shank & Co., LLC.

[3] Examples of courts dismissing Section 11 claims at the pleading stage based on the establishment of negative causation include: *Hoang v. ContextLogic, Inc.*, 2023 WL 8879263, at *15-16 (N.D. Cal. Dec. 22, 2023); *In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *28-29 (N.D. Cal. Oct. 1, 2015); *Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166, at *15 (C.D. Cal. Feb. 6, 2014); *Dean v. China Agritech, Inc.*, 2011 WL 5148598, at *8 (C.D. Cal. Oct. 27, 2011); *In re Shoretel Inc., Sec. Litig.*, 2009 WL 248326, at *5 (N.D. Cal. Feb. 2, 2009); *McKesson HBOC, Inc.*, 126 F. Supp. 2d 1248, 1262 (N.D. Cal. 2000); *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416-17 (2d Cir. 2011); *Boluka Garment Co., Ltd. v. Canaan Inc.*, 547 F. Supp. 3d 439, 447-48 (S.D.N.Y. 2021); *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, 2013 WL 944777, at *9-10 (S.D.N.Y. Mar. 12, 2013); *Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*, 2010 WL 148617, at *11

*Second*, LRCiv. 7.2(g) states that "[n]o motion for reconsideration of an Order may repeat any oral or written argument made by movant in support of or in opposition to the motion that resulted in the Order." The Motion clearly violates this rule by relitigating the *exact same arguments* contained in Plaintiffs' Opposition to the Motion to Dismiss.[4] The only difference is that Plaintiffs have added new case citations, none of which actually impact the negative causation analysis applied by the Court. Indeed, Plaintiffs have not identified a single case where a court dismissed claims under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") on loss causation grounds (as the Court did here and Plaintiffs do not challenge), but allowed Section 11 Securities Act claims involving the same alleged corrective disclosures to proceed. Plaintiffs' arguments are improper and should result in the summary denial of the Motion. *See Christie's Cabaret of Glendale LLC v. United Nat'l Ins. Co.*, 2022 WL 137625, at *1 (D. Ariz. Jan. 14, 2022) (Liburdi, J.) (denying motion for reconsideration because "it relitigate[d] arguments").

*Finally*, the fact that the Court granted Plaintiffs leave to attempt a second amendment of their complaint is an additional and independent reason to deny their request for reconsideration. *See Johnson v. Sunrise Senior Living Mgmt., Inc.*, 2016 WL 8929249, at *4 (C.D. Cal. May 5, 2016) ("Plaintiff's reconsideration 'request is moot in light of the fact that the Court has already granted Plaintiff leave to file a First Amended Complaint in this matter.'"). Indeed, Plaintiffs' decision to move for reconsideration rather than file an amended complaint signals – correctly – that any amendment would be futile given that Plaintiffs' own pleadings and facts in the public domain make clear that negative causation is established.

---

(S.D.N.Y. Jan. 14, 2010); *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 420 (S.D.N.Y. 2009); *Davidco Inv'rs, LLC v. Anchor Glass Container Corp.*, 2006 WL 547989, at *25 (M.D. Fla. Mar. 6, 2006); *In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 865-66 (N.D. Tex. 2005).

[4] Plaintiffs filed two oppositions to Defendants' motions to dismiss. The opposition to the Opendoor Defendants' motion to dismiss addressed the Exchange Act claims. *See* Doc. 55. The opposition to the Underwriters Defendants' motion to dismiss addressed the Securities Act claims. *See* Doc. 56. References to Plaintiffs' opposition herein are to Plaintiffs' opposition to the Underwriter Defendants' motion to dismiss.

