**CLARK HILL PLC**
Daniel P. Thiel, SBN #035831
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: 480-684-1100
Fax: 480-684-1199
dthiel@clarkhill.com

*Local Counsel for Plaintiffs*

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
Guillaume Buell (*pro hac vice* forthcoming)
Nicholas Manningham (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
jchristie@labaton.com
gbuell@labaton.com
nmanningham@labaton.com

*Counsel for Plaintiffs*

[Additional Counsel on signature page]

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE OPENDOOR TECHNOLOGIES INC. SECURITIES LITIGATION | Case No. 2:22-CV-01717-MTL<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION**<br><br>CLASS ACTION |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities..................................................................................................ii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................. 2

    A.    Defendants Fail to Address Ninth Circuit Precedent on Negative
    Causation ........................................................................................................ 2

        1.    Defendants Ignore Controlling Ninth Circuit Precedent ................... 3

        2.    Defendants' District Court and Out-of-Circuit Cases Are
        Distinguishable................................................................................. 4

            a.    Five Cases Found Negative Causation Based on the
            Plaintiffs' Lack of Standing ....................................................... 4

            b.    Three Cases Found Negative Causation Because the
            Company's Stock Increased After the Disclosure ................. 5

            c.    The Remaining Cases Are Readily Distinguishable............... 5

        3.    Defendants Try to Blur the Distinction Between Loss Causation
        and Negative Causation.................................................................... 8

    B.    Several Courts Have Dismissed Section 10(b) Claims for Lack of
    Loss Causation But Upheld Section 11 Claims ......................................... 10

    C.    The Motion for Reconsideration is Procedurally Proper ............................ 11

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. Empresas La Moderna, S.A. De C.V.*,
46 Fed. App'x 452 (9th Cir. 2002) .................................................................................. 10

*In re Adams Golf, Inc. Sec. Litig.*,
381 F.3d 267 (3rd Cir. 2004) ............................................................................................ 3

*In re Alamosa Holdings, Inc.*,
382 F. Supp. 2d 832 (N.D. Tex. 2005) .............................................................................. 5

*Amorosa v. AOL Time Warner Inc.*,
409 F. App'x 412 (2d Cir. 2011) ....................................................................................... 5

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014)............................................................................................. 3

*Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*,
2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ..................................................................... 5

*Boluka Garment Co., Ltd. v. Canaan Inc.*,
547 F. Supp. 3d 439 (S.D.N.Y. 2021) .............................................................................. 6

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
665 F. Supp. 2d 404 (S.D.N.Y. 2009) .............................................................................. 5

*Brown v. Ambow Educ. Holding Ltd.*,
2014 WL 523166 (C.D. Cal. Feb. 6, 2014) .................................................................. 6, 7

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
928 F. Supp. 2d 705 (S.D.N.Y. 2013) ............................................................................ 10

*In re Countrywide Fin. Corp.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................................ 8

*Davidco Invs., LLC v. Anchor Glass Container Corp.*,
2006 WL 547989 (M.D. Fla. Mar. 6, 2006) ..................................................................... 4

*Dean v. China Agritech, Inc.*,
2011 WL 5148598 (C.D. Cal. Oct. 27, 2011)................................................................... 4

*Garbini v. Protection One, Inc.*,
49 F. App'x 169 (9th Cir. 2002) ....................................................................................... 2

*Hildes v. Arthur Andersen LLP*,
   734 F.3d 854 (9th Cir. 2013) ............................................................................ *passim*

*Hoang v. ContextLogic, Inc.*,
   2023 WL 8879263 (N.D. Cal. Dec. 22, 2023) ................................................ 5

*Hunt v. Bloom Energy Corp.*,
   2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) ............................................. 10

*In re Interlink Elecs., Inc., Sec. Litig.*,
   2007 WL 9857528 (C.D. Cal. Sept. 26, 2007) ............................................. 10

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ......................................................................... 9

*McCalden v. Cal. Libr. Ass'n.*,
   955 F.2d 1214 (9th Cir. 1990) ....................................................................... 3

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ........................................................ 4

*Metzler Inv. GMBH v. Corintian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .................................................................... 7, 9

*Mineworkers' Pension Scheme v. First Solar Inc.*,
   881 F.3d 750 (9th Cir. 2018) ...................................................................... 7, 9

