**CLARK HILL PLC**
Daniel P. Thiel, SBN #035831
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: 480-684-1100
Fax: 480-684-1199
dthiel@clarkhill.com

*Local Counsel for Plaintiffs*

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty (*pro hac vice*)
James T. Christie (*pro hac vice*)
Guillaume Buell (*pro hac vice*)
Nicholas Manningham (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
jchristie@labaton.com
gbuell@labaton.com
nmanningham@labaton.com

*Counsel for Plaintiffs*

[Additional Counsel on signature page]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE OPENDOOR TECHNOLOGIES INC. SECURITIES LITIGATION | Case No. 2:22-CV-01717-MTL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY MAY 14 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)**<br><br><u>CLASS ACTION</u> |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................. 4

I.    Interlocutory Appeals Are Warranted Only in Exceptional Circumstances ............ 4

II.   Defendants Fail to Satisfy the High Threshold Required for Interlocutory
      Appeals ...........................................................................................................5

      A.    The Court's Order Does Not Involve a Controlling Question of Law.......... 6

      B.    The Court's Order Does Not Present a Substantial Ground for
            Difference of Opinion ................................................................................. 7

      C.    An Immediate Appeal Would Not Materially Advance the Ultimate
            Termination of the Litigation ..................................................................... 11

CONCLUSION ............................................................................................................ 12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cement Antitrust Litig.*
    (MDL No. 296), 673 F.2d 1020 (9th Cir. 1981) ............................................................. 4

*City of Glendale v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    2013 WL 12250532 (D. Ariz. June 5, 2013) ................................................................. 5

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) .................................................................................. *passim*

*Env't Prot. Info. Ctr. v. Pac. Lumber Co.*,
    2004 WL 838160 (N.D. Cal. Apr. 19, 2004) ................................................................. 5

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014) ..................................................................... 9, 11

*In re Google Referrer Header Priv. Litig.*,
    2020 WL 5545155 (N.D. Cal. Sept. 16, 2020) ................................................. 4, 10, 12

*Hildes v. Arthur Andersen LLP*,
    734 F.3d 854 (9th Cir. 2013) .................................................................................. *passim*

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
    22 F. 4th 1125 (9th Cir. 2022) ......................................................................... 5, 6, 11

*James v. Price Stern Sloan, Inc.*,
    283 F.3d 1064 (9th Cir. 2002) ..................................................................................... 5

*Krause v. Yavapai County*,
    2020 WL 2512761 (D. Ariz. May 14, 2020) (Liburdi, J.) ................................ 1, 4, 5, 7

*In re MannKind Sec. Actions*,
    835 F. Supp. 2d 797 (C.D. Cal. 2011) .................................................................. 1, 5, 9

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ................................................................................... 11

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018) ..................................................................................... 11

*In re Miniso Group Holding Ltd. Sec. Litig.*,
    2024 WL 759246 (S.D.N.Y. Feb. 23, 2024) ............................................................... 10

*Rieve v. Coventry Health Care*, Inc.,
    870 F. Supp. 2d 856 (C.D. Cal. 2012) ....................................................................... 12

*Safeco Ins. Co. of Am. v. Air Vent, Inc.*,
    2023 WL 2414630 (D. Nev. Jan. 25, 2023) ................................................................. 7

*San Bernardino Cnty. v. Ins. Co. of State of Pa.*,
  2023 WL 4681621 (C.D. Cal. July 12, 2023)............................................................. 6

*Smilovits v. First Solar Inc.*,
  119 F. Supp. 3d 978 (D. Ariz. 2015) .................................................................. 10, 11

**Statutes**

15 U.S.C. § 77k(e)..............................................................................................7, 8

28 U.S.C. § 1292(b)...........................................................................................*passim*

Securities Act of 1933
     Section 11............................................................................................ 3, 7, 9, 12
     Section 15................................................................................................... 12

Securities Exchange Act of 1934
     Section 10(b)............................................................................................ 6, 12

Lead Plaintiffs Indiana Public Retirement System, Oakland County Employees' Retirement System, and Oakland County Voluntary Employees' Beneficiary Association ("Lead Plaintiffs") and Additional Plaintiff Stuart Graham Hereford ("Additional Plaintiff" and together with Lead Plaintiffs, "Plaintiffs") respectfully submit this opposition to Defendants' Motion to Certify the May 14 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (ECF No. 104) (the "Motion").

