**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
Robert M. Kort (Bar No. 016602)
John C. Gray (Bar No. 028454)
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 262-5311
Facsimile: (602) 262-5747
Email: rkort@lewisroca.com
        jgray@lewisroca.com

*Counsel for Defendants Opendoor Technologies Inc.,*
*Eric Wu, Carrie Wheeler, Chamath Palihapitiya,*
*Steven Trieu, Ian Osborne, Adam Bain, David Spillane,*
*Cipora Herman, Pueo Keffer, Glenn Solomon, Jason Kilar,*
*and Jonathan Jaffe*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re Opendoor Technologies, Inc. Securities Litigation | Case No. 2:22-CV-01717-MTL<br><br>**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO CERTIFY MAY 14 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)** |

**INTRODUCTION**[1]

In this case, the issue of how negative causation can be established at the pleading stage is a controlling legal question that is dispositive. The Ninth Circuit's affirmance of Defendants' position would dispose of the remaining claim, sparing the parties—including 27 named defendants—the extraordinary burden of litigating a legally non-viable securities class action.

Plaintiffs effectively do not dispute that the first (controlling legal question) and third (materially advance termination of litigation) prongs of Section 1292(b) are satisfied. Instead, Plaintiffs focus on the second prong, arguing that Defendants have "manufacture[d] an artificial split of authority" on how a defendant can establish negative causation. (Opp. at 3.) But it is impossible to reconcile the cases finding negative causation based on a plaintiff's failure to adequately plead loss causation, with those holding that something more is required at the pleading stage. The existing, concrete disagreement among federal courts both within and outside this Circuit weighs in favor of Ninth Circuit intervention.

Embedded within the question as to which Defendants seek certification is whether the "touches upon" language in *Hildes v. Arthur Andersen LLP*, 734 F.3d 854 (9th Cir. 2013), refers to the Ninth Circuit's general loss causation standard or, as Plaintiffs have argued, establishes a "separate and lower standard than establishing loss causation." (Doc. 87 at 2.) Plaintiffs have not pointed to any statutory or case law support for their "lower standard" theory and do not dispute that reading *Hildes* as merely adopting the general loss causation standard harmonizes the relevant Ninth Circuit case law. *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994) (cited in *Hildes* and analyzing negative causation and the absence of loss causation as analogs). At a minimum, there is plainly "substantial ground for disagreement" about whether the Ninth Circuit would find

---

[1] All abbreviations and capitalized or defined terms not defined herein have the same meaning provided in the Defendants' Motion to Certify May 14 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) ("Motion" or "Mot."). The terms "Opposition" and "Opp." are in reference to Plaintiffs' Opposition to the Motion.

that it already has decided that establishing negative causation at the pleading stage requires something more or different than showing an absence of loss causation.

The Opposition's half-hearted arguments about "exceptional circumstances" and the potential for delay ignore the realities of this case and should be rejected out of hand. This is not a run-of-the-mill commercial litigation. All of Plaintiffs' claims turn at this stage on the applicable legal standard for negative causation. And securities class actions are among the most protracted and expensive types of litigation that exist. These cases inflict real costs on corporations and by consequence the shareholders on whose behalf the suit is brought, even if the corporation eventually vindicates itself.

If the Ninth Circuit affirms that negative causation can be established by a failure to adequately plead loss causation, Defendants can avoid devoting substantial time, attention, and resources to litigating non-viable claims with no cognizable damages. This is the exact type of question and case that the Ninth Circuit has said justifies interlocutory appeal.

## ARGUMENT

**I.  The Motion seeks certification of a controlling legal question, not a factual dispute.**

The Opposition does not dispute that if the Ninth Circuit were to hold that negative causation can be shown by a plaintiff's failure to adequately plead loss causation, that holding would be dispositive of Plaintiffs' remaining claims. (*See* Opp. at 6-7.) Thus, the question for which Defendants seek certification fits squarely within the Ninth Circuit's description of a "controlling" question of law and satisfies the first prong of Section 1292(b). (*See* Mot. at 3-4); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) (first prong of Section 1292(b) requires that answer to question certified "materially affect the outcome of [the] litigation").

