1   **CLARK HILL PLC**
    Daniel P. Thiel, SBN #035831
2   14850 North Scottsdale Road, Suite 500
    Scottsdale, Arizona 85254
3   Telephone: 480-684-1100
    Fax: 480-684-1199
4   dthiel@clarkhill.com

5   *Local Counsel for Plaintiffs*

6   **LABATON KELLER SUCHAROW LLP**
    Michael P. Canty (admitted *pro hac vice*)
7   James T. Christie (admitted *pro hac vice*)
    Guillaume Buell (admitted *pro hac vice*)
8   Nicholas Manningham (admitted *pro hac vice*)
    140 Broadway
9   New York, New York 10005
    Telephone: (212) 907-0700
10  Facsimile: (212) 818-0477
    mcanty@labaton.com
11  jchristie@labaton.com
    gbuell@labaton.com
12  nmanningham@labaton.com

13  *Counsel for Plaintiffs*

14  [Additional Counsel on signature page]

15                  **UNITED STATES DISTRICT COURT**

16                       **DISTRICT OF ARIZONA**

17

18                                              Case No. 2:22-CV-01717-MTL

19  IN RE OPENDOOR TECHNOLOGIES         **PLAINTIFFS' MOTION FOR**
    INC. SECURITIES LITIGATION          **CLASS CERTIFICATION AND**
20                                      **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES IN SUPPORT**
21                                      **THEREOF**

22                                      <u>CLASS ACTION</u>

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

I.    PRELIMINARY STATEMENT ..................................................................... 1

II.   STATEMENT OF FACTS .............................................................................. 4

    A.    Opendoor's False and Misleading Offering Documents ............................ 4

    B.    Proposed Class Representatives .................................................................. 6

III.  ARGUMENT .................................................................................................. 7

    A.    Legal Standards ........................................................................................... 7

    B.    This Action Satisfies the Requirements of Rule 23(a) ................................ 7

        1.    The Class Is So Numerous That Joinder Is Impracticable ................ 8

        2.    Questions of Law and Fact Are Common to the Class ...................... 9

        3.    Plaintiffs' Claims Are Typical of the Class ..................................... 10

        4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ................................................................................................. 11

    C.    This Action Satisfies the Requirements of Rule 23(b) .............................. 12

        1.    Common Questions of Law and Fact Predominate ......................... 13

        2.    A Class Action Is Superior to Alternative Methods for Resolving This Dispute .................................................................................... 15

    D.    THE COURT SHOULD APPOINT LEAD COUNSEL AS CLASS COUNSEL UNDER RULE 23(g) ............................................................. 16

IV.   CONCLUSION ............................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................. 13

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ................................................................. 3, 7, 13, 14

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ..................................................................... 3

*Booth v. Strategic Realty Tr., Inc.*,
  2015 WL 3957746 (N.D. Cal. June 28, 2015) ........................................... 3

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
  2022 WL 2954937 (N.D. Cal July 26, 2022) ................................. 11, 14, 15

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ................................................................. 16

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
  2013 WL 5789237 (C.D. Cal. Oct. 25, 2013) ................................... 9, 13, 14

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
  2022 WL 1459567 (N.D. Cal. May 9, 2022) ......................................... 8, 10

*Comcast v. Behrend*,
  569 U.S. 27 (2013) ................................................................................... 14

*In re Cooper Cos. Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) ............................................................. 15

*Di Donato v. Insys Therapeutics, Inc.*,
  333 F.R.D. 427 (D. Ariz. 2019) ............................................................. 7, 8

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................... 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  312 F.R.D. 332 (S.D.N.Y. 2015) ............................................................. 15

*In re FibroGen Sec. Litig.*,
  2024 WL 1064665 (N.D. Cal. Mar. 11, 2024) ........................................... 7

ii

*Hatamian v. Advanced Micro Devices, Inc.*,
  2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)...............................................................8

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983)....................................................................................................3

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011).............................................................................16

*In re Honest Co. Sec. Litig.*,
  2023 WL 3190506 (C.D. Cal. May 1, 2023) .........................................................8, 10

*In re IndyMac Mortg.-Backed Sec. Litig.*,
  286 F.R.D. 226 (S.D.N.Y. 2012) ...............................................................................3

*In re Intuitive Surgical Sec. Litig.*,
  2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ...........................................................9

*In re Lendingclub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) ....................................................................11

*In re Lyft Inc. Sec. Litig.*,
  2021 WL 3711470 (N.D. Cal. Aug. 20, 2021) .................................................*passim*

*In re NetSol Techs., Inc. Sec. Litig.*,
  2016 WL 7496724 (C.D. Cal. July 1, 2016)............................................................3, 7

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir.) ................................................................................................7

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ......................................................................................9

*Rafton v. Rydex Series Funds*,
  2011 WL 31114 (N.D. Cal. Jan. 5, 2011) ...................................................................3

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ..................................................................................13

*In re Scorpion Techs., Inc. Sec. Litig.*,
  1994 WL 774029 (N.D. Cal. Aug. 10, 1994) ..............................................................7

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
  335 F.R.D. 276 (N.D. Cal. 2020).......................................................................10, 13

*In re Talis Biomedical Corp. Sec. Litig.*,
  2024 WL 536303 (N.D. Cal. Feb. 9, 2024) .........................................10, 11, 14, 15

iii

*Todd v. STAAR Surgical Co.*,
  2017 WL 821662 (C.D. Cal. Jan. 5, 2017) .................................................... 11

