**CLARK HILL PLC**
Darrell E. Davis, SBN #011442
Colin C. Quinn, SBN #037122
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: (480) 684-1100
Facsimile: (480) 684-1199
ddavis@clarkhill.com
cquinn@clarkhill.com

*Local Counsel for Plaintiffs*

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
Guillaume Buell (admitted *pro hac vice*)
Nicholas Manningham (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
jchristie@labaton.com
gbuell@labaton.com
nmanningham@labaton.com

*Counsel for Plaintiffs*

[Additional Counsel on signature page]

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE OPENDOOR TECHNOLOGIES INC. SECURITIES LITIGATION | Case No. 2:22-CV-01717-MTL<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br><u>CLASS ACTION</u> |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES....................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.      PRELIMINARY STATEMENT ...................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND...........................................2

III.    SETTLEMENT DISCUSSIONS .................................................................5

IV.     TERMS OF THE PROPOSED SETTLEMENT ...............................................5

V.      THE SETTLEMENT MERITS PRELIMINARY APPROVAL ...........................7

        A.     The Settlement Class Has Been Adequately Represented .........................8

        B.     The Settlement Resulted from Good Faith, Arm's-Length
               Negotiations ...........................................................................9

        C.     The Relief Provided by the Settlement Is Adequate ...............................10

               1.     Many Challenges to Obtaining a Recovery Remained ...................10

               2.     Effective Process for Distributing Relief to the Settlement
                      Class ...........................................................................12

               3.     Anticipated Legal Fees and Expenses...........................................13

        D.     Settlement Class Members Are Treated Equitably ...............................14

VI.     PROPOSED NOTICE PROGRAM SHOULD BE APPROVED .......................14

VII.    PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS.....................16

CONCLUSION ...........................................................................................17

i

1

# TABLE OF AUTHORITIES

2

3

**Page(s)**

4

**Cases**

5
*Affiliated Ute Citizens of Utah v. U.S.*,
   406 U.S. 128 (1972) ................................................................................... 17

6

7
*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................... 16

8

9
*In re Banc of Cal. Sec. Litig.*,
   No. SA CV 17-118 DMG, slip op. (C.D. Cal. Mar. 16, 2020) ................... 14

10
*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ................................................................................... 17

11

12
*Boston Ret. Sys. v. Uber Techs., Inc.*,
   Case No. 3:19-cv-06361-RS, slip op. (N.D. Cal. Aug. 9, 2024) .......... 9, 15

13

14
*In re Cooper Cos. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ............................................................... 16

15
*Destefano v. Zynga Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................. 14

16

17
*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................... 16

18

19
*In re Honest Co., Inc. Sec. Litig.*,
   No. 21-CV-074405, slip op. (N.D. Cal. May 6, 2025) ............................... 15

20

21
*Horton v. USAA Cas. Inc. Co.*,
   266 F.R.D. 360 (D. Ariz. 2009) ................................................................... 7

22

23
*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ................................................................ 14, 15

24
*Lo v. Oxnard European Motors, LLC*,
   2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ........................................... 11

25

26
*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ................................................................................... 14

27

28
*In re NVIDIA Corp. Derivative Litig.*,
   2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ............................................. 9

ii

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ...................................................... 7

*Tait v. BSH Home Appliances Corp.*,
  2015 WL 4537463 (C.D. Cal. July 27, 2015) ................................ 14

*In re Taronis Tech., Inc. S'hareholder Derivative Litig.*,
  2021 WL 842137 (D. Ariz. Mar. 5, 2021) ...................................... 9

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
  No. 16-cv-02942 (C.D. Cal. Mar. 13, 2023) ................................. 13

*Vinh Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................. 14

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .............................................. 13, 14

*In re Wells Fargo Sec. Litig.*,
  991 F. Supp. 1193 (N.D. Cal. 1998) .............................................. 13

*Wood v. Ionatron, Inc.*,
  No. CV 06-354-TUC-CKJ, 2009 WL 10673479
  (D. Ariz. Sept. 28, 2009) ............................................................. 7

**Statutes**

15 U.S.C § 77k(e) ............................................................................ 11

15 U.S.C. § 77z-1 ............................................................................ 16

15 U.S.C. § 77z-1(a)(4) ................................................................... 13

17 C.F.R. § 240.10b-5 ....................................................................... 3

**Rules**

Fed. R. Civ. P. 23 ................................................................... 1, 7, 16

Fed. R. Civ. P. 23(a) ....................................................................... 16

