**CLARK HILL PLC**
Darrell E. Davis, SBN #011442
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: (480) 684-1100
Facsimile: (480) 684-1199
ddavis@clarkhill.com

*Local Counsel for Plaintiffs and Settlement Class*

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
Guillaume Buell (admitted *pro hac vice*)
Nicholas Manningham (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
jchristie@labaton.com
gbuell@labaton.com
nmanningham@labaton.com

*Lead Counsel for Plaintiffs and Settlement Class*

[Additional Counsel on signature page]

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE OPENDOOR TECHNOLOGIES INC. SECURITIES LITIGATION | Case No. 2:22-CV-01717-MTL<br><br>**LEAD COUNSEL'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES**<br><br><u>CLASS ACTION</u> |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT .......................................................................................................................4

I.      AN AWARD OF ATTORNEYS' FEES OF 25% OF THE SETTLEMENT
        FUND WOULD BE FAIR AND REASONABLE.....................................................4

        A.      Eligibility - Plaintiffs' Counsel Are Eligible for an Award of
                Attorneys' Fees from the Settlement Fund Pursuant to the
                Common Fund Doctrine....................................................................4

        B.      Entitlement – Applicable Factors for Determining Fee Award ........5

        C.      Reasonableness of Requested Fee - Analysis Under the
                Relevant Factors Justifies a Benchmark Fee Award of 25% in
                this Case ...........................................................................................6

                1.      Customary Fee and Awards in Similar Cases...................................6

                2.      The Result Achieved Supports the Fee Request ...............................7

                3.      The Substantial Risks of the Litigation and Novelty and
                        Difficulty of the Questions Presented Support the Fee
                        Request ...........................................................................................9

                4.      The Skill Required and the Quality of Work Performed
                        Support the Fee Request ...............................................................10

                5.      The Contingent Nature of the Fee and the Financial Burden
                        Carried by Counsel Support the Fee Request ...............................11

                6.      Time and Labor Dedicated Confirm that the Requested Fee
                        Would Be Reasonable ....................................................................13

                7.      Reaction of the Settlement Class to Date and the Approval of
                        Plaintiffs Support the Fee Request................................................15

II.     PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND
        WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED...................16

III.    PLAINTIFFS' PSLRA REIMBURSEMENT REQUESTS ...............................17

CONCLUSION ..................................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)...........................................................17

*In re Amkor Tech., Inc. Sec. Litig.*,
2009 WL 10708030 (D. Ariz. Nov. 19, 2009)...............................................................5

*Andrews v. Plains All Am, Pipeline L.P.*,
2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ..............................................................7

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) .....................................................................................12

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ...........................................................5, 13

*In re Apple Inc. Device Performance Litig.*,
2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ...............................................................5

*In re Apple Inc. Sec. Litig.*,
2024 WL 4246282 (N.D. Cal. Sept. 18, 2024) .............................................................14

*Avila v. LifeLock Inc.*,
2020 WL 4362394 (D. Ariz. July 27, 2020)............................................................6, 14

*Azar v. Blount Int'l, Inc.*,
2019 WL 7372658 (D. Or. Dec. 31, 2019) ....................................................................8

*In re BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) .....................................................................................12

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)..............................................................8

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .........................................................................................5

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)........................................................................................................4

*Brown v. China Integrated Energy Inc.*,
2016 WL 11757878 (C.D. Cal. July 22, 2016)............................................................10

*Glass v. UBS Fin. Servs. Inc.*,
    331 F. App'x. 452 (9th Cir. 2009) ................................................................................4, 5

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...........................................................................................16

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)........................................................................................................7

*In re Heritage Bond Litig.*,
    2005 WL 1594389 (C.D. Cal. June 10, 2005) ................................................10, 11, 15

*Jiangchen* v. *Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)................................................................11

*In re MacBook Keyboard Litig.*,
    2023 WL 3688452 (N.D. Cal. May 25, 2023)..................................................................7

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)......................................................................................................13

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008).....................................................................5, 11

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ......................................................................................5, 6

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...........................................................................................9

*In re QuantumScape Sec. Class Action*,
    2025 WL 353556 (N.D. Cal. Jan. 22, 2025)....................................................................7

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12303367 (C.D. Cal. July 9, 2013)..................................................................9

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ....................................................................................12

*Rutti v. Lojack Corp. Inc.*,
    2012 WL 3151077 (C.D. Cal. July 31, 2012)................................................................13

*In re Silver Wheaton Corp. Sec. Litig.*,
    2020 WL 4581642 (C.D. Cal. Aug. 6, 2020)...............................................................6, 7