**ARGUMENT**

## I.    Plaintiffs' motion for reconsideration is meritless.

Motions for reconsideration should not be granted absent "highly unusual circumstances." *Hernandez v. Alameddine*, 2023 WL 7211392, at *1 (9th Cir. Nov. 2, 2023) (citation omitted); *see also Rindlisbacher v. Steinway & Sons Inc.*, 2021 WL 2334407, at *1 (D. Ariz. June 8, 2021) (reconsideration is appropriate "only in rare circumstances") (Liburdi, J.). Under LRCiv 7.2(g), "[t]he Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." The term "manifest error" means "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Estrada v. Bashas' Inc.*, 2014 WL 1319189, at *1 (D. Ariz. Apr. 1, 2014) (quoting Black's Law Dictionary 622 (9th ed. 2009)) (internal quotations omitted). Plaintiffs have presented no cognizable basis for this Court to reconsider its dismissal of the Section 11 claim.

### A.    Plaintiffs fail to establish that this Court committed a "manifest error" in its negative causation analysis.

The Court should deny the Motion because it did not disregard controlling law or the credible evidence in the record in finding negative causation on the Complaint's face. The Ninth Circuit repeatedly has held that "the assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense." *Sams*, 713 F.3d at 1179 (quoting *Jones v. Bock,* 549 U.S. 199, 215 (2007)); *see also, e.g.*, *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper . . . if the defendant shows some obvious bar to securing relief on the face of the complaint."); *Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (dismissal based on affirmative defense of statute of limitations appropriate when "the running of the statute is apparent on the face of the complaint."); *McCalden v.*

3

*Cal. Libr. Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) (claims may be dismissed based on affirmative defense that is apparent "on the face of the pleading").[5]

Based on this black-letter law, district courts in this Circuit "routinely" have dismissed Section 11 claims on negative causation grounds "if the facts as alleged by Plaintiffs, and documents which the court may take judicial notice of, establish the affirmative defense as a matter of law." *Brown*, 2014 WL 523166, at *14-15; *see also Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 417 (2d Cir. 2011) (affirming dismissal of Section 11 claims on negative causation grounds where "absence of loss causation" was "apparent from the face of the complaint"). A defendant can establish a negative causation defense based on "the absence of loss causation" related to the alleged corrective disclosures that the plaintiff asserts caused the stock price to drop. *Brown*, 2014 WL 523166, at *14 (collecting cases). In this way, a negative causation defense is the "'mirror image' of the plaintiffs' burden on loss causation in Section 10(b)." *Id.* (citation omitted).

Plaintiffs assert that the Court erred because "the Ninth Circuit has unequivocally instructed courts that once a *prima facie* case is made, … damages are presumed" and Defendants must "prove" negative causation. (Mot. at 8.) That was not overlooked. The Court acknowledged "[a] defendant raising the negative causation defense bears the burden of proof" (Doc. 86 at 31), and Defendants have not claimed otherwise. But the burden of proof does not mean a defendant cannot establish negative causation, just like any other affirmative defense, at the pleading stage. Moreover, and contrary to Plaintiffs' unsupported arguments, that burden is met where it is clear on the face of the complaint that the alleged corrective disclosures did not cause any loss. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1171 (C.D. Cal. 2008) ("The face of a complaint can provide a complete causation defense where the vast majority of a security's decline

---

[5] Rather than address this wealth of controlling precedent, Plaintiffs rely on a Third Circuit decision which states that an "affirmative defense may not be used to dismiss a complaint under Rule 12(b)(6)." (Mot. at 5-6 (citing *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004)).) The Ninth Circuit does not agree.

cannot be attributed to an alleged corrective disclosure."); *see also, e.g.*, *Amorosa*, 409 F. App'x at 416-17 (affirming dismissal because defendant showed that the alleged losses were not attributable to corrective disclosures that purportedly revealed "questionable accounting practices"); *Akerman v. Oryx Commc'ns, Inc.*, 810 F.2d 336, 342 (2d Cir. 1987) ("price decline before [corrective] disclosure may not be charged to the defendants"). Accordingly, where the alleged corrective disclosures do not give rise to loss causation, district courts in this Circuit consistently hold that the defendant has established negative causation.