*Sams v. Yahoo! Inc.*,
   713 F.3d 1175 (9th Cir. 2013) ....................................................................... 3

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*,
   2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ................................................ 4

*In re Shoretel Inc. Sec. Litig.*,
   2009 WL 248326 (N.D. Cal. Feb. 2, 2009) ................................................... 6

*Van Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ......................................................................... 3

*In re Velti PLC Sec. Litig.*,
   2015 WL 5736589 (N.D. Cal. Oct. 1, 2015) ................................................. 4

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ............................................................... 2, 3, 7, 8

**Statutes**

Securities Act of 1933

    Section 11..............................................................................................................*passim*

    Section 12........................................................................................................... 10

    Section 15...................................................................................................... 10, 11

Securities Exchange Act of 1934

    Section 10(b) ................................................................................................ 6, 8, 10

**Other Authorities**

L.R.Civ. 7.2(g)(1) ..................................................................................................... 10

Plaintiffs respectfully submit this reply memorandum in further support of Plaintiffs' Motion for Reconsideration and Request to Stay the Deadline to File a Second Amended Complaint (ECF No. 87) (the "Motion").

## PRELIMINARY STATEMENT

As explained in Plaintiffs' Motion for Reconsideration, the Court overlooked binding Ninth Circuit precedent when finding Defendants met their burden of proving negative causation. This was "manifest error" that requires reconsideration of the Court's Order dismissing the Amended Complaint ("Order"). Rather than address this binding precedent, Defendants' Opposition merely points to factually distinguishable, non-binding district court cases and then makes several *procedural* arguments in an attempt to convince the Court to ignore the motion on the merits. These arguments are without merit.

First, Defendants claim that Plaintiffs ignore binding Ninth Circuit precedent regarding affirmative defenses. Not so. Plaintiffs argue that the Court failed to apply the correct standard when analyzing the specific affirmative defense of negative causation when assessing a claim under Section 11 of the Securities Act of 1933 ("Securities Act")— an affirmative defense none of Defendants' Ninth Circuit cases address. Thus, Defendants' arguments and case law on this non-controversial point are of no moment.

Second, left with no Ninth Circuit precedent in support of their position, Defendants resort to citing several outlier district court cases that are irrelevant and easily distinguishable. For example, of the 13 cases cited by Defendants, five of the cases found negative causation only because the plaintiff *sold all of its shares* before any disclosure caused the stock price to decline—a fact not present here. Similarly, another three cases found negative causation because the defendants provided evidence that the stock price *increased* following the alleged corrective disclosures, which, again, is a fact not present here. Of the remaining five cases, the facts are readily distinguishable, as discussed below. Indeed, unlike those cases, here Defendants' own statements make the connection between the misrepresentation and the loss.

Finally, Defendants claim that the Motion for Reconsideration is an improper attempt to reargue the motion to dismiss. Not true. The basis for the reconsideration is the Court's manifest error in not applying the correct standard to the negative causation analysis in its decision on the motion to dismiss, which occurred after briefing and oral argument was complete. Specifically, the Court never applied the correct Ninth Circuit standard for assessing whether negative causation has been established under Section 11 (i.e. that the misstatements in the registration statement "touch upon" the alleged disclosures). Therefore, the Court should grant Plaintiffs' Motion for Reconsideration and vacate its Order dismissing Plaintiffs' Section 11 claim.

## ARGUMENT

### A.   Defendants Fail to Address Ninth Circuit Precedent on Negative Causation

Plaintiffs' Motion for Reconsideration argues that the Court failed to apply controlling Ninth Circuit precedent from *Hildes* and its predecessors. In *Hildes*, the Ninth Circuit described the three-step analysis courts must apply when addressing the affirmative defense of negative causation. First, the Ninth Circuit explained that "Section 11 places a relatively minimal burden on a plaintiff," and thus, a plaintiff need only allege a false and misleading statement to establish a *prima facie* case (i.e., plaintiff is not required to plead reliance, scienter, or loss causation). *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859-60 (9th Cir. 2013); *see also Garbini v. Protection One, Inc.*, 49 F. App'x 169, 170 (9th Cir. 2002); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1422 (9th Cir. 1994). Second, the Ninth Circuit explained that a defendant can limit or avoid liability under Section 11(e) if it proves the losses "are not attributable to the alleged misrepresentation or omission in the registration statement." *Hildes,* 734 F.3d at 860. This is known as the negative causation defense. Third, the Ninth Circuit held that a plaintiff can nonetheless overcome a negative causation defense merely by alleging that "the misrepresentation ***touches upon*** the ***reasons*** for an investment's decline in value." *Id.* at 861.