**PRELIMINARY STATEMENT**

Defendants' Motion is nothing more than an attempt to relitigate the same negative causation arguments the Court has already rejected. *See* Order Granting Plaintiffs' Motion for Reconsideration (the "Order" or "May 14 Order") (ECF No. 97). However, a motion to certify an interlocutory appeal—seeking relief that is only granted in rare occasions where there is an irreconcilable split of authority or other exceptional circumstance—is not appropriate here, and the Court should deny Defendants' Motion. *See e.g., In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 824-25 (C.D. Cal. 2011) (denying certification where "Defendants use this motion to supplement and to re-argue their prior motions").

Under § 1292(b), a district court may certify an order for interlocutory appeal only if: (1) the order "involves a controlling question of law"; (2) there is "substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Defendants, as the party moving for certification, have the "burden to show the presence of exceptional circumstances that warrant departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Krause v. Yavapai County*, 2020 WL 2512761, at *3 (D. Ariz. May 14, 2020) (Liburdi, J.).

Defendants come nowhere near meeting their burden here. Rather than point to an exceptional circumstance that would warrant an immediate appeal—such as an intra-circuit split—Defendants simply relitigate issues the Court has already addressed. In their Motion, Defendants ask the Court to certify the following question: "[w]hether and under what circumstances a defendant can establish negative causation based on the plaintiff's failure

to adequately plead loss causation." *See* Motion at 1. However, that issue has already been heavily litigated—both on the motion to dismiss and motion for reconsideration—and the controlling statutory and Ninth Circuit authority on this issue is well-established.

Specifically, the controlling authority is clear that although Defendants have a statutory defense, their burden of proving the negative causation defense at the motion-to-dismiss stage is a heavy one because it requires more than Plaintiffs' failure to plead loss causation. According to the plain text of the Securities Act of 1933 (the "Securities Act"), the burden is on Defendants to ***prove*** that Plaintiffs' claimed losses are "not attributable to the alleged misrepresentation . . . in the registration statement." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013) (citing 15 U.S.C. § 77k(e)). Given the fact-intensive nature of this analysis, the issue of negative causation "is better reserved for summary judgment." *See* Order at 2. Moreover, in *Hildes*, the Ninth Circuit held that in order to overcome a negative causation defense at the motion to dismiss stage, the complaint must merely allege that "the misrepresentation *touches upon the reasons* for an investment's decline in value." *Hildes*, 734 F.3d at 860.

Applying *Hildes* to the facts of this case, the Court found "that Defendants' misleading statement—that Opendoor's algorithm 'can dynamically adjust to leading market indicators and react to real-time macro- and micro-economic conditions'"—meets this low bar because it clearly "touches upon the alleged reasons for Plaintiffs' claimed losses." Order at 2. Thus, even if Defendants could prove negative causation based solely on Plaintiffs' failure to plead loss causation (they cannot), this Court has already found that Plaintiffs have overcome the affirmative defense. Unhappy with this outcome, Defendants use their Motion to relitigate the issue. But that is not proper, and as explained below, Defendants fail to meet any of the requirements for certification of an interlocutory appeal under § 1292(b).

First, Defendants do not meet the first § 1292(b) requirement because the Court's Order does not involve a "controlling question of law." The thrust of the Court's Order is that the misrepresentation in Opendoor's offering documents "touches upon" the reasons

for Opendoor's declining stock price. That is a factual dispute—how the Court applied *Hildes* to the facts of the case. Indeed, the only way Defendants can turn it into a controlling question of law is by manufacturing a hypothetical standard that is contrary to the plain text of Section 11 and *Hildes*. Defendants argue that if the Ninth Circuit adopted a new standard, it would end the case. But that could apply to every case, and even every motion, and does not mean there is a controlling question of law. Indeed, anyone could come up with a hypothetical standard that would change the outcome of an order. Where the law is clear—like here—there is no controlling question of law within the meaning of § 1292(b).

Second, Defendants do not meet the second § 1292(b) requirement because there are no grounds for a difference of opinion. Defendants attempt to manufacture an artificial split of authority by arguing that some courts have found negative causation from the face of the complaint. Those cases are rare outliers where, for example, it was clear *from the face of the complaint* that the plaintiff did not have standing. Here, on the other hand, the Court found that, unlike those fact-specific outliers, "the Court is unable to find negative causation from the face of the Consolidated Amended Complaint." Order at 2. These decisions—which apply the same law to different facts—do not create a split of authority sufficient to warrant an interlocutory appeal. *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion.").