Plaintiffs advance three arguments for why certification nevertheless is improper under the first prong of Section 1292(b), each of which has no merit. First, while Plaintiffs acknowledge that a "controlling" question of law is defined as one whose resolution would "materially affect the outcome of [the] litigation," Plaintiffs attempt to artificially limit

Section 1292(b) to what Plaintiffs call a "fundamental determination" of "jurisdiction, the proper parties, or what law applies." (Opp. at 6.) No case, including the lone district court case Plaintiffs cite, has ever interpreted Section 1292(b) so narrowly. *See San Bernardino Cnty. v. Ins. Co. of State of Penn.*, 2023 WL 4681621, at \*2 (C.D. Cal. July 12, 2023) (denying certification because question was "not material to the outcome of the litigation," *nor* did it go to "fundamental determination"). Indeed, courts have certified interlocutory appeals on all types of questions on applicable legal standards, even at the pleading stage, where the question is dispositive of the claims as pleaded. *See, e.g.*, *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011) (finding appropriate for interlocutory appeal question of whether misdemeanor guilty plea can be used to establish inference of scienter in securities class action).

Second, Plaintiffs incorrectly assert that Defendants are attempting to convert a "factual dispute" into "a legal one." (Opp. at 6-7.) Actually, Defendants have asked the Court to certify a question about the negative causation legal standard itself, which Plaintiffs themselves recognize is a legal question. (*See* Opp. at 6 (referring to "the proper standard for assessing negative causation" as a "question of law")).

Third, Plaintiffs say Defendants "attempt to manufacture a controlling question of law by creating a hypothetical standard that is contrary to the plain text of the Securities Act and the controlling Ninth Circuit authority on the matter, *Hildes*." (Opp. at 6.) But there is nothing "hypothetical" or "manufacture[d]" about Defendants' position on the negative causation standard. Defendants have cited multiple circuit and district court cases that have affirmed dismissal of claims on negative causation grounds based on a plaintiff's failure to adequately plead loss causation. (*See* Mot. at 5-7; *infra* Part II.)

*First Solar* is instructive on all three points Plaintiffs try to make. There, the court denied the defendants' motion for summary judgment on the plaintiffs' Exchange Act claims after applying the legal standard for loss causation that it understood to be controlling under Ninth Circuit precedent to the facts of the case. *See Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 992 (D. Ariz. 2015). But the court acknowledged that if it

applied the loss causation standard that the defendants asserted – and that was supported by cases the defendants cited – "Defendants' motion would be granted in full because Plaintiffs have not presented evidence from which a reasonable jury could find that Defendants' alleged fraudulent practices became known to the market during the class period." *Id.* Accordingly, the court concluded that "the loss causation test" qualified as a "controlling question of law" and certified for immediate appeal the question of whether a plaintiff can "prove loss causation by showing that the very facts misrepresented or omitted by the defendant were a substantial factor in causing the plaintiff's economic loss, even if the fraud itself was not revealed to the market." *Id.* The Ninth Circuit then accepted the appeal, finding "certification was appropriate." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 752 n.1 (9th Cir. 2018).

As in *First Solar*, the Court here adopted Plaintiffs' view of the existing case law and applied a causation standard advanced by Plaintiffs to the pleaded facts. (Doc. 97 at 2.) The Court's application of that causation standard does not convert the core question about what legal standard applies into a non-controlling question of law, a fact question, or a question about a "hypothetical" standard or how the standard applies.[2] Instead, the question for which Defendants seek certification remains a legal question dispositive of Plaintiffs' claims if the Ninth Circuit affirms Defendants' position. Thus, it qualifies as a controlling question of law under the first prong of Section 1292(b).