*In re UTStarcom, Inc. Sec. Litig.*,
  2010 WL 1945737 (N.D. Cal. May 12, 2010)............................................... 15

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ...................................................................... 16

*Vaquero v. Ashley Furniture Indus., Inc.*,
  824 F.3d 1150 (9th Cir. 2016) .................................................................... 14

*In re VeriSign, Inc. Sec. Litig.*,
  2005 WL 7877645 (N.D. Cal. Jan. 13, 2005)............................................... 15

**Statutes**

15 U.S.C. § 77k(e) ........................................................................................... 14

Private Securities Litigation Reform Act of 1995 ........................................... 6

Securities Act of 1933 ............................................................................. *passim*

  Sections 11 ........................................................................................... *passim*

  Section 15.............................................................................................. *passim*

**Rules**

Federal Rules of Civil Procedure

  Rule 23 ................................................................................................. *passim*

  Rule 23(a).............................................................................................. *passim*

  Rule 23(a)(1) ................................................................................................. 8

  Rule 23(a)(2) ................................................................................................. 9

  Rule 23(a)(3) ............................................................................................... 10

  Rule 23(a)(4) .......................................................................................... 11, 16

  Rule 23(b) ................................................................................................... 12

  Rule 23(b)(3)........................................................................................ *passim*

  Rule 23(b)(3)(A) ......................................................................................... 15

Rule 23(b)(3)(B) ........................................................................................ 15

Rule 23(b)(3)(C) ........................................................................................ 15

Rule 23(b)(3)(D) ........................................................................................ 15

Rule 23(g) ................................................................................... 12, 16, 17

Rule 23(g)(1) ............................................................................................. 16

Rule 23(g)(1)(A)(i) .................................................................................... 16

Rule 23(g)(1)(A)(ii) ................................................................................... 16

Rule 23(g)(1)(A)(iii) .................................................................................. 16

Rule 23(g)(1)(A)(iv) .................................................................................. 16

1    Lead Plaintiffs Oakland County Employees' Retirement System ("Oakland County

2    ERS") and Oakland County Voluntary Employees' Beneficiary Association ("Oakland

3    County VBEA," collectively, the "Oakland County Funds") and Additional Plaintiff Stuart

4    Graham Hereford ("Additional Plaintiff," together with the Oakland County Funds,

5    "Plaintiffs") respectfully submit this Memorandum of Points and Authorities in Support of

6    Plaintiffs' Motion for Class Certification (the "Motion").[1]

7    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

8    **I.    PRELIMINARY STATEMENT**

9        Plaintiffs respectfully move, pursuant to Rules 23(a) and 23(b)(3) of the Federal

10   Rules of Civil Procedure, for an Order: (i) certifying a class of all persons and entities that

11   purchased or otherwise acquired Opendoor common stock pursuant and/or traceable to the

12   Offering Documents issued in connection with the de-SPAC Merger on or about December

13   21, 2020 (the "Initial Offering"),[2] and/or the Offering Documents issued in connection with

14   Opendoor's secondary public offering on or about February 4, 2021 (the "Secondary

15   Offering"),[3] and were damaged thereby; (ii) appointing Plaintiffs as Class Representatives;

16

17   [1] Citations to paragraphs ("¶") are to paragraphs in the Consolidated Amended Class Action Complaint, filed on April 17, 2023 in this Action (ECF. No. 39) (the "Complaint"). "Defendants" collectively refers to: (i) Opendoor Technologies Inc., f/k/a Social Capital Hedosophia Holdings Corp. II ("Opendoor" or the "Company"); (ii) Eric Wu, Carrie Wheeler, Chamath Palihapitiya, Steven Trieu, Ian Osborne, David Spillane, Adam Bain, Cipora Herman, Pueo Keffer, Glenn Solomon, Jason Kilar, Jonathan Jaffe (collectively, the "Individual Defendants," and together with the Company, "Opendoor Defendants"); and (iii) Citigroup Global Markets Inc., Goldman Sachs & Co. LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Oppenheimer & Co. Inc., BTIG, LLC, KeyBanc Capital Markets Inc., Wedbush Securities Inc., TD Securities (USA) LLC, Zelman Partners LLC, Academy Securities, Inc., Loop Capital Markets LLC, Samuel A. Ramirez & Co., LLC, and Siebert Williams Shank & Co., LLC (collectively, the "Underwriter Defendants," and together with Opendoor Defendants, "Defendants").

23   [2] Opendoor's Initial Offering  was conducted pursuant to, and the sale of Opendoor common stock was solicited by, several documents filed by Defendants with the Securities and Exchange Commission ("SEC") and disseminated to the investing public, including a Form S-4, which was declared effective by the SEC on November 27, 2020 ( "November 2020 Registration Statement") (*see* Declaration of Michael P. Canty ("Decl.") Ex. 2), and a November 30, 2020 proxy on Form 424B3, which formed part of the November 2020 Registration Statement the "Proxy/Prospectus" and, together with the November 2020 Registration Statement, the "Initial Offering Documents").  *See* Decl. Ex. 3.

27   [3] Opendoor's Secondary Offering was conducted pursuant to, and the sale of Opendoor common stock was solicited by, several documents filed by Defendants with the SEC and

Footnote continued on next page

and (iii) appointing Labaton Keller Sucharow LLP ("Labaton") as Class Counsel, Glancy Prongay & Murray ("Glancy") as Additional Counsel, and Clark Hill PLC ("Clark Hill") as Local Counsel.