Fed. R. Civ. P. 23(b) ....................................................................... 16

Fed. R. Civ. P. 23(b)(3) .............................................................. 16, 17

Fed. R. Civ. P. 23(c)(2)(B) .......................................................... 14, 15

Fed. R. Civ. P. 23(e)(1) ............................................................... 7, 15

iii

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................................7

Fed. R. Civ. P. 23(e)(2) ........................................................................................7

Fed. R. Civ. P. 23(e)(2)(B) ...................................................................................9

Fed. R. Civ. P. 23(e)(3) ........................................................................................8

Court-appointed Lead Plaintiffs Indiana Public Retirement System, Oakland County Employees' Retirement System, and Oakland County Voluntary Employees' Beneficiary Association ("Lead Plaintiffs") and additional plaintiff Stuart Hereford Graham ("Additional Plaintiff" and, together with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the proposed Settlement Class, hereby move this Court for an Order, pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) preliminarily approving the proposed Settlement; (ii) preliminarily certifying the Settlement Class for purposes of settlement; (iii) approving the form, content and manner of providing notice to the Settlement Class; (iv) setting a hearing date to consider final approval of the Settlement, approval of the proposed Plan of Allocation for the proceeds of the Settlement, and Lead Counsel's motion for an award of attorneys' fees and Litigation expenses (the "Settlement Hearing"); (v) appointing Verita Global, LLC ("Verita") as the Claims Administrator; and (vi) granting such other and further relief as the Court may deem fair and proper. [1] Defendants do not oppose the relief requested in this motion. The motion is based on the following Memorandum of Points and Authorities and the Declaration of James T. Christie, dated June 13, 2025, with annexed exhibits, filed herewith. A proposed Order, which was negotiated by the Parties to the Settlement, is also submitted herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

If approved, the Settlement will provide a recovery of $39,000,000 to the Settlement Class and resolve the claims in the Action, and related claims, against Defendants Opendoor Technologies Inc. ("Opendoor" or the "Company"); the Individual Defendants;[2] and the Underwriter Defendants (the Underwriter Defendants together with

---

[1] Capitalized terms used herein that are not defined have the same meanings as in the Stipulation and Agreement of Settlement (the "Stipulation"), which is filed as Exhibit 1 to the Declaration of James T. Christie ("Christie Decl."), dated June 13, 2025.

[2] The "Individual Defendants" are Eric Wu, Carrie Wheeler, Chamath Palihapitiya, Steven Trieu, Ian Osborne, David Spillane, Adam Bain, Cipora Herman, Pueo Keffer, Glenn Solomon, Jason Kilar, Jonathan Jaffe. The Individual Defendants and Opendoor

Opendoor and the Individual Defendants are "Defendants"). The terms of the proposed Settlement are set forth in the Stipulation and Agreement of Settlement, filed herewith.

If the Court grants preliminary approval, Plaintiffs will provide notice of the Settlement to potential Settlement Class Members. The Settlement Hearing will then be conducted so that the Parties and Settlement Class Members may present arguments and evidence for (or against) the Settlement, and the Court can then make a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement and to consider Lead Counsel's Fee and Expense Application.

The proposed Preliminary Approval Order, filed herewith, has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement; (ii) approve the proposed long-form Notice of Pendency of Class Action, Proposed Class Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release form ("Claim Form"), Summary Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses ("Summary Notice"), and Postcard Notice, attached as Exhibits A-1 through A-4 to the Preliminary Approval Order, as well as the methods of notice; (iii) set a date and time for the final Settlement Hearing; and (iv) appoint Verita as the Claims Administrator to provide all notices, process Claim Forms, and to administer the Settlement.

Plaintiffs respectfully submit that the Settlement is an excellent result and should be preliminarily approved for the reasons stated herein.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The case arises from claims of allegedly misleading Offering Documents issued in connection with Opendoor's de-SPAC merger on or about December 21, 2020 (the "de-

---

are the "Opendoor Defendants." The "Underwriter Defendants" are Citigroup Global Markets Inc., Goldman Sachs & Co. LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Oppenheimer & Co. Inc., BTIG, LLC, KeyBanc Capital Markets Inc., Wedbush Securities Inc., TD Securities (USA) LLC, Zelman Partners LLC, Academy Securities, Inc., Loop Capital Markets LLC, Samuel A. Ramirez & Company, Inc., and Siebert Williams Shank & Co., LLC.