*Smilovits v. First Solar, Inc.*,
    2020 WL 3636773 (D. Ariz. June 30, 2020) ..............................................................6, 15

iii

*In re Snap Inc. Sec. Litig.*,
    2021 WL 12356004 (C.D. Cal. Mar. 9, 2021)..............................................................7

*In re Stable Rd. Acquisition Corp.*,
    2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ...............................................................6

*Tait v. BSH Home Appliances Corp.*,
    2015 WL 4537463 (C.D. Cal. July 27, 2015)................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................................................12

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ................................................................8

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ................................................................................4, 16

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...........................................................................*passim*

*In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*,
    19 F.3d 1291 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe
    Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).......................................................4, 5

**Docketed Cases**

*In re Alphabet Inc. Sec. Litig.*,
    No. 18-cv-06245, slip op. (N.D. Cal. Sept. 30, 2024) ................................................14

*Laborers Dist. Council Const. Indus. Pension Fund, et al.,
    v. Sea Limited, et al.*,
    No. CV-23-01455-PHX-DLR, slip op. (D. Ariz. July 11, 2025) ................................6

*In re Sandisk LLC Sec. Litig.*,
    No. 3:15-cv-01455-VC, slip op. (N.D. Cal. Oct. 23, 2019) .........................................7

*In re Twitter Inc. Sec. Litig.*,
    No. 4:16-cv-05314, ECF No. 661 (N.D. Cal. Oct. 13, 2022)....................................14

*In re Twitter Inc. Sec. Litig.*,
    No. 4:16-cv-05314, ECF No. 670 (N.D. Cal. Nov. 21, 2022)...................................14

**Statutes**

15 U.S.C §77k(e)...................................................................................................10

15 U.S.C. §77z-1(a)(4) ......................................................................................1, 17

15 U.S.C. §78u-4(a)(6) ..................................................................................................................... 5

15 U.S.C. §78u-4(a)(4) ............................................................................................................... 1, 17

PLEASE TAKE NOTICE that Lead Counsel Labaton Keller Sucharow LLP ("Lead Counsel" or "Labaton"), on behalf of itself and other Plaintiffs' Counsel, will move this Court on January 6, 2026 at 9:00 a.m., before the Honorable Michael T. Liburdi, for an Order, pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure: (i) awarding attorneys' fees in the amount of 25% of the Settlement Fund, pursuant to the common fund doctrine; (ii) awarding Litigation Expenses in the amount of $502,887.04, plus accrued interest, from the Settlement Fund; and (iii) approving Plaintiffs' requests for payment of their costs and expenses (including lost wages), in the total amount of $18,768.20, for their efforts on behalf of the class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), §15 U.S.C. §77z-1(a)(4) and §78u-4(a)(4).

The Motion is supported by the following Memorandum of Points and Authorities, and the accompanying Declaration of Michael P. Canty in Support of (I) Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Motion for an Award of Attorneys' Fees and Payment of Expenses, dated December 9, 2025, with annexed exhibits ("Canty Decl.").

Pursuant to the Court's Order granting Plaintiffs' motion for preliminary approval of the Settlement (ECF No. 156) ("Preliminary Approval Order"), any objections to this Fee and Expense Application must be filed with the Court by December 16, 2025. A proposed order will be submitted with Lead Counsel's reply submission on or before December 30, 2025, after the deadline for objecting has passed.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

As detailed in the Stipulation and Agreement of Settlement, the proposed Settlement, if approved by the Court, will resolve the Action in its entirety in exchange for a cash payment of $39,000,000.[1] Lead Counsel and Plaintiffs believe the Settlement is

---

[1] The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement ("Stipulation"), dated June 13, 2025. ECF No. 154-2. All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein.

1

an excellent result that provides substantial and certain compensation to Settlement Class Members, while avoiding the significant risks and delay associated with pursuing the Action through class certification, summary judgment, trial, and the inevitable appeals that would follow, including the risk that there might be no recovery at all.

In order to achieve this significant recovery, Plaintiffs' Counsel vigorously litigated the claims in this securities class action for three years on a fully contingent basis, and have not been paid for any of their work or expenses. In overseeing and litigating the Action, Lead Counsel worked diligently on behalf of the class and expended extensive time and resources to ensure the best possible recovery for class members, all without any guarantee of a recovery and compensation. As detailed in the Canty Declaration,[2] Plaintiffs' Counsel: (i) conducted a rigorous investigation of the claims at issue, including contacting and interviewing former employees of Opendoor, and consulted with experts on loss causation and damages issues, economics, and de-SPAC transactions; (ii) prepared and filed a detailed consolidated complaint (the "Complaint"), which expanded the scope of the initial complaint by adding additional misrepresentations and other allegations in support of the claims at issue; (iii) defeated, in part, Defendants' motions to dismiss the Complaint (after successfully asking the Court to reconsider its order dismissing the Complaint); (iv) opposed and defeated Defendants' motion to certify for interlocutory appeal the Court's order granting Plaintiffs' motion for reconsideration; (v) moved for class certification; (vi) researched, drafted, and propounded discovery requests on Defendants; (vii) reviewed over 16,000 documents produced in discovery; (viii) prepared for, and participated in, a formal in-person arm's-length settlement meeting, exchanging extensive mediation briefing; and (ix) engaged and consulted with experts on loss causation and damages, economics, and de-SPAC transactions.