In the recent *ContextLogic* decision, for example, the court dismissed Section 11 claims on negative causation grounds because the plaintiffs "failed to plead that either the stock price drop or disclosures … relate[d] to the challenged portion of the Registration Statements." 2023 WL 8879263, at *16. Earlier in the proceedings, the court dismissed Section 10(b) claims on loss causation grounds for the same reasons. *See Hoang v. ContextLogic, Inc.*, 2023 WL 6536162, at *28 (N.D. Cal. Mar. 10, 2023). Likewise, in *Shoretel*, the court dismissed the plaintiffs' Section 11 claims on negative causation grounds where the plaintiffs alleged that a press release announcing disappointing quarterly results caused the stock price to decline because "[t]he allegations of the Complaint—and the press release itself—establish that the press release did not disclose the alleged misstatements or misleading omissions and therefore establishe[d] defendants' negative causation defense." 2009 WL 248326, at *6. In doing so, the court rejected the plaintiffs' argument that case law on loss causation for Exchange Act claims for "which the plaintiff has the burden of alleging loss causation" was not relevant to negative causation. *Id.* Plaintiffs did not attempt to address or distinguish either of these decisions in their Opposition or in the Motion.

In *Brown* (a case on which the Court relied in its order), the court dismissed the plaintiffs' Section 10(b) claims because the seven corrective disclosures alleged in the complaint did "not reasonably reveal anything about the purported misrepresentations" and "[were] not corrective disclosures for purposes of demonstrating loss causation." 2014 WL

5

523166, at *15. Based on the absence of loss attributable to the alleged corrective disclosures, the court held that the defendants also established negative causation as to the plaintiffs' Section 11 claims. *Id.* at *15-16. While Plaintiffs did not bother to address *Brown* in their Opposition, they now make a feeble attempt in a footnote to argue that "the Court's reliance on [*Brown*] is misplaced" because "the plaintiffs there did not attempt to plead loss causation under the materialization of the risk approach." (Mot. at 8-9 & n.2.) It is improper to raise this argument for the first time in a motion for reconsideration, *see infra* pp.9-10, but in any event, the argument is meritless. A "materialization of the risk" theory still requires a plaintiff to plead loss causation through a corrective disclosure. The Court found that none of the alleged corrective disclosures in this case supported loss causation and thus negative causation was established. In sum, Plaintiffs' reference to "materialization of risk" is a distinction without a difference. *See Shoretel*, 2009 WL 248326, at *5 (dismissing Section 11 claims on negative causation grounds where plaintiff's theory of loss, as in this case, was based on the alleged materialization of the risk that the company's financial results would fall short of expectations).

As in *ContextLogic*, *Shoretel*, and *Brown*, this Court dismissed Plaintiffs' Section 11 claims because "none of the purported corrective disclosures cited by Plaintiffs in their briefs withstand scrutiny." (Doc. 86 at 31.) Earlier in the Order, the Court evaluated each of the three alleged corrective disclosures and found:

- The first alleged corrective disclosure (the February 2022 earnings release) "did nothing to correct" the alleged misstatements because it did not reveal anything about Opendoor's pricing algorithms.[6]

- The second alleged corrective disclosure (the Bloomberg article) did not support loss causation because (1) Opendoor already forecasted struggles with the housing slowdown, and (2) "as Plaintiffs concede[d]," the data in the article already was publicly available.

- The third alleged corrective disclosure (the November 2022 earnings release) did not support loss causation because (1) Opendoor previously had forecasted that "its

---

[6] Moreover, Opendoor previously disclosed in November 2021 that it expected a contribution margin between 4% and 6% for the quarter, meaning the disclosure of a 4% contribution margin for the quarter was not "new news" that could have caused any loss. (*See* Doc. 48 at 28.)

contribution margin was likely to fall significantly during the quarter," and (2) this lawsuit already had been filed.[7] (*Id.* at 24-26.) Citing *Brown*, the Court recognized that "[c]ourts within the Ninth Circuit and elsewhere have found negative causation established where the defendants have demonstrated that the plaintiffs failed to allege a corrective disclosure or any other indication of loss causation." (*Id.* at 31.) Accordingly, the Court found that Defendants "established negative causation" based on the absence of loss causation from the corrective disclosures alleged in the Complaint. (*Id.*)

In the end, the Motion: (a) fails to address the controlling Ninth Circuit precedent on the application of affirmative defenses at the pleading stage of a case; (b) does not challenge the Court's correct finding that the alleged corrective disclosures could not establish the existence of loss causation; and (c) does not meaningfully address the supporting case law on negative causation that Defendants cited in their motions to dismiss and on which the Court relied in its order. Accordingly, Plaintiffs have no legitimate basis to suggest the Court committed "manifest error" by ignoring controlling law or the credible evidence in the record.