### 1.    Defendants Ignore Controlling Ninth Circuit Precedent

Rather than address the controlling Ninth Circuit cases that are directly on point—*Hildes*, *Garbini*, and *In re Worlds*—Defendants attempt a straw-man argument claiming Plaintiffs have argued that no affirmative defenses can be raised at the motion to dismiss stage, and argue that the Ninth Circuit has "repeatedly" held that courts may grant a motion to dismiss based on an affirmative defense. *See* Defendants' Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Reconsideration (ECF No. 89) ("Def. Opp.") at 1, 3-4. That point is non-controversial. Defendants have the right to assert an affirmative defense at the motion to dismiss stage. However, all of the cases cited by Defendants in support of this argument address completely different affirmative defenses. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (statutory immunity from suit for internet service provider); *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (statute of limitations defense); *Van Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (statute of limitations defense); *McCalden v. Cal. Libr. Ass'n.*, 955 F.2d 1214, 1219 (9th Cir. 1990) (an "impossibility defense" in a breach of contract case). Thus, these cases are of no value here.

Equally disingenuous is Defendants' argument that Plaintiffs do not "address this wealth of controlling precedent" about affirmative defenses, but instead, "rely" on *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267 (3rd Cir. 2004), a Third Circuit case that held negative causation may not be used on a motion to dismiss. *See* Def. Opp. at 4 n.5. Defendants are wrong. Plaintiffs do not rely on *In re Adams Golf* to argue Defendants cannot assert an affirmative defense. They can. Rather, Plaintiffs cited to Circuit Court cases from the Second, Third, and Fifth Circuits to show the wealth of case law supporting the fact that it is extremely difficult, if not impossible, to establish a negative causation defense at the motion to dismiss stage. *See* Motion at 4-6.  Moreover, these cases support the controlling Ninth Circuit cases that Plaintiffs rely on, which establish the standard for establishing the negative causation affirmative defense.

3

### 2.   Defendants' District Court and Out-of-Circuit Cases Are Distinguishable

Faced with no on-point Ninth Circuit case to support their position, Defendants rely on district court cases to argue that other courts have dismissed Section 11 claims at the pleading stage based on negative causation. *See* Def. Opp. at 1 n.3. Although Defendants attach a string of several cases to make it appear as if courts routinely find negative causation, as explained below, these cases are highly distinguishable.

### a.   Five Cases Found Negative Causation Based on the Plaintiffs' Lack of Standing

Five of the cases cited by Defendants found negative loss causation due to lack of standing because the plaintiff sold all of its stock before any corrective disclosure, and thus, did not suffer any economic loss. For example, in *In re Velti PLC Sec. Litig.*, 2015 WL 5736589 (N.D. Cal. Oct. 1, 2015), the court found that the plaintiff could not bring a Section 11 claim for the initial offering because the plaintiff bought and sold its shares on the same day for a profit. *Id.* at *28. Similarly, the plaintiff could not bring a Section 11 claim for the secondary offering because the plaintiff sold all its shares ***before*** the alleged corrective disclosure. *Id.* at *29. For that reason, the plaintiff could not establish any loss under Section 11—i.e., did not have standing—and negative causation was apparent on the face of the complaint. *See also Dean v. China Agritech, Inc.*, 2011 WL 5148598, at *8 (C.D. Cal. Oct. 27, 2011) (finding negative causation because the plaintiffs sold all their stock before the first alleged corrective disclosure); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1262 (N.D. Cal. 2000) (same); *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, 2013 WL 944777, at *9-10 (S.D.N.Y. Mar. 12, 2013) (same); *Davidco Invs., LLC v. Anchor Glass Container Corp.*, 2006 WL 547989, at *25 (M.D. Fla. Mar. 6, 2006) (same). Indeed, in *Schuler*, the Court acknowledged that these types of situations are the "rare circumstances where negative causation is clear from the face of the complaint." *Schuler*, 2013 WL 944777, at *9. This case, however, is not one of those rare cases.