Third, Defendants do not meet the third § 1292(b) requirement because an immediate appeal of the Court's Order would not advance the litigation, but rather, substantially delay the proceedings. Any appeal of the Court's Order would take well over a year, and the Ninth Circuit would likely affirm the Court's Order, putting the parties in the exact same position they are in today. Even assuming, *arguendo*, the Ninth Circuit reversed, this Court has already held that Plaintiffs would be provided leave to amend. *See* Order at 2. The parties would then engage in another round of briefing, and the Court could readily uphold the further amended complaint, which would put the parties in the exact same position again. *See In re Google Referrer Header Priv. Litig.*, 2020 WL 5545155, at

3

*4 (N.D. Cal. Sept. 16, 2020) (denying motion for interlocutory appeal where "interlocutory appellate review . . . would, at best, generate another round of amendments to the complaint most likely followed by another round of motions to dismiss.").

At bottom, Defendants cannot appeal the Court's Order simply because they disagree with the well-settled authority on the issue of negative causation. The Court should deny Defendants' Motion.

## **ARGUMENT**

**I.    INTERLOCUTORY APPEALS ARE WARRANTED ONLY IN EXCEPTIONAL CIRCUMSTANCES**

Appellate review is generally available only after a district court has entered final judgment. *Krause*, 2020 WL 2512761, at *2. According to the Supreme Court, the final judgment "rule serves 'important purposes,' including 'emphasiz[ing] the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial,' 'avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals,' and 'promoting efficient judicial administration.'" *Id.* (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)).

An exception to the final judgment rule is authorized by 28 U.S.C. § 1292(b), "which provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d 1020, 1025–26 (9th Cir. 1981). However, "certification of interlocutory appeals should be granted only in 'exceptional circumstances.'" *Krause*, 2020 WL 2512761, at *2. Indeed, "[t]he Ninth Circuit has held that certification to file an interlocutory appeal should be granted sparingly and generally only where allowing an immediate appeal would avoid protracted and expensive litigation." *In re MannKind*, 835 F. Supp. 2d at 822.

There are three requirements for certification of an interlocutory appeal. Under § 1292(b), a district court may certify an order for interlocutory appeal only if: (1) the order

"involves a controlling question of law"; (2) there is "substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Importantly, "[t]hese requirements are expressed in the conjunctive; therefore, Defendants must carry their burden as to all three factors." *Krause*, 2020 WL 2512761, at *2; *see also Couch*, 611 F.3d at 633.

The decision whether to certify an order for interlocutory appeal rests within the sole discretion of the district court. Indeed, "[e]ven when all three statutory requirements are satisfied, district judges have 'unfettered discretion' to deny certification." *City of Glendale v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2013 WL 12250532, at *2 (D. Ariz. June 5, 2013) (citations omitted). In other words, "a district court's denial of a motion to certify a decision for immediate appeal under section 1292(b) is not reviewable by the appellate court." *Env't Prot. Info. Ctr. v. Pac. Lumber Co.*, 2004 WL 838160, at *2, n. 6 (N.D. Cal. Apr. 19, 2004).

Moreover, even in rare cases where the district court certifies an issue for interlocutory appeal, "the court of appeals nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002); *see also ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F. 4th 1125, 1131 (9th Cir. 2022) (noting that the Ninth Circuit's "broad discretion" in rejecting interlocutory appeals "has been compared to the discretion the Supreme Court enjoys when reviewing petitions for certiorari" and, as such, the Ninth Circuit can reject interlocutory appeals for any reason).

## II.    DEFENDANTS FAIL TO SATISFY THE HIGH THRESHOLD REQUIRED FOR INTERLOCUTORY APPEALS

Defendants fail to carry their heavy burden of demonstrating that all three requirements of § 1292(b) are met in order to certify the May 14 Order for interlocutory appeal. Thus, the Court should deny the Motion.

**A.      The Court's Order Does Not Involve a Controlling Question of Law**

For the first § 1292(b) prong, the question certified for appeal "must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *ICTSI*, 22 F.4th at 1130 (dismissing interlocutory appeal for lack of jurisdiction because the certified issue was one of fact, not law). The "Ninth Circuit has also described 'controlling question of law' as an issue involving a 'fundamental' determination, such as 'who are necessary and proper parties, whether a court . . . has jurisdiction, or whether state or federal law should be applied.'" *San Bernardino Cnty. v. Ins. Co. of State of Pa.*, 2023 WL 4681621, at *2 (C.D. Cal. July 12, 2023) (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026-27).