**II. The existing case law establishes substantial grounds for a difference of opinion.**

On the second prong of Section 1292(b), the parties agree that the Court looks to whether the existing case law is "unclear" or "uncertain" to determine whether there is a "substantial ground for difference of opinion." (Mot. at 4-5; Opp. at 7-8.) As noted in the

---

[2] Plaintiffs' reliance on *Krause v. Yavapai Cnty.*, 2020 WL 2512761, at *3 (D. Ariz. May 15, 2020) is misplaced. There, the defendants sought certification of questions about the accrual date for their claims and statute-of-limitations tolling. *Id.* The court found that these questions involved factual disputes and "not a 'pure' or 'abstract' question of law." *Id.* Here, in contrast, the Motion raises a fundamental legal question about the "correct test" for negative causation. *First Solar*, 119 F. Supp. 3d at 992 (question about "correct test for loss causation" considered question of law).

4

Motion, courts regularly find this prong satisfied when there are conflicting or contradictory legal authorities. (*See* Mot. at 6.)

Plaintiffs' primary contention is that the question raised by defendants is not worthy of certification because "well-established" authority requires a defendant to "prove" negative causation. (Opp. at 7-8.) But the Motion does not ask for interlocutory appeal on the question of which party bears the burden of proof. That issue has never been in dispute. The question is whether negative causation can be established at the pleading stage where a plaintiff fails to adequately plead loss causation. As reflected in the Motion, courts have come to different conclusions on that question. (*See* Mot. at 5-6.)

Plaintiffs try to brush aside the conflicting legal authorities as varied applications of "settled law." (Opp. at 4, 9-10.) But there is no way to reconcile cases, both within and outside this Circuit, that hold that a "section 11 claim fails for lack of loss causation" on the face of the complaint, *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011),[3] with cases stating that negative causation "requires more than a plaintiff's failure to allege loss causation," (*e.g.*, Doc. 97 at 2); *see also In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 869 (S.D. Tex. 2004).

Plaintiffs also claim that certification is inappropriate because *Hildes* held that even if a complaint fails to plead loss causation, a plaintiff can "overcome" a motion to dismiss by "merely alleg[ing] that 'the misrepresentation *touches upon the reason for an investment's decline in value*.'" (Opp. at 2 (emphasis in original).) It is disputable, however, that the use of "touches upon" in *Hildes* was intended to create a "separate and lower standard than establishing loss causation" as Plaintiffs have asserted. (Doc. 87 at 2.) The "touches upon" language in *Hildes* came from Ninth Circuit cases describing the

---

[3] *See also, e.g.*, *In re Miniso Grp. Holding Ltd. Sec. Litig.*, 2024 WL 759246, at *19-20 (S.D.N.Y Feb. 23, 2024) (dismissing claims on negative causation grounds because "[plaintiff] does not plead loss causation."); *Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166, at *15-16 (C.D. Cal. Feb. 6, 2014) (dismissing claims on negative causation grounds because plaintiff failed to plead loss causation from identified corrective disclosures); *In re Shoretel Inc., Sec. Litig.*, 2009 WL 248326, at *5 (N.D. Cal. Feb. 2, 2009) (dismissing claims where all identified corrective disclosures failed to demonstrate loss causation, thereby establishing negative causation).

general standard for loss causation. (*See* Mot. at 7; Opp. at 9.) In other words, the "touches upon" language could just as easily be read to mean that the standard for loss causation and negative causation in the Ninth Circuit are in fact the same.[4]

Indeed, Plaintiffs do not dispute that the *Worlds of Wonder* decision that supplied the "touches upon" language used in *Hildes* took that language from Ninth Circuit cases reciting the general loss causation standard for securities fraud (*i.e.*, Exchange Act claims). Moreover, in *Worlds of Wonder* the court described negative causation as the "'loss causation' defense" and reversed the grant of summary judgment because the district court did not apply the correct standard for loss causation to the defendants' negative causation defense. 35 F.3d at 1421. It therefore is not surprising that district courts in the Ninth Circuit have read *Worlds of Wonder* to have "[drawn] upon the concept of loss causation" to define the standard for negative causation. *In re Metro. Sec. Litig.*, 2010 WL 11474098, at *2 (E.D. Wash. Jan. 22, 2010). In *Metro*, the court concluded that under *Worlds of Wonder*, the loss causation standard "provide[s] useful guidance" on the negative causation standard because "[t]he § 10(b) plaintiff's burden of proving 'loss causation' is the 'mirror image' of the § 11 defendant's burden of proving 'negative causation.'" *Id.*