Plaintiffs respectfully request that the following "Class" be certified in the Action against Defendants:

> All persons and entities that purchased or otherwise acquired Opendoor common stock pursuant and/or traceable to the Offering Documents issued in connection with the de-SPAC Merger on or about December 21, 2020 and/or the Offering Documents issued in connection with Opendoor's secondary public offering on or about February 4, 2021.

> Excluded from the Class are: (i) Defendants and members of the immediate family of any Individual Defendant; (ii) any person who was an officer, director, and/or control person of Opendoor during the Class Period; (iii) any firm, trust, corporation, or other entity in which any Defendant (or members of the immediate family of any Defendant) has or had a controlling interest; (iv) Opendoor's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (v) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person, in their capacity as such.

This Action is ideally suited for class treatment under Rule 23. Plaintiffs assert strict liability and negligence-based claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"). Plaintiffs' claims are based on false and misleading statements and omissions contained in the Offering Documents issued in connection with Opendoor's Initial Offering, commenced on or about December 21, 2020, of 546,787,092 shares of Opendoor common stock, and Opendoor's Secondary Offering, commenced on or about February 9, 2021, of 28,536,888 shares of common stock. As detailed in the Complaint, the Defendants violated the Securities Act by making false statements and omissions in the

---

disseminated to the investing public, including a Form S-1, which was declared effective by the SEC on February 4, 2021 (the "February 2021 Registration Statement") (*see* Decl. Ex. 4), and a February 8, 2021 proxy on Form 424B3, which formed part of the February 2021 Registration Statement (the "February 2021 Proxy/Prospectus" and, together with the February 2021 Registration Statement, the "Secondary Offering Documents"). *See* Decl. Ex. 5.

Offering Documents[4] regarding, *inter alia*, Opendoor's purportedly AI-driven pricing algorithms.

Courts routinely grant class certification in securities class actions because "suits alleging violations of . . . the Securities Act are '*especially amenable*' to class action certification and resolution." *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 232 & n.40 (S.D.N.Y. 2012) (emphasis added). This is because a plaintiff bringing claims under these Securities Act provisions "need only show a material misstatement or omission to establish [its] prima facie case." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). No proof of scienter, reliance, or loss causation is required under the Securities Act. *Rafton v. Rydex Series Funds*, 2011 WL 31114, at *6 (N.D. Cal. Jan. 5, 2011). Class certification is appropriate here because the central issues in this case—the existence and materiality of the alleged misstatements and omissions—"obviously present important common issues." *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *3 (N.D. Cal. June 28, 2015); *see also Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013) ("question of materiality is common to the class").

The Ninth Circuit favors the use of class actions to redress violations of the securities laws "in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws." *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975). In recognition of the essential role class actions play in protecting investors, "the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *In re NetSol Techs., Inc. Sec. Litig.*, 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016).

This Action, like other securities cases, is ideally suited for class treatment. First, this Class is sufficiently numerous—far exceeding the minimum presumptive threshold of forty (40) geographically dispersed investors—with over 575 million shares of common

---

[4] Offering Documents refers collectively to the Initial Offering Documents and the Secondary Offering Documents.

3

stock issued pursuant and/or traceable to the Offering Documents.  *See infra* Section IV.B.1.  Second, commonality is established because the primary inquiry in this Action—whether the Offering Documents contained material misstatements and omissions—presents common issues of law and fact that are subject to common proof.  *See infra* Section IV.B.2.  Third, Plaintiffs' claims are typical of the claims of the Class because, like all other Class members, Plaintiffs acquired Opendoor common stock pursuant and/or traceable to the Offering Documents and allege that Defendants violated Sections 11 and 15 of the Securities Act by issuing Offering Documents that misrepresented and omitted material facts.  *See infra* Section IV.B.3.  Fourth, Plaintiffs will fairly and adequately protect the interests of the Class, as demonstrated by Plaintiffs' commitment to vigorously prosecuting this Action and their retention of experienced counsel to represent their interests and those of the proposed Class.  *See infra* Section IV.B.4.

This Action also satisfies Rule 23(b)(3).  The predominance requirement is met because common questions of law and fact predominate over individualized issues.  *See infra* Section IV.C.1.  The essential elements of the Section 11 claim in this Action—falsity and materiality—can be proven through evidence common to the Class.  Similarly, because Section 11(e) prescribes a statutory formula for calculating damages, the same damages calculation is applicable to all Class members.  Finally, maintaining this Action as a class action is superior to any alternate means of dispute resolution.  *See infra* IV.C.2.

For these reasons, Plaintiffs respectfully request that the Court grant this Motion.

## II.    STATEMENT OF FACTS

### A.    Opendoor's False Offering Documents

Founded in 2014, Opendoor buys and sells residential real estate in the United States through an online process known as "iBuying."  ¶¶321-22.  iBuyers like Opendoor claim to use technology to estimate the value of a particular home and, based on that value, instantly make an offer to a potential seller.  ¶322.  In December 2020, Opendoor went public via a de-SPAC merger.  ¶¶402-407.  Pursuant to the Initial Offering Documents, Opendoor issued 546,189,092 shares.  ¶¶336-38.  Then, on February 9, 2021, the Company

conducted a Secondary Offering at $27 per share and raised approximately $886 million, pursuant to the Secondary Offering Documents.  ¶¶343-46.