SPAC Merger"), and the Offering Documents issued in connection with Opendoor's public offering on or about February 4, 2021 (the "February 2021 Offering"). As alleged by Plaintiffs, the Offering Documents portrayed Opendoor as a tech disruptor that used AI-powered algorithms to buy and sell homes more profitably and efficiently than other traditional real estate companies. As alleged in the Complaint, unbeknownst to investors, Opendoor's algorithms were not accurate and could not adjust to changing economic conditions and, as a result, the Company's pricing decisions were driven by an undisclosed human-driven process.

On October 7, 2022, an initial class action complaint was filed against certain of the Opendoor Defendants in the Court alleging violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5). Additionally, related actions were filed against certain of the Defendants in this District.

On February 2, 2023, the Court consolidated all related actions as *In re Opendoor Technologies Inc. Sec. Litig.*, No. 2:22-CV-01717-MTL. By the same Order, the Court appointed Lead Plaintiffs and approved Labaton Sucharow LLP (n/k/a Labaton Keller Sucharow LLP) as Lead Counsel. ECF No. 20.

Plaintiffs filed the operative Consolidated Amended Complaint for Violations of the Federal Securities Laws on April 17, 2023 (the "Complaint," ECF No. 39).[3] The Complaint was based on Lead Counsel's investigation, which included the review and analysis of: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses. Lead Counsel also

---

[3] The Complaint added Stuart Hereford Graham as an additional Plaintiff.

3

identified and contacted approximately 169 former Opendoor employees and other persons with relevant knowledge, and interviewed 44 of them (eight of whom provided information for use in the Complaint as confidential witnesses "CWs"), and consulted with experts on loss causation and damages issues, economics, and de-SPAC transactions. Plaintiffs also submitted requests to the Federal Trade Commission (the "FTC") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

Among other things, the Complaint alleged that Defendants made materially false and misleading statements and omissions with respect to Opendoor's proprietary AI-powered pricing algorithm and its ability to dynamically adjust to changing market conditions in the Offering Documents issued in connection with the de-SPAC Merger and the February 2021 Offering, as well as during the Class Period. The Complaint further alleged that the class was damaged when the truth was allegedly revealed through a series of partial corrective disclosures.

The Opendoor Defendants and Underwriter Defendants each filed a motion to dismiss the Complaint (ECF Nos. 48, 51, 60, 62), which Plaintiffs opposed (ECF Nos. 55, 56). The Opendoor Defendants filed a motion for an order directing the submission of counsel and confidential witness affidavits (the "CW Motion") on October 13, 2023, to which the Underwriter Defendants joined. ECF Nos. 57 and 61. The Court held oral argument on Defendants' motions to dismiss and Defendants' CW Motion, and on the very same day, January 17, 2024, the Court denied the CW Motion. ECF No. 75. On February 28, 2024, the Court granted Defendants' motions to dismiss the Complaint, with leave to amend. ECF No. 86.

On March 13, 2024, Plaintiffs filed a motion for reconsideration of the Court's dismissal of the Securities Act claims on the basis of negative causation (ECF No. 87), which the Court granted on May 14, 2024, vacating in part and amending the Court's February 28, 2024 Order and finding that Plaintiffs adequately alleged claims under Sections 11 and 15 of the Securities Act. ECF No. 97. On June 18, 2024, the Opendoor Defendants filed a motion to certify the Court's May 14, 2024 Order for interlocutory

appeal. ECF No. 104-106. On September 9, 2024, after oral argument, the Court denied Defendants' Motion to Certify Appeal. ECF No. 125.

On July 12, 2024, the Opendoor Defendants and Underwriter Defendants each filed an answer to the Complaint, denying all allegations of wrongdoing or damages, and asserting numerous affirmative defenses. ECF Nos. 107, 108.  Formal discovery commenced on August 16, 2024.  On February 28, 2025, Plaintiffs filed their motion for class certification. ECF No. 145-46.

## III.    SETTLEMENT DISCUSSIONS

In late November 2024, the Parties discussed the possibility of resolving the Action and agreed to engage in mediation with David Murphy of Phillips ADR Services (the "Mediator"), a highly experienced mediator of complex securities litigation. Thereafter, in partial response to Plaintiffs' pending document requests, Defendants produced approximately 16,575 documents to Plaintiffs.  Plaintiffs also produced certain documents to Defendants related to Plaintiffs' transactions in Opendoor securities.