---

[2] The Canty Declaration is an integral part of this motion and is incorporated herein by reference. For the sake of brevity, the Court is respectfully referred to it for, *inter alia*, a detailed description of the allegations and claims, the procedural history of the Action, the risks faced in pursuing the litigation, the efforts that led to a settlement, and a description of the services provided by Plaintiffs' Counsel. Citations to "¶" in this motion refer to paragraphs of the Canty Declaration.

For these efforts, Lead Counsel respectfully requests, on Plaintiffs' Counsel's behalf, an award of attorneys' fees of 25% of the Settlement Fund, which includes accrued interest; Litigation Expenses in the amount of $502,887.04, plus accrued interest; and reimbursement in the aggregate amount of $18,768.20 to Plaintiffs, pursuant to the PSLRA, for their efforts on behalf of the Settlement Class.

As discussed herein, as well as in the Canty Declaration, Lead Counsel respectfully submits that the requested fee is fair and reasonable under the circumstances of this case given the excellent recovery obtained for the Settlement Class, the considerable litigation efforts undertaken by counsel, and the risks and challenges presented by the complex issues in this case. The request for attorneys' fees of 25% is the benchmark in the Ninth Circuit (*see, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)) and the reasonable lodestar "multiplier" of approximately 1.9 confirms that the fee would be fair and is in line with the risks shouldered by counsel on behalf of the Settlement Class. Moreover, the requested fee and expenses have been approved by Plaintiffs.[3] *See* Ex. 1 at ¶¶2, 8, 12 (Declaration on behalf of INPRS); Ex. 2 at ¶¶2, 8, 13 (Declaration on behalf of Oakland County Funds); and Ex. 3 at ¶¶2, 8, 12 (Declaration of Mr. Hereford).[4] Accordingly, it is respectfully submitted that the requested fees, Litigation Expenses, and PSLRA requests should be awarded in full.

---

[3] "Plaintiffs" are Lead Plaintiffs Indiana Public Retirement System ("INPRS"), Oakland County Employees' Retirement System and Oakland County Voluntary Employees' Beneficiary Association ("Oakland County Funds," and together with INPRS, "Lead Plaintiffs"), and additional plaintiff Stuart Graham Hereford ("Additional Plaintiff").

[4] All exhibits referenced herein are annexed to the Canty Declaration. For clarity, citations to exhibits that themselves have attached exhibits, will be referenced as "Ex.__-__." The first numerical reference is to the designation of the entire exhibit to the Canty Declaration, and the second alphabetical reference is to the exhibit designation within the exhibit itself.

Pursuant to Local Rule 54.2 and the Court's Scheduling Order, spreadsheets delineating Plaintiffs' Counsel's time and expenses will be emailed to the Court. The spreadsheets and copies of supporting documentation of the expenses will also be filed under seal given their privileged and sensitive financial content.

**ARGUMENT**

**I.    AN AWARD OF ATTORNEYS' FEES OF 25% OF THE SETTLEMENT FUND WOULD BE FAIR AND REASONABLE**

  **A. Eligibility - Plaintiffs' Counsel Are Eligible for an Award of Attorneys' Fees from the Settlement Fund Pursuant to the Common Fund Doctrine**

It is well settled that attorneys who represent a class and achieve a benefit for class members are entitled to a reasonable fee as compensation for their services. The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[5] The Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this rule, known as the "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*, 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).

Although courts within the Ninth Circuit have the discretion to employ either the lodestar or percentage method of calculating fees under the common fund doctrine, in *Vizcaino*, 290 F.3d at 1047-48, the Ninth Circuit expressly approved the use of the percentage method. *See also Glass v. UBS Fin. Servs. Inc.*, 331 F. App'x. 452, 456-57 (9th Cir. 2009) (affirming district court's use of percentage of recovery method to award fee). Additionally, the percentage-of-recovery method for awarding attorneys' fees is preferable in cases with a common-fund recovery as it "align[s] the lawyers' interests with achieving the highest award for class members, and reducing the burden on the courts that

---

[5] All internal quotations and citations are omitted unless otherwise noted.

a complex lodestar calculation requires." *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015); *see also In re Amkor Tech., Inc. Sec. Litig.*, 2009 WL 10708030, at *1 (D. Ariz. Nov. 19, 2009) (percentage-of-recovery method most appropriate to award attorneys' fees in securities class action). Further, the percentage of the fund method is appropriate in common fund cases where "the benefit to the class is easily quantified." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *In re Apollo Grp. Inc. Sec. Litig.,* 2012 WL 1378677, at *6 (D. Ariz. Apr. 20, 2012) (same). The use of the percentage-of-recovery method also comports with the language of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6).