**B.     The motion improperly attempts to relitigate negative causation.**

In violation of LRCiv. 7.2(g), the Motion improperly attempts to relitigate the same arguments Plaintiffs raised in opposition to Defendants' motions to dismiss. LRCiv. 7.2(g) ("[n]o motion for reconsideration of an Order may repeat any oral or written argument made by movant in support of or in opposition to the motion that resulted in the Order"). For illustrative purposes, the chart below identifies Plaintiffs' arguments on negative causation in the Opposition, where the Court addressed or acknowledged those arguments in its Order, and where Plaintiffs have now reargued the same points in the Motion:

---

[7] The fact that this lawsuit already had been filed at the time of the alleged third corrective disclosure is particularly relevant to negative causation. Under Section 11, Plaintiffs cannot recover losses that post-date the lawsuit, so there is no question that the third corrective disclosure could not have caused any investor losses for purposes of that claim. *See* 15 U.S.C. § 77k(e) (a plaintiff may only recover losses based on "the value [of the security] as of the time such suit was brought").

| Opposition (Doc. 56 at 16-17) | Order (Doc. 86 at 30-31) | Motion (Doc. 87 at 1-2, 5,8) |
|---|---|---|
| **Prima Facie Case** "Plaintiffs 'need only show a material misstatement or omission to establish [a] *prima facie* case.'" | "'[Plaintiffs] need only show a material misstatement or omission to establish [a] *prima facie* case.'" | "[T]he Court found that Plaintiffs established a *prima facie* case by adequately alleging a false and misleading statement." |
| **Heavy Burden** "A defendant bears a 'heavy burden' to establish this affirmative defense." | "A defendant raising the negative causation defense bears the burden of proof, and it is a 'heavy burden.'" | "The Ninth Circuit has called this a 'heavy burden,' especially at the motion to dismiss stage." |
| **Other Factors** "'[A] defendant must show 'that the depreciation in value' of a plaintiff's stock 'resulted from factors other than the alleged material misstatement.'" | Defendants "'must show that the depreciation in value of a plaintiff's stock resulted from factors other than the alleged material misstatement.'" | "[A] defendant can avoid liability only if it can prove that other factors were entirely responsible for the loss." |
| **Pleadings Stage** "'[B]ecause an analysis of causation is often fact-intensive, negative causation is generally established by a defendant on a motion for summary judgment or at trial,' and not at the pleadings stage." | "[B]ecause an analysis of causation is often fact-intensive, negative causation is generally established by a defendant on a motion for summary judgment or at trial." | "[C]ourts have held that it is inappropriate to bring a negative causation defense at the motion to dismiss stage." |
| **Satisfaction of Burden** "Defendants cite no alternative factors to even suggest that the losses are not attributable to the alleged misstatements." | "Defendants have established negative causation because they have demonstrated that Plaintiffs do not allege a corrective disclosure or any other indication of loss causation." | "Defendants offer no other factors—or even hint at something else—that could have caused Opendoor's stock price to drop." |
| **Corrective Disclosures** "Plaintiffs do establish that following the two offerings, Opendoor disclosed declining profitability as its business model could not 'dynamically adjust' to the 'real-time macro- and micro-economic conditions' in 2022." | "Defendants have established negative causation because they have demonstrated that Plaintiffs do not allege a corrective disclosure or any other indication of loss causation." | "This misrepresentation clearly 'touched upon' the reasons for Opendoor's declining stock price, which was the disclosure of declining contribution margins in 2022 during a period of high volatility." |

As reflected in the table, the Court addressed each of Plaintiffs' arguments. Plaintiffs cannot re-argue these same points through a motion for reconsideration. The Court should summarily deny the Motion on this basis alone. *Christie's Cabaret*, 2022 WL 137625, at *1 (D. Ariz. Jan. 14, 2022) (Liburdi, J.) (denying motion for reconsideration because "it relitigate[d] arguments").