4

**b.      Three Cases Found Negative Causation Because the Company's Stock Increased After the Disclosure**

Three other cases are readily distinguishable because the alleged corrective disclosure caused the company's stock price to *increase*. For example, in *Hoang v. ContextLogic, Inc.*, 2023 WL 8879263 (N.D. Cal. Dec. 22, 2023), the defendants met their burden of proving negative causation because they "offer[ed] a persuasive alternative explanation for the stock decline." *Id.* at *16. Specifically, the defendants provided evidence that following the alleged disclosure, "the stock price actually *increased*." *Id.* (emphasis added). In other words, the market reacted positively to the information, meaning the plaintiff could not establish any injury or loss on the face of the complaint.[1] *See also Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416-17 (2d Cir. 2011) (stock price increased between the date of the corrective disclosure and the filing of the complaint, thus negating any losses that could have resulted from the misstatement); *Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*, 2010 WL 148617, at *11 (S.D.N.Y. Jan. 14, 2010) (the face of the complaint revealed that the Defendant's stock traded higher even as the defendants disclosed increased exposure to subprime mortgages, which the plaintiffs alleged was concealed by the prospectus). Here, however, Defendants have *offered no other alternative explanation*, let alone a "persuasive" one, and Opendoor's stock declined significantly following disclosures of declining contribution margins. ¶¶470-73.

**c.      The Remaining Cases Are Readily Distinguishable**

Defendants also cite three out-of-circuit district court cases that are distinguishable because the defendants in those cases proved that the stock price declined in response to completely different news that did not touch upon any statement in the offering documents. *See In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 420 (S.D.N.Y. 2009) (the corrective disclosure had no connection to the allegedly fraudulent statements in the offering documents); *In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 862, 865-

---

[1] For that reason, the court in *ContextLogic* found that a later disclosure was not sufficient to establish any sort of loss because the plaintiff "failed to link the [later] stock drop to any revelation . . . that had not already been disclosed in the [earlier] corrective disclosure."

66 (N.D. Tex. 2005) (the corrective disclosure was unrelated to any alleged misstatement); *Boluka Garment Co., Ltd. v. Canaan Inc.*, 547 F. Supp. 3d 439, 447-48 (S.D.N.Y. 2021) (same). Here, Opendoor's stock price declined in response to news about declining contribution margins, which touched upon Defendants' prior misrepresentations about the algorithm's ability to price homes accurately and maintain positive contribution margins across all market conditions. This is sufficient under Ninth Circuit precedent.

Finally, Defendants rely on two district court cases, *Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166 (C.D. Cal. Feb. 6, 2014) and *In re Shoretel Inc. Sec. Litig.*, 2009 WL 248326 (N.D. Cal. Feb. 2, 2009). Based on these cases, Defendants argue the Court correctly evaluated each of the three corrective disclosures and found "they did not reveal anything about Opendoor's pricing algorithms." Def. Opp. at 6-7. Although Defendants try to apply a Section 10(b) loss causation analysis to these disclosures, the correct standard is whether the alleged false statements in the registration statements touched upon the reasons for Opendoor's declining stock price.[2] That standard is met here, as the statements—which discussed the algorithm's ability to maintain margins due to its forecasting accuracy—clearly touched upon Opendoor's declining margins and profitability in 2022.[3]

Moreover, Defendants' reliance on these cases is misplaced. As Plaintiffs explained in their Motion, the plaintiff in *Brown* alleged loss causation **only under a corrective disclosure approach**, meaning the disclosure had to reveal the alleged fraud to show causation. Because the disclosure did not even mention the alleged fraud, the *Brown* court held that it was apparent from the face of the complaint that there was no causation. *Brown*,

[2] Critically, the Court also erred in finding Defendants overcame the second requirement from *Hildes*—that Defendants establish that other factors caused the declining stock price—because Defendants did not offer ***any*** evidence or alternative explanation for the declining stock price on each of the alleged dates.