No such "fundamental determination" is present here—for example, there are no disputes regarding jurisdiction, the proper parties, or what law applies. Rather, Defendants attempt to manufacture a controlling question of law by creating a hypothetical standard that is contrary to the plain text of the Securities Act and the controlling Ninth Circuit authority on the matter, *Hildes*. This is completely improper. The first § 1292(b) prong cannot be met merely because a party wants to change well-established law. Where, like here, the controlling authority is clear and the court applies that controlling authority to the facts of the case, there is no controlling question of law under § 1292(b).

Indeed, as set forth below under the second § 1292(b) prong, the only potential question of law (i.e., the proper standard for assessing negative causation) is already well-established and not subject to a difference of opinion. Unlike Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), Section 11 of the Securities Act specifically places the burden on Defendants to **prove** that the damages were caused by factors other than the alleged misrepresentation in order to limit or avoid liability. *See* 15 U.S.C. § 77k(e). The Ninth Circuit's unequivocal decision on the standard, *Hildes*, is entirely consistent with that statutory scheme.

Although Defendants disagree with how this Court applied *Hildes*, Defendants cannot turn a factual dispute—whether the Court correctly applied well-established

authority—into a legal one. *See Safeco Ins. Co. of Am. v. Air Vent, Inc.*, 2023 WL 2414630, at *1 (D. Nev. Jan. 25, 2023) (denying certification "[b]ecause [defendant] fails to identify a pure legal issue suitable for interlocutory appeal and instead disguises factual issues as legal ones"). Similarly, although Defendants argue that the issue of negative causation is a controlling issue of law, "that is true any time a court decides a pretrial dispositive motion" and does not create a "controlling question of law" within the meaning of § 1292(b). *Krause*, 2020 WL 2512761, at *3. As this Court has noted, "[i]f an interlocutory appeal is warranted any time an issue could materially affect the outcome of litigation, then 'a party would be able to appeal every time [a motion to dismiss] is denied even though interlocutory appeals should be heard only in exceptional cases.'" *Id.* (citation omitted).

Therefore, Defendants have not met their burden as to the first requirement under § 1292(b).

**B.      The Court's Order Does Not Present a Substantial Ground for Difference of Opinion**

For the second § 1292(b) prong, "courts must examine to what extent the controlling law is unclear." *Couch*, 611 F.3d at 633. This prong is satisfied if "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* Here, the controlling authority from the Ninth Circuit on negative causation is well-established, and there are no complicated questions of foreign law or novel questions of first impression. Therefore, Defendants cannot satisfy this prong.

Although the parties have already extensively briefed the issue of negative causation, it is worth repeating a few critical points here about the controlling law. Unlike the Exchange Act, the Securities Act provides a defense to limit damages, and the text of the statute is clear that it is the defendant's burden to ***prove*** the damages were caused by factors other than the alleged misrepresentation in order to establish the defense. *See* 15 U.S.C. § 77k(e). Courts throughout the country have uniformly agreed that proving negative causation is a "heavy" burden for a defendant, especially on a motion to dismiss,

7

because the defendant must prove that factors other than the alleged misstatement caused the losses—an inherently fact-intensive inquiry better suited for summary judgment. *See* Plaintiffs' Motion for Reconsideration (ECF No. 87) at 4-7. The Ninth Circuit's case on this issue, *Hildes*, is clear that the negative causation defense is available only if the defendant can "***prov[e] as a matter of law***, that the depreciation of the value of [the security] resulted from factors other than the alleged false and misleading statements." *Hildes*, 734 F.3d at 861 (citation omitted) (emphasis added).

Despite this well-established authority, Defendants argue that "[t]he Ninth Circuit has not yet squarely decided what standard governs a defendant's burden with respect to negative causation at the motion-to-dismiss stage." Motion at 6. Defendants are wrong. The text of the statute itself explains that Defendants have the burden of proof. *See* 15 U.S.C. § 77k(e). Moreover, the *Hildes* decision—which was an appeal from an order granting a motion to dismiss and denying leave to amend—held that "[o]vercoming a negative causation defense requires merely that 'the misrepresentation touches upon the reasons for an investment's decline in value.'" *Hildes*, 734 F.3d at 861 (citation omitted). Thus, at the pleading stage, a plaintiff must merely allege that the misrepresentation touches upon the reasons for the alleged losses to overcome a negative causation defense on a motion to dismiss.