That reading of Ninth Circuit precedent suggests that the standards for loss causation and negative causation are the same and would harmonize the *Worlds of Wonder* and *Hildes* decisions. Moreover, Plaintiffs point to no other statutory or case law support for their "lower standard" theory (which presumably is why they do not expressly repeat it in their Opposition). The texts of the Exchange Act and the Securities Act do not draw any distinction between what proof is required to establish "loss causation" and "negative causation" – the only difference is which party bears the *burden of proof*. Nor would it make sense to require a different standard of proof for negative causation given that in both

---

[4] Plaintiffs also do not dispute that the *Hildes* plaintiff did not bring Securities Act claims on behalf of a class, did not attempt to plead loss through a corrective disclosure and corresponding stock drop, and did not allege damages based on fluctuations in the market value of a publicly traded stock. (*See* Mot. at 7; Opp. at 8.) The highly unusual fact pattern in *Hildes* also raises a question as to whether the Ninth Circuit intended to create a new standard for negative causation through the "touches upon" language rather than apply the general loss causation standard to the specific facts of that case. *See id.*

6

instances the issue is whether an alleged misstatement caused the investor any loss. Indeed, no other circuit court appears to have created different standards of proof for loss causation and negative causation. *See, e.g.*, *Amorosa*, 409 F. App'x at 417 (negative causation is "[t]he absence of loss causation").

The Opposition does not squarely address the Motion's discussion of *Hildes* and instead argues that Defendants are merely attempting to relitigate arguments the Court rejected in deciding the motion for reconsideration. (*See* Opp. at 8-10.) That is simply not the case. The second prong of Section 1292(b) is not about who is right and who is wrong, and therefore does not involve "relitigating" any issues. Rather, the question under Section 1292(b) is whether there are substantial grounds for difference of opinion. Defendants submit that there are, based on the conflicting authorities on whether a defendant can establish negative causation from a failure to adequately plead loss causation, and the split in authority and ambiguity resulting from reading the "touches upon" language in *Hildes* as something different than merely an adoption of the Ninth Circuit's general standard for loss causation in the negative causation context.

**III. Immediate appeal may materially advance the termination of the litigation and could avoid protracted class action proceedings that are unnecessary.**

The Opposition does not dispute that under Ninth Circuit precedent, the third prong of Section 1292(b) – whether interlocutory appeal "may materially advance the ultimate termination of the litigation" – is satisfied if "reversal 'may'" result in dismissal of a subset of claims or defendants, particularly in class action cases. (Mot. at 7; Opp. at 11-12); *see also In re City of San Bernardino*, 260 F. Supp. 3d 1216, 1226 (C.D. Cal. 2013) (third prong satisfied where "reversal 'may' remove a defendant and certain claims from the case"); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 2011 WL 13257346, at *1 (N.D. Cal. July 18, 2011) ("it is sufficient that a court find that a reversal of the underlying issue 'may' take parties or claims out of the case"). Nor do Plaintiffs dispute that if the Ninth Circuit were to adopt Defendants' position, dismissal of the remaining class action claims would be required as to 27 separate defendants. (*See* Mot. at 7-8; Opp. at 11-12.) Given the

admitted potential for dismissal of all class action claims against all of these defendants, the question for which Defendants seek certification easily satisfies the third prong of Section 1292(b).

Plaintiffs nevertheless still argue that the third prong of Section 1292(b) is not satisfied because (a) "reversal of an opinion" on a motion to dismiss is not an "exceptional circumstance" that justifies interlocutory review,[5] and (b) an appeal would take time, after which Plaintiffs would be provided leave to amend. (Opp. at 11-12.)[6] Neither contention has any merit.