In the Offering Documents, Defendants made several false claims regarding the capability of Opendoor's purportedly AI-powered pricing algorithms.  For example, in the Offering Documents, Defendants touted that the "algorithms use machine learning to drive pricing decisions" and that the algorithms can "***dynamically adjust to leading market indicators and react to real-time macro- and micro-economic conditions***."  ¶¶402, 410.  However, as alleged in the Complaint, these statements were false because, in reality, Opendoor's algorithm could not adjust to changing economic conditions.  ¶¶403-04, 411.  For instance, the algorithm failed abysmally when the housing market started to cool down due to its inability to adjust to marco- and micro-economic changes, such as rising interest rates.  ¶¶450-52.

Further, Defendants led investors to believe that Opendoor's pricing algorithms were key to the Company's profitability.  The Offering Document stated that the algorithms' accuracy and ability to adjust to changing economic conditions was "critical to . . . maintain[] [contribution] margins, especially in periods of volatility."  ¶402.  Investors were misled into believing that Opendoor's success was driven primarily by their purportedly AI-powered algorithms and that the algorithm's ability to adjust to changing economic conditions allowed Opendoor to remain profitable in periods of market volatility.

Unbeknownst to the investors, however, because of the algorithm's inability to adjust to changing market conditions, human pricing analysts primarily drove Opendoor's pricing decisions.  ¶¶403-04, 411. This undisclosed human-driven process made Opendoor just as susceptible to changing economic conditions as any other traditional real estate company.  *Id.*  Consequently, when the housing market cooled and turned negative in 2022, Opendoor disclosed declining contribution margins and profitability, which revealed to investors that Opendoor's pricing algorithms did not work or adjust to changing market conditions, especially in periods of high volatility.  ¶¶470-73. Indeed, Opendoor's stock price crashed by 94.43% from December 21, 2020 (the Initial Offering) to November 7,

2022.  ¶473.

### B.    Proposed Class Representatives

On February 2, 2023, pursuant to the Private Securities Litigation Reform Act of 1995, the Court appointed Indiana Public Retirement System, Oakland County ERS, and Oakland County VEBA as Lead Plaintiffs and Labaton as Lead Counsel.  ECF. No. 20. On April 17, 2023, Lead Plaintiffs filed the Complaint adding the Additional Plaintiff as a plaintiff.  ECF. No. 39.  As outline in their declarations, Plaintiffs purchased Opendoor common stock pursuant and/or traceable to the Offering Documents.  *See* Decl. Exs. 6, 7.

Plaintiffs are aware that this class action lawsuit is brought both on their behalf and on behalf of the Class, and that they are asking to be appointed as class representatives to act on behalf of the Class.  Decl. Exs. 6, 7.  Plaintiffs understand that as class representatives, they each owe a fiduciary duty to all members of the Class to provide fair and adequate representation and have stated that they will work with counsel to obtain the maximum recovery possible for the Class consistent with good faith and meritorious advocacy.  *See* Decl. Exs. 6, 7.

Since appointment, Plaintiffs and Lead Counsel have vigorously prosecuted this action.  In particular, Plaintiffs obtained a favorable outcome in the motion for reconsideration and defeated a slew of Defendants' motions, including a motion for an order directing the submission of counsel and confidential witness affidavits (the "CW Motion") and motion to certify the Court's May 14, 2023 order for interlocutory appeal (the "Motion to Certify").  Further, Plaintiffs have reviewed and monitored the progress of this litigation and regularly conferred with Lead Counsel concerning the prosecution of the action.  *See* Decl. Exs. 6, 7.  For example, Plaintiffs have received and reviewed periodic updates and other correspondence from counsel regarding all aspects of the case, including the progress of discovery and the filing of significant pleadings and court orders.  Decl. Exs. 6, 7. Moreover, Lead Plaintiffs attended a day-long mediation in New York, New York on February 7, 2025.  Decl. Exs. 6, 7.

In sum, Plaintiffs are committed to vigorously prosecuting this litigation and intend

1   to obtain the largest recovery for the Class consistent with good faith and sound judgment.

2   *See* Decl. Exs. 6, 7.

3   **III.    ARGUMENT**

4       **A.    Legal Standards**

5       Class certification is warranted when the movant demonstrates that the requirements

6   of Rule 23 are met.  Rule 23(a) is satisfied when a movant shows numerosity, commonality,

7   typicality, and adequacy.  *See Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 435

8   (D. Ariz. 2019).  Rule 23(b)(3) is met when a movant shows predominance and superiority.

9   *Id.*  The Ninth Circuit has "established that the requirements of Rule 23 should be liberally

10  construed in favor of class action cases brought under the federal securities laws." *NetSol*,

11  2016 WL 7496724, at *3; *see also In re Scorpion Techs., Inc. Sec. Litig.*, 1994 WL 774029,

12  at *3 (N.D. Cal. Aug. 10, 1994) ("[T]he Ninth Circuit favors a liberal use of class actions

13  to enforce federal securities laws.").