On February 7, 2025, Lead Counsel and Defendants' Counsel, among others, participated in a full-day, in-person mediation session before the Mediator.  In advance of the session, the Parties submitted detailed mediation statements to the Mediator, together with numerous supporting exhibits, which addressed both liability and damages issues. The session ended without any agreement being reached. The Parties continued discussions with the Mediator following the mediation to further explore the possibility of a settlement.

On March 26, 2025, the Parties, with the assistance of the Mediator, agreed in principle to settle the Action subject to the Parties' execution of a settlement term sheet ("Term Sheet") and formal settlement stipulation. The Term Sheet was executed by the Parties on May 2, 2025, and the Stipulation was executed on June 13, 2025.

## IV.    TERMS OF THE PROPOSED SETTLEMENT

Pursuant to the Settlement, Opendoor has agreed to pay, or cause the payment of, $39 million in cash into the Escrow Account. *See* Stipulation at ¶ 6. The Settlement

Amount, plus accrued interest, after the deduction of Court-awarded attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed to Class Members who submit timely and valid Claims, in accordance with a plan of allocation approved by the Court. *Id.* at ¶¶ 9-10. The Settlement is not a claims-made settlement and there is no reversion to Defendants. *Id.* at ¶ 13. If approved, Defendants, their insurance carriers, or any other Person(s) who or which funded the Settlement Amount, will have no right to the return of the Settlement Fund, or any portion thereof, for any reason. *Id.*

In exchange for the payment of the Settlement Amount, upon the Effective Date of the Settlement, Plaintiffs, each and every other Settlement Class Member (whether or not such Settlement Class Member executes and delivers a Claim Form or shares in the Net Settlement Fund), and any other Releasing Plaintiff Party, in their capacities as such, shall release and dismiss the "Released Plaintiffs' Claims" against the "Released Defendant Parties." *Id.* at ¶¶ 1(nn), 1(jj), 4. The definition of Released Plaintiffs' Claims has been tailored to provide Defendants and the other Released Defendant Parties with "complete peace," while being limited to claims that were asserted, or could have been asserted by the Settlement Class, arising out of both the facts and matters in the Action and transactions in Opendoor common stock during the relevant time periods. *Id.* at ¶ 1(nn).[4]

After approval of the Settlement and the Plan of Allocation, the Claims Administrator will process all Claims received and will calculate their value according to the Plan of Allocation. At the completion of the administration, the Claims Administrator will distribute the Net Settlement Fund to eligible Claimants and will continue to do so as long as it is economically feasible. *Id.* at ¶¶ 23-36. Once no further distributions can be made, as discussed below, Lead Counsel proposes to donate the unclaimed balance to the Council of Institutional Investors ("CII"), a non-profit, non-sectarian 501(c) organization, or such other organization approved by the Court.

---

[4] Defendants are also releasing any claims that they may have against any of the Released Plaintiff Parties arising out of the institution, prosecution, or settlement of the claims in the Action. *See* Stipulation at ¶¶ 1(kk), 5.

1

## V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

2      As a matter of public policy, settlement is strongly favored for resolving disputes,

3  especially in complex class actions. *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095,

4  1101 (9th Cir. 2008); *see also Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009

5  WL 10673479, at *2 (D. Ariz. Sept. 28, 2009) ("the extraordinary amount of judicial and

6  private resources consumed by massive class action litigation elevates the general policy

7  of encouraging settlements to 'an overriding public interest'").[5]

8      Rule 23 requires court approval for any class action settlement. A court's review of

9  a class action settlement is a two-step process. First, the court performs a review of the

10  terms of the proposed settlement to determine whether to send notice to the class. *See* Rule

11  23(e)(1). Second, after notice and a hearing, the Court determines whether to grant final

12  approval of the settlement. *See* Rule 23(e)(2). A court may grant preliminary approval of

13  a settlement upon a finding that it "will likely be able to" approve the settlement as fair,

14  reasonable, and adequate at the final hearing and certify the class. *See* Rule 23(e)(1)(B).[6]

15      Rule 23(e)(2) provides that notice should be provided to the class upon a showing

16  that the court will likely be able to finally approve the settlement as fair, adequate, and

17  reasonable considering whether:

18      (A)    the class representatives and class counsel have adequately represented the
           class;

19      (B)    the proposal was negotiated at arm's length;

20      (C)    the relief provided for the class is adequate, taking into account:
              (i)    the costs, risks, and delay of trial and appeal;

21            (ii)   the effectiveness of any proposed method of distributing relief to the
                    class, including the method of processing class-member claims;

22            (iii)  the terms of any proposed award of attorney's fees, including timing
                    of payment; and

23

24

25

---

[5] All internal quotations and citations are omitted unless otherwise noted.