Indeed, "[t]he use of the percentage-of-the fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *12 (N.D. Cal. Feb. 17, 2023).

**B.    Entitlement – Applicable Factors for Determining Fee Award**

The guiding principle in the Ninth Circuit is that a fee award must be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). In assessing attorneys' fees under the percentage method, courts within the Ninth Circuit consider the following factors: (i) the customary fee and awards in similar cases (ii) the results achieved; (iii) the risk of litigation; (iv) the skill required and quality of the work; and (v) the contingent nature of the fee and financial burden carried by counsel. *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015). Additionally, Local Rule 54.2(c)(3) asks a fee applicant to discuss: (i) the time and labor required; (ii) the novelty and difficulty of the questions presented; (iii) the experience, reputation, and ability of

5

counsel; and (v) the undesirability of the case.[6] Courts have recognized that the factors "should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances." *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *12 (C.D. Cal. Apr. 23, 2024).

### C.    Reasonableness of Requested Fee - Analysis Under the Relevant Factors Justifies a Benchmark Fee Award of 25% in this Case

It is respectfully submitted that each of the *Vizcaino* factors and the relevant Local Rule 54.2 factors support an award of the requested fee.

### 1.    Customary Fee and Awards in Similar Cases

"In applying the percentage of the fund method, the Ninth Circuit has established 25% as a 'benchmark' percentage, which may be adjusted depending on the circumstances of a case." *Vizcaino*, 290 F.3d at 1047; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949 ("Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark is 25%."); *Smilovits v. First Solar, Inc.*, 2020 WL 3636773, at *1 (D. Ariz. June 30, 2020) ("Plaintiffs' counsel correctly note that 25% is the benchmark for percentage fees in common fund cases in the Ninth Circuit.").

Here, Lead Counsel requests the 25% benchmark as compensation. A review of fee awards in securities and other complex common fund cases within the Ninth Circuit shows that an award of 25% here would be very comparable to awards in similarly sized settlements. *See, e.g.*, *Laborers Dist. Council Const. Indus. Pension Fund, et al., v. Sea Limited, et al.*, No. CV-23-01455-PHX-DLR, slip op. at 2 (D. Ariz. July 11, 2025) (awarding 25% of $46 million settlement) (Ex. 11);[7] *Avila v. LifeLock Inc.*, 2020 WL 4362394, at *2 (D. Ariz. July 27, 2020) (awarding 30% of $20 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020)

---

[6] The following considerations under Local Rule 54.2 are not relevant to Plaintiffs' Counsel representation of the class in this case: (i) the preclusion of other employment; (ii) time limitations imposed by the client or circumstances; or (iii) the nature and length of professional relationship between plaintiff and counsel.

[7] All unreported "slip" opinions are annexed as Exhibit 11 to the Canty Declaration.

(awarding 30% of $41.5 million settlement); *In re QuantumScape Sec. Class Action*, 2025 WL 353556, at *5-6 (N.D. Cal. Jan. 22, 2025) (awarding 30% of $47.5 million settlement); *In re Sandisk LLC Sec. Litig.*, No. 3:15-cv-01455-VC, slip op. at 2 (N.D. Cal. Oct. 23, 2019) (Ex. 11) (awarding 25% of $50 million settlement); *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *13-14 (N.D. Cal. May 25, 2023) (awarding 30% of $50 million settlement).[8]

### 2.    The Result Achieved Supports the Fee Request

Courts have consistently recognized that the result achieved is a key factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"). Lead Counsel respectfully submits that the $39 million proposed Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through summary judgment, trial, and appellate challenges.