8

Plaintiffs also improperly use the Motion to "revamp" their negative causation briefing with several additional cases that Plaintiffs chose not to cite before. *Rindlisbacher*, 2021 WL 2334407, at *3 ("[A] motion for reconsideration 'is not another opportunity for the losing party to make its strongest case, reassert arguments, or revamp previously unmeritorious arguments.'"). For instance, Plaintiffs cite the following cases for the first time in the Motion to emphasize the argument that a defendant must "prove" negative causation and bears a "heavy burden": *Garbini v. Protection One, Inc.*, 49 F. App'x 169 (9th Cir. 2002); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994); *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85 (2d Cir. 2017); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009); and *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267 (3d Cir. 2004). *See* Mot. at 5-8. A number of the cases are from out-of-circuit courts and none of them alters the applicable negative causation analysis in any meaningful way.[8] But even if they did, these decisions were all in existence at the time of the Opposition and were never mentioned.

Even with respect to the one case Plaintiffs cited in both the Opposition and the Motion (*Hildes v. Arthur Andersen LLP*, 734 F.3d 854 (9th Cir. 2013)), Plaintiffs quote new language and improperly make an entirely new argument that they could have raised in their Opposition. *See Christie's Cabaret*, 2022 WL 137625, at *1 (motions for

---

[8] None of these cases suggest that the Court engaged in "manifest error" in its ruling. In *Garbini*, the Ninth Circuit reversed because the district court erred in finding that the alleged corrective disclosure did not support loss causation. 49 F. App'x at 170. It did not hold that it would be error to dismiss the case on negative causation grounds even if the plaintiffs had failed to allege a proper corrective disclosure. In *Worlds of Wonder*, the Ninth Circuit also framed negative causation as a question of whether there was loss causation and noted that summary judgment was inappropriate based on the evidence presented by the plaintiffs. 35 F.3d at 1423. *Nomura* is a Second Circuit decision and is not relevant to the negative causation issues in this case. There, the plaintiffs brought claims under Section 12 of the Securities Act for "rescission-like" relief. 873 F.3d at 99-100. The plaintiff did not allege it suffered losses based on a corrective disclosure, and the Second Circuit held that the district court did not abuse its discretion by denying summary judgment given the evidence from the plaintiff. *Id.* at 154-156. *Flowserve* is a Fifth Circuit decision and merely held that there was sufficient evidence in the record to suggest that the district court improperly granted summary judgment on both loss causation and negative causation. 572 F. 3d at 234. Finally, *Adams Golf* is a Third Circuit decision that declined to address the issue of negative causation at the pleading stage, which is inconsistent with the controlling Ninth Circuit law in this case. 381 F.3d at 277; (*see also infra* n.5).

reconsideration "'are not the place for parties to make new arguments not raised in their original briefs'"); LRCiv. 7.2(g) (a motion for reconsideration cannot introduce "new matters brought to the Court's attention for the first time" absent specific explanation of reasons "they were not presented earlier"). They assert that the Ninth Circuit "held that a plaintiff can overcome the negative causation defense merely by alleging that the misrepresentation 'touches upon' the reason for the company's declining stock price—a separate and lower standard than establishing loss causation under Section 10(b)." (Mot. at 1.) Not only did Plaintiffs fail to discuss that portion of *Hildes* in the Opposition, but they grossly mischaracterize the decision. The *Hildes* court derived the "touches upon" language from Ninth Circuit case law discussing *loss causation* in *Section 10(b)* cases. *See Hildes*, 734 F.3d at 861 (quoting *Worlds of Wonder*, 35 F.3d at 1422); *Worlds of Wonder*, 35 F.3d at 1422 (quoting *McGonigle v. Combs*, 968 F.2d 810, 821 (9th Cir. 1992) and other Section 10(b) cases); *McGonigle*, F.3d at 821 ("'The causation requirement is satisfied in a *Rule 10b–5* case only if the misrepresentation *touches upon* the reasons for the investment's decline in value.'" (emphasis added)). In other words, the "touches upon" language used by the Ninth Circuit does not create "a separate and lower" standard, but instead further demonstrates that the absence of loss causation and the presence of negative causation are "mirror image[s]" of one another. *Brown*, 2014 WL 523166, at *14.[9]