[3] Defendants claim that Plaintiffs cannot recover losses for the November 3, 2022 disclosure because that drop post-dates the lawsuit. Def. Opp. at 7 n.7. This is wrong. The complaint which brought Section 11 claims against ***all*** Defendants—including the Underwriter Defendants, who were not named in the initial complaint—was filed on November 22, 2022, i.e., after the final disclosure. *See Oakland County Voluntary Employees' Beneficiary Association v. Opendoor Technologies, Inc.*, Case No. 2:22-cv-01987 (D. Ariz.). Moreover, Defendants' argument concerns the calculation of statutory damages, not whether they have met their burden of establishing negative causation.

6

2014 WL 523166, at *15-16. Similarly, the Court in *In re Shoretel* found the absence of causation was apparent because the corrective disclosure did not reveal the fraud. However, these cases relied on a line of cases—including *Metzler Inv. GMBH v. Corintian Colls., Inc.*, 540 F.3d 1049, 1063-64 (9th Cir. 2008)—that have since been identified as outliers by the Ninth Circuit.

Specifically, in *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018), the Ninth Circuit clarified that the "[r]evelation of fraud" theory of loss causation "is simply one of the 'infinite variety' of causation theories a plaintiff might allege to satisfy proximate cause." *Id.* at 754. The Ninth Circuit explained that those cases "should be understood as fact-specific variants of the basic proximate cause test" and the Ninth Circuit's "approval of one theory should not imply our rejection of others." *Id.* at 753-54. Indeed, the Ninth Circuit held that "[a] plaintiff may also prove loss causation by showing that the stock price fell upon the revelation of an earnings miss, even if the market was unaware at the time that fraud had concealed the miss"—the same theory of loss causation Plaintiffs plead here with respect to declining contribution margins. *Id.* at 754.

Contrary to *Brown* and *In re Shoretel*, the Complaint here alleges a materialization of the risk theory of loss causation. Specifically, the Complaint alleges that because the algorithm was inaccurate and could not adjust to changing economic conditions, the Company was at an increased risk of sustaining losses due to fluctuating real estate markets. ¶¶169-71. This risk materialized when Defendants disclosed declining contribution margins and profitability. ¶213. Accordingly, here, and unlike in *Brown* and *In re Shoretel*, it is not apparent from the face of the Complaint that there was no indication of causation. And unlike those cases, here, Plaintiffs were not required to plead that the fraud was revealed by a corrective disclosure.

Indeed, the Ninth Circuit, as early as *In re Worlds of Wonder*, cautioned against the standard Defendants argue for here (i.e., that the disclosures must reveal the fraud). In *In re Worlds of Wonder*, the Ninth Circuit overturned the district court's determination that the defendant met their burden of proof for establishing negative causation at summary

7

judgment. The Ninth Circuit found that the defendants' fraud did not have "to be disclosed to the market before section 11 liability could attach," and explained that "[t]he district court's interpretation would eviscerate [Section 11]" because "companies and their auditors could immunize themselves from § 11 liability for false and even fraudulent financial statements simply by refusing to admit their falsity . . . prior to the time a § 11 suit is filed." *In re Worlds of Wonder*, 35 F.3d at 1422.[4]

At bottom, Defendants' reliance on easily distinguishable district court cases does not save them from binding Ninth Circuit case law that applies to the facts of this case. Specifically, Plaintiffs can overcome a negative causation defense merely by alleging that "the misrepresentation ***touches upon*** the ***reasons*** for an investment's decline in value." *Hildes*, 734 F.3d at 861. Plaintiffs have met that burden.

### 3. Defendants Try to Blur the Distinction Between Loss Causation and Negative Causation

Defendants make little to no effort to argue that the misrepresentations do not touch upon the reasons for the declining stock price. Rather, Defendants try to blur any distinction between loss causation and negative causation by arguing that the "touches upon" language was derived from Ninth Circuit case law discussing loss causation. Def. Opp. at 10. This is extremely misleading. The *Hildes* "touches upon" language was not derived from a Section 10(b) case discussing loss causation. Rather, as the Ninth Circuit explained in *Hildes*, the negative causation defense was first recognized by *In re Worlds of Wonder* but at the time it was known "under the name 'loss causation.'" *Id.* Indeed, although *In re Worlds of Wonder* called the defense the "loss causation defense," it is clear that the Ninth Circuit was addressing negative causation under Section 11 and not loss causation under Section 10(b). *In re Worlds of Wonder*, 35 F.3d at 1422 ("To establish a 'loss causation' defense under section 11(e)" of the Securities Act, the defendant must "prove that the