Here, the Court correctly applied *Hildes* and found "that Defendants' misleading statement—that Opendoor's algorithm 'can dynamically adjust to leading market indicators and react to real-time macro- and micro-economic conditions'—touches upon the alleged reasons for Plaintiffs' claimed losses." Order at 2. Therefore, the Court found that Plaintiffs overcame any negative causation defense at the pleading stage. Unhappy with how the Court applied *Hildes*, Defendants attempt to distinguish the facts of *Hildes*. *See* Motion at 6-7. This, however, does not create a substantial ground for a difference of opinion. Indeed, the Ninth Circuit has held that "[a] party's strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference.'" *Couch*, 611 F.3d at 633 (citation omitted).

Similarly, Defendants argue that the *Hildes* "touches upon" language was derived from Ninth Circuit case law on loss causation under Section 10(b), and thus, it is "reasonable to conclude that the standards for loss causation and negative causation are basically the same." Motion at 7. Defendants already made this argument in their opposition to the motion for reconsideration (ECF No. 89 at 10), which the Court rejected.[1] For this reason, the Court should deny certification since it is nothing more than an attempt to relitigate issues that were already addressed by the Court. *See, e.g., In re MannKind*, 835 F. Supp. 2d at 824-25 (denying certification where "Defendants use this motion to supplement and to re-argue their prior motions"); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 531 (S.D.N.Y. 2014) ("a motion for certification may not be used to simply 'repeat arguments made in a motion to dismiss.'").

Next, Defendants try to create a difference of opinion by arguing there are conflicting lower court opinions about whether a defendant can prove negative causation "from the face of the Complaint." *See* Motion at 5-6. Defendants are wrong. There is no dispute about whether a defendant ***can*** prove negative causation from the face of the complaint. They can. However, there is no difference of opinion merely because some courts have found negative causation from the face of the complaint and others—like this one—have not. *Couch*, 611 F.3d at 633 ("[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion.").

Moreover, Defendants already made this argument in their opposition to the motion for reconsideration. *See, e.g.,* ECF No. 89 at 1 n.3. Indeed, Defendants' Motion cites to the very same cases as their opposition to the motion for reconsideration. The one additional case, *In re Miniso Group Holding Ltd. Sec. Litig.*, 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024), does nothing but highlight the type of rare situations where a court might find

---

[1] Moreover, Defendants' argument is completely unsupported by the clear language of Section 11 and Ninth Circuit precedent. First, negative causation is a statutory defense. It is not "basically the same" thing as an element of a Section 10(b) claim. Second, in *Hildes*, the Ninth Circuit clearly stated that "[t]he affirmative defense of negative causation" was first "recognized . . . under the name 'loss causation.'" *Hildes*, 734 F.3d at 860. If anything, the Ninth Circuit clarified that negative causation is not the same thing as loss causation by explaining that the defense is known as negative causation, not loss causation.

*9*

negative causation was apparent from the face of the complaint. In *Miniso*, the court found negative causation was "apparent on the face of the complaint" because the plaintiff "sold its shares before the short seller report [i.e., the corrective disclosure], meaning the report could not have caused the alleged losses." *Id.* at *20. As Plaintiffs already highlighted in their reply to the motion for reconsideration, that fact—which, if present, would establish negative causation from the face of the complaint—is not present here. *See* ECF No. 91 at 4. Ultimately, the Court agreed with Plaintiffs, finding that unlike the cases Defendants relied on in the motion for reconsideration briefing (and continue to rely on here), the Court "is unable to find negative causation from the face of the Consolidated Amended Complaint." *See* Order at 2.

Defendants take issue with how this Court applied well-established, binding statutory and Ninth Circuit authority. That is not an "exceptional circumstance" that justifies an interlocutory appeal. Nor does it raise a potential difference of opinion. Indeed, as other courts have found, the fact that "Defendant[s] disagree[] with the Court's application of the relevant precedents is not a ground for interlocutory appeal." *In re Google Referrer Header Priv. Litig.*, 2020 WL 5545155, at *3.

Therefore, Defendants have not established that there is a substantial ground for difference of opinion concerning the negative causation defense, and the Court should deny the Motion.[2]

---

[2] Defendants' citation to *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978 (D. Ariz. 2015) highlights the type of "exceptional circumstance" that warrants an interlocutory appeal. There, the district court recognized that the Ninth Circuit had conflicting standards for pleading loss causation. *Id.* at 986-92 ("The Court has read the Ninth Circuit cases cited by the parties—several times—and concludes that they reflect two irreconcilable lines of cases."). Only then did the district court take "the **unusual step** of certifying the loss causation issue for immediate interlocutory appeal." *Id.* at 992 (emphasis added). Indeed, on appeal, the Ninth Circuit clarified the applicable loss causation standard, noting that the more restrictive line of cases—from *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008) and its progeny—are "fact-specific variants of the basic proximate cause test." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753-54 (9th Cir. 2018). There are no such conflicting standards here.