"Securities class actions are notoriously complex," expensive, and lengthy. *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *7 (S.D.N.Y. Dec. 18, 2019). They have been "used as an '*in terrorem* device' to bludgeon companies into settling claims to 'avoid the cost and burden of litigation.'" *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 800 (9th Cir. 2020) (concurring in part, J. Lee) (citations omitted). Against that backdrop, courts within the Ninth Circuit often find "exceptional circumstances" justify interlocutory appeal in a securities class action if the appeal has the potential to narrow the claims and parties, even at the pleading stage, regardless of the length of appeal or whether the plaintiffs are later provided an opportunity to amend. *See Reese*, 643 F.3d at 688 (interlocutory appeal appropriate despite plaintiffs' objection that they filed amended complaint with new theories and claims); *Pirani*, 2020 WL 7061035, at *1 ("exceptional" circumstances justified interlocutory appeal in Securities Act class action as parties could "avoid protracted and expensive litigation"); *First Solar*, 119 F. Supp. 3d at 992 (granting certification on loss causation standard in securities class action where "expensive expert

---

[5] Plaintiffs cite *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 532 (S.D.N.Y. 2014) for this proposition, but there, unlike here, the court found that "certification here may not dispose of all issues, which would not streamline discovery" and would not address all claims.

[6] Plaintiffs sought reconsideration and elected not to amend the Complaint. (*See* Mot. at 3.) Defendants would vigorously oppose any future attempt to amend the Complaint to include any additional misstatements or alleged corrective disclosures, especially given that Plaintiffs already had an opportunity to overcome those defects in their claims by amendment and chose not to. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) ("No further leave to amend need be granted, since [Plaintiff] has already had that chance and declined to exercise it.").

discovery and a costly and complex trial" would not be necessary if Ninth Circuit adopted defendants' position). The same considerations apply here and justify interlocutory review of a case-dispositive question of law.

## CONCLUSION

For all the reasons set forth above, Defendants respectfully request that the Court grant the Motion and certify the May 14 Order for interlocutory appeal on the following question: Whether and under what circumstances can a defendant establish negative causation based on the plaintiff's failure to adequately plead loss causation.

Dated: July 8, 2024

**LEWIS ROCA ROTHGERBER CHRISTIE LLP**

/s/ _John C. Gray_

Robert M. Kort (Bar No. 016602)
John C. Gray (Bar No. 028454)
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004
Telephone: 602-262-5331
jgray@lewisroca.com

**ALLEN OVERY SHEARMAN STERLING US LLP**

Adam S. Hakki (*pro hac vice*)
599 Lexington Ave
New York, NY 10022
Telephone: (212) 848-4000
ahakki@aoshearman.com

Lyle Roberts (*pro hac vice*)
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
lyle.roberts@aoshearman.com

*Counsel for Defendants Opendoor Technologies Inc., Eric Wu, Carrie Wheeler, Chamath Palihapitiya, Steven Trieu, Ian Osborne, Adam Bain, David Spillane, Cipora Herman, Pueo Keffer, Glenn Solomon, Jason Kilar, and Jonathan Jaffe*

**BEYERS FARRELL PLLC**


*/s/*
Michael J. Farrell (Arizona Bar. No. 015056)
Maureen Beyers (Arizona Bar No. 017134)
99 East Virginia Avenue, Suite 220
Phoenix, AZ 85004
Telephone: (602) 738-3022
mfarrell@bfazlaw.com
mbeyers@bfazlaw.com

**O'MELVENY & MYERS LLP**
Jonathon Rosenberg (*pro hac vice*)
William Sushon (*pro hac vice*)
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
jrosenberg@omm.com
wsushon@omm.com

Amy S. Park (*pro hac vice*)
2765 Sand Hill Road
Menlo Park, CA
Telephone: (650) 473-2600
apark@omm.com

*Counsel for Defendants Citigroup Global Markets, Inc., Goldman Sachs & Co., LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Oppenheimer & Co. Inc., BTIG, LLC, KeyBanc Capital Markets Inc., Wedbush Securities Inc., TD Securities (USA) LLC, Zelman Partners LLC, Academy Securities, Inc., Loop Capital Markets LLC, Samuel A. Ramirez & Company, Inc. and Siebert Williams Shank & Co., LLC*