14      A movant must show that the proposed Class satisfies each requirement of Rule 23

15  "by a preponderance of the evidence."  *Olean Wholesale Grocery Coop., Inc. v. Bumble*

16  *Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir.), *cert. denied*, 143 S. Ct. 424 (2022).  However,

17  "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the

18  certification stage." *Amgen*, 568 U.S. at 466; *see also In re FibroGen Sec. Litig.*, 2024 WL

19  1064665, at *4 (N.D. Cal. Mar. 11, 2024) ("The underlying merits of the case . . . should

20  not overly cloud the Court's certification analysis—the only question presently before the

21  Court is whether the requirements of Rule 23 are met.").  Rather, merits questions are

22  relevant "only to the extent . . . that they are relevant to determining whether the Rule 23

23  prerequisites for class certification are satisfied."  *Amgen*, 568 U.S. at 466.

24      **B.    This Action Satisfies the Requirements of Rule 23(a)**

25      Rule 23(a) sets four requirements for class certification: (1) the class must be so

26  numerous that joinder of all members is impracticable ("numerosity"); (2) there must be

27  questions of law or fact common to the class ("commonality"); (3) the claims or defenses

28  of the representative parties must be typical of the claims or defenses of the class

1   ("typicality"); and (4) the representative parties must fairly and adequately protect the

2   interests of the class ("adequacy").  Fed. R. Civ. P. 23(a).  The proposed Class meets each

3   of the Rule 23(a) requirements.

4                  **1.      The Class Is So Numerous That Joinder Is Impracticable**

5          Rule 23 contemplates class certification where "the class is so numerous that joinder

6   of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Courts in the Ninth Circuit

7   have found that "[n]umerosity is presumed where the plaintiff class contains forty or more

8   members."  *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2022 WL

9   1459567, at *3 (N.D. Cal. May 9, 2022); *see also Hatamian v. Advanced Micro Devices,*

10  *Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016).  Particularly in class action suits

11  involving nationally traded securities, the numerosity requirement "is generally assumed

12  to have been met."  *Di Donato*, 333 F.R.D. at 434.

13         Here, the proposed Class is sufficiently numerous.  While the exact number of

14  persons and entities that purchased or otherwise acquired Opendoor common stock

15  pursuant and/or traceable to the Offering Documents cannot be determined without further

16  discovery and a post-trial claims process, Opendoor conducted two offerings, issuing more

17  than 575 million shares in total when including both offerings.[5]  *See* Decl. Exs. 2-5.  The

18  proposed Class of investors is, therefore, more likely than not to contain thousands of

19  investors across the United States and is thus presumptively numerous.  *In re Honest Co.*

20  *Sec. Litig.*, 2023 WL 3190506, at *2 (C.D. Cal. May 1, 2023) (finding numerosity

21  requirement met when the defendants' company "'offered over 25 million shares'").

22  Moreover, according to publicly available Form 13-Fs, where institutional investment

23  _____

24         [5] Although the Initial Offering registered over 546 million shares, that number was the
    total of a few different categories of shares, for example: (i) shares of Opendoor common
25  stock that were registered under the November 2020 Registration Statement and
    represented Class A ordinary shares of the SPAC, Social Capital Hedosophia Holdings
26  Corp. II  ("SCH") (the "SPAC Converted Shares"); or (ii) shares of Opendoor common
    stock that were registered under the November 2020 Registration Statement to holders of
27  the common stock of Opendoor Labs, Inc. ("Legacy Opendoor").  However, even the
    smallest category of shares—the SPAC Converted Shares—consisted of over 41 million
28  shares, which is well above the numerosity requirement of at least 40 members, and thus
    Plaintiffs meet the numerosity requirement.

1   managers report all equity assets of at least $100 million in value, there were 220 and 426

2   institutional shareholders of Opendoor common stock as of March 31, 2021 and September

3   30, 2022, the last day of second quarter in which the SPO closed and just days before this

4   Action was filed on October 7, 2022, respectively.  *See* Decl. Exs. 8, 9.

5       Accordingly, because any attempt to litigate this Action outside of the Rule 23

6   context would be impractical, certification promotes judicial economy and uniformity of

7   decision regarding Class claims.  *See also In re Lyft Inc. Sec. Litig.*, 2021 WL 3711470, at

8   *3 (N.D. Cal. Aug. 20, 2021) (holding "putative class members are sufficiently numerous

9   to make joinder impracticable" when the defendants' company sold 32.5 million shares);

10  *see also In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2013 WL 5789237, at

11  *4 (C.D. Cal. Oct. 25, 2013) ("[B]ecause this is a securities action involving a publicly-

12  traded stock, it is highly likely that the members of the Class are geographically diverse,

13  making joinder impractical.").

14          **2.      Questions of Law and Fact Are Common to the Class**

15      Rule 23(a)(2) requires the existence of "questions of law or fact common to the

16  class."  Fed. R. Civ. 23(a)(2).  To show commonality, "[p]laintiffs need not show . . . that

17  every question in the case, or even a preponderance of questions, is capable of class wide

18  resolution. So long as there is even a single common question, a would-be class can satisfy

19  the commonality requirement of Rule 23(a)(2)."  *Parsons v. Ryan*, 754 F.3d 657, 675 (9th

20  Cir. 2014).  "In securities fraud cases, commonality is often satisfied as result of the

21  inherent nature of such cases."  *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at

22  *4 (N.D. Cal. Dec. 22, 2016).