26  [6] Rule 23(e)(1) effectively codifies prior case law, which provided that courts should
grant preliminary approval after considering whether the settlement: "(1) appears to be
27  the product of serious, informed, non-collusive negotiations; (2) has no obvious
deficiencies; (3) does not grant improper preferential treatment to class representatives
28  or other segments of the class; and (4) falls within the range of possible approval."
*Horton v. USAA Cas. Inc. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009).

(iv)    any agreement required to be identified under Rule 23(e)(3)[7]; and

(D)    the proposal treats class members equitably relative to each other.

Applying the standards set forth above, it is respectfully submitted that the Settlement should be preliminarily approved.

## A.    The Settlement Class Has Been Adequately Represented

Plaintiffs have vigorously litigated the claims in the Action and the Settlement was achieved only after diligent arm's-length mediated negotiations between counsel with considerable knowledge and expertise in the field of federal securities law. Plaintiffs and Lead Counsel developed a deep understanding of the facts of the case and merits of the claims by, *inter alia*: (i) conducting an extensive investigation; (ii) drafting a detailed consolidated amended complaint; (iii) responding to two extensive motions to dismiss and motion for the submission of confidential witness affidavits; (iv) prevailing on a motion for reconsideration after the Court's dismissal; (v) researching, drafting, propounding, and responding to discovery requests; (vi) reviewing approximately 16,575 documents; (vii) consulting with experts in the fields of negative causation, damages, tracing, de-SPAC mergers, and economics; and (viii) exchanging extensive mediation briefing and participating in a mediation.

Plaintiffs played an active role in the litigation as they have, among other things, reviewed and monitored the progress of the litigation and regularly conferred with counsel concerning its prosecution; reviewed periodic updates and other correspondence from counsel, including significant pleadings, briefs, and court orders; responded to the discovery demands propounded by Defendants, including written interrogatories, and produced documents in advance of the Mediation. Moreover, through counsel, Plaintiffs

---

[7] Pursuant to Rule 23(e)(3), the only agreements of the Parties in connection with the Settlement are the Term Sheet, the Stipulation, and a confidential Supplemental Agreement Regarding Requests for Exclusion, dated June 13, 2025 concerning the circumstances under which Opendoor may terminate the Settlement based upon the number of exclusion requests. It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class. The Supplemental Agreement can be provided to the Court *in camera* or under seal.

participated in the ongoing negotiations to achieve a settlement. With an informed understanding, Plaintiffs agreed to the Settlement.

Plaintiffs have had the benefit of the advice of knowledgeable counsel well-versed in securities class actions. Lead Counsel Labaton is highly experienced and has a long and successful track record in such cases. *See* Ex. 2 (firm resume). Labaton has served as lead counsel in a number of high-profile and successful matters. *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-08141 (S.D.N.Y.) ($1 billion recovery); *In re Countrywide Sec. Litig.*, No. 07-cv-05295 (C.D. Cal.) ($600 million recovery); *Boston Ret. Sys. v. Uber Techs., Inc.*, Case No. 3:19-cv-06361-RS (N.D. Cal.) (settlement of $200 million). Courts give considerable weight to the opinion of experienced and informed counsel. *See, e.g.*, *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.").

**B.    The Settlement Resulted from Good Faith, Arm's-Length Negotiations**

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." Courts have long recognized the importance of arm's-length negotiations. *See e.g., In re Taronis Tech., Inc. S'hareholder Derivative Litig.*, 2021 WL 842137, at *2 (D. Ariz. Mar. 5, 2021) (granting preliminary approval to settlement where the parties engaged a mediator and the settlement was informed and non-collusive). Here, the Settlement was achieved only after a full-day mediation session, overseen by an experienced third-party neutral. During the mediation on February 7, 2025, the Parties vigorously asserted arguments concerning liability and damages. With Plaintiffs and the Defendants still meaningfully apart in their respective positions after the mediation, they agreed to continue negotiations through the Mediator. On March 26, 2025, the Parties agreed to resolve the Action and thereafter executed a Term Sheet, subject to the negotiation of non-financial terms for the Settlement and Court approval.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.      The Relief Provided by the Settlement Is Adequate

#### 1.      Many Challenges to Obtaining a Recovery Remained

Although Plaintiffs and Lead Counsel believe that the claims asserted are strong, they recognize the significant challenges and risks they would face moving forward, as well as the expense and length of continued litigation through summary judgment motions, trial, and likely appeals. They also considered potential risks with respect to enforcing a litigated judgment against Opendoor.