As discussed in the Canty Declaration and Plaintiffs' Motion and Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement and Plan of Allocation ("Settlement Memorandum"), Lead Counsel submits that the Settlement returns a favorable percentage of the class's alleged damages. ¶¶82-86. While Plaintiffs' consulting damages expert has estimated that maximum recoverable statutory damages for the upheld Section 11 claims were approximately $1.3 billion, Defendants and their experts would have pursued several arguments that any recoverable damages should be much lower, if not zero. Specifically, Defendants and their experts would likely argue that all of the declines in Opendoor's stock price during the statutory period, including those related to the two allegedly corrective disclosures, were caused by something other than the alleged misstatements or omissions. If Defendants were successful in their arguments, Plaintiffs' consulting damages expert estimates that damages could be as low as $70

---

[8] Awards of 25% or more have also been awarded in much larger class action settlements in courts throughout the Ninth Circuit. *See, e.g.*, *In re Snap Inc. Sec. Litig.*, 2021 WL 12356004, at *1 (awarding 25% of $154.687,500 settlement); *Andrews v. Plains All Am, Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (awarding 32% of $230 million settlement).

million if the two disclosures were upheld and zero if not. *Id*. Notably, in its Order dismissing the Complaint, the Court found that Defendants had established negative causation because none of the disclosures were "corrective disclosures." Although the Court rightly reconsidered this holding and found that Defendants had not proven a negative causation defense as a matter of law, Plaintiffs continue to face the risk of the Court granting summary judgment or a post-trial motion in Defendants' favor on this issue. Accordingly, the Settlement recovers between approximately 3% of maximum estimated damages and 55% of the lower end of recoverable damages. ¶84.

In the sphere of securities class actions, Plaintiffs and Lead Counsel submit this is a very favorable outcome. According to Cornerstone Research, for Securities Act cases with total estimated damages of $150 million or more, the median percentage of recovery from 2015 to 2024 was 5.7% of total estimated damages, and the median percentage of recovery for all Securities Act cases from 2015 to 2024 was 7.9%. Ex. 4 at 9. Moreover, courts within the Ninth Circuit have approved settlements with comparable or lower percentage recoveries than obtained here. *See, e.g.*, *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages" and noting that it was "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements"); *Azar v. Blount Int'l, Inc.*, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement recovering "4.63 to 7.65 percent of the Class's total damages as Plaintiffs estimated"); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding settlement recovering 8% of estimated damages "equals or surpasses the recovery in many other securities class actions"). In sum, Lead Counsel respectfully submits that the very favorable recovery here supports approval of the fee request.

The $39 million recovery is also nearly three times the median recovery of $14 million in securities class actions of all types settled in 2024, and significantly more than the $12 million median in settlements related to a SPAC transaction. *See* Ex. 4 at 1 (Cornerstone Research). Likewise, it is almost four times the median settlement of $10.3

million for class actions that only alleged Securities Act claims and settled from 2015 to 2024. *Id*. at 8.

### 3. The Substantial Risks of the Litigation and Novelty and Difficulty of the Questions Presented Support the Fee Request

The risks and complexity involved in a litigation is an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379, n.10 (9th Cir. 1995) (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *see also Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) (noting that "Courts experienced with securities fraud litigation 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear'"). As set forth in Section VI. of the Canty Declaration, Lead Counsel confronted a number of significant legal and factual challenges during the litigation.

Establishing the fundamental elements of materiality and falsity of the alleged misstatements in the Offering Documents was a major undertaking. For example, the Court found that only the statement in Opendoor's registration statements touting the capabilities of the Company's pricing algorithm—that Opendoor's pricing algorithms "use machine learning to drive pricing decisions" and that its "systems can dynamically adjust to leading market indicators and react to real-time macro- and micro-economic conditions"—was adequately alleged as false and misleading. Although the Court upheld the misstatement in the context of the Motions to Dismiss, there was a substantial risk that the misstatement would not have survived a summary judgment challenge, a jury could have found the statement to be too generic to hold Defendants liable, and that in light of other disclosures made by the Company, the statements were true. ¶¶76-80.

More specifically, based on available document discovery, Defendants would likely have argued that Opendoor's algorithm could in fact "dynamically adjust" to changing market conditions at the time of the statements and that prior to the Offerings,

there was no evidence that the algorithms were not performing as expected and consistent with disclosures made to the market. Proving that the alleged misstatement was misleading would have involved a complex marshaling of facts related to Opendoor's technology and capabilities. ¶¶78-79.

Another key challenge faced by Lead Counsel was the difficulty of overcoming Defendants' negative causation defenses, particularly the "disaggregation" of confounding or unrelated information from the alleged stock price declines. *See* 15 U.S.C §77k(e). This defense is extremely complex, and expert driven, weighing intricate factual and statistical elements concerning price impact and Opendoor's stock price movement. Plaintiffs and the class could have been left with ***no recoverable damages*** because of rulings and findings about causation issues, including after even a favorable jury verdict. ¶¶82-86.