Even if it were appropriate for Plaintiffs to attempt to relitigate whether they have adequately pleaded a corrective disclosure under *Hildes* (which it is not), there is no merit to Plaintiffs' argument that the "touches upon" standard has been satisfied merely because the corrective disclosures involved the topic of contribution margin. The Court addressed this argument in its decision and correctly held that the disclosures about contribution margin did not reveal anything about Opendoor's pricing algorithms and therefore were

[9] In *ContextLogic*, the plaintiffs made the same argument regarding the "touches upon" language and claimed that "decreased advertising spending 'touched upon' the decline in MAUs" announced in the alleged corrective disclosure. *See Hoang v. ContextLogic, Inc. et al.*, 5:21-cv-03930 (N.D. Cal), Doc. 109 at 21. As noted *supra* p.5, the Court nevertheless dismissed the claims on negative causation grounds because the plaintiffs "failed to plead that either the stock drop or disclosures … relate to the challenged portion of the Registration Statement." *ContextLogic*, 2023 WL 8879263, at *16.

not "corrective." *See supra* pp.6-8; *Metzler Inv. GMBH v. Corintian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008) (disappointing earnings release was not a corrective disclosure because it could not "be reasonably read to reveal" allegedly improper enrollment practices); *Loos v. Immersion Corp.*, 762 F.3d 880, 887-88 (9th Cir. 2014) ("[O]ur precedent requires a securities fraud plaintiff to allege that the market 'learned of and reacted to th[e] fraud, as opposed to merely reacting to reports of the defendant's poor financial health generally.'").

Moreover, the Court found that the statement in the Registration Statements that Opendoor's algorithm "can dynamically adjust to leading market indicators and react to real-time macro- and micro-economic conditions" potentially could have led a reasonable investor to believe that "Opendoor's algorithm was accurately estimating and forecasting home values *at the time the statements were made*." (Doc. 86 at 13, 29 (emphasis added).) But the alleged corrective disclosures were made in 2022, over a year later. The alleged corrective disclosures had nothing to do with the accuracy of Opendoor's algorithm "at the time the statements were made" in November 2020 and February 2021 when the Registration Statements were filed. Indeed, during that period Opendoor exceeded its target contribution margins by significant amounts. (*See* Doc. 48 at 7-8 & n.7.) Thus, there could be no loss attributable to that particular alleged misstatement based on much later disclosures about declining contribution margin.

In sum, the Court should not allow Plaintiffs to re-brief their arguments, raise new case law that could have been raised before, or assert new arguments through a motion for reconsideration. The Court can summarily deny the Motion on this basis alone. *See, e.g.*, *Navajo Health Found.-Sage Mem'l Hosp. Inc. v. Razaghi Dev. Co. LLC*, 2024 WL 22760, at *5 (D. Ariz. Jan. 2, 2024) (refusing to "entertain" motion for reconsideration because plaintiff "neglected to make any of these arguments" in opposition to the motion to dismiss). And, in any event, Plaintiffs' inappropriate re-briefing and additional case law do not call any part of the Court's decision into question.