---

[4] Defendants also cite *In re Countrywide Fin. Corp.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008). *See* Def. Opp at 4-5. Their reliance on this case is misplaced. Although there the court acknowledged that "[t]he face of a complaint can provide a complete causation defense where the vast majority of a security's decline cannot be attributed to an alleged corrective disclosure," the court ultimately rejected defendants' negative causation defense because the issue was "a fact question" for later stages of the case. *Id.* at 1171-72.

depreciation in value . . . resulted from factors other than the [alleged] material misstatement."). In *Hildes*, the Ninth Circuit clarified that the defense is known as negative causation, not loss causation. *See Hildes*, 734 F.3d at 860.

Next, Defendants argue that Plaintiffs have not met the "touches upon" standard because "the disclosures about contribution margin did not reveal anything about Opendoor's pricing algorithms and therefore were not corrective." Def. Opp. at 10-11 (citing *Metzler*, 540 F.3d at 1063 and *Loos v. Immersion Corp.*, 762 F.3d 880, 887-88 (9th Cir. 2014)). As an initial matter, this argument is a red herring because Defendants once again try to place the burden on Plaintiffs to establish loss causation, which is improper as the burden is on Defendants to establish negative causation. Even assuming, *arguendo*, that Defendants' argument is relevant to establishing their burden of proving negative causation, it still fails because it takes a far too restrictive view of loss causation. Indeed, as explained above, the Ninth Circuit has since cautioned that the two cases relied on by Defendants—*Metzler* and *Loos*—are outliers and part a group of cases that adopted a "more restrictive view" of loss causation. *First Solar Inc.*, 881 F.3d at 752.

However, what is relevant here is whether the misrepresentation touches upon the declining value. Here, Defendants' own statements make clear that the alleged misrepresentation "touches upon" the later disclosures of declining contribution margins. Specifically, the misrepresentations claimed that Opendoor's algorithm could "react to real-time macro- and micro-economic conditions" and that "[t]his responsiveness is critical to pricing accurately and **maintaining margins, especially in periods of volatility**" (¶¶402, 410). This is clearly connected to the disclosures, which revealed that the Company could not **maintain margins in periods of high volatility** (¶¶470-73).[5]

---

[5] Defendants bizarrely argue that there could be no loss attributable to the alleged misstatements because the disclosures of declining contribution margins did not occur for "over a year later." Def. Opp. at 11. This illogical argument should be ignored. Corrective disclosures always come after an alleged misrepresentation. Moreover, the Complaint alleges that the algorithm was never accurate and was simply riding a hot housing market in 2020 and 2021, and therefore, the fraud was not revealed, and the risk did not materialize, until 2022 when the market turned. *See, e.g.*, ¶¶116, 131, 224, 239, 245.

**B.    Several Courts Have Dismissed Section 10(b) Claims for Lack of Loss Causation But Upheld Section 11 Claims**

Defendants further argue that Plaintiffs "have not identified a single case where a court dismissed claims under Section 10(b) . . . on loss causation grounds . . . but allowed Section 11 Securities Act claims involving the same alleged corrective disclosures to proceed." Def. Opp. at 2.  In advancing this argument, Defendants essentially argue the Court did not commit error by applying the Section 10(b) loss causation analysis to the Section 11 claims. Defendants are wrong. Courts routinely dismiss Section 10(b) claims on loss causation grounds but uphold Section 11 claims based on the very same disclosures. *See, e.g., Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *10-11, 19 (N.D. Cal. Sept. 29, 2021) (dismissing Section 10(b) claim on loss causation grounds but allowing Section 11 claim to proceed); *see also In re Interlink Elecs., Inc., Sec. Litig.*, 2007 WL 9857528, at *5-7 (C.D. Cal. Sept. 26, 2007) (dismissing Section 10(b) claim "for failure to adequately plead loss causation" but allowing Section 11 claim to proceed); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 719 (S.D.N.Y. 2013) (dismissing the Section 10(b) claim on loss causation grounds but allowing the Section 11 claim to proceed because "[w]hile plaintiff has not pled adequately loss causation for the purposes of its Section 10(b) and Rule 10b-5 claim, it is not apparent from the face of the complaint that plaintiff will be unable to recover based on" the two correct disclosures).[6]

For all the reasons explained above, had the Court conducted the proper analysis under *Hildes*, it would have found that the alleged misrepresentations "touch upon" the reason for Opendoor's declining stock price. The Court's failure to address the "touches upon" language was manifest error that requires reconsideration.