### C.    An Immediate Appeal Would Not Materially Advance the Ultimate Termination of the Litigation

The third prong of § 1292(b) "is satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Oregon*, 22 F. 4th at 1131 (citation omitted). Defendants have not met this prong because, rather than shorten the proceedings, an interlocutory appeal at this juncture would undoubtedly lengthen the time and expense of the litigation.

Defendants argue that an interlocutory appeal would materially advance the ultimate termination of the litigation because if the Ninth Circuit were to adopt their position, "the case would be fully and finally resolved as to *all twenty-seven defendants*." Motion at 8. Defendants are wrong for two reasons. First, obtaining a reversal is not an "exceptional circumstance" that warrants certifying the case for interlocutory appeal. As stated above, *see* Section II(A), "obtaining reversal of an opinion denying a motion to dismiss will always contain the possibility of a dismissal" and does not "'justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d at 831 (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

Second, the immediate appeal of the Court's Order would not advance the termination of the litigation, but rather, materially delay the proceedings. Should the Court grant an interlocutory appeal (and the Ninth Circuit agree to hear it), the parties would have to engage in extensive briefing on appeal, which would take several months. Then, after oral argument, the Ninth Circuit would likely take several additional months to issue an opinion. Even assuming, *arguendo*, the Ninth Circuit adopted Defendants' position, it would likely take well over a year in total before the case was remanded to this Court for further proceedings.[3] Importantly, however, that would not end this case, as Plaintiffs would in all likelihood be given leave to amend. *See* Order at 2 (Court's Order finding that

---

[3] The most likely scenario, based on the clear Ninth Circuit precedent on the issue, is that the Ninth Circuit would uphold the Court's Order. At that point, the parties would be in the same spot as they are today, just significantly delayed.

even if it could find negative causation from the face of the Complaint, "Plaintiffs would be provided leave to amend."). The parties would then engage in an additional round of extensive briefing, and the Court could readily still find that Plaintiffs adequately alleged claims under Sections 11 and 15 of the Securities Act (and perhaps Section 10(b) of the Exchange Act). All told, the parties would likely be in the exact same positions they are today, but having spent significant time, money, and resources litigating the interlocutory appeal.

Therefore, Defendants have not met their burden as to the third § 1292(b) requirement, and certification of the Court's Order should be denied. *See In re Google Referrer Header Priv. Litig.*, 2020 WL 5545155, at *4 (denying motion for certification of order for interlocutory appeal where "interlocutory appellate review . . . would, at best, generate another round of amendments to the complaint most likely followed by another round of motions to dismiss."); *Rieve v. Coventry Health Care*, Inc., 870 F. Supp. 2d 856, 880 (C.D. Cal. 2012) ("[W]here the Court concludes certification would actually delay the resolution of the litigation, certification is not appropriate.") (internal quotation marks and citations omitted).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for an immediate appeal pursuant to 28 U.S.C. § 1292(b).


Dated: July 1, 2024                  **CLARK HILL PLC**

By: /*s/ Daniel P. Thiel*
Daniel P. Thiel, SBN #035831
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: 480-684-1100
Fax: 480-684-1199
dthiel@clarkhill.com

*Local Counsel for Plaintiffs*

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty (*pro hac vice*)
James T. Christie (*pro hac vice*)

12

Guillaume Buell (*pro hac vice*)
Nicholas Manningham (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
jchristie@labaton.com
gbuell@labaton.com
nmanningham@labaton.com

*Counsel for Plaintiffs*

**VANOVERBEKE MICHAUD & TIMMONY P.C.**

Aaron L. Castle (*pro hac vice*)
79 Alfred Street
Detroit, Michigan 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com

**GLANCY PRONGAY & MURRAY LLP**

Casey E. Sadler (*pro hac vice* motion forthcoming)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
clinehan@glancylaw.com

*Additional Counsel for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and transmitted a Notice of Service of Electronic Filing to the individuals registered with CM/ECF.

*/s/ Daniel P. Thiel*
Daniel P. Thiel, SBN #035831

14