23      Here, the Complaint raises significant questions of law and fact common to the

24  proposed Class, including: (i) whether Defendants violated federal securities laws; (ii)

25  whether the Offering Documents contained any misrepresentations or omissions; (iii)

26  whether those misrepresentations and omissions were material; (iv) whether the Individual

27  Defendants were controlling persons under Section 15; (v) whether Defendants could

28  establish a class-wide defense of negative causation; (vi) whether the Underwriter

1   Defendants performed adequate due diligence prior to the Secondary Offering; and (vii) to

2   what extent the member of the proposed Class have sustained damages and the proper

3   measure of damages.  *See* ¶478.

4          Each of these questions are common to all members of the Class and readily satisfy

5   the commonality requirement.  *See In re Talis Biomedical Corp. Sec. Litig.*, 2024 WL

6   536303, at *3 (N.D. Cal. Feb. 9, 2024) (finding similar questions establish commonality);

7   *Lyft*, 2021 WL 3711470, at *3 ("Common questions include whether the IPO Registration

8   Statement contained untrue statements of material fact or omitted to disclose material

9   facts").

10                      **3.     Plaintiffs' Claims Are Typical of the Class**

11         Rule 23(a)(3) requires that "the claims or defenses of the representative parties are

12  typical of the claims or defense of the class."  Fed. R. Civ. P. 23(a)(3).  To show typicality,

13  under the "permissive standards" of Rule 23(a)(3), the claims need only be "reasonably co-

14  extensive with those of absent class members," rather than "substantially identical."  *SEB*

15  *Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 283 (N.D. Cal. 2020) (quoting *Hanlon*

16  *v. Chrysler Corp.*, 150 F.3d 11011, 1020 (9th Cir. 1998)).   In other words, typicality is

17  "satisfied when each class member's claim arises from the same course of events, and each

18  class member makes similar legal arguments to prove the defendant's liability."  *City of*

19  *Sunrise*, 2022 WL 1459567, at *4 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th

20  Cir. 2010)).

21         Here, Plaintiffs' claims are typical of—if not identical to—the claims of the other

22  Class members.  As detailed in their declarations, Plaintiffs acquired Opendoor common

23  stock pursuant and/or traceable to the Offering Documents and allege that Defendants

24  violated Sections 11 and 15 of the Securities Act by issuing Offering Documents that

25  misrepresented and omitted material facts concerning Opendoor's pricing algorithms.  *See*

26  Decl. Exs. 6, 7.  Plaintiffs' claims are based upon the same facts and legal theories as absent

27  Class members and will be proven with the same evidence.  *See Honest*, 2023 WL 3190506,

28  at *6 (finding similar claims typical); *see also Lyft*, 2021 WL 3711470, at *4 (same).

1    Therefore, Plaintiffs' claims are typical of the claims of the Class.

2        Additionally, Plaintiffs are not subject to unique defenses that would become a

3    major focus of litigation, and any defenses Defendants may assert against Plaintiffs would

4    be the same for other class members.[6] *See* Decl. Exs. 6, 7; *see also Todd v. STAAR Surgical*

5    *Co.*, 2017 WL 821662, at *5 (C.D. Cal. Jan. 5, 2017) ("District courts generally find that

6    where plaintiffs have bought and sold stock for investment purposes, subject to the same

7    information and representations as the market at large[,] those plaintiffs are typical and not

8    subject to a unique defense.").

9        **4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the**
          **Class**
10

11       Rule 23(a)(4) requires that "representative parties will fairly and adequately protect

12   the interests of the class." Fed. R. Civ. P. 23(a)(4). To establish adequacy, a movant must

13   answer two questions: "(1) do the named plaintiffs and their counsel have any conflicts of

14   interest with other class members[,] and (2) will the named plaintiffs and their counsel

15   prosecute the action vigorously on behalf of the class?" *In re Lendingclub Sec. Litig.*, 282

16   F. Supp. 3d 1171, 1182 (N.D. Cal. 2017) (quoting *Hanlon*, 150 F.3d at 1020).

17       Plaintiffs are adequate because Plaintiffs are committed to overseeing this litigation

18   and safeguarding the Class members' best interest, and have retained a team of experienced

19   attorneys to vigorously prosecute this Action. *See* Decl. Exs. 6, 7. In particular, Plaintiffs

20   researched and drafted the Complaint, defeated Defendants' motion to dismiss in part (after

21   the Court granted Plaintiffs' motion for reconsideration), and defeated a slew of other

22   motions, including the CW Motion and Motion to Certify. Further, Plaintiffs have

23   reviewed and monitored the progress of this litigation at every stage and regularly

24   conferred with Lead Counsel concerning the prosecution of the action. *See* Decl. Exs. 6,

25   7. For example, Plaintiffs have received and reviewed periodic updates and other

26   _____

27   [6] To the extent Defendants assert any affirmative knowledge defense, such defense does
     not defeat typicality. *See Talis*, 2024 WL 536303, at *6 (finding potential issues of investor
     knowledge do not defeat typicality); *see also Bos. Ret. Sys. v. Uber Techs., Inc.*, 2022 WL
28   2954937, at *5 (N.D. Cal July 26, 2022) ("[A]ctual knowledge defenses as to the proposed
     class representatives are not so unique to these plaintiffs that they defeat typicality.").