For example, regarding the allegations of false and misleading statements and omissions in the Offering Documents, Defendants would have likely continued to argue that the disclosures within the Offering Documents, and discovery, showed that there were no false and misleading statements or omissions. In particular, Defendants would likely argue that Plaintiffs could not prove that Opendoor's algorithm could not "dynamically adjust" to changing market conditions at the time of the statements and that prior to the Offerings, there is no evidence that the algorithms were not performing as expected. Similarly, Defendants would also likely argue that Opendoor expressly warned its investors that it could fail to appropriately price homes due to a wide range of factors, including changes in macro and micro-economic conditions. These facts, if accepted at trial, could significantly assist Defendants in establishing a knowledge defense.

The Individual Defendants and the Underwriter Defendants would have asserted a due diligence defense. While Plaintiffs would have worked extensively with a due diligence expert to show that these Defendants were negligent in connection with the de-SPAC Merger and the February 2021 Offering, these Defendants would have put forth well-qualified experts of their own showing that they conducted a reasonable investigation and had reasonable grounds for their actions.

Another principal challenge in continuing the litigation was the difficulty of overcoming Defendants' anticipated negative causation defense, particularly the "disaggregation" of confounding or unrelated information from the stock price declines.

*See* 15 U.S.C § 77k(e). While Plaintiffs' consulting damages expert has estimated that maximum likely recoverable statutory damages for the upheld Section 11 claims were approximately $1.3 billion, Defendants and their experts would have pursued several arguments that any recoverable damages should be much lower. Specifically, Defendants and their experts would likely argue that the declines in Opendoor's stock price were caused by something other than the alleged misstatements or omissions. If Defendants were successful in their arguments, Plaintiffs' consulting damages expert estimates that damages could be as low as $70 million.  Notably, in its Order dismissing the Complaint, the Court found that Defendants had established negative causation because none of the disclosures were "corrective disclosures." Although the Court rightly reconsidered this holding and found that Defendants had not proven a negative causation defense as a matter of law, Plaintiffs continue to face the risk of the Court granting summary judgment in Defendants' favor on this issue.

The $39 million recovery is nearly three times the median recovery of $14 million in securities class actions settled in 2024.  *See* Laarni T. Bulan and Eric Tam, *Securities Class Action Settlements – 2024 Review and Analysis* (Cornerstone Research 2025), Ex. 3 at 1. Likewise, it is above the median settlement of $16.2 million for class actions from 2014 to 2024 that allege Securities Act claims and Exchange Act claims. *Id*. at 8.

Additionally, the Settlement represents a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of completing discovery, expert discovery, summary judgment, trial, post-trial litigation, and enforcing a judgment. *See, e.g.*, *Lo v. Oxnard European Motors, LLC*, 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (at preliminary approval,"'[c]onsidering the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate").

## 2.    Effective Process for Distributing Relief to the Settlement Class

At the final Settlement Hearing, Plaintiffs will ask the Court to approve the Plan of Allocation for distributing the proceeds of the Settlement to eligible Claimants. The proposed Plan of Allocation, which is reported in the Notice, was drafted with the assistance of Plaintiffs' damages expert and is consistent with the statutory measure of damages under Section 11 of the Securities Act with respect to purchases pursuant or traceable to the de-SPAC Merger and the February 2021 Offering, as well as the measure of damages under Section 10(b). *See* Notice at ¶¶ 56 - 79.  Given their dismissal, losses arising solely from the Section 10(b) claims have been discounted by 90%.  The Plan provides for the calculation of a "Recognized Loss Amount" for each purchase/acquisition of a share of eligible Opendoor common stock that is listed in the Claim Form and for which adequate documentation is provided.

The Claims Administrator will calculate Claimants' Recognized Claims using the transactional information submitted in their Claim Forms, which can be mailed to the Claims Administrator, submitted online using the Settlement website, or, for large investors with hundreds of transactions, submitted via e-mail to the Claims Administrator's electronic filing team. Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead Counsel, and Defendants do not have Settlement Class Members' transactional data, and a claims process is required. Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all Authorized Claimants.