There were also substantial risks that the Court or the jury might not agree with Plaintiffs' evidence with respect to these expert-driven issues, resulting in no recovery for the Settlement Class and no attorneys' fees for counsel. *See Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) ("Plaintiffs acknowledge that much of their evidence would have been expert witness testimony that may not have been credited by the factfinder ... and they may have difficulty collecting any judgment they might obtain against Defendants" meaning "the high risks associated with this litigation weigh in favor of awarding Lead Counsel's requested fee.").

Lead Counsel worked diligently to achieve a significant result for the Settlement Class in the face of these challenges. Under these circumstances, the requested fee is appropriate.

### 4. The Skill Required and the Quality of Work Performed Support the Fee Request

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005); *see also Vizcaino,* 290 F.3d at 1048.

"This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Jiangchen* v. *Rentech, Inc.*, 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019). Lead Counsel—a firm that practices extensively in the highly challenging field of securities litigation and has skillfully litigated these types of cases in courts across the country through trial (*see* firm resume of Labaton Keller Sucharow LLP, Ex. 6-G) – engaged in a rigorous and concerted effort to obtain the maximum recovery for the Settlement Class. This case required a wide ranging and deep investigation, a thorough understanding of complex factual and legal issues, and the skill to respond to the host of challenges that Defendants raised during the litigation. *See generally* Canty Declaration. Counsel's efforts have resulted in a notable result for the Settlement Class, particularly in light of the risks involved in class certification, looming summary judgment motions, and pre-trial challenges. Accordingly, the quality of the legal services provided over the course of the past three years, together with Lead Counsel's substantial experience and commitment to the litigation, support the requested fee.

The quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiffs' Counsel. *See, e.g.*, *In re Heritage Bond*, 2005 WL 1594389, at *12. Here, Plaintiffs' Counsel were opposed by very skilled and highly respected lawyers, with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases such as this.

### 5.    The Contingent Nature of the Fee and the Financial Burden Carried by Counsel Support the Fee Request

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."). The Supreme Court has also emphasized that private

11

securities actions such as this "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007). Yet, vigorous private enforcement of the federal securities laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to large corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingent basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. For example, in *In re BankAtlantic Bancorp, Inc.*, tried by Labaton, a jury rendered a verdict in plaintiffs' favor on liability in 2010. However, in 2011, the district court granted defendants' motion for judgment as a matter of law and entered judgment in favor of defendants on all claims. *See* 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011). In 2012, the Eleventh Circuit affirmed the district court's ruling, finding that there was insufficient evidence to support a finding of loss causation. *See In re BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

Lead Counsel is aware of many other hard-fought lawsuits where excellent professional efforts by members of the plaintiff's bar produced no fee for counsel. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation).

Here, because Plaintiffs' Counsel's fee was entirely contingent, the only certainty was that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended. Unlike counsel for defendants, who are paid and reimbursed for their expenses on a current

basis, Plaintiffs' Counsel have received no compensation for their efforts during the course of the Action.

### 6.    Time and Labor Dedicated Confirm that the Requested Fee Would Be Reasonable

Although an analysis of counsel's time and labor is not required for an award of attorneys' fees in the Ninth Circuit, it and counsel's "lodestar" are often considered in order to ensure that an awarded fee would be reasonable. *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Apollo Grp. Inc. Sec. Litig.,* 2012 WL 1378677, at *7 ("When using the Percentage of the Fund Calculation Method, a Court can cross-check the fee amount with the lodestar amount to 'confirm that percentage of recovery amount does not award counsel an exorbitant hourly rate.').

Plaintiffs' Counsel's lodestar, derived by multiplying the hours worked on the litigation by each attorney and professional by their current hourly rates,[9] is $5,160,227.00. *See* Decl. on behalf of Labaton Keller Sucharow LLP, dated Dec. 9, 2025, Ex. 6-A; Decl. on behalf of Clark Hill PLC, dated Dec. 9, 2025, Ex. 7-A; Decl. on behalf of Glancy Prongay & Murray LLP, dated Dec. 8, 2025, Ex. 8-A; and Ex. 9 (Summary Table of Time and Expenses).[10] As detailed in the Canty Declaration and in the accompanying fee declarations, more than 8,700 hours of attorney and professional time was expended for the benefit of the Settlement Class. *See* Ex. 9.[11] Throughout the litigation, Lead Counsel implemented effective project management and sought to

---

[9] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Rutti v. Lojack Corp. Inc.*, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

[10] Plaintiffs' Counsel are: Lead Counsel, Labaton Keller Sucharow LLP; Liaison Counsel, Clark Hill PLC and Keller Rohrback, L.L.P; Glancy Prongay & Murray LLP and The Law Offices of Frank R. Cruz, are additional counsel to Mr. Hereford; and VanOverbeke Michaud & Timmony P.C., is additional counsel to the Oakland County Funds. The Law Offices of Frank R. Cruz, and VanOverbeke will share in any fees awarded by the Court to Plaintiffs' Counsel, but they are not submitting their own fee and expense declarations. Keller Rohrback is not seeking a fee award. Information about counsels' fee agreements is set forth in the firms' fee and expense declarations.