11

**II.    The Court should order Plaintiffs to file any amended complaint promptly.**

Plaintiffs asked the Court for leave to amend if it granted Defendants' motions to dismiss. (Doc. 56 at 17 n.9.) Following its dismissal of Plaintiffs' claims, the Court then gave Plaintiffs 30 days to file an amended complaint. Plaintiffs have now backtracked from their original request by asking the Court to stay the deadline to file an amended complaint so that the Court can reconsider its decision instead, which the Court agreed to do.[10] Because the Court already granted leave to amend, however, the Court could deny the Motion on that basis alone. *See Network Apps, LLC v. AT&T Mobility LLC*, 2024 WL 706966, at *3 (S.D.N.Y. Feb. 20, 2024) (grant of leave to amend rendered motion for reconsideration moot); *Johnson*, 2016 WL 8929249, at *4 ("Plaintiff's reconsideration 'request is moot in light of the fact that the Court has already granted Plaintiff leave to file a First Amended Complaint in this matter.'"); *Struggs v. Evans*, 2008 WL 5068522, at *1 (N.D.Cal. Nov. 24, 2008) (motion for reconsideration denied as moot where plaintiff also was granted leave to amend); *Valentine v. First Advantage Saferent, Inc.*, 2008 WL 4367353, at *2 (C.D. Cal. Sept. 23, 2008) (motion for reconsideration filed simultaneously with motion for leave to amend rendered moot through grant of leave to amend).

More broadly, the Court should not reward Plaintiffs' tactical decision to file this meritless Motion with any further extension of the deadline for an amended complaint. Instead, the Court should order that any amended complaint be filed promptly after the Court's decision on the Motion. And if, as Defendants believe to be the case, Plaintiffs have no amendment that could cure the dismissal, their remedy is to file an appeal if they wish to do so, not continue to re-litigate the same issues already decided by the Court.

**CONCLUSION**

For all the reasons set forth above, Defendants respectfully request that the Court deny the Motion and order Plaintiffs to file any amended complaint promptly after the Court's decision.

---

[10] In violation of the LRCiv. 7.3(b), Plaintiffs never conferred with Defendants on an extension of their deadline to amend the complaint.

Dated: March 28, 2024

**LEWIS ROCA ROTHGERBER CHRISTIE LLP**

*/s/ John C. Gray*
John C. Gray (Arizona Bar. No. 028454)
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 262-5311
Facsimile: (602) 262-5747
Email: jgray@lewisroca.com

**SHEARMAN & STERLING LLP**
Adam S. Hakki (*pro hac vice*)
599 Lexington Ave.
New York, NY 10022
Telephone: (212) 848-4000
Email: ahakki@shearman.com

Lyle Roberts (*pro hac vice*)
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
Email: lyle.roberts@shearman.com

*Counsel for Defendants Opendoor Technologies Inc., Eric Wu, Carrie Wheeler, Chamath Palihapitiya, Steven Trieu, Ian Osborne, Adam Bain, David Spillane, Cipora Herman, Pueo Keffer, Glenn Solomon, Jason Kilar, and Jonathan Jaffe*

13

**BEYERS FARRELL PLLC**

<u>/s/ Michael J. Farrell</u> (with permission)
Michael J. Farrell (Arizona Bar. No. 015056)
Maureen Beyers (Arizona Bar No. 017134)
99 East Virginia Avenue, Suite 220
Phoenix, AZ 85004
Telephone: (602) 738-3022
mfarrell@bfazlaw.com
mbeyers@bfazlaw.com

**O'MELVENY & MYERS LLP**
Jonathon Rosenberg (*pro hac vice*)
William Sushon (*pro hac vice*)
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
jrosenberg@omm.com
wsushon@omm.com

Amy S. Park (*pro hac vice*)
2765 Sand Hill Road
Menlo Park, CA
Telephone: (650) 473-2600
apark@omm.com

*Counsel for Defendants Citigroup Global Markets, Inc., Goldman Sachs & Co., LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Oppenheimer & Co. Inc., BTIG, LLC, KeyBanc Capital Markets Inc., Wedbush Securities Inc., TD Securities (USA) LLC, Zelman Partners LLC, Academy Securities, Inc., Loop Capital Markets LLC, Samuel A. Ramirez & Company, Inc. and Siebert Williams Shank & Co., LLC*

14