---

[6] Indeed, the Ninth Circuit upheld a Section 11 claim despite dismissing a Section 10(b) claim for lack of causation in *Aaron v. Empresas La Moderna, S.A. De C.V.*, 46 Fed. App'x 452, 454-55 (9th Cir. 2002). There, the Ninth Circuit upheld a court's dismissal of the Section 10(b) claim because the plaintiff failed to plead causation, but overturned the dismissal of the Section 11 claim. In so doing, the Ninth Circuit explained: "In a private federal securities fraud action [under Section 10(b)], the plaintiff has the burden of proving that the defendant's alleged wrongful act or omission caused the injury for which the plaintiff seeks to recover damages," however, "[c]ausation is not a necessary element of a prima facie case under Sections 11, 12 and 15 of the Securities Act of 1933." *Id.*

### C.    The Motion for Reconsideration is Procedurally Proper

Faced with the realization that they lose on the merits, Defendants resort to several procedural arguments. For example, Defendants argue Plaintiffs' Motion simply tries to relitigate the same arguments from the motion to dismiss. Def. Opp. at 7-10. Defendants are wrong. The Motion for Reconsideration addresses the Court's error in applying the wrong negative causation standard, which of course did not happen until after briefing and oral argument was complete. Based on this error, Plaintiffs' Motion for Reconsideration directs the Court's attention to binding Ninth Circuit precedent that the Court overlooked in its Order.  This is proper under the Local Rules of this District. *See* L.R.Civ. 7.2(g)(1) (motions for reconsideration may ask a court to reexamine "matters that the movant believes were overlooked or misapprehended by the Court.").

Although some of the points made in Plaintiffs' Motion for Reconsideration were also made previously, this was done to frame the issue for the Court.[7] As explained above, the main argument in Plaintiffs' Motion for Reconsideration is that the Court overlooked the "touches upon" language from *Hildes*. Indeed, Defendants admit in their Opposition that the Court never considered this language. *See* Def. Opp. at 9 (in their Motion for Reconsideration, "Plaintiffs quote new language" from *Hildes*). Thus, Plaintiffs' Motion asks the Court to reconsider and apply the correct legal standard to this case.

### CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court reconsider its prior Order and find that Plaintiffs have adequately alleged a Section 11 claim against all Defendants.[8] Pending the Court's decision, Plaintiffs stand ready to file a Second Amended Complaint promptly or appeal the Court's Order.

---

[7] Defendants' table on page 8 of their Opposition should be disregarded. Defendants' table cherry-pick portions of Plaintiffs' MTD Opposition and Motion for Reconsideration to make it appear as if Plaintiffs simply regurgitated their MTD Opposition, but fail to address the heart of Plaintiffs' Motion for Reconsideration.

[8] Should the Court grant Plaintiffs' Motion for Reconsideration, it should also find that Plaintiffs have adequately alleged a claim under Section 15 of the Securities Act because the Court dismissed this claim solely because it found that Plaintiffs have failed to plead a primary violation of Section 11.

Dated: April 5, 2024

**CLARK HILL PLC**

By: */s/Daniel P. Thiel*
Daniel P. Thiel, SBN #035831
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: 480-684-1100
Fax: 480-684-1199
dthiel@clarkhill.com

*Local Counsel for Plaintiffs*

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
Guillaume Buell (*pro hac vice* forthcoming)
Nicholas Manningham (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
jchristie@labaton.com
gbuell@labaton.com
nmanningham@labaton.com

*Counsel for Plaintiffs*

**VANOVERBEKE MICHAUD & TIMMONY P.C.**

Aaron L. Castle (admitted *pro hac vice*)
79 Alfred Street
Detroit, Michigan 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com

**GLANCY PRONGAY & MURRAY LLP**

Casey E. Sadler (*pro hac vice* motion forthcoming)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
clinehan@glancylaw.com

*Additional Counsel for Plaintiffs*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and transmitted of a Notice of Service of Electronic Filing to the individuals registered with CM/ECF.

*/s/Daniel P. Thiel*
Daniel P. Thiel, SBN #035831