11

correspondence from counsel regarding all aspects of the case, including the progress of discovery and the filing of significant pleadings and court orders. Decl. Exs. 6, 7. Since then, Lead Counsel has pursued key discovery from Defendants, and Plaintiffs remain fully committed to actively prosecuting this case in the best interest of the Class. Decl. Exs. 6, 7. Critically, based upon their purchase of Opendoor common stock, Plaintiffs' interests are directly aligned with the interests of the Class, all of whom were injured by Defendants' material misstatements and omissions. *See* Decl. Exs. 6, 7; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (finding shared interest with all class members when plaintiff suffered the same injury as the class). Plaintiffs will prove the Class's claims when they prove their own claims, thus satisfying the adequacy requirement.

Additionally, Plaintiffs are adequate because they retained Labaton to further protect the interest of the Class.[7] Labaton has served as lead counsel in many of the largest and most significant securities class actions. *See* Decl. Ex. 10. Further, in appointing Labaton as Lead Counsel, this Court already made a preliminary (and proper) determination that Labaton will fairly and adequately protect the interests of the putative Class. *See* ECF. No. 20. Indeed, as discussed herein, Labaton has committed substantial time and resources to representing the Class and has worked vigorously to prosecute this Action, and will continue to zealously and competently represent the interests of all Class members.[8] Accordingly, Plaintiffs readily meet the adequacy requirement.

### C.    This Action Satisfies the Requirements of Rule 23(b)

Having met each of the four requirements of Rule 23(a), Plaintiffs seek certification under Rule 23(b)(3). Under this rule, class certification is warranted if "questions of law or fact common to class members predominate over any questions affecting only individual members [(the "predominance requirement")], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [("the superiority

---

[7] Plaintiffs also retained Glancy as Additional Counsel, a firm with significant experience in securities class actions. *See* Decl. Ex. 11.

[8] These qualifications also satisfy Rule 23(g), which requires a district court to assess the adequacy of proposed class counsel. *See infra* Section III.D.

1  requirement")]."  Fed. R. Civ. P. 23(b)(3).  This Action satisfies the predominance and

2  superiority requirements.

3  **1.    Common Questions of Law and Fact Predominate**

4       As the Supreme Court has held, "[p]redominance is a test readily met in certain

5  cases alleging . . . securities [claims]." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625

6  (1997). This requirement "tests whether proposed classes are sufficiently cohesive to

7  warrant adjudication by representation." *Id.* at 623.  In other words, class certification "is

8  proper when common questions represent a significant portion of the case and can be

9  resolved for all members of the class in a single adjudication." *SEB*, 335 F.3d at 286.

10 Moreover, Rule 23(b)(3) "does **not** require a plaintiff seeking class certification to prove

11 that each 'elemen[t] of [her] claim [is] susceptible to classwide proof[,]'" but rather just

12 "that common questions '**predominate** over any questions affecting only individual [class]

13 members.'" *Amgen*, 568 U.S. at 469 (italics and alternations in original) (quoting Fed. R.

14 Civ. P. 23(b)(3)).

15      As noted above, this Action presents clear questions of law and fact common to

16 every Class member.  *See supra* Section III.B.2.  These common questions include, most

17 notably, whether the Offering Documents contained material misstatements or omissions.

18 The common legal and factual questions are at the core of this litigation and are focused

19 on Defendants' actions and issues of liability. *China Intelligent Lighting & Elecs.*, 2013

20 WL 5789237, at *6 (finding "predominance requirement is easily met" when presented

21 with the same common questions present in this case).

22      Plaintiffs allege violations of Sections 11 and 15 of the Securities Act. Because

23 Securities Act claims focus on the contents of the Offering Documents and do not require

24 any showing of scienter, reliance, or loss causation, they are particularly well suited for

25 class treatment. *Id.*  To recover under the Securities Act, Class members must show that:

26 (1) registration statement contained a misrepresentation or omission; and (2) the

27 misrepresentation or omission was material.  *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d

28 1156, 1161 (9th Cir. 2009).  Whether the Offering Documents contained a material

1    misrepresentation or omission is susceptible to a common answer and will be the

2    predominant issue in the case.

3        These common legal and factual questions—falsity and materiality—are at the core

4    of this litigation and can be proven through evidence common to the Class.  *Amgen*, 568

5    U.S. at 459 ("[M]ateriality is judged according to an objective standard."); *Lyft*, 2021 WL

6    3711470, at *5 ("Whether Lyft's Registration statement contained untrue statements or

7    omissions, and whether any such misrepresentations or omissions were material, are

8    common questions that can be proven through evidence common to the class.").  Likewise,

9    the Individual Defendants' liability under Section 15 can be proven by common evidence.

10   *See Talis*, 2024 WL 536303, at *7.  Thus, if Defendants are liable for the alleged conduct,

11   they are liable to all similarly situated Class members.

12       Similarly, the methodology for calculating damages is also a common question.

13   Here, the Securities Act provides standard damages formulas that are common to the

14   Class.[9]  *See* 15 U.S.C. § 77k(e); *see also China Intelligent Lighting & Elecs.*, 2013 WL

15   5789237, at *6-7 (finding predominance requirement met because "the calculation of

16   damages will be governed by statutory formulas").  Thus, the standard damages formula is

17   common to the Class and will predominate. Moreover, while specific damages may vary

18   for each Class member, the "need for individual damages calculations does not, alone,

19   defeat class certification."  *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155

20   (9th Cir. 2016) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 450, 453 (2016)).