Once the Claims Administrator has processed all submitted claims, notified Claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distributions will be made to Authorized Claimants in the form of checks and wire transfers. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed

checks or otherwise), then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members cash their distributions, any balance remaining in the Net Settlement Fund at least six (6) months after the initial distribution will be re-distributed in an economical manner to Class Members who have cashed their initial distributions, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution and Taxes. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, will be contributed to CII, or such other *cy pres* recipient approved by the Court.[8] *See* Stipulation at ¶ 28.

### 3.    Anticipated Legal Fees and Expenses

In connection with seeking final approval of the Settlement, Lead Counsel will move, on behalf of itself and other Plaintiffs' Counsel, for an award of attorneys' fees under the "common fund" doctrine of no more than 30% of the Settlement Fund and Litigation Expenses of no more than $650,000, plus accrued interest. The expense request may include an application, pursuant to the PSLRA, for the reasonable costs and expenses (including lost wages) of Plaintiffs directly related to their representation of the Settlement Class.  The PSLRA provides that such an award may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 77z-1(a)(4). The amount of the Fee and Expense Application is not the subject of any agreement between Defendants and Plaintiffs. *See* Stipulation at ¶ 14.

A fee request of no more than 30%, while above the Ninth Circuit benchmark, would be consistent with other settlements approved in the Ninth Circuit. *See, e.g., See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) (awarding attorneys' fees of

---

[8] CII is a non-profit, non-partisan association of U.S. public, corporate, and union benefit funds, state and local entities charged with investing public assets, foundations, and endowments that seeks to educate its members, policymakers, and the public about corporate governance, shareowner rights, and investment issues. It has been approved as a *cy pres* recipient in numerous securities class actions. *See, e.g., Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, No. 16-cv-02942, ECF No. 346 (C.D. Cal. Mar. 13, 2023); *In re Wells Fargo Sec. Litig.*, 991 F. Supp. 1193, 1198 (N.D. Cal. 1998).

28% of the settlement); *In re Banc of Cal. Sec. Litig.*, No. SA CV 17-118 DMG (DFMx), slip op. at 1 (C.D. Cal. Mar. 16, 2020) (ECF No. 613) (awarding fees of 33% of $19.75 million settlement). Indeed, "in many securities class actions, the award has exceeded the 25 percent benchmark." *Destefano v. Zynga Inc.*, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016).

Lead Counsel will seek a fee based on the percentage method, which "align[s] the lawyers' interests with achieving the highest award for the class members, and reduc[es] the burden on the courts that a complex lodestar calculation requires." *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014). The factual support for Lead Counsel's fee and expense request will be detailed in its upcoming motion requesting fees and expenses. Lead Counsel is aware of Local Rule 54.2. The Preliminary Approval Order, at ¶ 22, asks for permission to file certain of its privileged supporting information under seal.

### D.    Settlement Class Members Are Treated Equitably

The Settlement does not improperly grant preferential treatment to Plaintiffs or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Plaintiffs, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court. All Settlement Class Members that were allegedly harmed as a result of the alleged violations, and that submit an eligible claim, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. *See generally* Notice at ¶¶ 56-79.

## VI.    PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

Rule 23(c)(2)(B) requires notice of a settlement of a class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Notice must describe "the terms of the settlement in

1  sufficient detail to alert those with adverse viewpoints to investigate and to come forward

2  and be heard." *See, e.g.*, *Lane v. Facebook, Inc*., 696 F.3d 811, 826 (9th Cir. 2012).

3        Lead Counsel proposes to provide Settlement Class Members notice by:

4  (i) individual mailing of the Postcard to all Settlement Class Members who can reasonably

5  be identified and located, using shareholder lists obtained from Opendoor's transfer agent,

6  as well as information provided by third party banks, brokers, and other nominees about

7  their customers; (ii) emailing of the Postcard (to the extent emails are provided to the

8  Claims Administrator); (iii) publication of the Summary Notice in *The Wall Street*

9  *Journal,* as well as dissemination of the Summary Notice on the internet using *PR*

10  *Newswire*; and (iv) posting documents on the Claims Administrator's website, from which

11  copies of the Notice and Claim Form can be downloaded and claims can be completed

12  using an online portal. *See* Exhibits A-1 to A-4 to the proposed Preliminary Approval

13  Order. The Claims Administrator will also mail the Notice and Claim Form upon request.

14  The Postcard Notice will provide important information regarding the Settlement and the

15  rights of Settlement Class Members, and will direct recipients to the website. Numerous

16  courts have approved similar notice programs.  *See, e.g., In re Honest Co., Inc. Sec. Litig*.,

17  No. 21-CV-074405, slip op. at 7-8 (N.D. Cal. May 6, 2025) (ECF No. 311)*; Boston Ret.*

18  *System v. Uber Tech*., No. 19-cv-6361, slip op. at 5-8 (N.D. Cal. Aug. 9, 2024 (ECF No.