[11] Exhibit B to each firm's fee declaration breaks this lodestar into ten "task codes."

13

maintain an appropriate level of staffing on all tasks.

Plaintiffs' Counsel's rates here ranged from $800 to $1,375 per hour for partners, $750 to $975 per hour for of counsels, $350 to $735 for associates, $390 to $475 for staff/contract attorneys, and $225 to $415 for paralegals. *See* Exs. 6-A; 7-A; 8-A. Lead Counsel submits that these rates are reasonable. *See, e.g., LifeLock*, 2020 WL 4362394, at *2 (approving the hourly rates of Labaton and noting the reasonableness of lodestar when approving fee request); *In re Apple Inc. Sec. Litig.,* 2024 WL 4246282, at *5 fn.3 (N.D. Cal. Sept. 18, 2024) (finding the rates of counsel, including Labaton, "are reasonable and commensurate with those charged by attorneys with similar experience in the market"). The rates are also comparable to or less than those used by peer defense-side law firms litigating matters of similar magnitude and complexity. Sample defense firm rates in 2024, gathered by Labaton annually from bankruptcy court filings nationwide, often exceeded these rates. ¶122, Ex. 10.

Moreover, the requested fee of 25%, if awarded, would represent a reasonable "multiplier" of 1.9 on Plaintiffs' Counsel's total lodestar. The Ninth Circuit has recognized that attorneys in common fund cases are frequently awarded an enhancement multiple of their lodestar, rewarding them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino,* 290 F.3d at 1051. In *Vizcaino*, the Ninth Circuit affirmed a 3.65 multiplier, noting that a range of multiples from 1.0 to 4.0 are frequently awarded. *Id*.; *see also In re Alphabet Inc. Sec. Litig.,* No. 18-cv-06245, slip op. at 13 (N.D. Cal. Sept. 30, 2024) (approving fee in $350 million settlement representing 4.58 multiplier) (Ex. 11); *In re Twitter Inc. Sec. Litig*., No. 4:16-cv-05314, ECF No. 661 at 2 (N.D. Cal. Oct. 13, 2022) and *Twitter*, ECF No. 670 (N.D. Cal. Nov. 21, 2022) (awarding fee in $809.5 million settlement representing a 4.14 multiplier) (Ex. 11).

Furthermore, additional work will be required of Lead Counsel on an ongoing basis, including: preparation for, and participation in, the final approval hearing; and

supervising the claims administration process being conducted by the Claims Administrator. However, Lead Counsel will not seek payment for this additional work.

It is respectfully submitted that the time and labor dedicated here confirms that the requested fee would be reasonable.

**7.      Reaction of the Settlement Class to Date and the Approval of Plaintiffs Support the Fee Request**

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See In re Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award."); *First Solar, Inc.*, 2020 WL 3636773, at *2 (finding no substantive objections were made when considering whether to award the requested fee). Here, 404,104 Postcard Notices reporting the maximum amount of the Fee and Expense Application have been disseminated to potential Settlement Class Members and their brokers, banks, and other nominees. *See* Decl. of Lance Cavallo on behalf of Verita Global LLC, dated December 9, 2025 ("Mailing Decl."), Ex. 5 at ¶8. The long-form Notice and Claim Form, along with the Stipulation and other relevant documents, were made available on a website dedicated to the Settlement. *Id*. at ¶11. Additionally, the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire*. *Id*. at ¶9. Although the December 16, 2025 objection deadline has not yet passed, to date no objections to the requested amount of attorneys' fees and expenses have been filed with the Court or received by Lead Counsel.[12]

In addition, Plaintiffs, who took an active role in the litigation and closely supervised the work of Lead Counsel, support the approval of the requested fee based on the result obtained, the efforts of Plaintiffs' Counsel, and the risks in the Action. *See* Exs. 1-3.

_____

[12] Lead Counsel will address any future objections in its reply papers, which will be filed with the Court on or before December 30, 2025.

15

## II.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's application includes a request for payment of $502,887.04 in Litigation Expenses, which were reasonably incurred and necessary to prosecute the Action. These expenses are explained in Plaintiffs' Counsel's individual fee and expense declarations filed herewith. *See* Exs. 6-C & D; 8-C. This amount is below the $650,000 maximum that the notices informed potential Settlement Class Members counsel may apply for. To date, there have been no objections to this request.