21       In sum, numerous common questions predominate over any potential individual

22   issues, except for the quantum of damages, which does not interfere with certification, and

23   potential affirmative defenses that exist only in theory and do not interfere with

24   certification.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 346

25   (S.D.N.Y. 2015) ("As long as a sufficient constellation of common issues binds class

26   _____

27   [9] Likewise, *Comcast* should not prevent this Action from being certified.  *Comcast v. Behrend*, 569 U.S. 27 (2013).  Indeed, courts have held that "*Comcast* is simply inapposite to Section 11 actions, where damages reflect liability by statutory formula."  *Uber*, 2022

28   WL 2954937, at *3-4 (N.D. Cal. July 26, 2022) (quoting *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 2016 WL 7409840, at *10 (S.D.N.Y. Nov. 4, 2016)

members together, variations in the sources and application of a defense will not automatically foreclose class certification under Rule 23(b)(3).").[10] Accordingly, the predominance requirement is satisfied.

### 2. A Class Action Is Superior to Alternative Methods for Resolving This Dispute

To meet the superiority requirement, a class must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The test for superiority turns on four factors: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Securities class actions, like this Action, are routinely found to meet these superiority factors. *See, e.g.*, *In re UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at *10 (N.D. Cal. May 12, 2010) ("The court has previously found class treatment superior to individual actions in the context of securities litigation."); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) ("District courts have consistently recognized that the common liability issues involved in securities fraud cases are ideally suited for resolution by way of a class action"); *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

Indeed, here, all four factors weigh in favor of class certification. First, resolving the claims in this case on a class-wide basis will promote judicial economy since the alternative would be to have thousands of separate individual actions, which offers no

---

[10] It is well established that any differences in secondary issues that may be identified by Defendants cannot interfere with class certification. *See e.g.*, *Talis*, 2024 WL 536303, at *7 (finding potential issues of investor knowledge do not predominate over common issues); *Uber*, 2022 WL 2954937, at *3 (same); *Lyft*, 2021 WL 3711470, at *4-7 (same).

practical recourse for most Class members, and would be burdensome. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("[C]lasswide litigation of common issues will reduce litigation costs and promote greater efficiency"). Second, counsel is unaware of any other litigation against Defendants asserting the same claim. Third, concentration of this litigation in one forum is desirable because it would promote efficiency and avoid inconsistent adjudication. *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 271 (N.D. Cal. 2011) ("Where thousands of identical complaints would have to be filed, it is superior to concentrate claims through a class action in a single forum."). Fourth, there is no reason to expect any difficulties in the management of this Action as a class action.[11] Accordingly, a class action is superior to any other method of resolving the claims at issue here.

### D. THE COURT SHOULD APPOINT LEAD COUNSEL AS CLASS COUNSEL UNDER RULE 23(g)

In addition to satisfying the adequacy requirement of Rule 23(a)(4), *see supra* Section III.B.4, Labaton should be appointed as Class Counsel, Glancy as Additional Counsel, and Clark Hill as Local Counsel pursuant to Rule 23(g). *See* Fed. R. Civ. P. 23(g)(1) ("a court that certifies a class must appoint class counsel"). When appointing class counsel, a court "must consider" the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As detailed herein, Labaton, in its capacity as Lead Counsel for Plaintiffs, has conducted an extensive investigation into Defendants' conduct and has successfully opposed Defendants' motion to dismiss (after successfully filing a motion for reconsideration). *See* ECF Nos. 39, 55-56, 86, 97. Likewise, Glancy has contributed

---

[11] In any event, the Ninth Circuit has recognized that "courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)).

significantly in investigating and prosecuting the claims in this Action. *Id.* These firms have substantial experience handling class actions asserting claims of this type, have committed and will continue to commit substantial resources to representing the Class, and have worked vigorously to prosecute this Action. *See supra* Section III.B.4.; *see also* Decl. Exs. 10, 11. In appointing Lead Counsel, this Court already made a preliminary (and proper) determination that Labaton will fairly and adequately protect the interests of the putative Class. *See* ECF No. 20.

For these reasons, Labaton will fairly and adequately represent the Class and should be appointed Class Counsel as will Glancy as Additional Counsel pursuant to Rule 23(g).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) certify this Action as a class action pursuant to Rule 23(a) and Rule 23(b)(3); (ii) certify Plaintiffs as Class Representatives; and (iii) appoint Labaton as Class Counsel, Glancy as Additional Counsel, and Clark Hill as Local Counsel.

Dated: February 28, 2025

**LABATON KELLER SUCHAROW LLP**

By: */s/Michael P. Canty*
Michael P. Canty (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
Guillaume Buell (admitted *pro hac vice*)
Nicholas Manningham (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
jchristie@labaton.com
gbuell@labaton.com
nmanningham@labaton.com

*Counsel for Plaintiffs*

**CLARK HILL PLC**
Daniel P. Thiel, SBN #035831
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: 480-684-1100
Fax: 480-684-1199
dthiel@clarkhill.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Local Counsel for Plaintiffs*

**VANOVERBEKE MICHAUD & TIMMONY P.C.**

Aaron L. Castle (admitted *pro hac vice*)
79 Alfred Street
Detroit, Michigan 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com

**GLANCY PRONGAY & MURRAY LLP**

Casey E. Sadler (*pro hac vice* motion forthcoming)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: csadler@glancylaw.com

*Additional Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and transmittal of a Notice of Service of Electronic Filing to the individuals registered with CM/ECF.

*/s/Michael P. Canty*
Michael P. Canty