19  468).

20        In connection with preliminary approval, the Court must set a Settlement Hearing

21  date, dates for mailing the Notice and publication of the Summary Notice, and deadlines

22  for requesting exclusion from the Settlement Class, objecting, filing motions in support of

23  final approval and attorneys' fees and expenses, and submission of Claim Forms. Plaintiffs

24  propose the schedule attached as Exhibit 4 to the Christie Declaration.

25        The notices are written in plain language and provide the relevant information and

26  answers to most questions that Settlement Class Members will have. Consistent with

27  Rules 23(c)(2)(B) and 23(e)(1), the forms of notice collectively describe, among other

28  things, the nature of the Action; the definition of the Settlement Class; the terms of the

Settlement; the maximum attorneys' fees and expenses that may be sought; the procedure for objecting; the procedures for submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Hearing. The long-form Notice also satisfies the PSLRA's separate disclosure requirements. *See* 15 U.S.C. § 77z-1.

Plaintiffs request that the Court appoint Verita Global, LLC as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. Verita is a recognized leader in legal administration services. *See* Ex. 5. Lead Counsel selected Verita after a competitive bidding process.

## VII.    PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS

As part of the Settlement, Plaintiffs respectfully request that the Court preliminarily certify the proposed Settlement Class, as defined in ¶1(rr) of the Stipulation. The Parties have further stipulated to the appointment of Plaintiffs as class representatives for the Settlement Class and Labaton as class counsel for the Settlement Class. Courts have acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In the Ninth Circuit, "Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing." *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009).

A settlement class, like other certified classes, must satisfy the requirements of Rule 23(a) and (b). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). However, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods.*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). In the interest of brevity, the Court is respectfully referred to Plaintiffs' previously filed motion for class certification for a complete recitation of the arguments supporting class certification. *See* ECF No. 145. In summary, pursuant to Rule 23(a): (i) the Settlement Class is so numerous that joinder of all members would be impracticable (ECF No. 145 at 8-9); (ii) there are questions of law or fact common to the Settlement

16

Class (*id*. at 9-10); (iii) the claims or defenses of Plaintiffs are typical of the claims or defenses of the Settlement Class (*id*. at 10-11); and (iv) Plaintiffs and Lead Counsel will fairly and adequately protect the interests of the Settlement Class (*id*. at 11-12).

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets this standard: (i) common questions of both fact and law predominate, given the presumptions of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) or *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972) (ECF No. 145 at 13-14); and (ii) a class action would be superior to other methods for the fair and efficient adjudication of the claims (*id*. at 15).

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily certify the Settlement Class for purposes of the proposed Settlement.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion and enter the proposed Preliminary Approval Order, filed herewith.

Dated: June 13, 2025                     **LABATON KELLER SUCHAROW LLP**

By: /s/ *James T. Christie*
    Michael P. Canty (admitted pro hac vice)
    James T. Christie (admitted *pro hac vice*)
    Guillaume Buell (admitted *pro hac vice*)
    Nicholas Manningham (admitted *pro hac vice*)
    140 Broadway
    New York, New York 10005
    Telephone: (212) 907-0700
    Facsimile: (212) 818-0477
    mcanty@labaton.com
    jchristie@labaton.com
    gbuell@labaton.com
    nmanningham@labaton.com

*Counsel for Plaintiffs*

**CLARK HILL PLC**
Darrell E. Davis, SBN #011442
Colin C. Quinn, SBN #037122
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: (480) 684-1100
Facsimile: (480) 684-1199
ddavis@clarkhill.com
cquinn@clarkhill.com

*Local Counsel for Plaintiffs*

**VANOVERBEKE MICHAUD & TIMMONY P.C.**

Aaron L. Castle (admitted *pro hac vice*)
79 Alfred Street
Detroit, Michigan 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com

**GLANCY PRONGAY & MURRAY LLP**

Casey E. Sadler (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
csadler@glancylaw.com

*Additional Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and transmittal of a Notice of Service of Electronic Filing to the individuals registered with CM/ECF.


*/s/ James T. Christie*
JAMES T. CHRISTIE