"Attorneys who created[] a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent,* 2013 WL 621865, at *5. In assessing whether counsel's expenses are compensable in a common fund case, courts look at whether the particular costs are of the type that would normally be paid by a fee-paying client in the private non-contingent marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"). The amount of Litigation Expenses here is consistent with the stage of the litigation, and the expert driven issues in the case, such as negative causation and disaggregation issues, and de-SPAC transactions.

The largest component of the expenses relates to the retention of Plaintiffs' experts. These costs total $333,765.38 or approximately 67% of the Plaintiffs' Counsel's expenses. ¶129. Lead Counsel retained experts to provide opinions and advice on issues related to the elements of the Plaintiffs' claims (damages, economics, and de-SPAC transactions) and also to rebut Defendants' negative causation arguments. These experts were essential to the prosecution of the Action. *Id*. Plaintiffs' Counsel also incurred $33,372.50, or approximately 7% of total expenses, in connection with counsel retained by certain of the Confidential Witnesses to respond to subpoenas served by defendants. ¶130. Another substantial component of the costs were fees related to the extensive mediation efforts of the Mediator, David M. Murphy, Esq., $32,500 (or approximately 6.5% of total costs)

¶131. The other expenses sought by Lead Counsel are the types of expenses that are necessarily incurred in complex commercial litigation. ¶¶132-135; Ex. 6-C & D; Ex. 8-C.

It is respectfully submitted that Plaintiffs' Counsel's expenses were reasonable and necessary to the litigation of the Action and should be approved.

## III.   PLAINTIFFS' PSLRA REIMBURSEMENT REQUESTS

The PSLRA permits an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §77z-1(a)(4) and §78u-4(a)(4). Here, Plaintiffs are seeking $18,768.20 in the aggregate, in expenses related to the time they dedicated to the Action. *See* Exs. 1-3; ¶¶136-137. Plaintiffs have each submitted declarations setting forth the time and effort they dedicated to pursuing the class's claims over the past three years. Each were in regular contact with counsel, reviewed court filings, responded to discovery requests, and consulted with counsel during the course of the mediation process and approved of the Settlement. *Id.* Plaintiffs' efforts required them to devote time and resources to this Action that would otherwise have been devoted to their regular professional endeavors. *Id.*

Many cases have approved reasonable payments to compensate representatives for the time, effort, and expenses they devoted on behalf of a class. *See, e.g., In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *10 (C.D. Cal. Oct. 25, 2016) (reasoning that "courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of the class" and awarding the State of Connecticut $30,983.99).

Lead Counsel respectfully submits that the amount sought here is reasonable based on Plaintiffs' involvement in the Action.

## CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award: (i) attorneys' fees of 25% of the Settlement Fund; (ii) Litigation Expenses in the amount of $502,887.04, plus accrued interest; and (iii) $18,768.20 to Plaintiffs, pursuant

to the PSLRA. A proposed order will be filed with Lead Counsel's reply submission, after the deadline for objecting has passed.

Dated: December 9, 2025                    Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

By: /s/ *Michael P. Canty*
    Michael P. Canty (admitted pro hac vice)
    James T. Christie (admitted *pro hac vice*)
    Guillaume Buell (admitted *pro hac vice*)
    Nicholas Manningham (admitted *pro hac vice*)
    140 Broadway
    New York, New York 10005
    Telephone: (212) 907-0700
    Facsimile: (212) 818-0477
    mcanty@labaton.com
    jchristie@labaton.com
    gbuell@labaton.com
    nmanningham@labaton.com

*Lead Counsel for Plaintiffs and Settlement Class*

**CLARK HILL PLC**
Darrell E. Davis, SBN #011442
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: (480) 684-1100
Facsimile: (480) 684-1199
ddavis@clarkhill.com

*Local Counsel for Plaintiffs and Settlement Class*

**VANOVERBEKE MICHAUD & TIMMONY P.C.**

Aaron L. Castle (admitted *pro hac vice*)
79 Alfred Street
Detroit, Michigan 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com

**GLANCY PRONGAY & MURRAY LLP**

Casey E. Sadler (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

18

Facsimile: (310) 201-9160
csadler@glancylaw.com

*Additional Counsel for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 9, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and transmittal of a Notice of Service of Electronic Filing to the individuals registered with CM/ECF.


<u>*/s/ Michael P. Canty*</u>
MICHAEL P. CANTY

20

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 54.2(d)(1), I hereby certify that on December 8, 2025, my colleague Nicole Zeiss and I conferred, by email, with counsel for the Defendants, Lyle Roberts and George Anhang of Allen Overy Shearman Sterling US LLP and William Sushon of O'Melveny & Myers LLP, about the instant motion. They take no position on the motion.

*/s/ Michael P. Canty*
MICHAEL P. CANTY